**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Hartman SPE, LLC, | ) Case No. 23-11452 (___) |
| | ) |
| Debtor.[1] | ) |
| | ) |

**MOTION OF DEBTOR FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE
DEBTOR TO (A) MAINTAIN EXISTING INSURANCE POLICIES AND PAY ALL
INSURANCE OBLIGATIONS ARISING THEREUNDER, (B) RENEW, SUPPLEMENT,
MODIFY, OR PURCHASE INSURANCE COVERAGE, AND (C) CONTINUE TO PAY
BROKERAGE FEES; (II) AUTHORIZING CONTINUATION OF INSURANCE
PREMIUM FINANCING; AND (III) GRANTING RELATED RELIEF**

By this motion (this "<u>Motion</u>"), Hartman SPE, LLC, as debtor and debtor in possession (the "<u>Debtor</u>") in the above-captioned chapter 11 bankruptcy case (the "<u>Chapter 11 Case</u>"), respectfully represents as follows:

<u>**RELIEF REQUESTED**</u>

1. By this Motion, and pursuant to sections 105(a), 362(d), 363(b), 364(c), 1107 and 1108 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), the Debtor seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "<u>Proposed Interim Order</u>") and **Exhibit B** (the "<u>Proposed Final Order</u>"), respectively, (i) authorizing, but not directing, the Debtor, in its sole

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is Hartman SPE, LLC (7400). The Debtor's principal place of business and service address is 2909 Hillcroft, Suite 420, Houston, TX 77057. Copies of pleadings may be obtained from the website of the United States Bankruptcy Court for the District of Delaware www.deb.uscourts.gov or from the Debtor's Claim Agent's website https://dm.epiq11.com/HartmanSPE.

discretion, to (a) maintain its existing Insurance Policies (as defined below) and pay all obligations arising thereunder or in connection therewith, (b) renew, supplement, modify or purchase insurance coverage, and (c) continue to pay Brokerage Fees (as defined below); (ii) authorizing continuation of insurance premium financing; and (iii) granting related relief.

2.      The Debtor believes that all of the relief requested herein is necessary to avoid immediate and irreparable harm and should be approved pursuant to the Proposed Interim Order. In addition, the Debtor is seeking approval of the relief requested herein on a final basis pursuant to the Proposed Final Order.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012 (the "Amended Standing Order").  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of the Chapter 11 Cases and this Motion is proper in this District under 28 U.S.C. §§ 1408 and 1409.

4.      Pursuant to Local Rule 9013-1(f), the Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

5.      The statutory bases for the relief requested herein are sections 105(a), 362(d), 363(b), 364(c), 1107, and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1(m).

## BACKGROUND

6.      On the date hereof (the "Petition Date"), the Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code.

7.     The Debtor is authorized to continue to operate its business and manage its properties as debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.     No trustee, examiner, or statutory committee of creditors has been appointed in the Chapter 11 Case.

9.     A detailed description of the Debtor and its business, including the facts and circumstances giving rise to the Debtor's Chapter 11 Case, is set forth in the *Declaration of David Wheeler in Support of Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration") filed contemporaneously with the Motion. [2]

## INSURANCE POLICIES AND RELATED PAYMENT OBLIGATIONS

10.     In the ordinary course of business, the Debtor's parent Silver Star Properties REIT, Inc. ("Silver Star") maintains for the benefit of the Debtor a number of insurance policies (collectively, the "Insurance Policies")[3] that are administered by multiple third-party insurance carriers (collectively, the "Insurance Carriers") and provide coverage for the real estate assets included in the Debtor's portfolio.  The Insurance Policies provide coverage for, among other things: property damage, flood, general liability, umbrella, automobile, terrorism and sabotage, and equipment breakdown.  A schedule of the Insurance Policies is attached as **Schedule 1** to the Proposed Final Order, and incorporated herein by reference.[4]

---

[2]     Capitalized terms used but not otherwise defined in this Motion have the meanings ascribed to them in the First Day Declaration.

[3]     As used herein, the term "Insurance Policies" consists of two buckets of policies: Financed Insurance Policies and Standard Insurance Policies.

[4]     The descriptions of the Insurance Policies set forth in this Motion constitute a summary only.  The actual terms of the Insurance Policies and related agreements will govern in the event of any inconsistency with the description in this Motion.  Although **Schedule 1** to the Proposed Final Order is intended to be comprehensive, the Debtor may have inadvertently omitted Insurance Policies from **Schedule 1**.  The Debtor requests authority to honor existing Insurance Policies and renew Insurance Policies, as applicable, regardless of whether the Debtor inadvertently failed to include a particular Insurance Policy on **Schedule 1**, and any such omitted Insurance Policy

11.     Continuation and renewal of the Insurance Policies and entry into new insurance policies is essential to preserving the value of the Debtor's business, properties, and assets. Moreover, in many cases, coverage provided by the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtor's commercial activities, as well as the Bankruptcy Code and the requirements of the United States Trustee for Region 3 as provided in the *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (the "U.S. Trustee Guidelines").  The Debtor requests the Court's authority to maintain the existing Insurance Policies, pay prepetition obligations (if any) related thereto upon entry of the Order, and renew, supplement, enter into new Insurance Policies in the ordinary course of business on a postpetition basis.

