## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Hartman SPE, LLC, | ) Case No. 23-11452 (MFW) |
| | ) |
| Debtor.[1] | ) |
| | ) |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) ESTABLISHING PROCEDURES FOR THE (A) SALE OF REAL ESTATE FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (B) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF NON-RESIDENTIAL REAL PROPERTY; AND (II) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor in possession (the "Debtor"), by and through its proposed undersigned counsel, hereby moves (the "Motion"), pursuant to sections 105(a), 363, 365, and 503 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for (i) entry of interim[2] and final orders, substantially in the form attached hereto as **Exhibit B** and **C**, respectively (each, a "Sale

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is Hartman SPE, LLC (7400). The Debtor's principal place of business and service address is 2909 Hillcroft, Suite 420, Houston, TX 77057. Copies of pleadings may be obtained from the website of the United States Bankruptcy Court for the District of Delaware www.deb.uscourts.gov or from the Debtor's Claim Agent's website https://dm.epiq11.com/HartmanSPE.

[2] The Debtor's Property portfolio has an estimated value of $400 million. The Debtor is requesting authority to sell up to $85 million of its Property portfolio on an interim basis to address sales it believes are likely to close in the first weeks of the case. These Properties likely to close include (but are not limited to): Regency Square ($3.24 million), One Mason Plaza ($13.5 million), Mission Centre ($12.65), Fondren Plaza ($12.85 million), Northeast Square ($5.4 million), Promenade North ($18.1 million), and Walzem ($15 million).

Procedures Order") (a) authorizing and approving the Sale and Assumption and Assignment Procedures in connection with the marketing and sale of the Properties and assumption and assignment of the Assigned Contracts; (b) approving the form and manner of service of the Sale Notice with respect to the sale of the Properties free and clear of liens, claims, encumbrances, and other interests, attached as **Exhibit 1** to the Sale Procedures Order; (c) approving the form and manner of service of the Assumption and Assignment Notice with respect to the assumption and assignment of Assigned Contracts attached as **Exhibit 2** to the Sale Procedures Order; and (d) granting related relief.  In support of the Motion, the Debtor respectfully represents as follows:

## JURISDICTION, VENUE, AND STATUTORY PREDICATES

1.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.

2.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

3.     The Debtor confirms its consent, pursuant to Local Rule 9013-1(f), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

5.     The statutory predicates for the relief requested in this Motion are sections 105(a), 363, 365, and 503 of the Bankruptcy Code, Bankruptcy Rules 2002, 6003, 6004, 6006, and 9014, and Local Rule 6004-1.

## BACKGROUND

6.      On the date hereof (the "Petition Date"), the Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code.

7.      The Debtor is authorized to continue to operate its business and manage its properties as debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.      No trustee, examiner, or statutory committee of creditors has been appointed in the Chapter 11 Case.

9.      A detailed description of the Debtor and its business, including the facts and circumstances giving rise to the Debtor's Chapter 11 Case, is set forth in the *Declaration of David Wheeler in Support of First Day Pleadings* (the "First Day Declaration") filed contemporaneously with the Motion.[3]

10.     As explained in the First Day Declaration, the Debtor holds title to 35 parcels of commercial real estate (the "Properties") that include office, retail, and industrial properties, with an estimated portfolio value of over $400 million.  Prepetition, the Debtor began the process of transitioning its portfolio from office, industrial, and retail space into self-storage and sold four properties[4] to facilitate the transition, using the proceeds to pay down its Prepetition Loan.  These efforts, which the Debtor wishes to continue during the Chapter 11 Case, have resulted in significant pay down of its secured debt.

---

[3]   Capitalized terms used but not otherwise defined in this Motion have the meanings ascribed to them in the First Day Declaration.

[4]   The properties are Prestonwood Park Shopping Center, Haute Harwin Fashion Center, Spring Valley Business Center, and Mitchelldale Business Park.

11.     Due to the diversity of the Properties, ranging from industrial sites to high-end office space throughout Houston, Dallas/Ft. Worth, and San Antonio, the Debtor has determined, in the exercise of its business judgment, that marketing the Properties on a standalone basis will maximize the value of each Property to the estate and its creditors.[5]  The Debtor believes it unlikely that a single buyer would have an interest in all Properties and that marketing the Properties as a single portfolio would result in a smaller pool of interested parties and a lower overall price.

12.     In this regard, on the Petition Date, the Debtor was party to agreements with various commercial real estate agencies (each a "Broker Agreement" entered into with a "Broker") covering 30 Properties.  The Debtor specifically chose each Broker based on the underlying nature and location of the property and the Broker's particular expertise.  The Broker Agreements are market-based contracts and with well-known companies that have conducted fulsome marketing efforts in accordance with industry standards.[6] The Debtor believes that retaining Brokers based on the specific needs of each Property, versus a single broker to sell all, will result in not only more expeditious sales, but the highest and best offer for each Property.

13.     As a result, of the 30 Properties subject to Broker Agreements, 12 were under contract on the Petition Date and 6 appear to be close to coming under contract.  A complete list of the Properties with their corresponding status is attached as **Exhibit A**.   Under a Broker Agreement, the marketing process normally commences with the Debtor sending a packet of diligence materials for the Broker to analyze, including information on the property, its use, occupancy, cash flow, and similar matters.   The Broker then prepares a confidential offering memorandum, lists the Property on a national website, and distributes flyers and other information

---

[5]   The Debtor, however, will consider all offers, whether standalone or for a group of Properties.

[6]    The Debtor has filed a separate motion seeking to assume the Broker Agreements to ensure that each Broker is paid upon closing of the relevant sale.

to an extensive list of contacts.  Interested parties may then sign a confidentiality agreement to receive a copy of the offering memorandum and access to the virtual data room, with tours being available upon request.

14.    A brief description of the marketing process for several of the Properties that are likely to close quickly upon approval of sale procedures is below.  In each case, the proposed purchase price is supported by the Debtor's internal assessment and broker opinions as to value.

a.    The Debtor signed a Broker Agreement with CBRE on October 7, 2022 regarding its **Regency Square Property**.  CBRE contacted 76,685 parties, of which 31 expressed interest, 20 signed confidentiality agreements and were granted access to a virtual data room, and three requested tours.  These efforts resulted in 7 offers, and the property is currently under contract with a purchase price of **$3,238,932.70**.

b.    The Debtor signed a Broker Agreement with Marcus & Millichap on September 23, 2022 regarding its **One Mason Property** and on April 17, 2023 regarding its **Mission Centre and Fondren Road Plaza Properties.** The Debtor received at least 7 offers among the 3 properties before selecting the highest and best offers, each of which included a non-refundable earnest money deposit.  These properties are currently under contract with the same counterparty for a purchase price of **$13.5 million, $12.65 million,** and **$12.85 million**, respectively.

c.    The Debtor signed a Broker Agreement with Marcus & Millichap on May 15, 2023 regarding its **Northeast Square Property.**  The Debtor received at least two offers before placing this property under contract for a price of **$5.4 million**.

d.    The Debtor did not place its **Promenade North Property** with a broker, but instead received a significant number of indications of interest from brokers and potential buyers when it began placing other Properties on the market. The Debtor received at least 3 offers to purchase this property, which is currently under contract for **$18.1 million**.

e.    The Debtor did not place its **Walzem Property** with a broker, but instead began receiving indications of interests when it placed other Properties for sale.  The Debtor received two offers before placing the Walzem Property under contract with the owner of an adjacent property for a purchase price of **$15 million.**

15.    Absent a stream-lined and efficient procedure, the Debtor may lose potential purchasers, either through attrition caused by delay or because sales may not close in time to meet a buyer's financing contingencies.  This is particularly so with respect to sale contracts pending on the Petition Date. Accordingly, the Debtor files this Motion seeking to establish an efficient sale and assumption/assignment procedure that will mitigate these concerns, while simultaneously providing adequate notice to parties-in-interest, including creditors, potential competing purchasers, parties potentially holding an interest in the Properties, and counter-parties to executory contracts (the "Contracts") and unexpired real property leases (the "Leases") that will be assumed and assigned as part of the sale.

16.    Accordingly, the Debtor requests interim authority to utilize the Sale and Assumption and Assignment Procedures to sell up to $85 million in Property, pending entry of a final order approving the proposed procedures in full.[7]

### THE SALE AND ASSUMPTION AND ASSIGNMENT PROCEDURES

**A.    Sale of Commercial Real Property Free and Clear of all Liens, Claims, Encumbrances and Other Interests**

17.    The Debtor seeks entry of the Sale Procedures Order authorizing and approving the following procedures with respect to the sale of the Properties that were subject to Broker Agreements as of the Petition Date (the "Sale Procedures").  Except as set forth below, the sales

---

[7]    The Debtor believes that sales of the following Properties have a strong likelihood of closing in the first 21 days of the case:  Walzem Plaza, Fondren Road Plaza, One Mason Plaza, Promenade North, Regency Square, Northeast Square, and Mission Centre.

will be free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363 of the Bankruptcy Code, with such liens, claims, encumbrances, and other interests to attach to the proceeds of the sale to the same extent, and with the same priority, as existed prior to the Petition Date.

    a.    **Sale Notice.** The Debtor will file one or more notices with the Court (each, a "Sale Notice") regarding the Property(ies) that it is seeking to sell to a potential purchaser (the "Buyer") pursuant to section 363 of the Bankruptcy Code. The Sale Notice shall provide, among other relevant information: (i) a copy of the Sale Procedures Order; (ii) a copy of the sales contract, which will identify, among other things, the Buyer and the purchase price; and (iii) the identity of the Broker marketing the Property(ies) and the compensation to be paid to the Broker upon sale closing; (iv) the proposed closing date of the sale (the "Closing Date"); and (v) a copy of the proposed sale order.

    b.    **Sale Notice Parties**. The Debtor will cause the Sale Notice to be filed on the Court's docket and served by e-mail or first class mail upon the following parties (collectively, the "Sale Notice Parties"): (i) the Office of the United States Trustee; (ii) the Internal Revenue Service; (iii) counsel for the Prepetition Lender, (iv) all parties who are known to possess or assert a lien, claim, encumbrance or interest in or upon the Property(ies); (v) all applicable United States, state, and local regulatory or taxing authorities, recording offices or any governmental entity which have a reasonably known interest in the Property(ies); (vi) the Debtor's top 30 unsecured creditors; and (vii) any party requesting notice in the case. The Sale Notice will also be sent via overnight delivery to all parties who are known to possess or assert a lien, claim, encumbrance or interest in or upon the Property(ies).

    c.    **Objections to Proposed Sale**. Any objections to a proposed sale must be filed with the Court and served so as to be actually received by Debtor's counsel and the Sale Notice Parties no later than ten (10) days after service of the Sale Notice (the "Sale Objection Deadline").

    d.    **Hearing**. A hearing regarding the Sale Notice (the "Hearing") will be held at the Court's earliest convenience after expiration of the Sale Objection Deadline. If an objection is properly filed and served on the Debtor's counsel and the Sale Notice Parties as specified above, unless such parties agree otherwise in writing, such Property(ies) will only be deemed sold upon entry by the Court of a consensual form of sale order resolving the objection as between the objecting party and the Debtor, or, if resolution is not reached, upon further order of the Court.

e.    **Modification of Sale Notice**. The Debtor reserves the right to remove any Property from a Sale Notice at any time prior to the Closing Date.

