**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Hartman SPE, LLC, | ) | Case No. 23-11452 (MFW) |
|  | ) |  |
| Debtor.[1] | ) |  |
|  | ) |  |

**MOTION OF THE DEBTOR FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTOR TO (A) CONTINUE USING EXISTING CASH MANAGEMENT SYSTEMS, BANK ACCOUNTS AND BUSINESS FORMS, (B) IMPLEMENT CHANGES TO ITS CASH MANAGEMENT SYSTEM IN THE ORDINARY COURSE OF BUSINESS, AND (C) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS; AND (II) GRANTING RELATED RELIEF**

By this motion (this "Motion"), Hartman SPE, LLC, as debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 bankruptcy case (the "Chapter 11 Case"), respectfully represents as follows:

**RELIEF REQUESTED**

1.      By this Motion, and pursuant to sections 105(a), 345(b), 363(c), 364(b), 503(b) and 507(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtor seeks entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "Proposed Interim Order") and

---

[1]     The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is Hartman SPE, LLC (7400).  The Debtor's principal place of business and service address is 2909 Hillcroft, Suite 420, Houston, TX 77057.  Copies of pleadings may be obtained from the website of the United States Bankruptcy Court for the District of Delaware www.deb.uscourts.gov or from the Debtor's Claim Agent's website https://dm.epiq11.com/HartmanSPE.

**Exhibit B** (the "Proposed Final Order"), respectively, (i) authorizing, but not directing, the Debtor, in its sole discretion, to (a) continue using its Cash Management System, Bank Accounts, and Business Forms (each as defined below), (b) implement changes to its Cash Management System in the ordinary course of business, and (c) continue to perform Intercompany Transactions (as defined below); and (ii) granting related relief.

2.      The Debtor believes that all of the relief requested herein is necessary to avoid immediate and irreparable harm and should be approved pursuant to the Proposed Interim Order. In addition, the Debtor is seeking approval of the relief requested herein on a final basis pursuant to the Proposed Final Order.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012 (the "Amended Standing Order"). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the Chapter 11 Cases and this Motion is proper in this District under 28 U.S.C. §§ 1408 and 1409.

4.      Pursuant to Local Rule 9013-1(f), the Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

5.      The statutory bases for the relief requested herein are sections 105(a), 345(b), 363(c), 364(b), 503(b) and 507(b) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

## BACKGROUND

6.      On the date hereof (the "<u>Petition Date</u>"), the Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code.

7.      The Debtor is authorized to continue to operate its business and manage its properties as debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.      No trustee, examiner, or statutory committee of creditors has been appointed in the Chapter 11 Case.

9.      A detailed description of the Debtor and its business, including the facts and circumstances giving rise to the Debtor's Chapter 11 Case, is set forth in the *Declaration of David Wheeler in Support of Chapter 11 Petition and First Day Pleadings* (the "<u>First Day Declaration</u>") filed contemporaneously with the Motion.[2]

## THE DEBTOR'S CASH MANAGEMENT SYSTEM

**A.      Overview of the Cash Management System**

10.      In the ordinary course of business, the Debtor maintains an integrated Cash Management System to manage the flow of cash, and to collect, transfer, and disburse funds generated by its operations.  The Cash Management System is tailored to meet the Debtor's operating needs.  The Cash Management System enables the Debtor to collect and disburse cash generated by its business effectively and efficiently, pay its financial obligations, centrally control and monitor corporate funds and available cash, comply with the requirements of its Loan

---

[2]   Capitalized terms used but not otherwise defined in this Motion have the meanings ascribed to them in the First Day Declaration.

Agreement (as defined below), reduce administrative expenses, and obtain accurate account balances and other financial data. It is critical that the Cash Management System remain intact during this Chapter 11 Case to ensure seamless continuation of transactions and uninterrupted collection of revenues.

11.     As of the Petition Date, the Debtor maintains four (4) bank accounts (together with any other bank accounts the Debtor may open in the ordinary course of business, the "SPE Bank Accounts") with three (3) banks. All SPE Bank Accounts are in the Debtor's name. The SPE Bank Accounts include (i) Wells Fargo Bank ("Wells Fargo"), (ii) KeyBank, and (iii) East West Bank ("East West").

12.     There are also five (5) related bank accounts that are each in the name of five (5) separate entities that are included in the Debtor's portfolio, including Hartman Three Forest Plaza, LLC, Hartman 1960 Properties LLC, Hartman Gulf Plaza LLC, Hartman Parkway LLC, and Hartman Promenade LLC (collectively, the "Related Bank Accounts," and together with the SPE Bank Accounts, the "Bank Accounts"). All of the Related Bank Accounts are legacy accounts that predate the Debtor's formation and today are generally inactive, except that on rare occasions some tenants may deposit *de minimis* rent to those accounts. The Related Bank Accounts are held at Texas Capital Bank ("Texas Capital," and collectively with Wells Fargo, KeyBank, and East West, the "Cash Management Banks"). The Bank Accounts are set forth on **Exhibit C**[3] attached hereto and reflected on the schematic of the Cash Management System set forth on **Exhibit D** attached hereto.

---

[3]     The Debtor believes, and has undertaken reasonable efforts to ensure that **Exhibits C** and **D** attached to the Motion list all Bank Accounts. If any Bank Account has been inadvertently omitted, the Debtor requests that the relief sought by this Motion be deemed to apply to any such Bank Account.

00059326.4

13.    As of the Petition Date, the Debtor has approximately $3,208,939.05 in total in the SPE Bank Accounts, including a balance in a money market account (the "Money market Bank Account") of approximately $1,055.44. The balance of the Related Bank Accounts is approximately $7,731.54 as of the Petition Date.  Each of the Bank Accounts is described in detail below and in the schematic of the Cash Management System attached hereto as **Exhibit D**.

14.    The Debtor's Cash Management System is ultimately overseen by its chief financial officer, who leads the accounting and finance teams of the Debtor's Property Manager (as defined below).  The accounting team performs critical cash management functions, including invoice and payment processing and bank account reconciliations.  The accounting team also maintains controls over the foregoing, including in connection with certain Intercompany Transactions (as defined below).

15.    The Cash Management System is typical of a company of a similar size and is used to manage the cash flow of operating in a cost-effective, efficient manner.  Any disruption to the Cash Management System would have an immediate adverse effect on the Debtor's business and operations to the detriment of the Debtor's estate and all of the Debtor's stakeholders.

