## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Hartman SPE, LLC, | ) Case No. 23-11452 (MFW) |
| | ) |
| Debtor.[1] | ) Related Docket No. 40 |
| | ) |

### *FINAL* ORDER (I) AUTHORIZING USE OF CASH
### COLLATERAL AND (II) GRANTING ADEQUATE PROTECTION

Upon the *Motion of Debtor for Interim and Final Orders (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* (the "Motion"),[2] pursuant to sections 102, 105, 361, 362, 363, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1(b), 4001-2, and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"); and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the requested relief with respect to Debtor Hartman SPE, LLC ("Debtor"), being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and such notice

---

[1]  The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is Hartman SPE, LLC (7400).  The Debtor's principal place of business and service address is 2909 Hillcroft, Suite 420, Houston, TX 77057.  Copies of pleadings may be obtained from the website of the United States Bankruptcy Court for the District of Delaware www.deb.uscourts.gov or from the Debtor's Claim Agent's website https://dm.epiq11.com/HartmanSPE.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion and any objections thereto; and a hearing having been held on September 15, 2023 to consider the Motion on an interim basis; and this Court having entered that certain Interim Order (I) Authorizing Use of Cash Collateral and (II) Granting Adequate Protection (Dkt. No. 40) (the "Interim Order"); and a final hearing having been held on October 16, 2003; and the Lender (as defined herein) having agreed to the relief requested in the Motion and agreed to the relief set forth herein; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein with respect to Debtor's use of Cash Collateral (as defined below); and it appearing that the relief requested in the Motion with respect to Debtor's use of Cash Collateral is in the best interests of Debtor and its estate, creditors and parties in interest; and after due deliberation and sufficient cause appearing therefor,

**DEBTOR AND THE LENDER REPRESENT AND STIPULATE TO THE COURT AS FOLLOWS:**

A.    On October 1, 2018, Debtor closed on a secured term loan agreement (the "Loan Agreement") with Goldman Sachs Mortgage, as lender, in the principal amount of $259 million (the "Prepetition Loan").  The Prepetition Loan is secured by, among other things, first mortgages and deeds of trust (with all related documents, the "Prepetition Loan Documents") in Debtor's fee simple interest in 39 office, retail, and industrial properties located in Houston, Dallas/Ft. Worth, and San Antonio Texas, as well as all assets owned by Debtor, tangible or intangible, and all proceeds thereof (the "Prepetition Liens").  The mortgages were securitized and sold into the commercial mortgage-backed securities market.  KeyBank National Association ("KeyBank") acts as Master Servicer and Special Servicer for U.S. Bank National Association ("US Bank"), solely in its capacity as Trustee for the benefit of the Holders of the GS Mortgage Securities Trust 2018-

HART, Commercial Mortgage Pass-Through Certificates, Series 2018-HART and the RR Interest Owner ("US Bank", and collectively with KeyBank and the beneficial interest holders of the Prepetition Loan, the "Lender").

B.      The Loan Agreement had an initial maturity of October 9, 2020, with three, optional one-year extension options. On October 9, 2022, Debtor exercised the third and final one-year maturity date extension agreement to extend the Maturity Date to October 9, 2023 (the "Maturity Date").

C.      On October 19, 2022, Debtor received notice of an Event of Default (as defined under the Loan Agreement) from KeyBank.   The default arose from Debtor's alleged noncompliance with the Loan Agreement's insurance requirements relating to a single property, which has since been sold. The Event of Default was previously waived for the sole purpose of exercising the final one-year extension option to the Loan Agreement.   The Event of Default triggered cash management provisions that have been in effect since November 2022, restricting Debtor's access to tenant receipts from the Properties, which instead are managed pursuant to a cash management arrangement under that certain Cash Management Agreement dated October 1, 2018.   Pursuant to the Cash Management Agreement, Debtor's collection of all revenues from its real estate properties are swept from its lockbox account into a cash trap account (the "Cash Trap Account") and allocated in accordance with a budget.   The Cash Trap Account is held in Debtor's name at KeyBank but was set up for the benefit of Lender under the Loan Agreement.   As such, Debtor does not have control over or the ability to access the funds in the Cash Trap Account except to the extent of its rights under the Cash Management Agreement.   Accordingly, all cash held by Debtor constitutes the cash collateral of the Lender (the "Cash Collateral," and collectively with the Prepetition Liens, the "Prepetition Collateral").

