# UNITED STATES BANKRUPTCY COURT FOR THE
# DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Hartman SPE, LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 23-11452 (MFW)<br><br>Objections Due: November 3, 2023 at 4:00 p.m. (et)<br>Hearing Date: December 5, 2023 at 10:30 a.m. (et) |

### APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF FOR AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF PHOENIX MANAGEMENT SERVICES, LLC AS FINANCIAL ADVISOR, EFFECTIVE AS OF OCTOBER 2, 2023

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 case of the above-captioned debtor and debtor in possession (collectively, the "Debtor") hereby submits this application (the "Application") for entry of an order pursuant to sections 328 and 1103 of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the employment and retention of Phoenix Management Services, LLC, a wholly owned subsidiary of J.S. Held, LLC ("J.S. Held"), together with employees of its affiliates and independent contractors (collectively, "Phoenix"), as financial advisor to the Committee, effective as of October 2, 2023. In support of this Application, the Committee relies on the declaration of Michael Jacoby (the "Jacoby Declaration"), attached hereto as **Exhibit B** incorporated herein by reference, and respectfully states as follows:

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is Hartman SPE, LLC (7400). The Debtor's principal place of business and service address is 2909 Hillcroft, Suite 420, Houston, TX 77057. Copies of pleadings may be obtained from the website of the United States Bankruptcy Court for the District of Delaware www.deb.uscourts.gov or from the Debtor's Claim Agent's website https://dm.epiq11.com/HartmanSPE.

**JURISDICTION**

1. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Committee confirms its consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. The statutory bases for the relief requested herein are Bankruptcy Code sections 328 and 1103, Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

**BACKGROUND**

3. On September 13, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court") commencing this case (the "Chapter 11 Case"). No trustee or examiner has been appointed in the Chapter 11 Case.

4. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to manage its properties and operate its business as debtor in possession.

5. On September 22, 2023, the Office of the United States Trustee for the District of Delaware appointed the following three (3) members to the Committee: (i) Engie Resources, LLC;

(ii) Pritchard Industries Southwest, LLC; and (iii) Amity Construction Co. [D.I. No. 56]. On September 25, 2023, the Committee selected Fox to serve as its counsel, subject to the Court's approval.

6. On October 2, 2023, the Committee subsequently selected Phoenix to serve as its financial advisor in this Chapter 11 Case.

7. Information regarding the Debtor's history, business operations, capital structure, primary secured indebtedness, and the events leading up to the commencement of this Chapter 11 Case can be found in the *Declaration of David Wheeler in Support of the Debtor's Chapter 11 Petition and First Day Pleadings* [D.I. No. 3].

## RELIEF REQUESTED

8. By this Application, the Committee requests entry of an order, in the form attached hereto as **Exhibit A**, pursuant to Bankruptcy Code sections 328 and 1103(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a) approving the employment and retention of Phoenix as financial advisor to the Committee in this chapter 11 case.

9. The Committee requests that Phoenix's retention be approved effective as of October 2, 2023.

10. The Committee is familiar with the professional standing and reputation of Phoenix. The Committee understands and recognizes that Phoenix has a wealth of experience in providing financial advisory services in restructurings and reorganizations and enjoys an excellent reputation for services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States.

11. The services of Phoenix are deemed necessary to enable the Committee to assess and monitor the efforts of the Debtor and its professional advisors to maximize the value of its

estate and to reorganize successfully. Further, Phoenix is well qualified and able to represent the Committee in a cost-effective, efficient, and timely manner.

12. During this this chapter 11 case, Phoenix may use employees of J.S. Held who have a particular expertise in the Debtor's industry. Phoenix will charge the same rates that J.S. Held charges, consistent with the hourly rates identified below; seek reimbursement for actual costs only; and ensure that J.S. Held is subject to the same conflicts checks as required for Phoenix.