A.     **Financed Insurance Policies**

12.     In the ordinary course of business, most of the Insurance Policies are financed through a premium financing agreement (the "Financed Insurance Policies").  In particular, as of the Petition Date, Silver Star maintains a financing agreement with IPFS Corporation (the "Lender"), dated April 13, 2023 (the "Financing Agreement"), in connection with numerous property, terrorism and sabotage, equipment breakdown, and umbrella policies underwritten by Continental Casualty Company ("Continental"), effective as of April 13, 2023.  The Debtor is listed as an insured under the Financed Insurance Policies.  The coverage provides comprehensive continuous protection against damage or loss to the Debtor's real estate assets.  The premiums under the Financing Agreement are allocated to each of the Debtor's covered properties on a pro rata basis based on each property's total insurable value.

---

is hereby included in the defined term "Insurance Policies" as used herein and in the Prosed Interim Order and Proposed Final Order.

13.     The total annual premium under the Financing Agreement is $4,829,032.06, consisting of a $1,690,161.22 down payment and eight equal monthly installment payments beginning on June 13, 2023 to cover the remainder.  The Debtor estimates that approximately 86% of the total annual premium amount relates to the Debtor's assets.

14.     Payments on account of the premiums under the Financing Agreement are made either by the Debtor directly or by Silver Star with funds advanced by the Debtor.  As of the Petition Date, the remaining balance under the Financing Agreement is $2,017,697.30, of which $403,539.46 will come due and owing within the first thirty (30) days following the Petition Date.

15.     In exchange for the Lender's payment of the monthly Premium payments as they come due, Silver Star agreed to pay the Lender the total amount financed ($3,138,870.84), plus an additional $89,444.84 finance charge attributable to interest and other fees.  Silver Star also granted and assigned the Lender a security interest in all right, title and interest to the Financed Insurance Policies.

16.     The Debtor's ability to maintain the Financing Agreement and enter into new premium financing agreements, as needed in the ordinary course of business, is essential to the preservation of the value of the Debtor's business, operations, and assets.  Accordingly, pursuant to this Motion, the Debtor is seeking authority to honor prepetition obligations related to the Financing Agreement and to enter into new premium financing agreements, as applicable, in the ordinary course of business.  For the avoidance of doubt, by this Motion, the Debtor seeks authority to honor only that portion of the prepetition obligations that relates to its assets, which the Debtor estimates to be 86%.  To ensure uninterrupted coverage under the Financed Insurance Policies, the Debtor seeks authority to continue to honor its portion of obligations (86%) as they come due in the ordinary course of business on a postpetition basis.

**B.**     **Standard Insurance Policies**

17.     In the ordinary course of business, Silver Star maintains for the Debtor's benefit several insurance policies that are obtained primarily through Arthur J. Gallagher & Co. (the "Broker") and administered by multiple third-party insurance carriers that provide coverage related to, among other things, general liability, automobile, flood damage, and umbrella (the "Standard Insurance Policies"). The Standard Insurance Policies are not subject to the Financing Agreement. Rather, payments on account of premiums are paid directly to the Broker. As with the Financed Insurance Policies, the Debtor estimates that 86% of coverage provided by the Standard Insurance Policies relates to its assets.

18.     As of the Petition Date, the Debtor does not believe it owes any amounts on account of outstanding premiums for the Standard Insurance Policies. All premiums have already been paid in full. To ensure uninterrupted coverage under the Standard Insurance Policies, however, the Debtor seeks authority to continue to honor its 86% portion of the obligations under the Standard Insurance Policies as they come due in the ordinary course of business on a postpetition basis.

**C.**     **Deductibles**

19.     Certain of the Insurance Policies require the payment of a deductible (collectively, the "Deductibles"). Generally, if a claim is made against the Insurance Policies, the insured must pay for any successful or settled claims against an Insurance Policy up until it meets its deductible threshold. Any claim amounts due in excess of that amount are the carrier's responsibility. Generally, the Insurance Policies covering the Debtor's real estate assets impose a $100,000 deductible per policy, but require Silver Star to pay the claim down to $50,000.

20.     As of the Petition Date, the Debtor does not believe it owes any amounts on account of outstanding Deductibles under the Insurance Policies.  To ensure uninterrupted coverage under the Insurance Policies, however, the Debtor seeks authority to continue to honor its obligations with respect to any Deductibles that may be due, as they come due, in the ordinary course of business on a postpetition basis.

**D.     Brokerage Fees**

21.     The Broker assists Silver Star in obtaining comprehensive insurance coverage for the Debtor's assets and procuring and negotiating the Insurance Policies, which enables Silver Star to obtain Insurance Policies on advantageous terms and at competitive rates.