18.    The Debtor further requests that it be permitted to pay reasonable transaction costs related to each sale including, but not limited to, Broker commissions, finder fees, recording fees, title insurance costs, survey charges, ordinary course attorneys' fees, and transfer taxes (collectively, the "Transaction Costs").

19.    Accordingly, the Debtor requests that the Court approve the Sale Procedures, including the form and manner of the Sale Notice attached to the Sale Procedures Order and the payment of all associated Transaction Costs.

B.    **Assumption and Assignment of Executory Contracts and Unexpired Leases of Real Property**

20.    As of the Petition Date, the Debtor is a party to hundreds of Contracts and Leases, including agreements with vendors to supply goods and services and real property leases under which the Debtor is landlord.  The Debtor seeks to establish a procedure where it may assume and assign these Contracts and Leases in conjunction with the sale of the associated Property.  Absent the relief requested in this Motion, the Debtor would be required to file separate motions to assume individual Contracts and Leases, resulting in substantial cost and delay.  To that end, the Debtor intends for these procedures to minimize the cost and administrative burden on the Debtor's estate and to foster judicial economy.

21.    The Debtor seeks entry of the Sale Procedures Order authorizing and approving the following procedures with respect to assumption and assignment of the Contracts and Leases associated with its Properties (the "Assumption and Assignment Procedures"):

a.    **Assumption and Assignment Notice**. In conjunction with each Sale Notice discussed above, the Debtor will file one or more notices with the Court (each, an "Assumption and Assignment Notice") with a list of those Contracts and Leases that the Debtor seeks to assume pursuant to 11 U.S.C. § 365 and assign to the Buyer

of the subject Property(ies). The Assumption and Assignment Notice shall set forth, among other relevant information: (i) the Contracts and Leases to be assumed and assigned (the "<u>Assigned Contracts</u>"); (ii) the names and addresses of the counterparties to such Assigned Contracts (the "<u>Assumption and Assignment Counterparties</u>"); (iii) the identity of the proposed assignee of such Assigned Contracts (i.e., the Buyer); (iv) the proposed effective date of the assumption and assignment for the Assigned Contracts, which will correspond with the Closing Date for the related Property(ies); (v) the proposed cure amount, if any; (vi) information establishing the Buyer's ability to provide adequate assurance of future performance; and (vii) the deadlines and procedures for filing objections to the proposed assumption and assignment.

b.      **Assumption and Assignment Notice Parties**. The Debtor will cause the Assumption and Assignment Notice to be filed on the Court's docket and served by e-mail or first class mail upon the following parties (collectively, the "<u>Assumption and Assignment Procedure Parties</u>"): (i) the Office of the United States Trustee; (ii) the Internal Revenue Service; (iii) counsel for the Prepetition Lender, (iv) each Assumption and Assignment Counterparty; (v) the Buyer; (vi) counsel to the Committee (if any); (vi) the Debtor's top 30 unsecured creditors; and (vii) any party requesting notice in the case.  The Assumption and Assignment Notice will also be sent via overnight delivery on each affected Assumption and Assignment Counterparty and Assignee.

c.      **Objections to Proposed Assumption and Assignment**. Any objections to a proposed assumption and assignment of an Assigned Contract must be filed with the Court and served so as to be actually received by the Debtor's counsel and the Assumption and Assignment Procedure Parties no later than ten (10) days after service of the Assumption and Assignment Notice (the "<u>Assumption and Assignment Objection Deadline</u>").

d.      **Hearing**.  The Hearing regarding the Assumption and Assignment Notice will be held at the Court's earliest convenience after expiration of the Assumption and Assignment Objection Deadline (to correspond with the sale Hearing). If an objection is properly filed and served on the Debtor's counsel and the Assumption and Assignment Notice Parties as specified above, unless such parties agree otherwise in writing, such Contract and/or Lease will only be deemed assumed and assigned upon entry by the Court of a consensual form of order resolving the objection as between the objecting party and the Debtor, or, if resolution is not reached, upon further order of the Court.

e.      **Modification of Assumption and Assignment Notice**. The Debtor reserves

the right to remove any Contract or Lease from an Assumption and Assignment Notice at any time prior to the Closing.

22.      If an objection is not timely filed and served by the Assumption and Assignment Objection Deadline, upon entry of an order approving the applicable sale, (a) the Cure Amounts will be binding upon each Assumption Counterparty, will constitute a final determination of the assumption, and no additional cure amounts will be due; (b) each Assumption Counterparty will be deemed to have received adequate assurance of future performance; (c) the effective date of such assumption and assignment will be the applicable Closing Date; (d) any provisions in such Assigned Contract that prohibit or condition assignment thereof or, as a result of such assignment, allow the parties thereto to terminate, recapture, impose any penalty or fee, place a condition on renewal or extension, or modify any term or condition upon the assignment thereof, shall constitute unenforceable anti-assignment provisions that are void and of no force and effect; (e) to the extent such executory contract or unexpired lease is actually assigned to Buyer, in accordance with section 365 of the Bankruptcy Code, the Buyer will be deemed to be substituted for the Debtor, and will be fully and irrevocably vested with all rights, title, and interest of the Debtor thereunder, and such executory contract or unexpired lease will be in full force and effect and enforceable in accordance with its respective terms; and (f) pursuant to section 365(k) of the Bankruptcy Code, after the assignment by the Debtor of an Assigned Contract, the Debtor will have no liability for any breach thereof that occurs after such assignment.[8]

---

[8] Certain of the Contracts and/or Leases may contain provisions that restrict, prohibit, condition, or limit the assumption and/or assignment of such Contract or Lease. The Debtor reserves the right to argue that such clauses are unenforceable anti-assignment or ipso facto clauses under section 365 of the Bankruptcy Code.

23.     The Debtor requests that the Court approve the Assumption and Assignment Procedures, including the form and manner of the Assumption and Assignment Notice attached to the Sale Procedures Order.

**BASIS FOR RELIEF**

24.     As noted, the Debtor owns commercial Properties the sale of which will include, in most instances, assumption and assignment of the related tenant Leases and other related Contracts. Establishing the Sale Procedures and the Assumption and Assignment Procedures (together, the "Sale and Assumption and Assignment Procedures") will streamline the administration of the Chapter 11 Case and enhance the efficiency of the restructuring process by eliminating substantial legal expenses that would otherwise be incurred if multiple hearings were held on separate motions with respect to each Property. The Sale and Assumption and Assignment Procedures are reasonable and fair to Contract and Lease counterparties, as well as all entities that claim an interest in the Properties, because they afford parties in interest the opportunity to be heard with respect to the proposed transactions, while streamlining the process to aide in the efficient administration of the estate.

**A.     Authority Exists to Approve the Sale Procedures and Any Sale**

25.     Section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

26.     Courts review a debtor's decision to use, sell, or lease property outside of the ordinary course pursuant to the business judgment rule. *In re Culp*, 550 B.R. 683, 697 (D. Del.

2015) ("'In determining whether to authorize use, sale or lease of property of the estate under Section 363, courts require the [debtor] to show that a sound business purpose justifies such actions.' If the [debtor's] decision evidences a sound business purpose, then the Bankruptcy Court should approve the sale.") (quoting *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999)). "Under Delaware law, the business-judgment rule operates as a presumption 'that directors making a business decision, not involving self-interest, act on an informed basis, in good faith and in the honest belief that their actions are in the corporation's best interest.'" *Continuing Creditors' Comm. of Star Telecomms., Inc. v. Edgecomb*, 385 F.Supp.2d 449, 462 (D. Del. 2004) (quoting *Grobow v. Perot*, 539 A.2d 180, 187 (Del. 1988)); *accord Ad Hoc Comm. of Equity Holders of Tectonic Network, Inc. v. Wolford*, 554 F.Supp.2d 538, 555 n.111 (D. Del. 2008). As set forth below, this Court should approve the Sale and Assumption and Assignment Procedures and the proposed sales because the Debtor has demonstrated a sound business justification therefor. *See In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 179 (D. Del. 1991).

**B.    The Sale Procedures Are Fair, Designed to Maximize the Value Received by Debtor's Estate, and Consistent with the Debtor's Reasonable Business Judgment**

27.    The Sale Procedures should be approved under sections 363(b) and 105(a) of the Bankruptcy Code because they are fair, designed to maximize the value received by the Debtor's estate, and are consistent with the Debtor's reasonable business judgment. The Sale Procedures establish an open and transparent marketing and sale process, based on industry practice and standards, with the marketing process to be handled by licensed Brokers chosen by the Debtor prepetition based on each Broker's geographic location and area of expertise. All interested buyers will be given sufficient notice that the Properties are being marketed for sale, acquire diligence, and place an informed bid. The Sale Procedures will also allow the Debtor to consider alternative

offers and accept the best bid, subject to higher and better offers, while not unnecessarily delaying the process at the risk of losing contracts in place as of the Petition Date.