**B.    Description of Funds Processing**

16.    The bulk of the Debtor's cash on hand is comprised of proceeds from tenant receipts.

17.    On October 1, 2018, the Debtor closed on a term, secured loan agreement (the "Loan Agreement") with Goldman Sachs Mortgage, as lender (the "Lender").  KeyBank is the loan servicer for the Lender under the Loan Agreement.  Also on October 1, 2018 and pursuant to the Loan Agreement, the Debtor, the Lender, and Wells Fargo entered into that certain Cash Management Agreement, which established the cash trap account (the "Cash Trap Account") for

the collection of all revenues from the Debtor's real estate properties. The Loan Agreement contemplated that the Cash Trap Account would be used only during the period while the Debtor was in default under the Loan Agreement. On October 19, 2022, the Lender advised the Debtor that an alleged Event of Default had occurred under the Loan Agreement, and placed the Debtor "into cash management." This triggered the use of the Cash Trap Account. The Cash Trap Account is held in the Debtor's name at KeyBank, but was set up for the benefit of the Debtor's Lender under the Loan Agreement. As such, the Debtor does not have control over or the ability to access the funds in the Cash Trap Account except to the extent of its rights under the Cash Management Agreement.

18.     Prior to the occurrence of the Event of Default, funds from the Lockbox Account (as defined below) were swept directly into the Debtor's Operating Account. However, since the occurrence of the Event of Default, cash generally moves through the Cash Management System as set forth below:

19.     Tenant receipts are deposited into a lockbox account with Wells Fargo (the "Lockbox Account").[4] On a daily basis, the ledger balance from the Lockbox Account is swept into the Cash Trap Account, which is controlled by KeyBank. On the ninth day of each month, disbursements are made from the Cash Trap Account in accordance with the waterfall set forth in Section 3.2 the Loan Agreement, first, to pay property tax escrow, second, to pay scheduled debt service, third, to pay budgeted operating expenses, fourth, to fund the capital expenditure reserve, and fifth, to pay for tenant improvements and to fund the lease commission reserve. All remaining amounts are disbursed to an excess cash flow reserve account maintained by KeyBank.

---

[4]    The Lockbox Account was established pursuant to Section 3.1 of the Loan Agreement.

00059326.4

20. Funds earmarked for budgeted operating expenses are disbursed from the Cash Trap Account to the Debtor's primary operating account (the "Operating Account"). Funds from the Operating Account are used to fund the Debtor's daily operations, expenses, and accounts payable.[5]

## C.    The Bank Accounts

21. The Bank Accounts generally fall into one of a number of categories, each of which is briefly described in the following table:

| Accounts | Account Description |
| --- | --- |
| Lockbox Account (#1548) | The Debtor maintains this account with Wells Fargo, which is used to collect tenant receipts (whether by check, ACH transfer, or wire transfer). |
| Cash Trap Account (#6586) | The Cash Trap Account with KeyBank is held in the Debtor's name but was set up for the sole benefit of the Lender under the Loan Agreement, and as such, the Lender has the sole right to make withdrawals from the Cash Trap Account. Disbursements from the Cash Trap Account are made on the ninth day of each month and disbursement funds are applied in accordance with the waterfall set forth in the Loan Agreement. |
| Operating Account (#5344) | The Debtor maintains the Operating Account with East West. The Operating Account is funded by disbursements from the Cash Trap Account. Funds in the Operating Account are used to fund the Debtor's daily operations. |
| Related Bank Accounts (#3158, #7808, (#9545, #1997, #9621) | The Related Bank Accounts were set up prior to the Debtor's formation and were primarily used by each respective tenant to deposit tenant receipts. As of the Petition Date, a small |

---

[5] Before the Debtor was placed into cash management, debt service was funded from the Operating Account as well.

| | number of tenants continue to pay rent to the Related Bank Accounts. As of the Petition Date, these Related Bank Accounts collectively hold approximately $7,731.54. The Related Bank Accounts will be closed as the related properties are sold. |
|---|---|
| Money Market Bank Account (#5369) | The Debtor maintains a money market account with East West. The Money Market Bank Account was set up as part of the Loan Agreement origination and is rarely drawn on. |

## C.    Bank Fees

22.    The Debtor incurs periodic service charges and other fees in connection with the maintenance of the Cash Management System (the "Bank Fees"). The majority of the Bank Fees are due and paid to the Cash Management Banks on a monthly basis and any meaningful fluctuations are determined by the wire activity of the prior month. While these fees fluctuate month to month, on average, the Debtor pays approximately [$8,350.00] per month in Bank Fees which, generally, are automatically debited from the respective Bank Accounts. As of the Petition Date, the Debtor estimates that it owes approximately $8,351.43 in Bank Fees. The Debtor seeks authority to continue paying Bank Fees in the ordinary course on a postpetition basis, consistent with historical practice.

## D.    The Debtor's Existing Business Forms

23.    The Debtor uses a variety of preprinted business forms (including checks, letterhead, correspondence forms, invoices, and other business forms in the ordinary course of business (collectively, the "Business Forms")). To avoid the distraction and delay to the Debtor's business operations that would result from a disruption of the Cash Management System and to avoid unnecessary expense, the Debtor requests authorization to continue using all of the Business Forms in existence before the Petition Date, without reference to the Debtor's status as a chapter

11 debtor in possession, rather than requiring the Debtor to incur the expense and delay of ordering new Business Forms as required by the Guidelines.

24.     Notwithstanding the foregoing, to the extent the Debtor purchases or prints any new checks, such checks will include the designation "Debtor in Possession" and with respect to any checks that exist or are generated electronically, to the extent reasonably practicable, the Debtor shall ensure that such electronic checks are clearly labeled "Debtor in Possession."

**E.     The Debtor's Intercompany Transactions**

25.     In the ordinary course of business, the Debtor routinely engages in certain intercompany financial transactions with certain non-Debtor affiliates (collectively, the "Intercompany Transactions"), which may result in intercompany receivables and payables (the "Intercompany Claims").

26.     As set forth in the First Day Declaration, the Debtor is party to that certain Real Property Management Agreement dated as of October 1, 2018 (the "Management Agreement") with Silver Star Property Management, Inc. (the "Property Manager"), pursuant to which the Property Manager serves as the Debtor's managing and leasing agent for the Debtor's properties. It also maintains the Debtor's day-to-day operations.  The Property manager is entitled to certain fees for its services and reimbursement for all reasonable and necessary expenses incurred or monies advanced by the Property Manager in connection with its management and operations of the properties.  In connection with the foregoing, certain intercompany transfers are made by the Debtor to the Property Manager.  Intercompany transfers are made in the ordinary course of business and result in Intercompany Claims.  A detailed description of the Property's Manager's services is set forth in the First Day Declaration, at ¶ I(B).