D.     The Prepetition Loan has a current outstanding balance of approximately $217 million (the "Prepetition Secured Obligation").  Lender is the current holder of the Prepetition Loan and the documents evidencing the Prepetition Loan and the documents securing the Prepetition Loan.

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

1.     Objections. Any objections to the Motion with respect to Debtor's request to use Cash Collateral that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.  This Order shall become effective immediately upon its entry.

2.     Petition Date.  Beginning on September 13, 2023 (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court.

3.     Jurisdiction. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

4.     Notice. Sufficient and adequate notice of the Motion and the Final Hearing has been given to prevent immediate and irreparable harm pursuant to Bankruptcy Rules 2002, 4001, 6004, 9006, and 9014 and the Local Bankruptcy Rules, and as required by sections 102, 105, 361, 362, 363, and 507 of the Bankruptcy Code. Other than the notice provided for herein, no further notice of the relief sought in the Motion is necessary.

5.     Validity of Liens and Claims. Subject to Paragraph 11 below, the Prepetition Secured Obligation is (i) legal, valid, binding, and enforceable against Debtor and (ii) not subject to any contest, objection, recoupment, defense, counterclaim, offset, claim of subordination, claim of re-characterization, claim of avoidance of any nature, attack, or challenge under the Bankruptcy Code, other applicable non-bankruptcy law, equity or otherwise. The Prepetition Liens on the

Prepetition Collateral were granted to the Lender for fair consideration and reasonably equivalent value and were granted contemporaneously with the making of the loans and financial accommodations secured thereby.

6.     Cash Collateral. For purposes of this Order, the term "Cash Collateral" shall be deemed to include, without limitation, all of Debtor's "Cash Collateral" as definedunder section 363 of the Bankruptcy Code.  Without limiting the generality of the foregoing, Cash Collateral includes all of the cash proceeds of the Prepetition Collateral in which the Lender has an interest, whether such interest existed as of the Petition Date or arises pursuant to the Order, any other order of the Court, applicable law, or otherwise.  For the avoidance of doubt, pursuant to the Prepetition Loan Documents and section 552(b) of the Bankruptcy Code, the Lender has a valid, duly perfected, first-priority lien upon and security interest in and to all of the cash of Debtor derived from the Prepetition Liens, whether obtained on, prior to, or after the Petition Date (which liens and security interests constitute and are included in the term "Prepetition Liens" as used herein), subject to Paragraph 11 below.  The "equities of the case" exception of section 552(b) of the Bankruptcy Code shall not apply.

7.     Adequate Protection for the Lender.  Subject to the Challenge rights set forth in Paragraph 11 below, the  Lender is entitled, pursuant to Bankruptcy Code sections 361, 363(c)(2), and 363(e), until the indefeasible repayment in full of the Prepetition Secured Obligation, to adequate protection of their interests in the Prepetition Collateral as a result of (i) authorizing the use of Cash Collateral, (ii) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, (iii) any use, sale, lease, depreciation, or disposition of Prepetition Collateral during this Chapter 11 Case, (iv) any grant of a lien on their interests in the Prepetition Collateral permitted by this Order and (v) otherwise, pursuant to sections 105(a), 361(a), 363(c) and 363(e)

of the Bankruptcy Code.  The Lender is hereby granted, solely to the extent of the diminution in the value of the Prepetition Liens in the Prepetition Collateral from and after the Petition Date, all of the following:

(a)    <u>Adequate Protection Payments</u>.  Lender shall be entitled to all payments to which it is entitled under the documents governing the Secured Obligations including, without limitation, Interest at the Default rate and reasonable fees and costs.  Debtor shall make, continue to maintain and operate the Prepetition Collateral in the ordinary course of business pursuant to the Budget (as defined below) and in accordance with the documents evidencing the Prepetition Secured Obligation, including, but not limited to, the payment of associated wages, management fees, taxes, insurance costs, necessary capital expenditures, tenant allowances, interest, fees and costs incurred by the Lender (or KeyBank), other operational expenses incurred, and subject to and solely as provided for in the Budget, payments due and to become due Lender under the documents evidencing the Prepetition Secured Obligation (collectively, the "<u>Adequate Protection Payments</u>"). Debtor shall segregate all rent and revenues received from tenants at or from the Prepetition Collateral consistent with prior practices into the Cash Trap Account, and all other proceeds from operation of the Prepetition Collateral. The debt service payments listed in the Budget are estimates in that the applicable interest rate is a floating rate. Debtor shall make payments of the actual debt service amounts due as calculated pursuant to the documents governing the Secured Obligations.