## SCOPE OF SERVICES

13. The Committee and Phoenix arrived at a mutual agreement as to the substantial efforts that will be required in this engagement as described herein. Subject to further order of the Court, Phoenix will provide such advisory services to the Committee and its legal advisors as Phoenix and the Committee deem appropriate and feasible over course of this chapter 11 case, including but not limited to the following:

(a) Assist in the assessment and monitoring of cash flow budgets, liquidity and operating results;

(b) Assist in the review of Court disclosures, including the Schedules of Assets and Liabilities, the Statements of Financial Affairs, Monthly Operating Reports, and Periodic Reports;

(c) Assist in the review of the Debtor's cost/benefit evaluations with respect to the assumption or rejection of executory contracts and/or unexpired leases;

(d) Assist in the analysis of any assets and liabilities and any proposed transactions for which Court approval is sought;

(e) Attend meetings with the Debtor, the Debtor's lenders and creditors, the Committee and any other official committees organized in this chapter 11 case, the U.S. Trustee, other parties in interest, and professionals hired by the same, as requested;

(f) Assist in the review of any tax issues;

(g) Assist in the investigation and pursuit of causes of actions;

(h) Assist in the review of the claims reconciliation and estimation process;

  (i) Assist in the review of the sales or dispositions of the Debtor's assets;

  (j) Assist in the review and/or preparation of information and analysis necessary for the confirmation of a plan in this chapter 11 case; and

  (k) Render such other general business consulting or such other assistance as the Committee or its counsel may deem necessary, consistent with the role of a financial advisor and not duplicative of services provided by other professionals in this chapter 11 case.

  14. For Phoenix to perform the services set forth above, it will be necessary for Phoenix personnel to have access to certain books, records and reports of the Debtor and to have discussions with the Debtor's personnel. Accordingly, the Committee understands that, to the extent Phoenix is not given the Debtor's cooperation or access to the Debtor's personnel, books and records and other sources of data, Phoenix's ability to provide the services set forth above will be limited.

  15. Because of the limitations in this proposed retention, the depth of Phoenix's analysis and verification of the data are limited. It is understood by the Committee that Phoenix is not being requested to perform an audit and that Phoenix will rely on the accuracy and validity of the data disclosed to Phoenix or supplied to Phoenix by, or on behalf of, employees and representatives of the Debtor or the Committee. Phoenix is not updating, nor is Phoenix under any obligation to update, data submitted to Phoenix or reviewing any other areas unless specifically requested by the Committee.

  16. The Committee understands that the services to be rendered may include a review and assessment of projections and other forward-looking statements and that numerous factors can affect the actual results of the Debtor's operations, which may materially and adversely differ from those projections and other forward-looking statements.

  17. All advice (written or oral) provided by Phoenix to the Committee in connection with the services provided herein is intended solely for the benefit and use of the Committee.

18. In the provision of services to the Committee, it is possible that the Committee and third parties will provide to Phoenix certain personally identifiable information or other personal data regarding employees, creditors and other constituents, the processing or transfer of which may be subject to Data Protection Laws.  "Data Protection Laws" means all applicable U.S. and foreign national, federal, state and/or local laws, rules, regulations or other binding instruments in relation to the processing or protection of personal data, including, but not limited to, the EU General Data Protection Regulation (GDPR). In furtherance thereof, the Committee acknowledges and agrees: it is expected that such information (and work product containing such information) will be transferred by Phoenix, on behalf of the Committee, to third parties including other agents and professionals of the Committee acting within this matter (i.e., the Committee's counsel and other advisors) as well as, at the Committee's direction, other constituents in the Debtor's case, including but not limited to creditors and their representatives as well as any applicable judicial, regulatory or governmental bodies; and, that Phoenix's transfer of such data directly to third parties (rather than by the Committee to a third party) is for the Committee's convenience and such transfers shall always be deemed to be on the Committee's behalf.  Without limiting the foregoing, each party agrees to comply with Data Protection Laws in connection with the services being provided by Phoenix to the Committee.

19. Because Phoenix and its professional service provider affiliates, including J.S. Held, comprise a consulting firm that serves clients on an international basis in numerous cases, both in and out of court, it is possible that Phoenix may have rendered or will render services to, or have business associations with, other entities or people which had, have or may have relationships with the Committee members or other interested parties.  Neither Phoenix nor J.S. Held will be prevented or restricted by virtue of providing the services to the Committee from providing

unrelated services to other entities or individuals, including entities or individuals whose interests may be in competition or conflict with the Committee members, provided Phoenix makes appropriate arrangements to ensure that the confidentiality of information is maintained.