22.     In connection with these services, and in the ordinary course of business, Silver Star pays (with funds advanced by the Debtor) certain of its annual and monthly premiums directly to the Broker for the Insurance Policies the Broker procures.  The Broker then takes a certain percentage of the applicable premium, depending on the policy, as commission fees for the respective Insurance Policies (such fees, the "Brokerage Fees").  As of the Petition Date, the Debtor believes it is current on account of the Brokerage Fees, given that it is current on all premium payments (including the premiums paid via monthly installments).

23.     The Debtor believes that continuation of the Broker's services is necessary to assure the Debtor's continued ability to secure necessary Insurance Policies on advantageous terms at competitive rates, facilitate the proper maintenance of the Insurance Policies postpetition, and ensure adequate protection of the Debtor's property for all parties in interest.  Accordingly, the Debtor seeks authority to pay any outstanding prepetition Brokerage Fees, and to continue to honor its obligations to the Broker as they come due in the ordinary course of business on a postpetition basis.

E.      **Insurance Policy Audits**

24.     Certain of the Insurance Policies—namely, the Debtor's general liability—are subject to regular audits (the "<u>Insurance Policy Audits</u>"), which may result in an adjustment of the premiums owed on account thereof.  The Insurance Policy Audits typically occur between 30 and 60 days after expiration of the relevant Insurance Policies.  The Debtor seeks authority to pay any outstanding prepetition amounts owed on account of any Insurance Policy Audits and to continue to pay amounts owed on account of any Insurance Policy Audits as they come due in the ordinary course of business on a postpetition basis.[5]

<u>**BASIS FOR RELIEF**</u>

A.      **The Court Should Authorize the Debtor to Maintain the Insurance Policies and the Financing Agreement, Renew, Supplement, Modify and Purchase Additional Insurance Coverage and Pay Prepetition Obligations Arising Under the Insurance Policies and Financing Agreement.**

(1)     Continuation of the Insurance Policies and Financing Agreement Is Required by <u>the Bankruptcy Code and the U.S. Trustee Guidelines</u>.

25.     Section 1112(b) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case.  11 U.S.C. § 1112(b)(4)(C).  In addition, in many instances, the coverage provided under the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtor's commercial activities, including the U.S. Trustee Guidelines.  Given this backdrop, the Debtor believes it is essential to its estate, and consistent with the Bankruptcy Code and the U.S. Trustee Guidelines, that it maintain and continue to make all

---

[5]     Nothing in this Motion or any related order constitutes or should be construed as an admission of liability by the Debtor with respect to any Insurance Policy Audits.

payments required under the Insurance Policies and have the authority to supplement, amend, extend, renew, or replace its Insurance Policies as needed, in its judgment, without further order of the Court.

> (2)     Maintaining the Insurance Policies and Paying Obligations under the Insurance Policies and Financing Agreement in the Ordinary Course Is a Sound Exercise of <u>the Debtor's Business Judgment</u>.

26.     Section 363(b) of the Bankruptcy Code permits a debtor to use estate property "other than in the ordinary course of business" after notice and a hearing.  11 U.S.C. § 363(b)(1). Under section 363(b), courts require only that the debtor "show that a sound business purpose justifies such actions."  *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted); *see also In re Phx. Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987).  Further, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

27.     The Debtor has determined, in the sound exercise of its business judgment, that maintaining the Insurance Policies, including payment of any amounts due thereunder, and payment of the related Brokerage Fees in the ordinary course of business is critical to the success of the Chapter 11 Case.

> (3)     The Court Also May Grant the Motion Pursuant to Section 105(a) of the <u>Bankruptcy Code and the Doctrine of Necessity</u>.

28.     Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Under section 105(a) of the Bankruptcy Code, courts may permit payments of

prepetition obligations prior to confirmation of a plan and emergence from chapter 11 when essential to the continued operation of a debtor's business. Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "doctrine of necessity."

29. Under the "doctrine of necessity," bankruptcy courts may authorize the payment of prepetition claims if such payment is essential to the continued operation of the debtor. *In re Lehigh & N. E. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (recognizing necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).

30. Although the "doctrine of necessity" predates the Bankruptcy Code, *see Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286, 309 (1882), the modern application of the doctrine of necessity is grounded in specific provisions of the Bankruptcy Code, including sections 105(a), 1107(a) and 1108. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (fiduciary duties implicit in section 1107(a) of the Bankruptcy Code justify the "preplan satisfaction of a prepetition claim" where necessary to preserve going concern value). The doctrine, largely unchanged from the Supreme Court's reasoning in *Miltenberger*, is a widely accepted component of bankruptcy jurisprudence. *See Just for Feet*, 242 B.R. at 826 (approving

payment of key inventory suppliers' prepetition claims when such suppliers could destroy the debtor's business by refusing to deliver new inventory on the eve of debtor's key sales season); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (affirming order authorizing payment of prepetition wages, salaries, expenses and benefits); *In re Payless Cashways, Inc.*, 268 B.R. 543, 546-47 (Bankr. W.D. Mo. 2001) (authorizing payment of critical prepetition suppliers' claims when such suppliers agreed to provide postpetition trade credit).