28.    In short, the Debtor believes that a sale of the Properties pursuant to and in accordance with the Sale Procedures will establish a fair and efficient procedure to market and sell the Properties, while ensuring they generate greatest possible value for the estate.

**C.    Any Sale Will Satisfy the Requirements of Section 363(f) of the Bankruptcy Code for a Sale Free and Clear of Liens, Claims, Encumbrances, and Other Interests**

29.    The Debtor seeks authority to sell the Properties free and clear of all liens, claims encumbrances, and other interests, pursuant to section 363(f) of the Bankruptcy Code.

30.    Section 363(f) of the Bankruptcy Code provides for a sale "free and clear" of an entity's interest in property of the estate "only if":

    a.    Applicable non-bankruptcy law permits sale of such property free and clear of such interest;

    b.    Such entity consents;

    c.    Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    d.    Such interest is a bona fide dispute; or

    e.    Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

31.    Section 363(f) of the Bankruptcy Code is stated in the disjunctive; therefore, it is only necessary to meet one of the five conditions of section 363(f) in a sale under section 363(b) of the Bankruptcy Code.  The Debtor submits that one or more of the conditions set forth in section 363(f) of the Bankruptcy Code will be satisfied with respect to any Sale.

32.    The Debtor anticipates that each sale will satisfy section 363 of the Bankruptcy Code by virtue of either (a) generating proceeds with an aggregate value that exceeds the value of the liens of the primary lienholder, or (b) the primary lienholder's consent to such Sale.

33.    The Debtor will send the Sale Notice to, among others, all parties who assert liens or claims against the Property sought to be sold.  Any holder of a claim against or interest in the Property who does not object to the Sale will be deemed to have consented to the sale of the Property free and clear of its claim or interest.  11 U.S.C. § 363(f)(2); *see Matter of Tabone, Inc.*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994).  Moreover, the Debtor believes that any parties that do object on the basis that they hold liens or claims against the Property will either (a) be holders of liens or claims that are subject to a bona fide dispute, or (b) would be compelled to accept cash in satisfaction of their interests.  See 11 U.S.C. §§ 363(f)(4)-(5).

34.    Any lienholder also will be adequately protected by having its liens, if any, attach to the proceeds of the sale, in the same order of priority, with the same validity, force, and effect, that such creditor had prior to the sale, subject to any claims and defenses that the Debtor and its estate may possess with respect thereto.  See 11 U.S.C. § 363(f)(3).  Therefore, pursuant to section 363 of the Bankruptcy Code, the Debtor may sell the Properties free and clear of all liens, claims, and encumbrances, except to the extent of permitted encumbrances.

35.    The Debtor also submits that it is appropriate to sell the Properties free and clear of successor liability relating to Debtor's business.  Such a provision ensures that the Buyer is protected from any claims or lawsuits premised on the theory that the Buyer is a successor in interest to the Debtor.  Courts have consistently held that a buyer of a debtor's assets pursuant to a section 363 of the Bankruptcy Code sale takes free and clear from successor liability relating to the debtor's business. *See, e.g., In re Trans World Airlines, Inc*., 322 F.3d 283, 288–93 (3d Cir.

2003) (sale of assets pursuant to section 363(f) barred successor liability claims for employment discrimination and rights under travel voucher program); *In re Leckie Smokeless Coal Co*., 99 F.3d 573, 585–87 (4th Cir. 1996) (affirming the sale of debtors' assets free and clear of certain taxes); *In re Vertis Holdings, Inc*., 536 B.R. 589, 636–37 (Bankr. D. Del. 2015) (sale of assets pursuant to 363(f) barred successor liability claims for tortious acts); *In re Insilco Techs., Inc*., 351 B.R. 313, 322 (Bankr. D. Del. 2006) (stating that a 363 sale permits a buyer to take ownership of property without concern that a creditor will file suit based on a successor liability theory); *see also In re Gen. Motors Corp*., 407 B.R. 463, 505–06 (Bankr. S.D.N.Y. 2009) (holding that "[t]he law in this Circuit and District is clear; the Court will permit GM's assets to pass to the purchaser free and clear of successor liability claims, and in that connection, will issue the requested findings and associated injunction"); *In re Chrysler LLC*, 405 B.R. 84, 111 (Bankr. S.D.N.Y. 2009) ("[I]n personam claims, including any potential state successor or transferee liability claims against New Chrysler, as well as in rem interests, are encompassed by section 363(f) and are therefore extinguished by the Sale . . . .").

36.    The purpose of an order authorizing the transfer of assets free and clear of all liens, claims, encumbrances and other interests would be frustrated if claimants could thereafter use the transfer as a basis to assert claims against a purchaser arising from a seller's pre-sale conduct. Moreover, without such assurances, the Debtor would run the risk that a potential buyer may not seek to purchase a Property or, if it did, would offer a reduced purchase price.  To that end, the Buyer should not be liable under any theory of successor liability relating to the Debtor's business but should acquire the Property free and clear.

**D.    Each Buyer Should be Entitled to the Protections of Sections 363(m) of the Bankruptcy Code**

37.    Section 363(m) of the Bankruptcy Code provides in relevant part that the reversal or modification on appeal of an authorization under section 363(b) of a sale or lease of property does not affect the validity of a sale or lease under such authorization to a buyer who bought or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.  *See* 11 U.S.C. § 363(m).  Pursuant to section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims.  *See In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 8 (1st Cir. 1993); *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (holding that section 363(m) "encompasses one who purchases in 'good faith' and for 'value'" under traditional equitable principles); *Willemain v. Kivitz,* 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Tempo Tech. Corp.*, 202 B.R. 363, 367 (D. Del. 1996) ("[T]he concept of 'good faith' speaks to the integrity of a party's conduct in the course of the bankruptcy sale proceedings.").

38.    The Debtor's marketing efforts and negotiations with potential buyers have been and will continue to be undertaken at arm's-length and without collusion, with all parties being represented or at least having the opportunity to be represented by their own counsel.  Accordingly, the Debtor requests, and will demonstrate at the Hearing, that the Buyer for each Property should be deemed a "good faith" buyer within the meaning of section 363(m) of the Bankruptcy Code. The Debtor believes that providing the Buyer with such protection will ensure that the Debtor will receive the highest or otherwise best offer for each Property and that the Closing of each sale will occur promptly.

**E.     This Court Should Authorize the Assumption and Assignment Procedures**

39.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or [unexpired] lease of the debtor."  11 U.S.C. § 365(a).  The bankruptcy court applies a reasonable business judgment standard when considering a debtor's decision to assume or reject an executory contract or unexpired lease.  *See, e.g.*, *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (a debtor's decision to assume or reject executory a contract is governed by the business judgment standard and can only be overturned if the decision was "product of bad faith, whim, or caprice"); *cf. In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (assumption or rejection of lease "will be a matter of business judgment by the bankruptcy court"); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39–40 (3d Cir. 1989) (same).  A debtor has exercised its reasonable business judgment if it can demonstrate that assumption or rejection of an executory contract will benefit the estate.  *See Sharon Steel*, 872 F.2d at 36, 39–40; *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006); *HQ Global Holdings*, 290 B.R. at 511; *In re Wheeling-Pittsburgh Steel Corp.*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987).  "More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially."  *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).  Moreover, for a debtor to assume an executory contract under section 365(b)(1) of the Bankruptcy Code, it also must cure, or provide adequate assurance that it will promptly cure, any default, including compensation for any "actual pecuniary loss" relating to such default.  11 U.S.C. § 365(b)(1).

40.     Once an executory contract is assumed, the trustee or debtor in possession may elect to assign such contract pursuant to section 365(f) of the Bankruptcy Code.  *See In re Rickel*

*Home Ctrs., Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) (noting that the Bankruptcy Code "generally favors free assignability as a means to maximize the value of the debtor's estate"); *see also In re Headquarters Dodge, Inc.*, 13 F.3d 674, 682 (3d Cir. 1994) (noting that the purpose of section 365(f) is to assist trustee in realizing the full value of the debtor's assets).  Section 365(f)(1) of the Bankruptcy Code permits a debtor to assign unexpired leases and contracts free from anti-assignment restrictions, providing, in relevant part:

> [N]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.

11 U.S.C. § 365(f)(1).  Furthermore, section 365(f)(3) of the Bankruptcy Code prohibits enforcement of any clause creating a right to modify or terminate the contract or lease upon a proposed assumption or assignment thereof.  11 U.S.C. § 365(f)(3); *see, e.g., In re Jamesway Corp.*, 201 B.R. 73, 77–78 (Bankr. S.D.N.Y. 1996) (section 365(f)(3) of the Bankruptcy Code prohibits enforcement of any lease clause creating a right to terminate the lease because it is being assumed or assigned, thereby indirectly barring assignment by a debtor).  Other courts have recognized that provisions that have the effect of restricting assignments cannot be enforced.  *See In re Rickel Home Ctrs., Inc.*, 240 B.R. 826, 831 (D. Del. 1998) ("In interpreting Section 365(f), courts and commentators alike have construed the terms to not only render unenforceable lease provisions which prohibit assignment outright, but also lease provisions that are so restrictive that they constitute *de facto* anti-assignment provisions.").