27.     As of the Petition Date, the Debtor is current on its obligations to the Property manager under the Management Agreement.  The Debtor will continue to operate under the terms of the Management Agreement, but is not seeking to assume the Management Agreement as part of its "first day" relief.  The Property Manager's services are critical to the Debtor's operations, and as such, the Debtor intends to continue performing under the Management Agreement.

## BASIS FOR RELIEF

A.     **The Continued Use of the Cash Management System, Bank Accounts and Business Forms is in the Best Interests of the Debtor, Its Creditors, and All Other Parties in Interest.**

(1)     The Debtor Should be Permitted to Continue Using the Cash Management System

28.     Section 363(c)(1) of the Bankruptcy Code authorizes a debtor to "use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1). The purpose of this section is to provide a debtor with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the court.  *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets.") (citations omitted); *In re Vision Metals, Inc.*, 325 B.R. 138, 145 (Bankr. D. Del. 2005) (same). Included within the purview of section 363(c) of the Bankruptcy Code is a debtor's ability to continue "routine transactions" necessitated by a debtor's cash management system.  *See*, *e.g.*, *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007) (noting that courts have shown a reluctance to interfere in a debtor's making of routine, day-to-day business decisions) (citations omitted); *Vision Metals*, 325 B.R. at 142 ("[W]hen a Chapter 11 debtor-in-possession

continues to operate its business, as permitted by section 1108, no court authorization is necessary for the debtor to enter transactions that fall within the ordinary course of its business.").

29.     To assure a smooth and orderly transition into chapter 11 and maximize value, it is essential that the Cash Management System continues to function during the pendency of this Chapter 11 Case in the same manner as it functioned prior to the Petition Date.  Requiring the Debtor to adopt and implement a new cash management system at this early and critical stage of the Chapter 11 Case would be extraordinarily disruptive and harmful to its operations.  Any disruption would have a severe and irrevocable impact on the Debtor's estate and value.  If the Debtor were required to dismantle the Cash Management System, it would wreak havoc on its day-to-day operations and its accounting practices and impair the Debtor's ability to generate timely reports of transactions and balances.  Therefore, maintaining the existing Cash Management System is in the best interests of all stakeholders.

30.     Additionally, the Court may rely on its equitable powers to grant the relief requested herein.  Specifically, section 105(a) of the Bankruptcy Code authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Under section 105(a) and the doctrine of necessity, the Court may exercise its broad grant of equitable powers to approve this Motion, including the payment of prepetition obligations when such payment is essential to the continued operation of a debtor's business.  *See*, *e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition claims under the doctrine of necessity and noting that "[t]he Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during Chapter 11").  Therefore, it is

00059326.4

within the Court's equitable power under section 105(a) to approve the continued use of the Cash Management System.

31.     The Cash Management System constitutes an ordinary course and essential business practice providing significant benefits to the Debtor, including the ability to control corporate funds, ensure the maximum availability of funds when and where necessary, the reduction of borrowing costs and administrative expenses by facilitating the movement of funds, and the availability of timely and accurate account balance information consistent with prepetition practices.  As described above, the Cash Management System is comprehensive, and alterations to the way in which the Debtor collects and disburses cash will result in the severe disruption of its operations, which ultimately will frustrate the Debtor's ability to maximize value for all stakeholders.  For the foregoing reasons, continuation of the Cash Management System is necessary, appropriate and in the best interests of the Debtor, its estate and all other parties in interest in this Chapter 11 Case and should be authorized pursuant to sections 363(c)(1) and 105(a) of the Bankruptcy Code.

32.     Courts in this district have approved the postpetition continuation of debtors' prepetition cash management systems as a routine matter in similar cases.  *See, e.g.*, *In re Genapsys, Inc.*, No. 22-10621 (BLS) (Bankr. D. Del. Aug. 1, 2022) [Docket Nos. 43 & 90] (authorizing the use of existing cash management system); *In re Gold Standard Baking, LLC*, No. 22-10559 (JKS) (Bankr. D. Del. July 18, 2022) [Docket Nos. 50 & 132]; *In re Stimwave Techs., Inc.*, No. 22-10541 (KBO) (Bankr. D. Del. July 14, 2022) [Docket Nos. 38 & 148] (same); *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. July 14, 2021) [Docket Nos. 74 & 191]

(same); *In re True Religion Apparel, Inc.*, No. 20- 10941 (CSS) (Bankr. D. Del. May 5, 2020) [Docket Nos. 76 & 181] (same).[6]

(2)     <u>The Debtor Should be Permitted to Continue Using Its Existing Bank Accounts</u>.

33.     The U.S. Trustee Operating Guidelines for Chapter 11 Cases (the "<u>U.S. Trustee</u> <u>Guidelines</u>") generally require that a chapter 11 debtor, among other things: (i) establish one debtor-in-possession account for all estate monies required for the payment of taxes (including payroll taxes); (ii) close all existing bank accounts and open new debtor-in-possession accounts; (iii) maintain a separate debtor-in-possession account for cash collateral; (iv) obtain checks that bear the designation "Debtor-in-Possession"; and (v) reference the debtor's bankruptcy case number and type of account on each such check.  *See* U.S. Trustee Guidelines § 2.  Moreover, Local Rule 2015-2(a) generally requires that, upon exhausting its existing check stock, a chapter 11 debtor order new checks labeled "Debtor-in-possession" with the corresponding bankruptcy case number.

34.     In this Chapter 11 Case, the Debtor requests that the Court waive the requirements of the U.S. Trustee Guidelines, which would otherwise severely disrupt the Debtor's ordinary financial operations by reducing efficiencies, increasing administrative burdens and creating unnecessary expenses.  The Debtor seeks an order authorizing the Cash Management Banks to continue to treat, service and administer the Bank Accounts as accounts of the Debtor as debtor in possession without interruption and in the ordinary course of business, and to receive, process and honor and pay all checks, drafts, wires or ACH transfers issued or initiated by or on behalf of the

---

[6]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtor's proposed counsel.

Debtor (to the extent the Debtor has sufficient funds, whether deposited prior to or after the Petition Date in the requisite Bank Account or otherwise available to cover and permit payment thereof) after the Petition Date.  The Debtor believes that this Chapter 11 Case will be more orderly if it is permitted to maintain the Bank Accounts with the same account numbers during this Chapter 11 Case.  By preserving business continuity and avoiding the disruption and delay to the Debtor's disbursement obligations, all parties in interest, including employees, vendors and customers, will be best served by the relief requested.  In addition, to the extent necessary, the Debtor requests authorization to (i) open new bank accounts at its existing Cash Management Banks or other authorized depositories and (ii) close any of its existing Bank Accounts, in each case, in the ordinary course of business.