(b)    <u>Lender Fees and Costs</u>:  The Debtor is authorized and directed to pay, without further Court order, the reasonable and documented fees and expenses incurred by professionals or consultants retained by the Lender, whether incurred before or after the

Petition Date or in connection with the Bankruptcy Case (in any capacity), including the reasonable and documented out-of-pocket expenses of the Lender and its professionals. The Lender's professionals shall not be required to file motions or applications with respect to professional fees, provided, however that any time such professionals seek payment of fees and expenses from the Debtor, each professional shall provide summary copies of its fee and expense statements or invoices (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine) to counsel to the U.S. Trustee and counsel to the Committee (collectively, the "Fee Notice Parties"). If no objection to payment of the requested fees are made, in writing, by any of the Fee Notice Parties within ten (10) calendar days after delivery of such invoices (the "Fee Objection Period"), then such invoice shall be promptly paid, without further order of, or application to, the Court or notice to any other party, and, in any case, within five (5) calendar days following the expiration of the Fee Objection Period. For the avoidance of doubt, the provisions of such invoices shall not constitute a waiver of attorney-client privilege or any benefits of the attorney work product doctrine. If within the Fee Objection Period, a Fee Notice Party sends to the affected professional and files with the Court a written objection to such invoice, then only the disputed portion of such fee shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and any undisputed portion shall be paid within five (5) calendar days following the expiration of the Fee Objection Period.

(c)    <u>Net Proceeds of Asset Sales</u>:  As additional adequate protection, the Debtor shall pay the agreed (Lender, Debtor and Committee) net proceeds of any asset sales to Lender for application to the Prepetition Secured Obligations.  The Liquidation Fee due to Lender upon sale of Debtor's properties shall be deducted from the net sale proceeds of each sale of a property of the Debtor. Such Liquidation Fee is 0.50% and shall be calculated in accordance with the Trust and Servicing Agreement under which the Secured Obligations are being serviced.  The Committee will work in good faith and upon reasonable notice to review and confirm the Lender's Prepetition Liens with respect to the Prepetition Collateral being sold, notwithstanding the days remaining in the Challenge Period.  Upon written confirmation from the Committee, the net proceeds may be released to the Lender.  Pending the Committee's review (and approval, if warranted), net sale proceeds will be held in the Restricted Cash Flow Account pending agreement of the parties or further order of this Court.  This Court will adjudicate any dispute over the release of proceeds to the Lender.

(d)    <u>Adequate Protection Liens</u>.  Subject to the Challenge rights set forth in Paragraph 11 below, the Lender shall receive, as adequate protection to the extent of the diminution in value of its asserted perfected interests in the Cash Collateral, a replacement lien in the pre and post-petition property of Debtor (collectively, the "<u>Adequate Protection Liens</u>"), whether now existing or hereafter acquired or arising, and wherever located (the "<u>Postpetition Collateral</u>," and the collateral subject to such Adequate Protection Liens, the "<u>Replacement Collateral</u>").  The Adequate Protection Liens shall (i) be supplemental to and in addition to the Prepetition Liens, (ii) subject to the Carve-Out, attach with the same priority as enjoyed by the Prepetition Liens immediately prior to the Petition Date, (iii) be

8

deemed to be legal, valid, binding, enforceable, perfected liens, not subject to subordination or avoidance, for all purposes in the Chapter 11 Case, (iv) subject to the Carve-Out, not be subordinated or be made *pari passu* with any other lien under sections 363 and 364 of the Bankruptcy Code or otherwise and (v) be deemed to be perfected automatically upon the entry of this Order, without the necessity of filing of any UCC-1 financing statement, state or federal notice, mortgage or other similar instrument or document in any state or public record or office and without the necessity of taking possession or control of any collateral. Notwithstanding the foregoing, Adequate Protection Liens shall not attach to actions under Chapter 5 of the Bankruptcy Code and commercial tort actions.