## **PROFESSIONAL COMPENSATION**

20. The Committee has agreed to the following compensation, in addition to certain indemnification obligations described below, for the services to be provided by Phoenix in this chapter 11 case:

    (a)   <u>Hourly Rates:</u> Phoenix will be paid by the Debtor for the services of Phoenix (and to the extent applicable, J.S. Held) professionals at the following normal and customary hourly rates, subject to periodic adjustments:

| | | |
|---|---|---|
| (i) | Senior Managing Directors | $525 - $795 |
| (ii) | Senior Advisors | $450 - $750 |
| (iii) | Managing Directors | $450 - $650 |
| (iv) | Senior Directors | $415 - $575 |
| (v) | Directors | $375 - $495 |
| (vi) | Associate Director, Vice Presidents & Sr. Associates | $295 - $450 |
| (vii) | Analysts/Associates | $195 - $350 |
| (viii) | Administrative Staff | $125 - $275 |

    (b)   <u>Expense Reimbursement:</u> Phoenix will be reimbursed for reasonable expenses incurred in connection with this engagement such as travel, lodging, third party duplication, messenger and telephone charges; reasonable expenses include any reasonable legal fees incurred for Phoenix's defense of its retention application and fee applications submitted in this chapter 11 case, subject to Court approval.

21. The proposed order provides that Phoenix shall file applications for interim and final allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in Bankruptcy Code sections 330 and 331, such Bankruptcy Rules as may then be applicable, and any applicable orders and procedures of this Court.

## NO DUPLICATION OF SERVICES

22.     The Committee believes that the services provided by Phoenix will not duplicate the services that other professionals will be providing to the Committee in this chapter 11 case. Specifically, Phoenix will carry out unique functions and will use reasonable efforts to coordinate with the Committee, Fox Rothschild LLP, and the other professionals retained in this chapter 11 case to avoid the unnecessary duplication of services.

## PHOENIX'S RELATIONSHIPS AND CONFLICTS DISCLOSURES

23.     The Committee believes that Phoenix (including J.S. Held) has no connection with the Debtor, its creditors, or other parties in interest, except as otherwise set forth in the Jacoby Declaration.  Pursuant to Bankruptcy Code section 1103(b), the Committee believes that, except as set forth in the Jacoby Declaration, neither Phoenix nor J.S. Held represent any other entity having an adverse interest in connection with the chapter 11 case.

24.     Phoenix and J.S. Held has conducted, and will conduct, an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new material facts or relationships are discovered, Phoenix will supplement its disclosure to this Court.

25.     Other than customary arrangements with J.S. Held as the parent company of Phoenix, Phoenix has agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with these cases.

## SATISFACTION OF LOCAL RULE 2014-1

26.     Local Rule 2014-1 provides that an application for employment of a professional made within 30 days of such employment shall be deemed contemporaneous.  This Application was filed within 30 days after the Committee's employment of Phoenix.  The Committee therefore submits that the criteria set forth in Local Rule 2014-1 have been satisfied.

**NO PRIOR REQUEST**

27. No prior application for the relief requested herein has been made to this or any other court.

**NOTICE**

28. Notice of this Application will be provided to the following parties or their respective counsel to: (i) the Office of the United States Trustee for the District of Delaware, (ii) the Debtor's thirty (30) largest unsecured creditors, (iii) counsel to the Prepetition Lender, (iv) any other parties having asserted liens against the Properties, (v) the Office of the United States Attorney for the District of Delaware, (vi) the Internal Revenue Service, (vii) the Securities and Exchange Commission, (viii) the Office of the United States Attorney for the State of Texas, and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested and the urgency of the circumstances surrounding this Motion, the Debtor submits that no further notice is required.

**CONCLUSION**

WHEREFORE, the Committee respectfully requests that the Court enter an order granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: October 20, 2023

Respectfully submitted,
**The Official Committee of Unsecured Creditors of Hartman SPE, LLC**

By: */s/ Ray Cunningham*
Ray Cunningham, solely in his capacity as the Chairperson of the Official Committee of Unsecured Creditors and not in his personal capacity