31.     As described above, maintaining the Insurance Policies is necessary to preserve the value of the Debtor's assets, thereby ensuring the adequate protection of the Debtor's property for any party in interest, and to minimize exposure to risk.  Failing to maintain the Insurance Policies would have a material adverse effect on the ability of the Debtor to maximize the value of its estate. If the Insurance Policies are permitted to lapse or are otherwise terminated, the Debtor could face significant postpetition liability for personal or property damage, which, in turn, could harm all parties in interest.  The Debtor would be forced to obtain replacement insurance coverage on an emergency basis and at significant cost, or one or more of the Insurance Carriers could decline to renew their insurance policies or refuse to enter into new insurance agreements with the Debtor in the future.

32.     Courts in this District have routinely granted similar relief in other chapter 11 cases. *See, e.g.*, *In re Tricida, Inc.*, No. 23-11024 (JTD) (Bankr. D. Del. Feb. 6, 2023) (approving continuation of insurance policies); *In re Medly Health Inc.*, No. 22-11257 (KBO) (Bankr. D. Del. Jan. 6, 2023) (same); *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Sept. 9, 2022) (same); *In re TECT Aerospace Grp. Holdings, Inc.*, No. 21-10670 (KBO) (Bankr. D. Del. May 5, 2021) (same); *In re Mallinckrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del. Nov. 16, 2020)

(same); *In re CraftWorks Parent, LLC*, No. 20-10475 (BLS) (Bankr. D. Del. Mar. 4, 2020) (same); *In re BL Restaurants Holding, LLC*, No. 20-10156 (MFW) (Bankr. D. Del. Feb. 26, 2020) (same); *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Oct. 24, 2019) (same); *In re RUI Holding Corp.*, No. 19-11509 (JTD) (Bankr. D. Del. Aug. 6, 2019) (same); *In re Kona Grill, Inc.*, No. 19-10953 (CSS) (Bankr. D. Del. May 23, 2019) (same); *In re Z Gallerie, LLC*, No. 19-10488 (LLS) (Bankr. D. Del. Apr. 9, 2019) (same); *In re Things Remembered, Inc.*, No. 19-10234 (KG) (Bankr. D. Del. Feb. 26, 2019) (same); *In re Roadhouse Holding, Inc.*, No. 16-11819 (BLS) (Bankr. D. Del. Aug. 31, 2016) (same).[6]

## B.    Authorizing and Directing Banks is Appropriate.

33.    The Debtor also requests that the Court authorize and direct the Debtor's banks and other financial institutions (collectively, the "Banks") to receive, process, honor and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtor related to, the claims that the Debtor requests authority to pay in this Motion, regardless of whether the checks were presented or fund transfer requests were submitted before, on or after the Petition Date, provided that funds are available in the Debtor's accounts to cover the checks and fund transfers and that the Banks are authorized to rely on the Debtor's designation of any particular check as approved by the Proposed Interim Order and the Proposed Final Order.

34.    The Debtor has sufficient liquidity to pay the amounts set forth in this Motion in the ordinary course of business and have implemented controls to ensure that prepetition claims will not be paid except as authorized by the Court.  The Debtor therefore submits that the payment-processing procedures described in this Motion are appropriate.

---

[6]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to Debtors' proposed counsel.

## **RESERVATION OF RIGHTS**

35.     Nothing contained herein is or should be construed as: (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver of the Debtor's rights to dispute the amount of, basis for, or validity of any claim against the Debtor, (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder, (iv) a promise to pay any claim, (v) an approval, assumption, adoption, or rejection of any agreement, contract, program, policy, or lease between the Debtor and any third party under section 365 of the Bankruptcy Code or (vi) otherwise affecting the Debtor's rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtor's rights to subsequently dispute such claim.

## **THE DEBTOR HAS SATISFIED BANKRUPTCY RULE 6003(b)**

36.     Bankruptcy Rule 6003 provides that, to the extent that relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may approve a motion to "pay all or part of a claim that arose before the filing of the petition" prior to twenty-one (21) days after the Petition Date. Fed. R. Bankr. P. 6003.  The Debtor submits that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor, as described herein, and that Bankruptcy Rule 6003 has been satisfied.

## **WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)**

37.     The Debtor also requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtor seeks

in this Motion is necessary for the Debtor to operate without interruption and to preserve value for their estates. Accordingly, the Debtor respectfully requests that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable, as the exigent nature of the relief sought herein justifies immediate relief.