41.     Section 365(f) of the Bankruptcy Code requires a debtor and proposed purchaser to provide adequate assurance of future performance in order for the debtor to assign an executory contract.  11 U.S.C. § 365(f)(2).  The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given a "practical, pragmatic

construction." *In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del. 2009); *In re Sanshoe Worldwide Corp.*, 139 B.R. 585, 592 (S.D.N.Y. 1992), *aff'd*, 993 F.2d 300 (2d Cir. 1993); *see also In re Decora Indus. Inc.*, Case No. 00-4459 (JJF), 2002 WL 32332749, at *8 (D. Del. May 20, 2002) ("adequate assurance falls short of an absolute guaranty of payment"); *In re Carlisle Homes, Inc.*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988) (adequate assurance "will fall considerably short of an absolute guarantee of performance") (quoting *In re Luce Indus., Inc.*, 8 B.R. 100, 107 (Bankr. S.D.N.Y. 1980)).

42.    Adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g.*, *In re ANC Rental Corp., Inc.*, 278 B.R. 714, 724 (Bankr. D. Del. 2002) (adequate assurance is present where prospective assignee hired personnel with experience running debtors' business and presented evidence of its financial security); *In re Bygaph, Inc.*, 56 B.R. 596, 605–06 (Bankr. S.D.N.Y. 1986) (adequate assurance is present when prospective assignee of lease from debtor has financial resources and has expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding).

43.    To facilitate and effect each sale, the Debtor requests approval under section 365 of the Bankruptcy Code of Debtor's assumption and assignment (as applicable) of the Assigned Contracts to the applicable Buyer.  The Debtor further requests that each sale order provide that the Assigned Contracts will remain in full force and effect for the benefit of each Buyer (and be transferred to a Buyer, to the extent applicable) notwithstanding any provisions in the Assigned Contracts, including those described in sections 365(b)(2) and (f)(1) and (3) of the Bankruptcy Code, that prohibit such assumption and assignment.

44.     The Debtor proposes to serve Assumption and Assignment Notice on all counterparties to Assigned Contracts as set forth herein and in the Sale Procedures Order and provide such counterparties with an opportunity to object to assumption and assignment and the Debtor's proposed Cure Amounts.  The Assigned Contracts will be assumed and assigned at closing of the contemplated Sale.

45.     The Debtor's assumption and assignment of the Assigned Contracts to the Buyer meets the business judgment standard and satisfies the requirements of section 365 of the Bankruptcy Code.  The assumption and assignment of key executory contracts and unexpired leases is necessary for the Buyer to conduct business going forward.  Because no purchaser of the going concern would acquire a Property without certain key executory contracts and unexpired leases, the assumption and assignment of such agreements is essential to securing the highest or otherwise best offer for the Property.  Further, upon consummation of each sale, the Debtor will no longer continue to operate the sold Property and will therefore have no use for any of the executory contracts and unexpired leases previously utilized.

46.     To the extent that any defaults exist under any executory contract or unexpired lease that is to be assumed and assigned in connection with the sale of a Property, the Buyer or the Debtor, as applicable, will cure any such default prior to such assumption and assignment.

47.     The Debtor contemplates that each Buyer will be able to provide adequate assurance of future performance because each must submit evidence sufficient to demonstrate its financial wherewithal and ability to consummate the sale.  Moreover, for each sale, the Debtor will include adequate assurance information within the Notice of Assumption and Assignment, and each counterparty to an Assigned Contract will have the opportunity to object or request additional information. The Debtor will also present evidence at the Hearing establishing the financial

credibility, willingness, and ability of each Buyer to perform under the Assigned Contracts. The Hearing, therefore, will afford the Court and other interested parties the opportunity to evaluate the ability of each Buyer to provide adequate assurance of future performance under the Assigned Contracts, as required under section 365(b)(1)(C) of the Bankruptcy Code.

48.     Finally, with respect to the Debtor's tenants in a building that is being sold, each of those Leases would have been fully assignable to any purchaser of the property outside of bankruptcy, without the tenant's consent. Accordingly, cause exists for the assumption and assignment of tenant leases under the Assumption and Assignment Procedures.

49.     Accordingly, the Debtor submits that implementation of the proposed Assumption and Assignment Procedures is appropriate in the Chapter 11 Case, and the Court will have a sufficient basis to authorize the proposed transaction.

## IMMEDIATE CONSIDERATION;
## WAIVER OF BANKRUPTCY RULE 6004(H) AND 6006(D)

50.     The Court may grant the relief requested in this Motion immediately if the "relief is necessary to avoid immediate and irreparable harm." FED. R. BANKR. P. 6003; see also *In re First NLC Fin. Servs., LLC*, 382 B.R. 547, 549 (Bankr. S.D. Fla. 2008) (holding that Rule 6003 permits entry of retention orders on an interim basis to avoid irreparable harm). In the context of preliminary injunctions, the Third Circuit has interpreted the language "immediate and irreparable harm" to refer to a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages are inadequate. *See, e.g.*, *Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 F. App'x 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). The harm also must be actual and imminent, not speculative or unsubstantiated. *See, e.g.*, *Acierno v. New Castle Cty.*, 40 F.3d 645, 653-55 (3d Cir. 1994).

51.     Expedited consideration is necessary here because, absent a stream-lined and efficient procedure, there is a strong likelihood that the Debtor will lose purchasers through attrition because sales will not close in time to meet a buyer's financing contingencies or the delay will cause the cost of financing to increase beyond acceptable levels.  Or, if the sales does close, the buyers will request purchase price adjustments.  This is particularly so with respect to sale contracts pending on the Petition Date.

52.     By way of example, prepetition, the Debtor received a correspondence from the counterparty to the pending contract on its Promenade Property, citing the Hartman Member's allegations discussed in the First Day Declaration (¶¶ 3-6, 26-34, 46-47) as the basis for proposing a $1.850 million purchase price reduction to account for the cloud on title, the likelihood that buyer would be pulled into the State Court Lawsuit, and the affect the lawsuit may have on buyer's ability to obtain financing.  Similarly, the potential buyer for the Debtor's Mission Centre and One Mason Properties have informed the Debtor that it is struggling to keep equity and debt commitments in place and requesting a downward purchase price adjustment to compensate.  Similar concerns have been expressed by the potential purchaser for the Debtor's Welzem Property regarding its financing.   First Day Decl. ¶ 47.

53.     An expeditious closing of the sale contracts negotiated prepetition is necessary and appropriate to maximize value for the Debtor's estate and avoid the risk of losing buyers who are otherwise prepared to close. Accordingly, the Debtor requests both first day consideration of this Motion and that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

## RESERVATION OF RIGHTS

54.     Nothing contained herein is intended or should be construed as: (i) an admission as to the validity or priority of any claim or lien against the Debtor; (ii) a waiver of the Debtor's rights to subsequently dispute such claim or lien on any grounds; (iii) a promise or requirement to pay any prepetition claim; (iv) an implication or admission that any particular claim is of a type specified or defined in this Motion or the proposed Orders; (v) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to Bankruptcy Code Section 365; or (vi) a waiver of the Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

## NO PRIOR REQUEST

55.     The Debtor has not previously sought the relief requested herein from this or any other Court.

## NOTICE

56.     Notice of this Motion and any order entered hereon will be provided to: ((i) the Office of the United States Trustee for the District of Delaware, (ii) the Debtor's thirty (30) largest unsecured creditors, (iii) counsel to the Prepetition Lender, (iv) any other parties having asserted liens against the Properties, (v) the Office of the United States Attorney for the District of Delaware, (vi) the Internal Revenue Service, (vii) the Securities and Exchange Commission, (viii) the Office of the United States Attorney for the State of Texas, (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002, and (x) any other party entitled to notice pursuant to Local Rule 9013-1(m).

WHEREFORE, the Debtor respectfully requests that the Court enter the Sale Procedures Order, substantially in the form attached hereto, granting the relief requested herein and granting the Debtor such other relief as the Court deems appropriate.

*[Signature Page to Follow]*

Dated: September 13, 2023          Respectfully submitted,
      Wilmington, Delaware

*/s/ William E. Chipman, Jr.*
William E. Chipman, Jr. (No. 3818)
Kristi J. Doughty (No. 3826)
Mark D. Olivere (No. 4291)
**CHIPMAN BROWN CICERO & COLE, LLP**
Hercules Plaza
1313 N. Market Street, Suite 5400
Wilmington, DE 19801
Telephone: (302) 295-0191
Facsimile: (302) 295-0199
Email: chipman@chipmanbrown.com
      doughty@chipmanbrown.com
      olivere@chipmanbrown.com


- and-

John E. Mitchell (*pro hac vice* pending)
Michaela C. Crocker (*pro hac vice* pending)
Yelena E. Archiyan (*pro hac vice* pending)
**KATTEN MUCHIN ROSENMAN LLP**
2121 N. Pearl St., Suite 1100
Dallas, TX 75201
Telephone: (214) 765-3600
Facsimile: (214) 765-3602
Email: john.mitchell@katten.com
      michaela.crocker@katten.com
      yelena.archiyan@katten.com

*Proposed Counsel to the Debtor and
Debtor in Possession*

# EXHIBIT A

# List of Properties

| Property Name | Type | Address | Listing Agent | Status | Contract Price |
|---|---|---|---|---|---|
| North Central Plaza | Office | 12655 N. Central Expwy, Dallas | CBRE, Inc. | Contract Pending | |
| Central Park | Industrial | 1901 N. Glenville Drive, Dallas | CBRE, Inc. | Contract Pending | |
| Gateway Tower | Office | 8111 LBJ Freeway, Dallas | Younger Partners | Contract Pending | |
| Parkway Plaza I&II | Office | 14110, 14114 N. Dallas Pkwy, Dallas | CBRE, Inc. | Contract Pending | |
| Commerce Plaza Hillcrest | Office | 12850 Hillcrest Rd., Dallas | SHOP Concepts, LLC* | Contract Pending | |
| Skymark Tower | Office | 1521 N. Cooper St., Dallas | Younger Partners | Contract Pending | |
| One Mason Plaza | Retail | 811, 829 & 873 South Mason Rd., Katy | Marcus & Millichap Real Estate Investment Services | Under Contract | $13,500,000 |
| Walzem Plaza | Retail | 5400 Walzem Rd., San Antonio | AFC Realty, LLC (Henry S. Miller Brokerage - Houston)* | Under Contract | $15,000,000 |
| Mission Centre | Retail | 14639 Beechnut, Houston | Marcus & Millichap Real Estate Investment Services** | Under Contract | $12,650,000 |
| Regency Square | Office | 7211 Regency, Houston | CBRE, Inc. | Under Contract | $3,238,932.70 |
| Garden Oaks | Retail | 3800-4000 N. Shepherd Dr., Houston | Jones Lang LaSalle Americas, Inc. | Under Contract | $28,500,000 |
| Northeast Square | Retail | 6-18 Uvalde Rd., Houston | Marcus & Millichap Real | Under Contract | $5,400,000 |