(3)     The Debtor Should be Permitted to Continue Using Its Existing Business Forms.

35.     The Debtor also requests permission to maintain its existing Business Forms, and submits that strict compliance with the U.S. Trustee Guidelines and Local Rule 2015-2(a) would increase the Debtor's expenses and would risk unnecessarily confusing the Debtor's creditors.  To minimize expenses, the Debtor requests that it be authorized to continue to use its Business Forms and checks, substantially in the forms existing immediately before the Petition Date, without reference to its status as debtor in possession; *provided* that in the event the Debtor generates new Business Forms and/or checks during the pendency of this Chapter 11 Case other than its existing stock, such Business Forms and checks will include a legend referring to the Debtor as "Debtor-In-Possession."

36.     By virtue of the nature and scope of the Debtor's business operations and the large number of tenants and other parties with whom the Debtor does business, it is important that the Debtor be permitted to continue using its existing Business Forms without alteration or change,

00059326.4

except as requested herein.  Indeed, because parties doing business with the Debtor will undoubtedly be aware of the Debtor's status as debtor in possession as a result of the publicized nature of this Chapter 11 Case and the notice of commencement Debtor is distributing to such parties, changing their Business Forms would be unnecessary and unduly burdensome.

37.     Courts in this district have granted debtors similar relief in numerous other complex chapter 11 cases.  *See, e.g.*, *In re Genapsys, Inc.*, No. 22-10621 (BLS) (Bankr. D. Del. Aug. 1, 2022) [Docket Nos. 43 & 90] (authorizing the use of existing business forms); *In re Gold Standard Baking, LLC*, No. 22-10559 (JKS) (Bankr. D. Del. July 18, 2022) [Docket Nos. 50 & 132] (same); *In re Stimwave Techs., Inc.*, No. 22-10541 (KBO) (Bankr. D. Del. July 14, 2022) [Docket Nos. 38 & 148] (same); *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. July 14, 2021) [Docket Nos. 74 & 191] (same); *In re True Religion Apparel, Inc.*, No. 20-10941 (CSS) (Bankr. D. Del. May 5, 2020) [Docket Nos. 76 & 181] (same).

(4)     The Debtor Should be Permitted to Pay Prepetition Bank Fees.

38.     The Debtor also requests authority to pay any prepetition Bank Fees that may remain unpaid as of the Petition Date.  Payment of prepetition Bank Fees is in the best interests of the Debtor, its estate and all parties in interest in this Chapter 11 Case, as it will prevent unnecessary disruption to the Cash Management System and ensure that the Debtor's receipt of funds is not delayed.  Further, because the Cash Management Banks likely have setoff rights for the Bank Fees, payment of prepetition Bank Fees should not alter the rights of unsecured creditors in this Chapter 11 Case and would merely be a matter of timing.

39.     Courts in this district have granted debtors similar relief in numerous other complex Chapter 11 cases.  *See, e.g.*, *In re Genapsys, Inc.*, No. 22-10621 (BLS) (Bankr. D. Del. Aug. 1, 2022) [Docket Nos. 43 & 90] (authorizing the payment of prepetition bank fees); *In re Gold*

00059326.4

*Standard Baking, LLC*, No. 22-10559 (JKS) (Bankr. D. Del. July 18, 2022) [Docket Nos. 50 & 132] (same); *In re Stimwave Techs., Inc.*, No. 22-10541 (KBO) (Bankr. D. Del. July 14, 2022) [Docket Nos. 38 & 148] (same); *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. July 14, 2021) [Docket Nos. 74 & 191] (same); *In re True Religion Apparel, Inc.*, No. 20-10941 (CSS) (Bankr. D. Del. May 5, 2020) [Docket Nos. 76 & 181] (same).

**B.    Authorizing the Debtor to Continue Using Debit, Wire and ACH Payments is Warranted.**

40.    The Debtor requests that the Court grant further relief from the U.S. Trustee Guidelines to the extent they require the Debtor to make all disbursements by check.  In particular, the U.S. Trustee Guidelines require that all receipts and all disbursements of estate funds must be made by check with a notation representing the reason for the disbursement.  The Debtor conducts transactions through ACH transfers and other similar methods.  If the Debtor's ability to conduct transactions by debit, wire, ACH transfer, or other similar methods is impaired, the Debtor may be unable to perform under certain contracts, its business operations may be unnecessarily disrupted, and its estate will incur additional costs.

**C.    Compliance with the Bankruptcy Code and Guidelines**

41.    Section 345(a) of the Bankruptcy Code governs a debtor's cash deposits during a chapter 11 case and authorizes deposits of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). To comply with section 345 of the Bankruptcy Code, the Operating Guidelines for Chapter 11 Cases for Region 3 (the "<u>Region 3 U.S. Trustee Guidelines</u>") generally require chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized depository that agrees to comply with certain requirements set by the U.S. Trustee.  Section 345(b) of the

00059326.4

16

Bankruptcy Code requires a debtor's bank to post a bond unless a debtor's funds are "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States." *Id.* § 345(b).

42.     The Bank Accounts are maintained at Wells Fargo, KeyBank, East West, and Texas Capital.  All of the Cash Management Banks are authorized depositories under the U.S. Trustee Guidelines and insured by the Federal Deposit Insurance Corporation.  Thus, the Cash Management Banks are compliant with the U.S. Trustee Guidelines.

43.     Out of an abundance of caution, to the extent the Court does not determine that the requirements of section 345(b) of the Bankruptcy Code are satisfied, the Debtor requests a 45-day waiver of the requirements of section 345(b), subject to the Debtor's right to seek further extensions thereof.

**D.    Authorizing the Debtor to Continue Engaging in Intercompany Transactions and Granting Administrative Priority Status to Post-petition Intercompany Claims Is Appropriate.**

44.     Section 363(c)(1) of the Bankruptcy Code authorizes a debtor to "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business . . . and [] use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  Because the Debtor engages in Intercompany Transactions on a regular basis and such transactions are common among similar enterprises, the Debtor believes that post-petition Intercompany Transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code, and thus do not require the Court's approval.