(e)    <u>Superpriority Claims</u>.  Upon entry of this Order, the Lender, subject to the Carve-Out, and subject to the Challenge Rights set forth in Paragraph 11 below, shall be deemed to have an allowed superpriority adequate protection claim under Section 507(b) of the Bankruptcy Code to the extent the Adequate Protection Liens are shown to be inadequate to protect the Lender against the diminution in value of the Prepetition Collateral, including the Cash Collateral, resulting from Debtor's use of Cash Collateral pursuant to this Order (the "<u>Superpriority Claims</u>," and collectively with the Adequate Protection Payments and Adequate Protection Liens, the "<u>Adequate Protection Obligations</u>").

(f)    <u>Priority</u>.  Subject to the Carve-Out and the Challenge rights set forth in Paragraph 11 below, the Adequate Protection Obligations shall have priority over all liens and administrative expenses in this Chapter 11 Case of the kind specified in section 507(b) of the Bankruptcy Code, including, to the extent allowable, administrative expense of the kinds specified in or arising or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a),

503(b), 506(c) (subject to and effective upon entry of the Final Order granting such relief), 507(a), 507(b), 546(c), 552, 726 and 1114 of the Bankruptcy Code.

(g)    <u>No Surcharge or Marshalling</u>.  In consideration of the consent provided by Lender hereunder with respect to Debtor's use of the Cash Collateral in accordance with the Budget: (i) in no event shall any costs or expenses of administration of the Chapter 11 Case, or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings, be imposed upon Lender pursuant to sections 506(c) and/or 105(a) of the Bankruptcy Code, or any similar principle of law, or otherwise, and any and all such rights and claims are hereby waived; and (ii) in no event shall Lender be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Prepetition Collateral or the Replacement Collateral.

(h)    <u>Reservations</u>. The Lender reserves the right, upon notice and a hearing, to argue for and demand additional adequate protection.

8.    <u>Budget, Reporting Information and Access:</u>

(a)    <u>Budget</u>.  Debtor is hereby authorized, pursuant to sections 361 and 363 of the Bankruptcy Code, to use the Cash Collateral only through December 16, 2023 in accordance with the attached budget (the "Budget," a copy of which is attached hereto as Exhibit A), subject to (i) the right of the Debtor to pay any budgeted expense in any week following the budgeted week for such expense and (ii) a permitted variance of 10%, each in the aggregate, for (x) Property Operating Expenses, (y) Property Manager Fees & Reimbursements and (z) Other Expenses ((i) & (ii), collectively, the "<u>Permitted Variance</u>"),[3] which authorization may not be extended other than on the express written

---

[3]    The Sales Proceeds Holdback line item shall not be used for Budget compliance calculations.

consent of Lender or order of the Court.  Lender shall fund the Unrestricted Cash Flow Account from the Restricted Cash Flow Account as budgeted.

(b)      <u>Budget and Related Reporting</u>.  Debtor shall not make any disbursements other than those set forth in the Budget.  Debtor shall furnish Lender and the Committee with a weekly, line to line, actual-to-budget reporting each week (the "Variance Report") for the prior week.  In addition, Debtor shall promptly provide to Lender (and in no event later than five (5) business days of written request) all other financial information reasonably requested by Lender or its attorneys or other representatives, including, but not limited to, balance sheets, income statements, tax returns and information regarding Debtor's assets, liabilities, operations, and financial affairs.  The foregoing reporting requirements shall supplement and be in addition to those financial reporting requirements contained in the documents evidencing the Prepetition Secured Obligations, all of which shall remain in full force and effect during the course of the Bankruptcy Case, and with which Debtor shall comply during the course of the Bankruptcy Case.  As additional adequate protection, Debtor shall promptly (but in no event later than five (5) business days following written request to the Debtor) provide to Lender and representatives, agents, third party contractors (including, without limitation, inspectors and appraisers) and/or employees of Lender prompt and reasonable access to the Property, for the purpose of inspecting same, and prompt and reasonable access to Debtor's records, and shall otherwise fully cooperate, consult with, and provide to such persons all such non-privileged information and information not subject to a binding confidentiality agreement as they may reasonably request.

(c)      Budget Amendments.  The Debtor, Lender and Committee may amend the Budget by agreement, with such Budget to be filed with the Bankruptcy Court.  Otherwise, amendments to the Budget may be made by Order of this Court upon notice and a hearing.

(d)      Committee Rights.  The Debtor continues to work to provide requested financial information to the Committee regarding the Budget.  Entry of this Order shall be without prejudice to the Committee's right to seek modifications to the Budget, either upon agreement of the Lender and Debtor, or upon notice and a hearing.