## NOTICE

38.     Notice of this Motion and any order entered hereon will be provided to: (i) the Office of the United States Trustee for the District of Delaware, (ii) the Debtor's thirty (30) largest unsecured creditors, (iii) counsel to the Prepetition Lender, (iv) any other parties having asserted liens against the Properties, (v) the Office of the United States Attorney for the District of Delaware, (vi) the Internal Revenue Service, (vii) the Securities and Exchange Commission, (viii) the Office of the United States Attorney for the State of Texas, (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002, (x) the Insurance Carriers, (xi) the Broker, (xii) the Lender under the Financing Agreement, (xiii) the Banks, and (xiv) any other party entitled to notice pursuant to Local Rule 9013-1(m). In light of the nature of the relief requested and the urgency of the circumstances surrounding this Motion, the Debtor submits that no further notice is required.

## NO PRIOR REQUEST

39.     No prior request for the relief sought herein has been made by the Debtor to this or any other court.

*[Remainder of page left blank intentionally]*

Case 23-11452-MFW    Doc 8    Filed 09/13/23    Page 15 of 30

WHEREFORE, the Debtor respectfully requests that the Court (i) enter the Proposed

Interim Order and Proposed Final Order in substantially the forms attached hereto and (ii) grant

such other and further relief as may be just and proper.

Dated: September 13, 2023          Respectfully submitted,
Wilmington, Delaware

                                   */s/ Kristi J. Doughty*
                                   William E. Chipman, Jr. (No. 3818)
                                   Kristi J. Doughty (No. 3826)
                                   Mark D. Olivere (No. 4291)
                                   **CHIPMAN BROWN CICERO & COLE, LLP**
                                   Hercules Plaza
                                   1313 N. Market Street, Suite 5400
                                   Wilmington, DE 19801
                                   Telephone: (302) 295-0191
                                   Facsimile:  (302) 295-0199
                                   Email: chipman@chipmanbrown.com
                                          doughty@chipmanbrown.com
                                          olivere@chipmanbrown.com

                                              - and-

                                   John E. Mitchell (*pro hac vice* pending)
                                   Michaela C. Crocker (*pro hac vice* pending)
                                   Yelena E. Archiyan (*pro hac vice* pending)
                                   **KATTEN MUCHIN ROSENMAN LLP**
                                   2121 N. Pearl St., Suite 1100
                                   Dallas, TX 75201
                                   Telephone: (214) 765-3600
                                   Facsimile: (214) 765-3602
                                   Email: john.mitchell@katten.com
                                          michaela.crocker@katten.com
                                          yelena.archiyan@katten.com

                                   *Proposed Counsel to the Debtor and*
                                   *Debtor in Possession*

00059272.2

## Exhibit A

## Proposed Interim Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Hartman SPE, LLC, | ) Case No. 23-11452 (___) |
| | ) |
| Debtor.[1] | ) Re: Docket No. [__] |
| | ) |

**INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO (A) MAINTAIN
EXISTING INSURANCE POLICIES AND PAY ALL INSURANCE
OBLIGATIONS ARISING THEREUNDER, (B) RENEW, SUPPLEMENT, MODIFY,
OR PURCHASE INSURANCE COVERAGE, AND (C) CONTINUE TO PAY
BROKERAGE FEES; (II) AUTHORIZING CONTINUATION OF INSURANCE
PREMIUM FINANCING; AND (III) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtor and

debtor in possession (the "Debtor") in the above-captioned case (the "Chapter 11 Case") for an

order (i) authorizing, but not directing, the Debtor, in its sole discretion, to (a) maintain its existing

Insurance Policies and pay all insurance obligations arising thereunder or in connection therewith,

(b) renew, supplement, modify or purchase insurance coverage, and (c) continue to pay Brokerage

Fees; (ii) authorizing continuation of the Insurance Premium Financing; and (iii) granting related

relief, all as more fully set forth in the Motion; and the Court having reviewed the Motion and the

First Day Declaration and having heard the statements of counsel regarding the relief requested in

the Motion at a hearing before the Court (the "Hearing"); and the Court having jurisdiction over

this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and this

---

[1]    The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is Hartman SPE, LLC (7400).  The Debtor's principal place of business and service address is 2909 Hillcroft, Suite 420, Houston, TX 77057. Copies of pleadings may be obtained from the website of the United States Bankruptcy Court for the District of Delaware www.deb.uscourts.gov or from the Debtor's Claim Agent's website https://dm.epiq11.com/HartmanSPE.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is

HEREBY ORDERED THAT:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The Debtor is authorized, but not directed, in its sole discretion, to continue the Insurance Policies and Financing Agreement in the ordinary course of business, on the same basis and in accordance with the same practices and procedures that were in effect prior to the Petition Date, and pay any prepetition or postpetition obligations under the Insurance Policies and Financing Agreement, the Brokerage Fees, and any other amounts related thereto, to the extent that the Debtor determines, in its sole discretion, that such actions are in the best interests of its estate, up to an aggregate amount not to exceed $403,539.46 on an interim basis.