1

| Property Name | Type | Address | Listing Agent | Status | Contract Price |
|---|---|---|---|---|---|
| | | | Estate Investment Services | | |
| Promenade North | Retail | 740-980 N. Coit Rd., Dallas | | Under Contract | $18,100,000 |
| Cornerstone | Office | 3707 FM 1960, Houston | Marcus & Millichap Real Estate Investment Services | Under Contract | $3,500,000 |
| Fondren Road Plaza | Retail | 7042-7098 Bissonnet St., Houston | Marcus & Millichap Real Estate Investment Services** | Under Contract | $12,850,000 |
| Timbercreek | Office | 5870 Hwy 6 North, Houston | Marcus & Millichap Real Estate Investment Services | Under Contract | $2,858,250 |
| Copperfield | Office | 15840 FM 529, Houston | Marcus & Millichap Real Estate Investment Services | Under Contract | $3,115,750 |
| Corporate Park Place | Office | 1333 Corporate Park Dr., Irving | Avision Young - Dallas, LLC | Under Contract | $7,400,000 |
| Tower Pavilion | Office | 2909 Hillcroft, Houston | Marcus & Millichap Real Estate Investment Services | | |
| Preserve | Office | 2010 N. Loop W., Houston | Jones Lang LaSalle Americas, Inc. | | |
| Chelsea Square | Retail | 5020 FM 1960 West, Houston | | | |
| Westheimer | Office | 11200 Westheimer Road, Houston | CBRE, Inc. | | |

| Property Name | Type | Address | Listing Agent | Status | Contract Price |
|---|---|---|---|---|---|
| 11811 N. Freeway | Office | 11811 North Freeway, Houston | | | |
| Northbelt Atrium I | Office | 15311 W. Vantage Pkwy, Houston | CBRE, Inc. | | |
| 3100 Timmons | Office | 3100 Timmons Lane, Houston | Goodwin Advisors, LLC | | |
| Northchase | Office | 14550 Torrey Chase Blvd., Houston | Marcus & Millichap Real Estate Investment Services | | |
| 616 FM 1960 | Office | 616 FM 1960, Houston | | | |
| 601 Sawyer | Office | 601 Sawyer, Houston | Jones Lang LaSalle Americas, Inc. | | |
| Gulf Plaza | Office | 16010 Barkers Point Lane, Houston | CBRE, Inc. | | |
| Energy Plaza I & II | Office | 8610, 8620 N. New Braunfels, San Antonio | Cushman & Wakefield U.S., Inc. | | |
| 400 North Belt | Office | 400 N. Sam Houston, Houston | | | |
| Ashford Crossing II | Office | 1880 S. Dairy Ashford Rd., Houston | CBRE, Inc. | | |
| One Technology Center | Office | 7411 John Smith Dr., San Antonio | Cushman & Wakefield U.S., Inc. | | |
| Westway I | Office | 1701 Market Place Blvd., Irving | CBRE, Inc. | | |
| Three Forest Plaza | Office | 12221 Merit Dr., Dallas | Goodwin Advisors, LLC | | |

\*   Seller and Broker Commission Agreement (buyer representation).
\*\* Seller Limited Representation Agreement (commission for specific buyer).

# EXHIBIT B

# Proposed Interim Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
|  | ) |  |
| **Hartman SPE, LLC,** | ) | **Case No. 23-11452 (MFW)** |
|  | ) |  |
| **Debtor.¹** | ) |  |
|  | ) |  |

*INTERIM* **ORDER (I) ESTABLISHING PROCEDURES FOR THE (A) SALE OF REAL ESTATE FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (B) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF NON-RESIDENTIAL REAL PROPERTY; AND (II) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtor and debtor in possession (the "Debtor") in the above-captioned case (the "Chapter 11 Case") for entry of interim and final orders (i) establishing procedures for the (a) sale of real estate free and clear of all liens, claims, encumbrances, and other interests; (b) assumption and assignment of executory contracts and unexpired leases of non-residential real property; and (ii) granting related relief, all as further described in the Motion; and upon consideration of the First Day Declaration, and the record of this Chapter 11 Case; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29,

---

[1]   The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is Hartman SPE, LLC (7400).  The Debtor's principal place of business and service address is 2909 Hillcroft, Suite 420, Houston, TX 77057.  Copies of pleadings may be obtained from the website of the United States Bankruptcy Court for the District of Delaware www.deb.uscourts.gov or from the Debtor's Claim Agent's website https://dm.epiq11.com/HartmanSPE.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2012; and consideration of the Motion and the requested relief therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the parties listed therein, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing on the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of Debtor and its estate and creditors; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor; it is hereby:

**FOUND AND DETERMINED THAT:**

A.        **Sale and Assumption and Assignment Procedures**.  The Debtor has articulated good and sufficient reasons for authorizing and approving the Sale and Assumption and Assignment Procedures on an interim basis subject to the final hearing (the "<u>Final Hearing</u>"), as fair, reasonable and appropriate under the circumstances and designed to achieve the highest or otherwise best offer and to maximize the value of Debtor's estate.  The Debtor, with the assistance of its Brokers, has engaged and continue to engage in a fulsome marketing and sale process to solicit and develop the highest or otherwise best offers for the Debtor's commercial real estate Properties.  The Sale and Assumption and Assignment Procedures are designed to build on that marketing and sale process following entry of this Order.

B.        **Notice of the Motion**.  The notice of the Motion and of the Hearing is reasonable and sufficient in light of the circumstances and nature of the relief requested in the Motion, and no other or further notice of the Motion or the Sale Hearing is necessary.  A reasonable and fair opportunity to object to the Motion and the relief granted in this Order has been afforded under

the circumstances.

**C.     Sale Notice**.  The *Notice of Proposed Sale*, substantially in the form attached hereto as **Exhibit 1** (the "<u>Sale Notice</u>"), is reasonably calculated to provide all interested parties with timely and proper notice of the proposed sale, including: (i) the Property to be sold, the Buyer, the sales price, and related information; (ii) the objection deadline for the sale of the Property and the date, time and place of the Hearing, if scheduled; (iii) a copy of the relevant Purchase and Sale Agreement; and (iv) representations describing the sale as being free and clear of liens, claims, encumbrances, and other interests, with all such liens, claims, encumbrances and other interests attaching with the same validity and priority to the sale proceeds, and no other or further notice of any sale shall be required.

**D.     Assumption and Assignment Notice**. The *Notice of Proposed Assumption and Assignment*, substantially in the form attached hereto as **Exhibit 2**, (the "<u>Assumption and Assignment Notice</u>"), is reasonably calculated to provide all interested parties with timely and proper notice of the proposed assumption of Assigned Contracts and assignment of such contracts to the Buyer, including: (i) identification of the Assigned Contracts, the counterparty to such contracts, and the proposed cure amount (the "<u>Cure Amount</u>"); (ii) the Assumption and Assignment Procedures and certain dates and deadlines related thereto; (iii) the objection deadline and the date, time and place of the Hearing, if scheduled; and (iv) representations describing the legal consequences of the assumption and assignment of the Assigned Contracts, and no other or further notice of such assumption and assignment shall be required.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

The Motion is GRANTED on an interim basis as set forth herein.  The Debtor is authorized to utilize the Sale and Assumption and Assignment Procedures to sell up to $85 million in Property under this Interim Order.

I.    **Sale Procedures and Related Relief**

1.    The following procedures with respect to sales of the Properties (the "Sale Procedures") are hereby approved:

a.    **Sale Notice.** The Debtor will file one or more notices with the Court (each, a "Sale Notice") regarding the Property(ies) that it is seeking to sell to a potential purchaser (the "Buyer") pursuant to section 363 of the Bankruptcy Code. The Sale Notice shall provide, among other relevant information: (i) a copy of the Sale Procedures Order; (ii) a copy of the sales contract, which will identify, among other things, the Buyer and the purchase price; and (iii) the identity of the Broker marketing the Property(ies) and the compensation to be paid to the Broker upon sale closing; and (iv) the proposed closing date of the sale (the "Closing Date").

b.    **Sale Notice Parties.** The Debtor will cause the Sale Notice to be filed on the Court's docket and served by e-mail or first class mail upon the following parties (collectively, the "Sale Notice Parties"): (i) the Office of the United States Trustee; (ii) the Internal Revenue Service; (iii) counsel for the Prepetition Lender, (iv) all parties who are known to possess or assert a lien, claim, encumbrance or interest in or upon the Property(ies); (v) all applicable United States, state, and local regulatory or taxing authorities, recording offices or any governmental entity which have a reasonably known interest in the Property(ies); (vi) the Debtor's top 30 unsecured creditors; and (vii) any party requesting notice in the case. The Sale Notice will also be sent via overnight delivery to all parties who are known to possess or assert a lien, claim, encumbrance or other interest in or upon the Property(ies).

c.    **Objections to Proposed Sale**. Any objections to a proposed sale must be filed with the Court and served so as to be actually received by Debtor's counsel and the Sale Notice Parties no later than ten (10) days after service of the Sale Notice (the "Sale Objection Deadline").

d.    **Hearing**. A hearing regarding the Sale Notice (the "Hearing") will be held at the Court's earliest convenience after expiration of the Sale Objection Deadline. If an objection is properly filed and served on Debtor's counsel and the Sale Notice Parties as specified above, unless such parties agree otherwise in writing, such Property(ies) will only be deemed sold upon entry by the Court of a consensual form of sale order resolving the objection as between the objecting party and the Debtor, or, if resolution is not reached, upon further order of the Court.

e.    **Modification of Sale Notice**. The Debtor reserves the right to remove any Property from a Sale Notice at any time prior to the Closing Date.