45.     As described above, the Debtor's funds move between the Debtor's Bank Accounts and those of its Property Manager, and at any given time, there may be Intercompany Claims owed by the Debtor to the Property Manager.  Allowing the Debtor to continue to engage in post-petition

00059326.4

17

Intercompany Transactions is in the best interests of the Debtor's estate and its creditors, and the Debtor seeks authority to enter into such Intercompany Transactions in the ordinary course of business. The Debtor respectfully submits that post-petition Intercompany Transactions arising in the ordinary course of business are authorized as a matter of law pursuant to section 363(c)(1) of the Bankruptcy Code for which no additional relief is required.

46. Furthermore, because certain of the Intercompany Transactions represent extensions of intercompany credit in the ordinary course of business that are an essential component of the Cash Management System, the Debtor respectfully requests that pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, all post-petition payments on account of post-petition Intercompany Transactions between or among the Debtor and non-Debtor affiliates that give rise to an Intercompany Claim be accorded administrative expense status, which would result in an administrative expense claim in favor of the Debtor. This relief will ensure that each entity receiving payments from the Debtor will continue to bear ultimate repayment responsibility for such ordinary course transactions, thereby reducing the risk that these transactions would jeopardize the recoveries available to the Debtor's creditors. For the avoidance of doubt, the relief requested herein with respect to the post-petition Intercompany Transactions and the intercompany balances resulting therefrom shall not constitute an admission of the Debtor or any other party as to the validity, priority, or status of any prepetition intercompany balance or the Intercompany Transactions(s) from which such intercompany balance may have arisen.

47. Similar relief has been granted in other comparable chapter 11 cases in this district and others. *See, e.g.*, *In re Riverbed Tech., Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Nov 18, 2021) (authorizing postpetition intercompany transactions between debtors and granting administrative expense status to intercompany claims related thereto); *In re Alex and Ani, LLC*,

00059326.4

No. 21-10918 (CTG) (Bankr. D. Del. July 14, 2021) (same); *In re HighPoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Mar. 26, 2021) (same); *In re Town Sports Int'l, LLC*, No. 20-12168 (CSS) (Bankr. D. Del. Oct. 13, 2020) (same); *In re Extraction Oil and Gas, Inc.*, No. 20-10548 (Bankr. D. Del. July 13, 2020) (authorizing postpetition intercompany transactions between debtors and non-debtors and granting administrative expense status to intercompany claims related thereto).

## **RESERVATION OF RIGHTS**

48.     Nothing contained herein is or should be construed as: (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver of the Debtor's rights to dispute the amount of, basis for, or validity of any claim against the Debtor, (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder, (iv) a promise to pay any claim, (v) an approval, assumption, adoption, or rejection of any agreement, contract, program, policy, or lease between the Debtor and any third party under section 365 of the Bankruptcy Code or (vi) otherwise affecting the Debtor's rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtor's rights to subsequently dispute such claim.

## **DEBTOR HAS SATISFIED BANKRUPTCY RULE 6003(b)**

49.     Bankruptcy Rule 6003 provides that, to the extent that relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may approve a motion to "pay all or part of a claim that arose before the filing of the petition" prior to twenty-one (21) days after the Petition Date. Fed. R. Bankr. P. 6003.  The Debtor submits that the relief requested in this Motion is

necessary to avoid immediate and irreparable harm to the Debtor, as described herein, and that Bankruptcy Rule 6003 has been satisfied.

## **WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)**

50.     The Debtor also requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtor seeks in this Motion is necessary for the Debtor to operate without interruption and to preserve value for its estate.  Accordingly, the Debtor respectfully requests that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable, as the exigent nature of the relief sought herein justifies immediate relief.

## **NOTICE**

51.     Notice of this Motion and any order entered hereon will be provided to: (i) the Office of the United States Trustee for the District of Delaware, (ii) the Debtor's thirty (30) largest unsecured creditors, (iii) counsel to the Prepetition Lender, (iv) any other parties having asserted liens against the Properties, (v) the Office of the United States Attorney for the District of Delaware, (vi) the Internal Revenue Service, (vii) the Securities and Exchange Commission, (viii) the Office of the United States Attorney for the State of Texas, (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002, (x) the Cash Management Banks, and (xi) any other party entitled to notice pursuant to Local Rule 9013-1(m).  In light of the nature of the relief requested and the urgency of the circumstances surrounding this Motion, the Debtor submits that no further notice is required.

00059326.4

## **NO PRIOR REQUEST**

52.    No prior request for the relief sought herein has been made by the Debtor to this or any other court.

*[Remainder of page left blank intentionally]*

WHEREFORE, the Debtor respectfully requests that the Court (i) enter the Proposed

Interim Order and Proposed Final Order in substantially the forms attached hereto and (ii) grant

such other and further relief as may be just and proper.

Dated: September 13, 2023
Wilmington, Delaware

Respectfully submitted,

*/s/ William E. Chipman, Jr.*
William E. Chipman, Jr. (No. 3818)
Kristi J. Doughty (No. 3826)
Mark D. Olivere (No. 4291)
**CHIPMAN BROWN CICERO & COLE, LLP**
Hercules Plaza
1313 N. Market Street, Suite 5400
Wilmington, DE 19801
Telephone: (302) 295-0191
Facsimile: (302) 295-0199
Email: chipman@chipmanbrown.com
         doughty@chipmanbrown.com
         olivere@chipmanbrown.com

- and-

John E. Mitchell (*pro hac vice* pending)
Michaela C. Crocker (*pro hac vice* pending)
Yelena E. Archiyan (*pro hac vice* pending)
**KATTEN MUCHIN ROSENMAN LLP**
2121 N. Pearl St., Suite 1100
Dallas, TX 75201
Telephone: (214) 765-3600
Facsimile: (214) 765-3602
Email: john.mitchell@katten.com
         michaela.crocker@katten.com
         yelena.archiyan@katten.com

*Proposed Counsel to the Debtor and
Debtor in Possession*

**Exhibit A**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | **Chapter 11** |
|  | ) |  |
| **Hartman SPE, LLC,** | ) | **Case No. 23-11452 (MFW)** |
|  | ) | **Re: Docket No. [___]** |
| **Debtor.**[1] | ) |  |
|  | ) |  |

**INTERIM ORDER (I) AUTHORIZING DEBTOR TO (A) CONTINUE USING
EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS AND BUSINESS
FORMS, (B) IMPLEMENT CHANGES TO ITS CASH MANAGEMENT SYSTEM IN
THE ORDINARY COURSE OF BUSINESS, AND (C) CONTINUE TO PERFORM
INTERCOMPANY TRANSACTIONS; AND (II) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtor and

debtor in possession (the "Debtor") in the above-captioned case (the "Chapter 11 Case") for an

order (this "Order") (i) authorizing, but not directing, the Debtor, in its sole discretion, to (a)

continue using its Cash Management System, Bank Accounts, and Business Forms, (b) implement

changes to its Cash Management System in the ordinary course of business, and (c) continue to

perform Intercompany Transactions; and (ii) granting related relief, all as more fully set forth in

the Motion; and the Court having reviewed the Motion and the First Day Declaration, and having

heard the statements of counsel regarding the relief requested in the Motion at a hearing before the