9.      Compliance with Loan Documents.  Unless modified specifically addressed by this Order, and with respect to payments to the Lender, then only in accordance with the Budget, Debtor shall comply with all requirements of the documents evidencing the Prepetition Secured Obligation.

10.      Carve-Out.  The Prepetition Secured Obligation and all Prepetition Collateral and Postpetition Collateral shall, in all instances, be subject to the payment of the Carve-Out, but only to the extent there are not sufficient unencumbered funds in the Debtor's estate to pay such amounts at the time payment is required to be made.  As used in this Order, the "Carve-Out" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (the "U.S. Trustee Fees") (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $25,000 in the aggregate incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed by this Court, unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by Debtor pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Committee (the "Committee Professionals" and,

together with the Debtor Professionals, the "Professional Persons") at any time before delivery by the Lender of a Carve-Out Trigger Notice, whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $100,000 incurred after delivery by the Lender of the Carve-Out Trigger Notice, to the extent allowed by this Court (the amounts set forth in this clause (iv) being the "Post Carve-Out Trigger Notice Cap").  For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Lender to counsel to Debtor, the U.S. Trustee, and counsel to the Committee, which notice may be delivered following the occurrence of an Event of Default (other than an Event of Default that existed as of the Petition Date), stating that the Post Carve-Out Trigger Notice Cap has been invoked.  Pending the delivery of a Carve-Out Trigger Notice, the Debtor is authorized to fund, on a weekly basis, to a trust account held by a Debtor Professional (the "Professional Fee Escrow"), to the extent not previously funded into the Professional Fee Escrow, an amount equal to the Professional Fees budgeted for the prior week, without variance, as set forth in the Budget.  The amounts in the Professional Fee Escrow do not constitute a cap on the Allowed Professional Fees included in the Carve-Out.  Following the delivery of a Carve-Out Trigger Notice, to the extent there are not sufficient unencumbered funds in the Debtor's estate to pay such amounts at the time payment is required to be made, statutory U.S. Trustee Fees covered by this Carve-Out shall be paid by Debtor from the proceeds of the Prepetition Collateral, including Cash Collateral, the Postpetition Collateral, the Replacement Collateral, and Allowed Professional Fees covered by this Carve-Out shall be paid by Debtor first from the Professional Fee Escrow, then from the proceeds of the Prepetition Collateral, including Cash Collateral, the Postpetition Collateral, and the Replacement Collateral.

13

11.    <u>Reservation of Certain Committee and Third-Party Rights and Bar of Challenges and Claims</u>.

(a)    The stipulations, findings, admissions and waivers contained in this Order, including, without limitation, the "Debtor's Stipulations," shall be binding upon Debtor and any of its respective successors in all circumstances and for all purposes, and Debtor is deemed to have irrevocably waived and relinquished all Challenges (as defined below) as of the Petition Date.  The stipulations, findings admissions and waivers contained in this Order, including, without limitation, Debtor's Stipulations, shall be binding upon all other parties in interest, including, without limitation, the Committee and any other person acting on behalf of Debtor's estate, unless and to the extent that a party in interest with proper standing granted by order of the Court (or other court of competent jurisdiction) has filed an adversary proceeding or contested matter (i) before the earlier of (a) the date on which this Court enters an order confirming a chapter 11 plan in the Case; and (b) seventy-five (75) calendar days after entry of the this Order; (in each case, a "Challenge Period" and the date of expiration of each Challenge Period being a "Challenge Period Termination Date"); provided, however, that if, prior to the end of the Challenge Period, the Case converts to chapter 7, or if a chapter 11 trustee is appointed, the chapter 7 or chapter 11 trustee shall have the later of the remaining Challenge Period or fourteen (14) days, (i) to seek to avoid, object to, or otherwise challenge the findings of this Order or the Debtor's Stipulations, including without limitation those regarding: (a) the validity, enforceability, extent, priority, or perfection of the security interests and liens of the Lender; (b) the validity, enforceability, allowability, priority, secured status, or amount of the Prepetition Obligation; or (c) any of the other Debtor's Stipulations (any such claim, a "Challenge");