3.      Notwithstanding anything to the contrary herein, the Debtor is authorized, but not directed, in its sole discretion, to honor any prepetition amounts outstanding on account of the Insurance Policies and Financing Agreement and pay premiums thereunder in the ordinary course of business.

4.      The Debtor is authorized to renew, supplement, modify or enter into new Insurance Policies and Financing Agreements in the ordinary course of business; *provided*, that the Debtor shall provide notice of any renewal, supplement, or modification of an Insurance Policy or

Financing Agreement to the U.S. Trustee and any official committee appointed in the chapter 11 cases within seven (7) days of the effective date of such renewal, supplement, or modification.

5.      All Banks are (i) authorized to receive, process, honor and pay any and all checks, drafts, electronic transfers and other forms of payment used by the Debtor on account of the Insurance Policies, whether presented before, on or after the Petition Date; and (ii) prohibited from placing any hold on, or attempting to reverse, any automatic transfer on account of the Insurance Policies and Financing Agreement.  The Banks shall rely on the representations of the Debtor as to which checks and fund transfers should be honored and paid pursuant to this Interim Order without any duty of further inquiry and without liability for following the Debtor's instructions.

6.      Nothing contained in the Motion or this Interim Order, nor any payment made pursuant to the authority granted by this Order, shall constitute or be construed as (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver of the Debtor's rights to dispute the amount of, basis for, or validity of any claim against the Debtor, (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder, (iv) promise to pay any claim, (v) an approval, assumption, adoption, or rejection of any agreement, contract, program, policy, or lease between the Debtor and any third party under section 365 of the Bankruptcy Code, or (vi) otherwise affecting the Debtor's rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.

7.      Nothing contained in the Motion or this Order shall be construed to (i) create or perfect, in favor of any person or entity, any interest in cash of the Debtor that did not exist as of the Petition Date or (ii) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

8.      Nothing in the Motion or this Interim Order, nor as a result of any payment made pursuant to this Order, shall be deemed or construed as a waiver of the right of the Debtor, or shall impair the ability of the Debtor, to contest the validity and amount of any payment made pursuant to this Order.

9.      Nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

10.     Notwithstanding anything in the Motion or this Interim Order, any payments made hereunder shall be subject to and consistent with the budget approved as part of any interim or final order approving use of cash collateral and/or post-petition financing.

11.     The final hearing (the "Final Hearing") on the Motion shall be held on _____ __, 2023 at __:__ a.m./p.m., prevailing Eastern Time.  Any objections or responses to the entry of a final order on the Motion shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on _____ ___, 2023 (the "Objection Deadline"), and shall be served on: (i) proposed counsel for the Debtor, Katten Muchin Rosenman LLP, 2121 North Pearl Street, Suite 1100, Dallas, TX 75201, Attn: John Mitchell (john.mitchell@katten.com) and Michaela Crocker (michaela.crocker@katten.com); (ii) proposed Delaware counsel for the Debtor, Chipman Brown Cicero & Cole, LLP, Hercules Plaza, 1313 North Market Street, Suite 5400, Wilmington DE, 19801, Attn: William E. Chipman, Jr. (chipman@chipmanbrown.com); (iii) counsel for the Prepetition Lender, [_____]; (iv) counsel to any statutory committee appointed in this Chapter 11 Case; and (v) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: John Schanne (john.schanne@usdoj.gov).  If no objections or responses are filed and served by the Objection Deadline, the Court may enter a final order without any further notice of a hearing.

12.     Nothing in the Motion or this Interim Order shall be deemed to authorize the Debtor to make any payments not otherwise due prior to the Final Hearing.

13.     The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

14.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

15.     The terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

16.     The Debtor is authorized and empowered to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

17.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**<u>Exhibit B</u>**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|                        |     |                          |
|------------------------|-----|--------------------------|
|                        | )   |                          |
| In re:                 | )   | **Chapter 11**           |
|                        | )   |                          |
| **Hartman SPE, LLC,**  | )   | **Case No. 23-11452 (___)** |
|                        | )   |                          |
| **Debtor.**[1]         | )   | **Re: Docket No. [__]**  |
|                        | )   |                          |

**FINAL ORDER (I) AUTHORIZING THE DEBTOR TO (A) MAINTAIN
EXISTING INSURANCE POLICIES AND PAY ALL INSURANCE
OBLIGATIONS ARISING THEREUNDER, (B) RENEW, SUPPLEMENT, MODIFY,
OR PURCHASE INSURANCE COVERAGE, AND (C) CONTINUE TO PAY
BROKERAGE FEES; (II) AUTHORIZING CONTINUATION OF INSURANCE
PREMIUM FINANCING; AND (III) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtor and

debtor in possession (the "Debtor") in the above-captioned case (the "Chapter 11 Case") for an

order (i) authorizing, but not directing, the Debtor, in its sole discretion, to (a) maintain its existing

Insurance Policies and pay all insurance obligations arising thereunder or in connection therewith,

(b) renew, supplement, modify or purchase insurance coverage, and (c) continue to pay Brokerage