2.      The Debtor is authorized to take all actions as are necessary or appropriate to implement the Sale Procedures. Other than as expressly set forth in this Order or the Sale Procedures, the Debtor reserves its rights, in its reasonable business judgment and in a manner consistent with its fiduciary duties and applicable law, to modify the Sale Procedures in any manner that it reasonably determines will best promote the goals of the Sale Procedures, or impose additional customary terms and conditions in connection with a proposed sale, including, without limitation extending the deadlines set forth in the Sale Procedures or any Purchase and Sale Agreement, making customary modifications to the Purchase and Sale Agreement, and modifying the form of Sale Notice.

## II.    Assumption and Assignment Procedures

3.      The following procedures (the "Assumption and Assignment Procedures") are approved in connection with the assumption and assignment:

a.      **Assumption and Assignment Notice**. In conjunction with each Sale Notice discussed above, the Debtor will file one or more notices with the Court (each, an "Assumption and Assignment Notice") with a list of those Contracts and Leases that the Debtor seeks to assume pursuant to 11 U.S.C. § 365 and assign to the Buyer of the subject Property(ies). The Assumption and Assignment Notice shall set forth, among other relevant information: (i) the Contracts and Leases to be assumed and assigned (the "Assigned Contracts"); (ii) the names and addresses of the counterparties to such Assigned Contracts (the "Assumption and Assignment Counterparties"); (iii) the identity of the proposed assignee of such Assigned Contracts (i.e., the Buyer); (iv) the proposed effective date of the assumption and assignment for the Assigned Contracts, which will correspond with the Closing Date for the related Property(ies); (v) the proposed cure amount, if any; (vi) if there has been a default, the Buyer's ability to provide adequate assurance of future performance; and (vii) the deadlines and procedures for filing objections to the proposed assumption and assignment.

b.      **Assumption and Assignment Notice Parties**. The Debtor will cause the Assumption and Assignment Notice to be filed on the Court's docket and served by e-mail or first class mail upon the following parties (collectively, the "Assumption and Assignment Procedure Parties"): (i) the Office of the United States Trustee; (ii) the Internal Revenue Service; (iii) counsel for the Prepetition Lender, (iv) each Assumption and

Assignment Counterparty; (v) the Buyer; (vi) counsel to the Committee (if any); (vi) the Debtor's top 30 unsecured creditors; and (vii) any party requesting notice in the case.  The Assumption and Assignment Notice will also be sent via overnight delivery on each affected Assumption and Assignment Counterparty and Assignee.

       c.    **Objections to Proposed Assumption and Assignment**. Any objections to a proposed assumption and assignment of an Assigned Contract must be filed with the Court and served so as to be actually received by the Debtor's counsel and the Assumption and Assignment Procedure Parties no later than ten (10) days after service of the Assumption and Assignment Notice (the "<u>Assumption and Assignment Objection Deadline</u>").

       d.    **Hearing**.  The Hearing regarding the Assumption and Assignment Notice will be held at the Court's earliest convenience after expiration of the Assumption and Assignment Objection Deadline (to correspond with the sale Hearing). If an objection is properly filed and served on the Debtor's counsel and the Assumption and Assignment Notice Parties as specified above, unless such parties agree otherwise in writing, such Contract and/or Lease will only be deemed assumed and assigned upon entry by the Court of a consensual form of order resolving the objection as between the objecting party and the Debtor, or, if resolution is not reached, upon further order of the Court.

       e.    **Modification of Assumption and Assignment Notice**. The Debtor reserves the right to remove any Contract or Lease from an Assumption and Assignment Notice at any time prior to the Closing.

       4.    The Debtor is authorized to take all actions as are necessary or appropriate to implement the Assumption and Assignment Procedures.  Other than as expressly set forth in this Order or the Sale Procedures, the Debtor reserves its rights, in its reasonable business judgment and in a manner consistent with its fiduciary duties and applicable law, to modify the Assumption and Assignment Procedures, in any manner that it reasonably determine will best promote the goals of the Assumption and Assignment Procedures, or impose additional customary terms and conditions in connection with a proposed assumption and assignment, including without limitation extending the deadlines set forth in the Assumption and Assignment Procedures or modifying the form Notice of Assumption and Assignment.

5.     Only those Assigned Contracts that are included on a final Assumption and Assignment Notice will be assumed and assigned to the Buyer.

**III.     Other Related Relief**

6.     The requirements set forth in Local Bankruptcy Rule 6004-1 are satisfied by the contents of the Motion.

7.     The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied, and that the relief requested is necessary to avoid immediate and irreparable harm.

8.     Notwithstanding Bankruptcy Rule 6004(h) or 6006(d), this Interim Order shall be effective and enforceable immediately upon its entry.

9.     All time periods set forth in this Interim Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

10.     To the extent the provisions of this Interim Order are inconsistent with the provisions of any exhibits referenced herein or with the Motion, the provisions of this Interim Order shall control.

11.     The Debtor is authorized and empowered to take all actions they deem necessary to implement the relief granted in this Interim Order in accordance with the Motion and to implement the Sale and Assumption and Assignment Procedures.

12.     A final hearing (the "Final Hearing") on the full relief requested in the Motion shall be held on _____ ___, 2023 at __:___ a.m./p.m. (prevailing Eastern Time).  Any objections or responses to the entry of a Final Order on the Motion (each, an "Objection") shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on _____ ___, 2023, and shall be served on the following parties: (a) proposed counsel for the Debtor, (i) Katten Muchin Rosenman LLP, 2121 N. Pearl Street, Suite 1100, Dallas, Texas 75201 (Attn: John Mitchell, Michaela

Crocker, and Yelena Archiyan) (Email: john.mitchell@katten.com, michaela.crocker@katten.com, and yelena.archiyan@katten.com) and (ii) Chipman Brown Cicero & Cole, LLP, Hercules Plaza, 1313 North Market Street, Suite 5400, Wilmington, Delaware 19801 (Attn: William E. Chipman, Jr., Esquire, Robert A. Weber, Esquire and Mark D. Olivere, Esquire) (Email: chipman@chipmanbrown.com; weber@chipmanbrown.com; and olivere@chipmanbrown.com); (c) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207 Lockbox 35, Wilmington, DE 19801 (Attn: _____); and (d) counsel to the Prepetition Lender _____. If no objections or responses are filed and served, this Court may enter a final order without further notice or hearing.

13.     This Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation or enforcement of this Interim Order.

# EXHIBIT C

# Proposed Final Order

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Hartman SPE, LLC, | ) Case No. 23-11452 (MFW) |
| | ) |
| Debtor.[1] | ) |
| | ) |

**_FINAL_ ORDER (I) ESTABLISHING PROCEDURES FOR THE (A) SALE OF REAL ESTATE FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (B) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF NON-RESIDENTIAL REAL PROPERTY; AND (II) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtor and debtor in possession (the "Debtor") in the above-captioned case (the "Chapter 11 Case") for entry of interim and final orders (i) establishing procedures for the (a) sale of real estate free and clear of all liens, claims, encumbrances, and other interests; (b) assumption and assignment of executory contracts and unexpired leases of non-residential real property; and (ii) granting related relief, all as further described in the Motion; and upon consideration of the First Day Declaration, and the record of this Chapter 11 Case; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the _Amended Standing Order of Reference_ from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the requested relief therein being a core proceeding

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is Hartman SPE, LLC (7400). The Debtor's principal place of business and service address is 2909 Hillcroft, Suite 420, Houston, TX 77057. Copies of pleadings may be obtained from the website of the United States Bankruptcy Court for the District of Delaware www.deb.uscourts.gov or from the Debtor's Claim Agent's website https://dm.epiq11.com/HartmanSPE.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

00059172.1

pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the parties listed therein, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing on the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of Debtor and its estate and creditors; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor; it is hereby:

**FOUND AND DETERMINED THAT:**

A.      **Sale and Assumption and Assignment Procedures**.  The Debtor has articulated good and sufficient reasons for authorizing and approving the Sale and Assumption and Assignment Procedures on a final basis as fair, reasonable and appropriate under the circumstances and designed to achieve the highest or otherwise best offer and to maximize the value of the Debtor's estate.  The Debtor, with the assistance of its Brokers, has engaged and continues to engage in a fulsome marketing and sale process to solicit and develop the highest or otherwise best offers for the Debtor's commercial real estate Properties.  The Sale and Assumption and Assignment Procedures are designed to build on that marketing and sale process following entry of this Order.

B.      **Notice of the Motion**.  The notice of the Motion and of the Hearing is reasonable and sufficient in light of the circumstances and nature of the relief requested in the Motion, and no other or further notice of the Motion or the Sale Hearing is necessary.  A reasonable and fair opportunity to object to the Motion and the relief granted in this Order has been afforded under the circumstances.

C.      **Sale Notice**.  The *Notice of Proposed Sale*, substantially in the form attached hereto as **Exhibit 1** (the "Sale Notice"), is reasonably calculated to provide all interested parties with timely and proper notice of the proposed sale, including: (i) the Property to be sold, the Buyer, the sales price, and related information; (ii) the objection deadline for the sale of the Property and the date, time and place of the Hearing, if scheduled; (iii) a copy of the relevant Purchase and Sale Agreement; and (iv) representations describing the sale as being free and clear of liens, claims, encumbrances, and other interests, with all such liens, claims, encumbrances and other interests attaching with the same validity and priority to the sale proceeds, and no other or further notice of any sale shall be required.