Court, if any (the "Hearing"); and the Court having jurisdiction over this matter pursuant to 28

U.S.C. §§ 157 and 1334 and the Amended Standing Order; and this Court having found that this

is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of

this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court

---

[1]  The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is Hartman SPE, LLC (7400).  The Debtor's principal place of business and service address is 2909 Hillcroft, Suite 420, Houston, TX 77057.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and the Court having determined that immediate relief is necessary to avoid irreparable harm to the Debtor and its estate as contemplated by Bankruptcy Rule 6003(b) and is in the best interests of the Debtor, its estate, creditors and all parties in interest; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is

HEREBY ORDERED THAT:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The Debtor is authorized, but not directed, in their sole discretion, to (i) continue operating the Cash Management System, including through Intercompany Transactions and (ii) make ordinary course changes to its Cash Management System.

3.      The Debtor is further authorized, but not directed, in its sole discretion, to continue using any or all of its existing Bank Accounts in the names and with the account numbers existing immediately before the Petition Date and open and close Bank Accounts, subject to the terms and conditions of this Interim Order, in the ordinary course of business and consistent with historical practices; *provided* that the Debtor shall, as soon as practicable, provide notice to the relevant Cash Management Bank and the U.S. Trustee of any opening or closing of any Bank Accounts.

4.      The Cash Management Banks are authorized to continue to treat, service and administer the Bank Accounts as accounts of the Debtor, as debtor in possession, or accounts of entities owned by the Debtor, as applicable, without interruption and in the usual and ordinary course and to receive, process and honor and pay any and all postpetition checks, drafts, book

00059326.4

2

transfers, wires or automated clearinghouse transfers ("ACH Transfers") drawn on the Bank Accounts by the holders or makers thereof, as the case may be, to the extent the Debtor has available funds standing to its credit with such Cash Management Bank.

5.      The Cash Management Banks are authorized to debit the Debtor's accounts in the ordinary course of business without the need for further order of this Court for: (i) all checks drawn on the Debtor's accounts which are cashed at such Cash Management Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (ii) all checks or other items deposited in one of the Debtor's accounts with such Cash Management Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Cash Management Bank as service charges for the maintenance of the Cash Management System.

6.      Notwithstanding anything to the contrary in any other order of this Court, the Cash Management Banks (i) are authorized to accept and honor all representations from the Debtor as to which checks, drafts, book transfers, wires or ACH Transfers should be honored or dishonored, consistent with any order of this Court and governing law, whether such checks, drafts, book transfers, wires or ACH Transfers are dated prior to, on or subsequent to the Petition Date, and whether the Cash Management Banks believe the payment is or is not authorized by an order of this Court; and (ii) have no duty to inquire as to whether such payments are authorized by an order of this Court.

7.      The Debtor is authorized to use its existing Business Forms and is not required to (i) obtain new stock reflecting its status as debtor in possession or (ii) print "Debtor-in-Possession,"

00059326.4

3

Debtor's Chapter 11 Case number, or any other information on any of its existing Business Forms or wire transfers; *provided* that once the existing Business Forms have been used, the Debtor shall, when re-ordering Business Forms during the pendency of this Chapter 11 Case, laser print a legend referencing Debtor as "Debtor-In-Possession" and the Debtor's bankruptcy case number on all new Business Forms.

8.    The Cash Management Banks shall not be liable to any party on account of (i) following the Debtor's instructions or representations as to any order of this Court or (ii) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored.  For the avoidance of doubt, the Cash Management Banks may rely on the representations of the Debtor with respect to whether any check or other payment order drawn or issued by the Debtor prior to the Petition Date should be honored pursuant to this or any other order of this Court, and such Cash Management Bank shall not have any liability to any party for relying on such representations by the Debtor as provided for herein.

9.    In accordance with current practice and the agreements governing the Bank Accounts, the Cash Management Banks are authorized to "charge back" to the Bank Accounts any amounts incurred by the Cash Management Banks resulting from returned checks or other returned items, and the Debtor is authorized to pay any fees and expenses owed to the Cash Management Banks, including any Bank Fees, in each case regardless of whether such items were deposited prepetition or postpetition or relate to prepetition or postpetition items.

10.    Any payment from a Bank Account at the request of the Debtor made by a Cash Management Bank prior to the Petition Date (including any ACH Transfers such Bank is or becomes obligated to settle), or any instruments issued by such Bank on behalf of the Debtor

pursuant to a "midnight deadline" or otherwise, shall be deemed to be paid prepetition, whether or not actually debited from the Bank Account prepetition.

11.    To the extent that any Bank Account is not in compliance with section 345(b) of the Bankruptcy Code, the Debtor's time to comply with section 345(b) of the Bankruptcy Code is hereby extended for a period of thirty (30) days from the date of this Order (the "Extension Period"), provided, however, that such extension is without prejudice to the Debtor's right to request a (i) further extension of the Extension Period, (ii) final waiver of the requirements of section 345(b) in this Chapter 11 Case, or (iii) finding that the Debtor is compliant with the requirements of section 345(b) of the Bankruptcy Code.

12.    The Debtor is authorized, but not directed, in its sole discretion, to continue the Intercompany Transactions in the ordinary course of business in accordance with past practice; *provided, however*, that any disbursements from the Debtor to affiliates shall not exceed $1,004,000 in the aggregate each month.  The Debtor shall maintain accurate records of all transfers into and out of the Cash Management System so that such postpetition transfers are readily ascertainable from its books and records.  However, there shall be no intercompany loans from or to Debtor to or from any non-Debtor entity absent further order of this Court.

13.    The Debtor shall maintain accurate and detailed records of all transfers, including but not limited to, Intercompany Transfers, so that all transactions may be readily ascertained, traced, recorded properly, and distinguished between prepetition and post-petition transactions.

14.    All post-petition payments from a Debtor to a non-Debtor under any post-petition Intercompany Transaction authorized hereunder that result in an Intercompany Claim are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code, which, for the avoidance of doubt, shall be subject and junior to any claims, including adequate protection

5

claims, granted in connection with any order authorizing debtor-in-possession financing or use of cash collateral.