and (ii) in which the Court enters a final order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter, but only to the extent so sustained.  Upon the expiration of the Challenge Period Termination Date without the filing of a Challenge (or to the extent a Challenge is filed and overruled): (a) any and all such Challenges by any party (including, without limitation, the Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed or elected in the Chapter 11 Case, and any chapter 7 trustee and/or examiner or other estate representative appointed or elected in the Chapter 11 Case or, if the Chapter 11 Case is converted to chapter 7, such successor case (the "Successor Case") shall be deemed to be forever barred; (b) the Prepetition Obligation shall constitute allowed secured claims, not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization, defense, or avoidance for all purposes in the Chapter 11 Case or any Successor Case; (c) the liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding and perfected, not subject to reduction, recharacterization, subordination, or avoidance; and (d) all of Debtor's stipulations and admissions contained in this Order, the Interim Order and all other waivers, releases, affirmations, and other stipulations as to the amount, priority, extent, and validity of the Lender's claims, liens, and security interests contained in this Order and the Interim Order shall be of full force and effect and forever binding upon Debtor, Debtor's estate, and all creditors, interest holders, and other parties in interest in the Chapter 11 Case or any Successor Case.  If any such adversary proceeding or contested matter is timely filed and remains pending and the Chapter 11 Case is converted to chapter 7, the chapter 7 trustee may continue to prosecute such adversary proceeding or contested matter on behalf of Debtor's estate.  Further, if any

such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in this Order and the Interim Order, including Debtor's Stipulations, shall nonetheless remain binding and preclusive on the Committee and any other person or entity, except to the extent that such stipulations and admissions were expressly challenged in such adversary proceeding or contested matter prior to the Challenge Period Termination Date.

(b)     For the avoidance of doubt, and notwithstanding anything herein to the contrary, Challenges may be filed on a property-by-property basis prior to the Challenge Period Termination Date to the extent any such Challenge regarding the relevant Prepetition Lien has not already been confirmed by the Committee pursuant to Paragraph 7(c).

(c)     Standing.  Solely with respect to the Lender, upon entry of this Order, the Committee shall have complete standing and authority to pursue any cause of action belonging to the Debtor or its estate against Lender (if any), including, without limitation, any Challenges. Other than as granted in the immediately preceding sentence, nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee, standing or authority to pursue any other cause of action belonging to Debtor or its estate.  To the extent a motion seeking standing to commence a Challenge is timely filed and attaches a draft complaint setting forth the legal and factual bases of the proposed Challenge prior to the expiration of the Challenge Period and the Challenge Period expires before such motion is ruled upon by this Court, the Challenge Period will be tolled solely with respect to the Challenges asserted in the draft complaint until three business days from the entry of an order granting the motion for standing to prosecute such

Challenge explicitly set forth in the draft complaint and permitted by the Court. If standing is denied by the Court, the Challenge Period shall be deemed to have expired with respect to such Challenges. The ability of the Committee or any other person to initiate a Challenge shall not be limited solely because the Debtor is a limited liability company.

12.     <u>Limited Modification of Automatic Stay</u>. The Automatic Stay is hereby modified solely to the extent necessary to permit Debtor and Lender to commit all acts and take all actions necessary to implement this Order and all acts, actions, and transfers contemplated herein.

13.     <u>No Third-Party Rights</u>. Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third-party, creditor, equity holder or any direct, indirect, third-party or incidental beneficiary. Nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

14.     <u>No Waiver of Prepetition Credit Agreement Provisions; Reservation of Rights</u>. Except as otherwise specifically provided in this Order, nothing contained in this Order shall be deemed a waiver or constitute a consent to the modification of any provision contained in the Prepetition Loan Documents by the Lender, including, but not limited to, the incurrence or issuance of any indebtedness by Debtor, the incurrence of any lien in connection therewith, or the making of any payment by Debtor. Further, notwithstanding anything herein to the contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the rights of the Lender to seek any other or supplemental relief in respect of Debtor, (b) the rights of the Lender under the Prepetition Loan Documents, the Bankruptcy Code or other applicable law, or (c) any rights, claims or privileges (whether legal, equitable or otherwise) of the Lender. Entry of this Order likewise does not constitute a waiver, expressly or implicitly, of

Debtor's or any other party-in-interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence.

15.    <u>Binding Effect</u>.  The provisions of this Order shall be binding upon and inure to the benefit of the Lender, Debtor, any trustee or statutory committee appointed in this Chapter 11 Case, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of Debtor or with respect to the property of the estate of Debtor).  To the extent permitted by applicable law, this Order shall bind any trustee hereafter appointed for the estate of Debtor, whether in the Chapter 11 Case or, in the event of the conversion of the Chapter 11 Case, to any liquidation under chapter 7 of the Bankruptcy Code.  Such binding effect is an integral part of this Order.