Fees; (ii) authorizing continuation of the Insurance Premium Financing; and (iii) granting related

relief, all as more fully set forth in the Motion; and the Court having reviewed the Motion and the

First Day Declaration and having heard the statements of counsel regarding the relief requested in

the Motion at a hearing before the Court (the "Hearing"); and the Court having jurisdiction over

this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and this

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is Hartman SPE, LLC (7400). The Debtor's principal place of business and service address is 2909 Hillcroft, Suite 420, Houston, TX 77057. Copies of pleadings may be obtained from the website of the United States Bankruptcy Court for the District of Delaware www.deb.uscourts.gov or from the Debtor's Claim Agent's website https://dm.epiq11.com/HartmanSPE.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court

having found that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408

and 1409; and this Court having found that the Debtor's notice of the Motion and opportunity for

a hearing on the Motion were appropriate under the circumstances and no other notice need be

provided; and this Court having determined that the legal and factual bases set forth in the Motion

and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings

had before this Court; and after due deliberation and sufficient cause appearing therefor, it is

HEREBY ORDERED THAT:

1.       The Motion is GRANTED as set forth herein.

2.       The Debtor is authorized, but not directed, in its sole discretion, to continue the

Insurance Policies and Financing Agreement in the ordinary course of business, on the same basis

and in accordance with the same practices and procedures that were in effect prior to the Petition

Date, and pay any prepetition or postpetition obligations under the Insurance Policies and

Financing Agreement, the Brokerage Fees, and any other amounts related thereto, to the extent

that the Debtor determines, in its sole discretion, that such actions are in the best interests of its

estate.

3.       Notwithstanding anything to the contrary herein, the Debtor is authorized, but not

directed, in its sole discretion, to honor any prepetition amounts outstanding on account of the

Insurance Policies and Financing Agreement and pay premiums thereunder in the ordinary course

of business.

4.       The Debtor is authorized to renew, supplement, modify or enter into new Insurance

Policies and Financing Agreement in the ordinary course of business; *provided*, that the Debtor

shall provide notice of any renewal, supplement, or modification of an Insurance Policy or

Financing Agreement to the U.S. Trustee and any official committee appointed in the chapter 11 cases within seven (7) days of the effective date of such renewal, supplement, or modification.

5.      All Banks are (i) authorized to receive, process, honor and pay any and all checks, drafts, electronic transfers and other forms of payment used by the Debtor on account of the Insurance Policies and Financing Agreement, whether presented before, on or after the Petition Date; and (ii) prohibited from placing any hold on, or attempting to reverse, any automatic transfer on account of the Insurance Policies.  The Banks shall rely on the representations of the Debtor as to which checks and fund transfers should be honored and paid pursuant to this Order without any duty of further inquiry and without liability for following the Debtor's instructions.

6.      Nothing contained in the Motion or this Order, nor any payment made pursuant to the authority granted by this Final Order, shall constitute or be construed as (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver of the Debtor's rights to dispute the amount of, basis for, or validity of any claim against the Debtor, (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder, (iv) promise to pay any claim, (v) an approval, assumption, adoption, or rejection of any agreement, contract, program, policy, or lease between the Debtor and any third party under section 365 of the Bankruptcy Code, or (vi) otherwise affecting the Debtor's rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.

7.      Nothing contained in the Motion or this Final Order shall be construed to (i) create or perfect, in favor of any person or entity, any interest in cash of the Debtor that did not exist as of the Petition Date or (ii) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

00059272.2

8.      Nothing in the Motion or this Final Order, nor as a result of any payment made pursuant to this Final Order, shall be deemed or construed as a waiver of the right of the Debtor, or shall impair the ability of the Debtor, to contest the validity and amount of any payment made pursuant to this Final Order.

9.      Nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

10.     Notwithstanding anything in the Motion or this Final Order, any payments made hereunder shall be subject to and consistent with the budget approved as part of any interim or final order approving use of cash collateral and/or post-petition financing.