D.      **Assumption and Assignment Notice**. The *Notice of Proposed Assumption and Assignment*, substantially in the form attached hereto as **Exhibit 2**, (the "Assumption and Assignment Notice"), is reasonably calculated to provide all interested parties with timely and proper notice of the proposed assumption of Assigned Contracts and assignment of such contracts to the Buyer, including: (i) identification of the Assigned Contracts, the counterparty to such contracts, and the proposed cure amount (the "Cure Amount"); (ii) the Assumption and Assignment Procedures and certain dates and deadlines related thereto; (iii) the objection deadline and the date, time and place of the Hearing, if scheduled; and (iv) representations describing the legal consequences of the assumption and assignment of the Assigned Contracts, and no other or further notice of such assumption and assignment shall be required.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

The Motion is GRANTED on a final basis as set forth herein, and any objections, responses and reservation of rights to the Motion or to the relief requested therein that have not been withdrawn, waived, settled or reserved are hereby overruled in all respects on the merits with prejudice.

**I.    Sale Procedures and Related Relief**

1.    The following procedures with respect to sales of the Properties (the "Sale Procedures") are hereby approved:

a.    **Sale Notice.** The Debtor will file one or more notices with the Court (each, a "Sale Notice") regarding the Property(ies) that it is seeking to sell to a potential purchaser (the "Buyer") pursuant to section 363 of the Bankruptcy Code. The Sale Notice shall provide, among other relevant information: (i) a copy of the Sale Procedures Order; (ii) a copy of the sales contract, which will identify, among other things, the Buyer and the purchase price; and (iii) the identity of the Broker marketing the Property(ies) and the compensation to be paid to the Broker upon sale closing; and (iv) the proposed closing date of the sale (the "Closing Date").

b.    **Sale Notice Parties.** The Debtor will cause the Sale Notice to be filed on the Court's docket and served by e-mail or first class mail upon the following parties (collectively, the "Sale Notice Parties"): (i) the Office of the United States Trustee; (ii) the Internal Revenue Service; (iii) counsel for the Prepetition Lender, (iv) all parties who are known to possess or assert a lien, claim, encumbrance or interest in or upon the Property(ies); (v) all applicable United States, state, and local regulatory or taxing authorities, recording offices or any governmental entity which have a reasonably known interest in the Property(ies); (vi) the Debtor's top 30 unsecured creditors; and (vii) any party requesting notice in the case. The Sale Notice will also be sent via overnight delivery to all parties who are known to possess or assert a lien, claim, encumbrance or other interest in or upon the Property(ies).

c.    **Objections to Proposed Sale**. Any objections to a proposed sale must be filed with the Court and served so as to be actually received by Debtor's counsel and the Sale Notice Parties no later than ten (10) days after service of the Sale Notice (the "Sale Objection Deadline").

d.    **Hearing**. A hearing regarding the Sale Notice (the "Hearing") will be held at the Court's earliest convenience after expiration of the Sale Objection Deadline. If an objection is properly filed and served on Debtor's counsel and the Sale Notice Parties as specified above, unless such parties agree otherwise in writing, such Property(ies) will only be deemed sold upon entry by the Court of a consensual form of sale order resolving the objection as between the objecting party and the Debtor, or, if resolution is not reached, upon further order of the Court.

e.    **Modification of Sale Notice**. The Debtor reserves the right to remove any Property from a Sale Notice at any time prior to the Closing Date.

2.      The Debtor is authorized to take all actions as are necessary or appropriate to implement the Sale Procedures.  Other than as expressly set forth in this Order or the Sale Procedures, the Debtor reserves its rights, in its reasonable business judgment and in a manner consistent with its fiduciary duties and applicable law, to modify the Sale Procedures in any manner that it reasonably determines will best promote the goals of the Sale Procedures, or impose additional customary terms and conditions in connection with a proposed sale, including, without limitation extending the deadlines set forth in the Sale Procedures or any Purchase and Sale Agreement, making customary modifications to the Purchase and Sale Agreement, and modifying the form of Sale Notice.

## II.      Assumption and Assignment Procedures

3.      The following procedures (the "Assumption and Assignment Procedures") are approved in connection with the assumption and assignment:

a.      **Assumption and Assignment Notice**. In conjunction with each Sale Notice discussed above, the Debtor will file one or more notices with the Court (each, an "Assumption and Assignment Notice") with a list of those Contracts and Leases that the Debtor seeks to assume pursuant to 11 U.S.C. § 365 and assign to the Buyer of the subject Property(ies). The Assumption and Assignment Notice shall set forth, among other relevant information: (i) the Contracts and Leases to be assumed and assigned (the "Assigned Contracts"); (ii) the names and addresses of the counterparties to such Assigned Contracts (the "Assumption and Assignment Counterparties"); (iii) the identity of the proposed assignee of such Assigned Contracts (i.e., the Buyer); (iv) the proposed effective date of the assumption and assignment for the Assigned Contracts, which will correspond with the Closing Date for the related Property(ies); (v) the proposed cure amount, if any; (vi) if there has been a default, the Buyer's ability to provide adequate assurance of future performance; and (vii) the deadlines and procedures for filing objections to the proposed assumption and assignment.

b.      **Assumption and Assignment Notice Parties**. The Debtor will cause the Assumption and Assignment Notice to be filed on the Court's docket and served by e-mail or first class mail upon the following parties (collectively, the "Assumption and Assignment Procedure Parties"): (i) the Office of the United States Trustee; (ii) the Internal Revenue Service; (iii) counsel for the Prepetition Lender, (iv) each Assumption and

Assignment Counterparty; (v) the Buyer; (vi) counsel to the Committee (if any); (vi) the Debtor's top 30 unsecured creditors; and (vii) any party requesting notice in the case. The Assumption and Assignment Notice will also be sent via overnight delivery on each affected Assumption and Assignment Counterparty and Assignee.

        c.    **Objections to Proposed Assumption and Assignment**. Any objections to a proposed assumption and assignment of an Assigned Contract must be filed with the Court and served so as to be actually received by the Debtor's counsel and the Assumption and Assignment Procedure Parties no later than ten (10) days after service of the Assumption and Assignment Notice (the "<u>Assumption and Assignment Objection Deadline</u>").

        d.    **Hearing**. The Hearing regarding the Assumption and Assignment Notice will be held at the Court's earliest convenience after expiration of the Assumption and Assignment Objection Deadline (to correspond with the sale Hearing). If an objection is properly filed and served on the Debtor's counsel and the Assumption and Assignment Notice Parties as specified above, unless such parties agree otherwise in writing, such Contract and/or Lease will only be deemed assumed and assigned upon entry by the Court of a consensual form of order resolving the objection as between the objecting party and the Debtor, or, if resolution is not reached, upon further order of the Court.

        e.    **Modification of Assumption and Assignment Notice**. The Debtor reserves the right to remove any Contract or Lease from an Assumption and Assignment Notice at any time prior to the Closing.

        4.    The Debtor is authorized to take all actions as are necessary or appropriate to implement the Assumption and Assignment Procedures. Other than as expressly set forth in this Order or the Sale Procedures, the Debtor reserves its rights, in its reasonable business judgment and in a manner consistent with its fiduciary duties and applicable law, to modify the Assumption and Assignment Procedures, in any manner that it reasonably determine will best promote the goals of the Assumption and Assignment Procedures, or impose additional customary terms and conditions in connection with a proposed assumption and assignment, including without limitation extending the deadlines set forth in the Assumption and Assignment Procedures or modifying the form Notice of Assumption and Assignment.

5.      Only those Assigned Contracts that are included on a final Assumption and Assignment Notice will be assumed and assigned to the Buyer.

**III.    Other Related Relief**

6.      The requirements set forth in Local Bankruptcy Rule 6004-1 are satisfied by the contents of the Motion.

7.      Notwithstanding Bankruptcy Rule 6004(h) or 6006(d), this Order shall be effective and enforceable immediately upon its entry.

8.      All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

9.      To the extent the provisions of this Order are inconsistent with the provisions of any exhibits referenced herein or with the Motion, the provisions of this Order shall control.

10.     The Debtor is authorized and empowered to take all actions they deem necessary to implement the relief granted in this Order in accordance with the Motion and to implement the Sale and Assumption and Assignment Procedures.

11.     This Court retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation or enforcement of this Order.

# EXHIBIT 1

# Form of Notice of Proposed Sale

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Hartman SPE, LLC, | ) | Case No. 23-11452 (MFW) |
|  | ) |  |
| Debtor.[1] | ) |  |
|  | ) |  |

<u>**NOTICE OF PROPOSED SALE OF REAL ESTATE**</u>

On [•], 2023, the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") entered the *Order* [____] [Docket No. [•]] (the "<u>Sale Procedures Order</u>")[2] attached hereto as **Exhibit A**, by which the Court approved the sale procedures for commercial real estate owned by the Debtor.

The Debtor, in consultation with its professionals, has selected the following buyer (the "<u>Buyer</u>") with respect to following real estate (the "<u>Property</u>").  A copy of the proposed Purchase and Sale Agreement is attached hereto as **Exhibit B**.

| Property Address | Buyer | Closing Date |
|---|---|---|
|  |  |  |

The Hearing to consider approval of the sale of the Property to the Buyer, free and clear of all liens, claims, interest, encumbrances, and other interests pursuant to Bankruptcy Code section 363(f), and entry the sale order, in the proposed form set forth on **Exhibit C**, will be held before Judge [____] on **[•], 2023 at [•] prevailing Eastern Time**.  The proposed form of the sale order remains subject to ongoing review by the Debtor and the Buyer.

At the Hearing, the Debtor will seek the Court's approval of the sale of the Property in accordance Purchaser and Sale Agreement.  Unless the Court orders otherwise or as agreed to by

---

[1]     The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is Hartman SPE, LLC (7400).  The Debtor's principal place of business and service address is 2909 Hillcroft, Suite 420, Houston, TX 77057. Copies of pleadings may be obtained from the website of the United States Bankruptcy Court for the District of Delaware www.deb.uscourts.gov or from the Debtor's Claim Agent's website https://dm.epiq11.com/HartmanSPE.