15.     For Cash Management Banks at which the Debtor holds Bank Accounts that are party to a Uniform Depository Agreement with the Office of the U.S. Trustee, as soon as practicable after entry of this Order, the Debtor shall (i) contact each such Cash Management Bank, (ii) provide the Cash Management Bank with the Debtor's employer identification number, and (iii) identify each of the Bank Accounts held at such Cash Management Bank as being held by a debtor in possession in a bankruptcy case, and provide the case number.

16.     For Cash Management Banks at which the Debtor holds accounts that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtor shall use its good faith efforts to cause the Cash Management Banks to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee within thirty (30) days of the date of this Order.  The U.S. Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned Cash Management Banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

17.     The Debtor is authorized to open any new bank accounts or close any existing Bank Accounts as it may deem necessary and appropriate in its sole discretion; *provided*, however, that the Debtor give notice within fifteen (15) days to the U.S. Trustee and any statutory committee(s) appointed in this Chapter 11 Case *provided further*, however, that the Debtor shall open any such new bank account at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement.

18.     Nothing contained in the Motion or this Interim Order shall be deemed to authorize the Debtor to accelerate any payments not otherwise due prior to the date of the hearing to consider entry of a final order on the Motion (the "Final Hearing").

19.     Nothing contained in the Motion or this Interim Order, nor any payment made pursuant to the authority granted by this Interim Order, shall constitute or be construed as (i) an admission as to the validity of any claim against the Debtor; (ii) a waiver of the Debtor's rights to dispute the amount of, basis for, or validity of any claim against the Debtor; (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder; (iv) a promise to pay any claim; (v) an approval, assumption, adoption, or rejection of any agreement, contract, program, policy, or lease between the Debtor and any third party under section 365 of the Bankruptcy Code; or (vi) otherwise affecting the Debtor's rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.

20.     Nothing contained in the Motion or this Interim Order shall be construed to (i) create or perfect, in favor of any person or entity, any interest in cash of the Debtor that did not exist as of the Petition Date or (ii) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

21.     Nothing contained in the Motion or this Interim Order, nor as a result of any payment made pursuant to this Interim Order, shall be deemed or construed as a waiver of the right of the Debtor, or shall impair the ability of the Debtor, to contest the validity and amount of any payment made pursuant to this Interim Order.

22.     Nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

23.     The Final Hearing on the Motion shall be held on _____ __, 2023 at

00059326.4

7

__:__ a.m./p.m., prevailing Eastern Time.  Any objections or responses to the entry of a final order on the Motion shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on _____ ___, 2023 (the "Objection Deadline"), and shall be served on: (i) proposed counsel for the Debtor, Katten Muchin Rosenman LLP, 2121 North Pearl Street, Suite 1100, Dallas, TX 75201, Attn: John Mitchell (john.mitchell@katten.com) and Michaela Crocker (michaela.crocker@katten.com); (ii) proposed Delaware counsel for the Debtor, Chipman Brown Cicero & Cole, LLP, Hercules Plaza, 1313 North Market Street, Suite 5400, Wilmington DE, 19801, Attn: William E. Chipman, Jr. (chipman@chipmanbrown.com); (iii) counsel for the Prepetition Lender, [_____]; (iv) counsel to any statutory committee appointed in this Chapter 11 Case; and (v) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: John Schanne (John.Schanne@usdoj.gov). If no objections or responses are filed and served by the Objection Deadline, the Court may enter a final order without any further notice of a hearing.

24.     Nothing in the Motion or this Interim Order shall be deemed to authorize the Debtor to make any payments not otherwise due prior to the Final Hearing.

25.     The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

26.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

27.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

00059326.4

28.     The Debtor is authorized and empowered to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

29.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**<u>Exhibit B</u>**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **Hartman SPE, LLC,** | ) | **Case No. 23-_____ (___)** |
| | ) | |
| **Debtor.**[1] | ) | **Re: Docket No. [__]** |
| | ) | |

**FINAL ORDER (I) AUTHORIZING DEBTOR TO (A) CONTINUE USING EXISTING
CASH MANAGEMENT SYSTEM, BANK ACCOUNTS AND BUSINESS FORMS, (B)
IMPLEMENT CHANGES TO ITS CASH MANAGEMENT SYSTEM IN THE
ORDINARY COURSE OF BUSINESS, AND (C) CONTINUE TO PERFORM
INTERCOMPANY TRANSACTIONS; AND (II) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtor and

debtor in possession (the "Debtor") in the above-captioned cases (the "Chapter 11 Case") for an

order (this "Order") (i) authorizing, but not directing, the Debtor, in its sole discretion, to (a)

continue using its Cash Management System, Bank Accounts and Business Forms, (b) implement

changes to its Cash Management System in the ordinary course of business, and (c) continue to

perform Intercompany Transactions; and (ii) granting related relief, all as more fully set forth in

the Motion; and the Court having reviewed the Motion and the First Day Declaration and having

heard the statements of counsel regarding the relief requested in the Motion at a hearing before the

Court (the "Hearing"); and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§

157 and 1334 and the Amended Standing Order; and this Court having found that this is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this

proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is Hartman SPE, LLC (7400).  The Debtor's principal place of business and service address is 2909 Hillcroft, Suite 420, Houston, TX 77057.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is

HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      The Debtor is authorized, but not directed, in its sole discretion, to (i) continue operating the Cash Management System, including through Intercompany Transactions and (ii) make ordinary course changes to its Cash Management System.

3.      The Debtor is further authorized, but not directed, in its sole discretion, to continue using any or all of its existing Bank Accounts in the names and with the account numbers existing immediately before the Petition Date and open and close Bank Accounts in the ordinary course of business; *provided* that the Debtor shall, as soon as practicable, provide notice to the relevant Cash Management Bank and the U.S. Trustee of any opening or closing of any Bank Accounts.

4.      The Cash Management Banks are authorized to continue to treat, service and administer the Bank Accounts as accounts of the Debtor, as debtor in possession, or accounts of entities owned by the Debtor, as applicable, without interruption and in the usual and ordinary course and to receive, process and honor and pay any and all post-petition checks, drafts, book transfers, wires or automated clearinghouse transfers ("ACH Transfers") drawn on the Bank Accounts by the holders or makers thereof, as the case may be, to the extent the Debtor has available funds standing to its credit with such Cash Management Bank.

00059326.4

5.      The Cash Management Banks are authorized to debit the Debtor's accounts in the ordinary course of business without the need for further order of this Court for: (i) all checks drawn on the Debtor's accounts which are cashed at such Cash Management Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (ii) all checks or other items deposited in one of the Debtor's accounts with such Cash Management Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Cash Management Bank as service charges for the maintenance of the Cash Management System.