16.    <u>Survival of Order</u>.  The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order that may be entered (i) confirming any chapter 11 plan in the Chapter 11 Case; (ii) converting any the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code; (iii) dismissing the Chapter 11 Case; or (iv) withdrawing of the reference of the Chapter 11 Case from this Court, and the terms and provisions of this Interim Order as well as the Adequate Protection Liens and Superpriority Claims granted pursuant to this Order shall continue in full force and effect notwithstanding the entry of any such order.  Such claims and liens shall maintain their priority as provided by this Order, and to the maximum extent permitted by law, until all of the Prepetition Secured Obligations and the Adequate Protection Obligations are indefeasibly paid in full and discharged.

17.    <u>Effect of Dismissal of Chapter 11 Case</u>.  If the Chapter 11 Case is dismissed, converted or substantively consolidated, then neither the entry of this Order nor the dismissal,

conversion or substantive consolidation of the Chapter 11 Case shall affect the rights of the Lender under their respective Prepetition Loan Documents or this Order, and all of the respective rights and remedies thereunder of the Lender shall remain in full force and effect as if the Chapter 11 Case had not been dismissed, converted, or substantively consolidated.  If an order dismissing the Chapter 11 Case is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that: (i) those Prepetition Liens, Adequate Protection Liens and Superpriority Claims granted to and conferred upon the Lender, as applicable, shall continue in full force and effect and shall maintain their priorities as provided in this Order until all Prepetition Secured Obligations shall have been paid and satisfied in full (and that such Superpriority Claims shall, notwithstanding such dismissal, remain binding on all interested parties); and (iii) to the greatest extent permitted by permissible law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the Prepetition Liens, Adequate Protection Liens, and Superpriority Claims referred to herein

18.    <u>No Waiver of Rights</u>.  Notwithstanding anything to the contrary herein, this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair:  (a) any of the rights of the Lender under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the right to (i) request additional adequate protection of its interests or relief from or modification of the automatic stay extant under section 362 of the Bankruptcy Code, (ii) request conversion of any of the Chapter 11 Case to chapter 7, (iii) request dismissal of the Chapter 11 Case, (iv) contest the jurisdiction or venue of this Court with respect to the Chapter 11 Case and/or (v) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan; or (b) any rights, claims, or privileges (whether legal, equitable, or otherwise) of any of the Lender.  The rights and obligations of Debtor and the rights,

claims, security interests, liens, and priorities of Lender arising under this Order are in addition to, and not in lieu or substitution of, the rights, obligations, claims, security interests, liens, and priorities of the Lender granted under their respective loan documents.

19.     <u>Immediate Effectiveness of Order</u>. This Order, and the findings of fact and conclusions of law contained herein, shall be effective as of the date of the signature by the Court, and may be relied upon by the Lender. To the extent any findings may constitute conclusions, and vice versa, they are hereby deemed as such. Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order.

20.     <u>Default</u>.  An Event of Default shall be deemed to have occurred under this Order, upon the occurrence of any one or more of the following:

(a)     The termination, expiration, lapsing or, unless approved in writing by the Lender, reduction of insurance coverage on the Collateral;

(b)     Use of the Cash Collateral to pay any amount not contemplated by the Budget and in a manner consistent with this Order without prior Lender consent or Court approval;

(c)     Debtor fails to reimburse Lender for any advances made by Lender to pay any obligations reimbursable to Lender under the documents evidencing the Prepetition Secured Obligation; and/or

(d)     Upon Lender's provision of written notice of Debtor's failure to perform in accordance with any of the terms and conditions of this Order (other than as referenced in subsections (a), (b) and (c) immediately above), unless such failure to perform is cured no later than five (5) business days after the date of such written notice.

4872-1086-9383, v. 1

21.     <u>Liens of Texas Taxing Authorities</u>.  Notwithstanding any provisions of the Motion or this Final Order, the statutory liens currently held by the Texas Taxing Authorities,[4] or which shall arise during the course of this case pursuant to applicable non-bankruptcy law, for prepetition and postpetition taxes (the "<u>Tax Liens</u>") shall neither be primed by nor subordinated to any liens granted thereby or pursuant to this Final Order to the extent such Tax Liens are valid, senior, perfected, and unavoidable, and all parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by the Texas Taxing Authorities are fully preserved.