11.     The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

12.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

13.     The terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

14.     The Debtor is authorized and empowered to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

15.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

## __Schedule 1__

**Schedule of Insurance Policies**

| TYPE OF POLICY | INSURER | DEBTORS' ANNUAL PREMIUM | EFFECTIVE PERIOD | POLICY NUMBER |
|---|---|---|---|---|
| Property | CONTINENTAL CASUALTY COMPANY | $1,224,900 | 04/13/2023 | RMP6073302483 |
| TERRORISM | LLOYD'S LONDON | $18,850.00 | 04/13/2023 | 01MRTR000011101 |
| PROPERTY | LEXINGTON INSURANCE COMPANY | $192,500.00 | 04/13/2023 | 062503056 |
| PROPERTY | IRONSHORE SPECIALTY INSURANCE CO | $75,000.00 | 04/13/2023 | 100059545701 |
| PROPERTY | STARSTONE SPECIALTY INSURANCE CO | $61,500.00 | 04/13/2023 | 73PRX23B2CO |
| PROPERTY | HOMELAND INS CO OF NEW YORK | $50,000.00 | 04/13/2023 | 795021990 |
| UMBRELLA | FEDERAL INSURANCE CO | $35,310.00 | 04/13/2023 | 93644187 |
| UMBRELLA | NATIONAL UNION FIRE INS CO OF PITTS | $35,000.00 | 04/13/2023 | BE014121598 |
| PROPERTY | STEADFAST INSURANCE CO | $185,000.00 | 04/13/2023 | CPP460527500 |
| PROPERTY | STARSTONE SPECIALTY INSURANCE CO | $60,000.00 | 04/13/2023 | D88377232CSP |
| PROPERTY | MITSUI SUMITOMO INSURANCE COMPANY | $58,333.00 | 04/13/2023 | EXP7001047 |
| PROPERTY | WESTFIELD SPECIALTY INSURANCE COMPANY | $380,000.00 | 04/13/2023 | PAR317321J00 |
| PROPERTY | ASPEN SPECIALTY INSURANCE CO | $35,000.00 | 04/13/2023 | PX00VU523 |
| PROPERTY | EVEREST INDEMNITY INSURANCE CO | $325,000.00 | 04/13/2023 | RP8P000081231 |
| PROPERTY | NAVIGATORS SPECIALTY INSURANCE CO | $390,000.00 | 04/13/2023 | SA23LCMZ0AY0CIC |
| PROPERTY | STARR SURPLUS LINES INSURANCE CO | $258,621.00 | 04/13/2023 | SLSTPTY11782023 |
| PROPERTY | STARR SURPLUS LINES INSURANCE CO | $25,862.00 | 04/13/2023 | SLSTPTY11782023 |
| PROPERTY | STARR SURPLUS LINES INSURANCE CO | $600,000.00 | 04/13/2023 | SLSTPTY11782023 |

| TYPE OF POLICY | INSURER | DEBTORS' ANNUAL PREMIUM | EFFECTIVE PERIOD | POLICY NUMBER |
|---|---|---|---|---|
| UMBRELLA | FIREMANS FUND INSURANCE CO | $25,500.00 | 04/13/2023 | USL025006234 |
| PROPERTY | VELOCITY RISK UNDERWRITERS | $187,500.00 | 04/13/2023 | VTXCN000236104 |
| PROPERTY | LLOYD'S LONDON - CERTAIN UNDERWRITE | $335,000.00 | 04/13/2023 | W34BA1230101 |
| BOILER | LIBERTY MUTUAL FIRE INSURANCE CO | $112,500.00 | 04/13/2023 | YB2L9L474316013 |
| NFIP FLOOD | AMERICAN BANKERS INSURANCE | $3,974 | 1/11/2023 | 7405960638 |
| NFIP FLOOD | AMERICAN BANKERS INSURANCE | $3,094 | 6/19/2023 | 6900027084 |
| NFIP FLOOD | AMERICAN BANKERS INSURANCE | $2,687 | 6/19/2023 | 6900027081 |
| NFIP FLOOD | AMERICAN BANKERS INSURANCE | $2,362 | 6/19/2023 | 6900027085 |
| NFIP FLOOD | AMERICAN BANKERS INSURANCE | $3,513 | 6/19/2023 | 6900027083 |
| NFIP FLOOD | AMERICAN BANKERS INSURANCE | $3,513 | 6/19/2023 | 6900027086 |
| NFIP FLOOD | AMERICAN BANKERS INSURANCE | $5,718 | 6/19/2023 | 6900027080 |
| NFIP FLOOD | NFIP DIRECT | $10,750 | 4/18/2023 | RL 102777598 |
| NFIP FLOOD | AMERICAN BANKERS INSURANCE | $1,269 | 6/19/2023 | 6900027079 |
| NFIP FLOOD | AMERICAN BANKERS INSURANCE | $2,976 | 8/19/2023 | 6900187849 |
| NFIP FLOOD | AMERICAN BANKERS INSURANCE | $1,873 | 8/19/2023 | 6900018748 |
| NFIP FLOOD | AMERICAN BANKERS INSURANCE | $1,234 | 10/1/2023 | 7405882056 |
| NFIP FLOOD | AMERICAN BANKERS INSURANCE | $1,233 | 10/1/2023 | 7405882055 |

| TYPE OF POLICY | INSURER | DEBTORS' ANNUAL PREMIUM | EFFECTIVE PERIOD | POLICY NUMBER |
|---|---|---|---|---|
| UMBRELLA | FIREMANS FUND INS. CO. | $72,081 | 6/13/2023 | USC032343231 |
| GENERAL LIABILITY | FIREMANS FUND INS. CO. | $278,970 | 6/13/2023 | USC034359230 |
| AUTOMOBILE | FIREMANS FUND INS. CO. | $833 | 6/13/2023 | SCV0137002301 |