[2]     All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Sale Procedures Order or the *Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Establishing Procedures for the (A) Sale of Real Estate Free and Clear of All Liens, Claims, and Encumbrances; (B) Assumption and Assignment of Executory Contracts and Unexpired Leases of Non-Residential Real Property; and (II) Granting Related Relief* [Docket No. [•]].

the applicable parties, the Hearing shall be an evidentiary hearing on matters relating to the sale and there will be no bidding at the Hearing.

Parties objecting to the proposed sale of the Property to Buyer must file a written objection with the Court in accordance with the Sale Procedures Order (each, an "Objection") so as to be received by the Sale Notice Parties on or before **[•], 2023 at [•] prevailing Eastern Time** (the "Objection Deadline").

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE PROPOSED SALE ON OR BEFORE THE OBJECTION DEADLINE SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE DISPOSITION OF THE PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN SUCH OTHER AGREEMENT WITH THE BUYER.**

September ___, 2023
Wilmington, DE

**CHIPMAN BROWN CICERO & COLE, LLP**

_/s/ William E. Chipman, Jr._
William E. Chipman, Jr. (No. 3818)
Kristi J. Doughty (No. 3826)
Mark D. Olivere (No. 4291)
**CHIPMAN BROWN CICERO & COLE, LLP**
Hercules Plaza
1313 N. Market Street, Suite 5400
Wilmington, DE 19801
Telephone: (302) 295-0191
Facsimile:  (302) 295-0199
Email: chipman@chipmanbrown.com
         doughty@chipmanbrown.com
         olivere@chipmanbrown.com

-and-

**KATTEN MUCHIN ROSENMAN LLP**
John E. Mitchell (TX Bar No. 00797095)
Michaela C. Crocker (TX Bar No. 24031985)
Yelena E. Archiyan (TX Bar No. 24119035)
2121 N. Pearl St., Suite 1100
Dallas, TX 75201
Telephone:     (214) 765-3600
Facsimile:      (214) 765-3602
Email:  john.mitchell@katten.com
         michaela.crocker@katten.com
         yelena.archiyan@katten.com

_Proposed Co-Counsel to the Debtor and Debtor-in-Possession_

**Exhibit A to Notice of Proposed Sale – Sale Procedures Order**

**<u>Exhibit B to Notice of Proposed Sale – Purchase and Sale Agreement</u>**

**<u>Exhibit C to Notice of Proposed Sale – Proposed Form of Sale Order</u>**

*[To be filed]*

# EXHIBIT 2

# Form of Notice of Proposed Assumption and Assignment

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Hartman SPE, LLC, | ) | Case No. 23-11452 (MFW) |
| | ) | |
| Debtor.[1] | ) | |
| | ) | |

**NOTICE OF (I) POTENTIAL ASSUMPTION AND ASSIGNMENT OF**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (II) CURE AMOUNTS**

> **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU MAY BE A COUNTERPARTY TO AN EXECUTORY CONTRACT OR AN UNEXPIRED LEASE WITH HARTMAN SPE, LLC.**
>
> **PARTIES RECEIVING THIS NOTICE SHOULD (1) READ THIS NOTICE CAREFULLY AS YOUR RIGHTS MAY BE AFFECT BY THE TRANSACTIONS DESCRIBED HEREIN AND (2) LOCATE YOUR NAME AND CONTRACT AND/OR LEASE ON EXHIBIT A ATTACHED HERETO.**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On [•], 2023 (the "Petition Date"), Hartman SPE, LLC (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

On [•], 2023, the Court entered the *Order* [____] [Docket No. [•]] (the "Sale Procedures Order")[2] attached hereto as **Exhibit A**, by which the Court approved the sale procedures for

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is Hartman SPE, LLC (7400). The Debtor's principal place of business and service address is 2909 Hillcroft, Suite 420, Houston, TX 77057. Copies of pleadings may be obtained from the website of the United States Bankruptcy Court for the District of Delaware www.deb.uscourts.gov or from the Debtor's Claim Agent's website https://dm.epiq11.com/HartmanSPE.

[2] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Sale Procedures Order or the *Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Establishing Procedures for the (A) Sale of Real Estate Free and Clear of All Liens, Claims, and Encumbrances; (B) Assumption and Assignment of Executory Contracts and Unexpired Leases of Non-Residential Real Property; and (II) Granting Related Relief* [Docket No. [•]].

commercial real estate owned by the Debtor, including the procedures for the assumption and assignment of executory contracts and unexpired leases associated with such properties.

The Debtor, in consultation with its professionals, has selected the following buyer (the "Buyer") with respect to following real estate (the "Property").

| Property Address | Buyer | Closing Date |
|---|---|---|
| | | |

Pursuant to the Sales Procedures Order and section 365 of the Bankruptcy Code, the Debtor may potentially assume and assign to the Buyer the executory contracts and/or unexpired leases associated with the Property that are listed on **Exhibit B** hereto (an "Assignable Contracts").

The Debtor has indicated on **Exhibit B** the cure amount(s) that the Debtor asserts are sufficient to cure all prepetition defaults and pay all amounts accrued under the applicable Assignable Contract (the "Cure Amount").

**Reference to an Assignable Contract on this Notice does not constitute an admission that such Assignable Contract is an executory contract or unexpired real property lease within the meaning of the Bankruptcy Code and applicable law, and the Debtor reserves all rights, claims, defenses, and causes of action with respect to all Assignable Contracts**.

The presence or absence of an Assignable Contract on **Exhibit B** shall not prevent the Debtor or the Buyer from subsequently determining either (i) not to assume such Assignable Contract at any time before such Assignable Contract is actually assumed and assigned pursuant to an Order of the Court or (ii) to assume a contract or lease that is not listed on **Exhibit B**.

A party to an Assignable Contract (a "Contract Notice Party") objecting to the proposed assumption of an Assignable Contract and assignment of such contract to Buyer or the proposed Cure Amount must file a written objection with the Court in accordance with the Sale Procedures Order (each, an "Objection") so as to be received by the Sale Notice Parties **on or before [•], 2023 at [•] prevailing Eastern Time** (the "Objection Deadline").

Unless a Contract Notice Party timely files and serves an Objection in accordance with the Sale Procedures Order, such Contract Notice Party shall (a) be forever barred from objecting to the Cure Amount (if any) and from asserting any additional cure or other amounts with respect to its Assignable Contract, and the Debtor and the Buyer shall be entitled to rely solely upon the Cure Amount set forth on **Exhibit B**; (b) be forever barred from asserting that any conditions to the assumption and assignment of any Assignable Contract must be satisfied before such Assignable Contract may be assumed and assigned, or that any required consent to any such assignment has not been given; (c) be deemed to have consented to the assumption and assignment; (d) be deemed to have agreed that all defaults under the applicable Assignable Contract arising or continuing prior to the effective date of assignment have been cured; (e) be forever barred and estopped from asserting that the Buyer failed to provide adequate assurance of future performance; and (f) be forever barred, estopped, and permanently enjoined from asserting or claiming against the Debtor, the Buyer, or their respective property that any additional amounts are due or other defaults exist,

that conditions to assignment must be satisfied under such Assignable Contract or that there is any objection or defense to the assumption and assignment of such Assignable Contract.

Where a Contract Notice Party files an Objection, including an Objection asserting a cure amount higher than the proposed Cure Amount, (the "Disputed Cure Amount"), then (i) to the extent that the parties are able to consensually resolve the Objection or Disputed Cure Amount, the Debtor shall promptly provide the parties in interest notice and opportunity to object to such proposed resolution, or (ii) to the extent the parties are unable to consensually resolve the Objection or Disputed Cure amount, such dispute will be determined at the hearing to be held before Judge [___] on **[•], 2023 at [•] prevailing Eastern Time**.

If you agree with the Cure Amount indicated on **Exhibit B**, and otherwise do not object to the Debtor's assumption and assignment of your lease or contract, you need not take any further action.

Pursuant to the terms of the proposed sale order attached hereto as **Exhibit C**, the Debtor shall be deemed to have assumed and assigned each of the Assignable Contracts (unless the Buyer elects in its sole discretion not to assume such Assignable Contract) as of the date of, and effective only upon, the closing of the sale of the Property, and absent such closing, each of the Assignable Contracts shall neither be deemed assumed nor assigned and shall in all respects be subject to further administration under the Bankruptcy Code. The proposed form of the sale order remains subject to ongoing review by the Debtor and the Buyer.

*[Remainder of page intentionally blank]*

Dated: September ____, 2023
Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ William E. Chipman, Jr.*
William E. Chipman, Jr. (No. 3818)
1313 N. Market Street, Suite 5400
Wilmington, DE 19801
Telephone:    (302) 295-0191
Facsimile:    (302) 295-0199
Email:         chipman@chipmanbrown.com
                 olivere@chipmanbrown.com

-and-

**KATTEN MUCHIN ROSENMAN LLP**
John E. Mitchell (TX Bar No. 00797095)
Michaela C. Crocker (TX Bar No. 24031985)
Yelena E. Archiyan (TX Bar No. 24119035)
2121 N. Pearl St., Suite 1100
Dallas, TX 75201
Telephone:    (214) 765-3600
Facsimile:     (214) 765-3602
Email:         john.mitchell@katten.com
                 michaela.crocker@katten.com
                 yelena.archiyan@katten.com

*Proposed Co-Counsel to the Debtor and Debtor-in-Possession*

**Exhibit A to Notice of Proposed Assumption and Assignment –**

**Proposed Form of Sale Order**

**Exhibit B to Notice of Proposed Assumption and Assignment –**

**List of Assignable Contracts**

**Exhibit C to Notice of Proposed Assumption and Assignment –**

**<u>Proposed Form of Sale Order</u>**

*[To be filed]*