6.      Notwithstanding anything to the contrary in any other order of this Court, the Cash Management Banks (i) are authorized to accept and honor all representations from the Debtor as to which checks, drafts, book transfers, wires or ACH Transfers should be honored or dishonored, consistent with any order of this Court and governing law, whether such checks, drafts, book transfers, wires or ACH Transfers are dated prior to, on or subsequent to the Petition Date, and whether the Cash Management Banks believe the payment is or is not authorized by an order of this Court; and (ii) have no duty to inquire as to whether such payments are authorized by an order of this Court.

7.      The Debtor is authorized to use its existing Business Forms and is not required to (i) obtain new stock reflecting its status as debtor in possession or (ii) print "Debtor-in-Possession," Debtor's Chapter 11 Case number, or any other information on any of its existing Business Forms or wire transfers; *provided* that once the existing Business Forms have been used, the Debtor shall, when re-ordering Business Forms during the pendency of this Chapter 11 Case, laser print a legend

referencing the Debtor as "Debtor-In-Possession" and the Debtor's bankruptcy case number on all new Business Forms.

8.  The Cash Management Banks shall not be liable to any party on account of (i) following the Debtor's instructions or representations as to any order of this Court or (ii) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored.  For the avoidance of doubt, the Cash Management Banks may rely on the representations of the Debtor with respect to whether any check or other payment order drawn or issued by the Debtor prior to the Petition Date should be honored pursuant to this or any other order of this Court, and such Cash Management Bank shall not have any liability to any party for relying on such representations by the Debtor as provided for herein.

9.  In accordance with current practice and the agreement governing the Bank Accounts, the Cash Management Banks are authorized to "charge back" to the Debtor's accounts any amounts incurred by the Cash Management Banks resulting from returned checks or other returned items, and the Debtor is authorized to pay any fees and expenses owed to the Cash Management Banks, including any Bank Fees, in each case regardless of whether such items were deposited prepetition or postpetition or relate to prepetition or postpetition items.

10.  Any payment from a Bank Account at the request of the Debtor made by a Bank prior to the Petition Date (including any ACH Transfers such Bank is or becomes obligated to settle), or any instruments issued by such Cash Management Bank on behalf of the Debtor pursuant to a "midnight deadline" or otherwise, shall be deemed to be paid prepetition, whether or not actually debited from the Bank Account prepetition.

11.  The Debtor is compliant with the requirements of section 345(b) of the Bankruptcy Code.

00059326.4

4

12.    The Debtor is authorized, but not directed, in its sole discretion, to continue the Intercompany Transactions in the ordinary course of business in accordance with past practice and shall maintain accurate records of all transfers into and out of the Cash Management System so that such postpetition transfers are readily ascertainable from, its books and records.  However, there shall be no intercompany loans from or to Debtor to or from any non-Debtor entity absent further order of this Court.

13.    The Debtor shall maintain accurate and detailed records of all transfers, including but not limited to, Intercompany Transfers, so that all transactions may be readily ascertained, traced, recorded properly, and distinguished between prepetition and post-petition transactions.

14.    All post-petition payments from a Debtor to a non-Debtor under any post-petition Intercompany Transaction authorized hereunder that result in an Intercompany Claim are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code, which, for the avoidance of doubt, shall be subject and junior to any claims, including adequate protection claims, granted in connection with any order authorizing debtor-in-possession financing or use of cash collateral.

15.    The Debtor is authorized to open any new bank accounts or close any existing Bank Accounts as it may deem necessary and appropriate in its sole discretion; *provided*, however, that the Debtor give notice within fifteen (15) days to the U.S. Trustee and any statutory committee(s) appointed in this Chapter 11 Case *provided further*, however, that the Debtor shall open any such new bank account at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement.

16.    Nothing contained in the Motion or this Final Order, nor any payment made pursuant to the authority granted by this Final Order, shall constitute or be construed as (i) an

admission as to the validity of any claim against the Debtor; (ii) a waiver of the Debtor's rights to dispute the amount of, basis for, or validity of any claim against the Debtor; (iii) a waiver of any claims or causes of action that may exist against any creditor or interest holder; (iv) a promise to pay any claim; (v) an approval, assumption, adoption, or rejection of any agreement, contract, program, policy, or lease between the Debtor and any third party under section 365 of the Bankruptcy Code; or (vi) otherwise affecting the Debtor's rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.

17.     Nothing contained in the Motion or this Final Order shall be construed to (i) create or perfect, in favor of any person or entity, any interest in cash of the Debtor that did not exist as of the Petition Date; or (ii) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

18.     Nothing in the Motion or this Final Order, nor as a result of any payment made pursuant to this Final Order, shall be deemed or construed as a waiver of the right of the Debtor, or shall impair the ability of the Debtor, to contest the validity and amount of any payment made pursuant to this Final Order.

19.     Nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

20.     Notwithstanding anything to the contrary in the Motion or this Final Order, the Debtor's authority pursuant to this Final Order is subject to and must be consistent with the budget approved as part of any interim or final order approving use of cash collateral and/or post-petition financing.

21.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

22.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

23.     The Debtor is authorized and empowered to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

24.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

**Exhibit C**

**Cash Management Banks**

|  | Bank | Entity Name | Account Number | Account Designation | Account Balance |
|---|---|---|---|---|---|
| 1. | Wells Fargo | Hartman SPE, LLC | 1548 | Lockbox Account | $58,915.87 |
| 2. | KeyBank | Hartman SPE, LLC | 6586 | Cash Trap Account | $1,152,215.00 |
| 3. | East West | Hartman SPE, LLC | 5344 | Operating Account | $1,997,808.18 |
| 4. | East West | Hartman SPE, LLC | 5369 | Money Market Account | $1,055.44 |
| 5. | East West | Hartman Three Forest | 3158 | Legacy Checking Account | $58.00 |
| 6. | Texas Capital Bank | Hartman 1960 Properties LLC | 7808 | Legacy Checking Account | $0 |
| 7. | Texas Capital Bank | Hartman Gulf Plaza LLC | 9545 | Legacy Checking Account | $0 |
| 8. | Texas Capital Bank | Hartman Parkway LLC | 1997 | Legacy Checking Account | $1,653.75 |
| 9. | Texas Capital Bank | Hartman Promenade LLC | 9621 | Legacy Checking Account | $6,019.79 |

## **EXHIBIT D**

**Cash Management System Schematic**