22.     <u>No Third Party Liens</u>.  Other than Tax Liens, so long as this Order is in effect, Debtor shall not grant any entity, other than Lender, a security interest in or lien on any of Debtor's assets, including the Collateral, the Cash Collateral, and all other assets subject to the Liens of Lender, including the Replacement Liens provided for herein, without the prior express consent of Lender.

23.     <u>Term of Effectiveness of this Order</u>. Unless Lender otherwise agrees in writing, the termination of this Order and Debtor's right to use the Cash Collateral pursuant hereto shall terminate on the earlier of the following dates (the "<u>Termination Date</u>"):

(a)     the date an order is entered by the Court granting a motion to convert the Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code;

---

[4]     Texas Taxing Authorities are defined as Bexar County, Cypress-Fairbanks Independent School District, Dallas County, Harris County ESD #09, Harris County ESD #11, Harris County ESD #12, Harris County ESD #16, Harris County ESD #28, Harris County ESD #29, Harris County ESD #48, City of Houston, Houston Community College System, Houston Independent School District,  Katy Independent School District, Lone Star College System, Tarrant County, Harris County Municipal Utility District #81, Alief Independent School District, Mission Bend Municipal Utility District #1, Westchase District, Klein Independent School District, Harris County Water Control And Improvement District #116, Galena Park Independent School District, Harris County Municipal Utility District #185, Spring Independent School District, Northwest Harris County MUD 21, Carrollton-Farmers Branch Independent School District, Plano Independent School District, Harris County Fresh Water Supply District 51 and Richardson Independent School District.

(b)      the date an order is entered by the Court granting Lender, or any other creditor, relief from the automatic stay in order to initiate or continue foreclosure, seizure, repossession, or other proceeding against the Collateral;

(c)      the date an order is entered by the Court granting a motion to dismiss the Bankruptcy Case, except to the extent Lender and Debtor consent to such dismissal;

(d)      the date an order is entered by the Court granting a motion to appoint a trustee or an examiner with expanded powers in the Bankruptcy Case;

(e)      the date on which this Order is reversed, revoked, stayed, rescinded, or vacated;

(f)      the date on which Debtor shall grant any security interest in or lien on the assets or property of Debtor or its estate senior or equal to Lender's Liens, other than the security interests and liens created in favor of Lender pursuant to this Order;

(g)      the date on which Debtor, any Guarantor, or any other person or entity in control of the Debtor or controlled by the Debtor,  file any objection in the Bankruptcy Case to the validity, amount, allocability, unavoidability, perfection, or priority of the liens securing the Prepetition Loan;

(h)      the date on which the Court confirms a plan of reorganization that impairs (as defined in section 1124 of the Bankruptcy Code) Lender's rights under the Loan Documents;

(i)      the date on which Debtor and Lender agree in writing to such termination; and

(j)      the date five (5) business days after Lender provides notice to Debtor, the U.S. Trustee, and any Committee appointed in the Bankruptcy Case of Lender's intent to

terminate its consent to use of Cash Collateral pursuant to this Order on account of the occurrence of any Event of Default (as defined herein), unless such Event of Default is expressly and specifically waived in writing by Lender or has been cured prior to the expiration of such five (5) business day notice period.  In the event of any disagreement or dispute between Debtor and Lender as to whether an Event of Default has occurred hereunder, Debtor may seek authority on an expedited basis to continue to use the Cash Collateral on the terms provided in this Order until such time as the Court resolves such disagreement or dispute.

       (k)      January 5, 2024.

24.     Upon the Termination Date, Lender objects to any subsequent use of the Cash Collateral, and Debtor's authorization to use the Cash Collateral for any purpose is terminated.

25.     <u>Retention of Jurisdiction</u>.  The Court hereby expressly retains jurisdiction to enforce the terms of this Order and to adjudicate any and all disputes in connection herewith by motion and without necessity of an adversary proceeding.

26.     <u>Headings</u>. All headings in this Order are descriptive and for reference only, and do not have separate meaning or change any terms therein.

**Dated: October 16th, 2023**
**Wilmington, Delaware**

                      **MARY F. WALRATH**
                      **UNITED STATES BANKRUPTCY JUDGE**