# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **Hartman SPE, LLC,** [1] | Case No. 23-11452 (MFW) |
| Debtor. | |

---

### COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF REORGANIZATION OF HARTMAN SPE, LLC

Dated:  January 8, 2024
Wilmington, Delaware

Respectfully submitted,

*/s/ William E. Chipman, Jr.*

William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
**CHIPMAN BROWN CICERO & COLE, LLP**
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:  (302) 295-0191
Facsimile:  (302) 295-0199
Email: chipman@chipmanbrown.com
　　　 olivere@chipmanbrown.com

John E. Mitchell
Michaela C. Crocker
Yelena E. Archiyan
**KATTEN MUCHIN ROSENMAN LLP**
2121 North Pearl Street, Suite 1100
Dallas, Texas 75201
Telephone:  (214) 765-3600
Facsimile:   (214) 765-3602
Email: john.mitchell@katten.com
　　　 michaela.crocker@katten.com
　　　 yelena.archiyan@katten.com

*Counsel to the Debtor and Debtor in Possession*

---

### THIS COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT FOR CIRCULATION TO ALL CREDITORS AND INTEREST HOLDERS

---

[1]    The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is Hartman SPE, LLC (7400).  The Debtor's principal place of business and service address is 2909 Hillcroft, Suite 420, Houston, TX 77057.  Copies of pleadings may be obtained from the website of the United States Bankruptcy Court for the District of Delaware www.deb.uscourts.gov or from the Debtor's Claim Agent's website https://dm.epiq11.com/HartmanSPE.

# TABLE OF CONTENTS

I.      Introduction ................................................................................................ 6

II.     Important Dates ........................................................................................... 6

III.    Definitions and Construction of Terms ...................................................... 7
        A.  Definitions .........................................................................................7
        B.  Interpretation; Application of Definitions, and Rules of Construction ...................... 16

IV.     Disclosures ................................................................................................ 17
        A.  General Background ..........................................................................17
            1.      Overview of Business Operations ........................................ 17
            2.      Capital Structure of the Company....................................... 18
            3.      Events Precipitating the Chapter 11 Filing ......................... 19
        B.  The Chapter 11 Case ........................................................................21
            1.      First Day Orders ................................................................. 21
            2.      The Declaratory Judgment Action ...................................... 21
            3.      Retention of Professionals ................................................. 21
            4.      Appointment of the Committee .......................................... 22
            5.      Cash Collateral ................................................................... 22
            6.      Monthly Reporting, Schedules, and Meeting of Creditors ......... 22
            7.      Claims Process and Bar Date .............................................. 22
        C.  Summary of Assets ...........................................................................23
        D.  Potential Claims and Causes of Action..............................................23
        E.  Certain Federal Income Tax Consequences........................................24
        F.  Certain Risk Factors to Be Considered .............................................25
        G.  Feasibility........................................................................................28
        H.  Best Interests Test ............................................................................29
        I.  No Unfair Discrimination ..................................................................29
        J.  Releases by the Debtor......................................................................29

V.      Treatment of Unclassified Claims ............................................................ 30
        A.  Administrative Expense Claims.........................................................30
        B.  Professional Fee Claims....................................................................30
        C.  Priority Tax Claims...........................................................................31
        D.  Statutory Fees...................................................................................31

VI.     Classification and Treatment of Classified Claims and Interests ...................... 31
        A.  Treatment of Claims and Interests Under this Combined Disclosure Statement
        and Plan ...............................................................................................31
            1.      Class 1: – Allowed Prepetition Lender Secured Claim arising under
                    Prepetition Loan Documents............................................... 32
            2.      Class 2: – Allowed Other Secured Claims............................ 33
            3.      Class 3: – Allowed Other Priority Claims............................ 33
            4.      Class 4: – Allowed General Unsecured Claims, including Intercompany
                    Claims and Deficiency Claims............................................. 33
            5.      Class 5 - Interests ............................................................... 34

VII.    Confirmation Procedures .......................................................................... 34
        A.  Confirmation Procedures...................................................................34
            1.      Confirmation Hearing ......................................................... 34
            2.      Procedure for Objections .................................................... 34

      3.      Requirements for Confirmation ............................................................. 35

B. No Solicitation Required................................................................................35

VIII. Implementation and Execution of This Combined Disclosure Statement and Plan ......... 35

A. Funding ........................................................................................................35

B. Class 4 Reserve ............................................................................................35

C. Effective Date ..............................................................................................36

D. General Settlement of Claims and Interests..................................................36

E. Restructuring Transactions ...........................................................................36

F. Section 1145 Exemption ...............................................................................36

G. Reorganized Debtor ......................................................................................37

H. Post-Confirmation Management....................................................................37

I. Corporate Action; Effectuating Documents...................................................37

J. New Organizational Documents ....................................................................38

K. Indemnification Obligations .........................................................................38

L. Directors and Officers of the Reorganized Debtor ........................................38

M. Effectuating Documents; Further Transactions .............................................38

N. Sources of Consideration for Distributions...................................................39

O. Exit Facility..................................................................................................39

P. Corporate Existence ......................................................................................41

Q. Vesting of Assets in the Reorganized Debtor ...............................................41

R. Section 1146 Exemption................................................................................41

IX. Executory Contracts and Unexpired Leases ......................................................... 42

A. Executory Contracts and Unexpired Leases ..................................................42

B. Rejection Claims...........................................................................................43

C. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ..............43

D. Preexisting Obligations to the Debtor Under Executory Contracts and Unexpired
Leases................................................................................................................45

E. Nonoccurrence of Effective Date..................................................................45

F. Contracts and Leases Entered Into After the Petition Date. .........................45

X. Provisions Governing Distributions.................................................................... 45

A. Provisions Governing Distributions Under this Combined Disclosure Statement
and Plan.............................................................................................................45

      1.      Distribution Record Date ................................................................. 45

      2.      Method of Payment.......................................................................... 45

      3.      Surrender of Instruments ................................................................. 46

      4.      Delivery of Distributions ................................................................. 46

      5.      Objection to and Resolution of Claims ............................................ 47

      6.      Amendments to Claims.................................................................... 47

      7.      Single Satisfaction of Claims........................................................... 47

      8.      Preservation of Rights to Settle Claims ........................................... 47

      9.      Claims Paid or Payable by Third Parties ......................................... 48

      10.     Miscellaneous Distribution Provisions ........................................... 49

      11.     Disputed Claims Reserve ................................................................ 49

XI. Settlement, Release, Injunction, and Related Provisions...................................... 50

A. Discharge .....................................................................................................50

B. Term of Injunctions or Stays.........................................................................50

2

C. Releases by the Debtor .................................................................................. 50
D. Releases by Holders of Claims ...................................................................... 51
E. Injunction ....................................................................................................... 51
F. Exculpation .................................................................................................... 52
G. Preservation and Application of Insurance ................................................... 52
H. Retention, Reservation and Prosecution of Causes of Action ...................... 52
XII. Conditions Precedent to Confirmation and the Effective Date ........................ 53
A. Conditions Precedent to the Effective Date .................................................. 53
B. Waiver of Conditions ..................................................................................... 55
C. Effect of Failure of Conditions ..................................................................... 55
D. Substantial Consummation ............................................................................ 55
XIII. Modification, Revocation, or Withdrawal of THIS Combined Disclosure Statement
and Plan ....................................................................................................................... 55
A. Modification and Amendments ...................................................................... 55
B. Revocation or Withdrawal of this Combined Disclosure Statement and Plan ........... 56
XIV. Retention of Jurisdiction .................................................................................. 56
XV. Miscellaneous Provisions ................................................................................. 58
A. Amendment or Modification of this Combined Disclosure Statement and Plan ......... 58
B. Exhibits/Schedules ........................................................................................ 58
C. Plan Supplement ............................................................................................ 58
D. Filing of Additional Documents .................................................................... 58
E. Immediate Binding Effect of this Combined Disclosure Statement and Plan ........... 59
F. Payment of Statutory Fees. ............................................................................ 59
G. Successors and Assigns .................................................................................. 59
H. Governing Law .............................................................................................. 59
I. Time ............................................................................................................... 59
J. Revocation ..................................................................................................... 59
K. Dissolution of the Committee ........................................................................ 60
L. Inconsistency .................................................................................................. 60
M. No Admissions ............................................................................................... 60
N. Reservation of Rights ..................................................................................... 60
O. Compromise of Controversies ....................................................................... 60
P. Notices ........................................................................................................... 61
Q. Term of Injunctions or Stays .......................................................................... 62
R. Entire Agreement ........................................................................................... 62
S. Nonseverability of Provisions ........................................................................ 62
T. Closing of Chapter 11 Case ........................................................................... 62
U. Waiver or Estoppel ........................................................................................ 63

**Combined Disclosure Statement and Plan Exhibits**

<u>Exhibit A</u>:      Assumption Schedule

<u>Exhibit B</u>:      List of Properties

<u>Exhibit C</u>:      Exit Facility – Indicative Term Sheet

US_300412569v2

## NOTICE

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT EXCEPT AS EXPRESSLY INDICATED HEREIN. THIS COMBINED PLAN AND DISCLOSURE STATEMENT WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTOR'S KNOWLEDGE, INFORMATION, AND BELIEF. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED, OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT ON THE DEBTOR OR HOLDERS OF CLAIMS OR INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

HOLDERS OF CLAIMS AND INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THIS COMBINED PLAN AND DISCLOSURE STATEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY.

US_300412569v2

## I.   INTRODUCTION[1]

Hartman SPE, LLC (the "**Debtor**") proposes the following Combined Disclosure Statement and Plan pursuant to chapter 11 of the Bankruptcy Code. The Debtor is the proponent of this Combined Disclosure Statement and Plan within the meaning of section 1129 of the Bankruptcy Code.

**Copies of this Combined Disclosure Statement and Plan and all other pleadings related to this Chapter 11 Case are available for review without charge through the Debtor's Claim Agent's website https://dm.epiq11.com/HartmanSPE and with charge at https://www.pacer.gov/.**

This Combined Disclosure Statement and Plan is a plan of reorganization that proposes to leave all Allowed Claims and Interests Unimpaired, either through payment in full, Reinstatement, or agreement. The Debtor will fund this Combined Disclosure Statement and Plan with the proceeds of the Exit Facility and Cash on hand on the Effective Date.

Each Holder of a Claim against or Interest in the Debtor is encouraged to read this Combined Disclosure Statement and Plan in its entirety. The Debtor is not soliciting votes for approval of this Combined Disclosure Statement and Plan because all Classes of Claims and Interests are Unimpaired and deemed to accept this Combined Disclosure Statement and Plan.

SUBJECT TO THE RESTRICTIONS ON MODIFICATIONS AS SET FORTH IN BANKRUPTCY CODE SECTION 1127, BANKRUPTCY RULE 3019, AND IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT, THE DEBTOR EXPRESSLY RESERVES THE RIGHT TO ALTER, AMEND, OR MODIFY THIS COMBINED PLAN AND DISCLOSURE STATEMENT ONE OR MORE TIMES BEFORE ITS SUBSTANTIAL CONSUMMATION.

## II.   IMPORTANT DATES

| Description | [Proposed] Date/Deadline[2] |
|---|---|
| Deadline to File Plan Supplement | [January 29, 2024] |
| Deadline to File Objections to Combined Disclosure Statement and Plan | [January 31, 2024] |
| Deadline to File Objections to the Proposed Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases of Nonresidential Real Property, Including Adequate Assurance and Cure Amounts | [January 31, 2024] |

---

[1] All capitalized terms used but not defined in the Introduction shall have the meanings ascribed to them in Article III.A of this Combined Disclosure Statement and Plan.

[2] Subject to Court approval.

6

| Description | [Proposed] Date/Deadline[2] |
|---|---|
| Deadline to File Confirmation Brief and Other Evidence Supporting the Combined Disclosure Statement and Plan | [February 5, 2024] |
| Deadline to File Consolidated Reply | [February 5, 2024] |
| Confirmation Hearing | [February 7, 2024 at __:__ __.m. (ET)] |

## III.    DEFINITIONS AND CONSTRUCTION OF TERMS

### A.    Definitions

"**Administrative Expense Bar Date**" means the date that is 30 calendar days after the Effective Date for Administrative Claims, other than Professional Fee Claims, to be filed.

"**Administrative Expense Claim**" means any right to payment constituting actual and necessary costs and expenses of preserving the Estate under Bankruptcy Code sections 503(b) and 507(a)(2) including, without limitation: (a) Professional Fee Claims, (b) any fees or charges assessed against the Estate under section 1930 of title 28 of the United States Code, and (c) all Claims arising under Bankruptcy Code section 503(b)(9).

"**Affiliate**" means an "affiliate" as defined in Bankruptcy Code section 101(2).

"**Allen Hartman Parties**" means:  Allen R. Hartman; Lisa M. Hartman; Allen R. & Lisa M. Hartman, as Trustees of the Hartman Family Protection Trust dated March 9, 2018; The Hartman Family Protection Trust dated March 9, 2018; Hartman vREIT XXI Inc.; Hartman Family Protection Trust; Margaret Marie Hartman; Victoria L. Hartman Massey; Charlotte E. Hartman; Hartman Holdings Inc.; Donald M Hartman Jr. IRA; Donald M. Hartman Jr.; Lisa Marie Hartman; Lisa Marie Hartman IRA; and Hartman XX Holdings, LLC.

"**Allowed**" means, with reference to any Claim (I) proof of which was timely and properly Filed and as to which:  (a) no objection to allowance has been interposed within the applicable period fixed by this Combined Disclosure Statement and Plan, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or the Bankruptcy Court; (b) an objection has been interposed and either (i) such Claim has been allowed, in whole or in part, by a Final Order or (ii) the objection to allowance has been withdrawn with prejudice or otherwise resolved by written agreement between the Debtor or Reorganized Debtor, as appropriate, and the Holder of such Claim; or (c) the Claim has been Allowed by written agreement between the Debtor or Reorganized Debtor, as appropriate, and the Holder of such Claim; or (II) if a Proof of Claim that was timely and properly filed asserts a Claim amount in excess of the amount that has been or hereafter is listed by the Debtor on its Schedules as liquidated in amount and not disputed or contingent, the portion of such claim that has been or hereafter is listed by the Debtor on its Schedules as liquidated in amount and not disputed or contingent; (III) if a Proof of Claim that was timely and properly filed asserts a Claim amount less than the amount that has been or hereafter is listed by the Debtor on its Schedules as liquidated in amount and not disputed or contingent, the amount of such claim that

has been asserted in such Proof of Claim; or (IV) if no Proof of Claim was Filed, a Claim that has been or hereafter is listed by the Debtor on its Schedules as liquidated in amount and not disputed or contingent. The amount of each Allowed Claim shall be reduced by any payments received during the Chapter 11 Case and in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100 percent of the underlying Allowed Claim.

"**Assumption Schedule**" means the list of contracts to be assumed by the Debtor and assigned to Silver Star Borrower on the Effective Date, as attached hereto as <u>Exhibit A</u>. The Debtor or the Reorganized Debtor, as appropriate, reserves the right to amend the Assumption Schedule at any time up to and including the later of (i) Confirmation or (ii) ten (10) days after entry of a Final Order resolving any objection lodged by the counterparty to an Executory Contract or Lease regarding the proposed assumption and assignment, adequate protection, and/or Cure.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware or, if such Court ceases to exercise jurisdiction over the Chapter 11 Case, such court or adjunct thereof that exercises jurisdiction over the Chapter 11 Case in lieu of the United States Bankruptcy Court for the District of Delaware.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time.

"**Bar Date**" means, with respect to any Claim, the specific date established in the Bar Date Order as the last day for filing Proofs of Claim against the Debtor.

"**Bar Date Order**" means the *Order Granting Motion of Debtor for an Order (I) Establishing Bar Dates for Filing Proofs of Claim; (II) Approving the Form and Manner of Notice Thereof; and (III) Granting Related Relief* [Docket No. 162].

"**Business Day**" means any day other than a Saturday, Sunday, or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

"**Cash**" means legal tender of the United States of America or equivalents thereof, including, without limitation, payment in such tender by check, wire transfer, or any other customary payment method.

"**Cause of Action**" means any Claim, cause of action, controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, or franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

"**Chapter 11 Case**" means the chapter 11 case initiated by the Debtor's filing on the Petition Date of a voluntary petition for relief in the Bankruptcy Court under chapter 11 of the Bankruptcy Code, captioned *In re Hartman SPE, LLC*, Case No. 23-11452 (MFW).

"**Claim**" shall have the meaning set forth in Bankruptcy Code section 101(5).

"**Claims Register**" means the official register of Claims maintained on https://www.pacer.gov/.

"**Class**" means any group of substantially similar Claims or Interests classified by this Combined Disclosure Statement and Plan pursuant to Bankruptcy Code sections 1122 and 1123(a)(1).

"**Clerk**" means the Clerk of the Bankruptcy Court.

"**Combined Disclosure Statement and Plan**" means this combined disclosure statement and chapter 11 plan of reorganization, as the same may be amended or modified, including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in their present form or as the same may be altered, amended, or modified from time to time.

"**Company**" means Hartman SPE, LLC.

"**Confirmation**" means confirmation of this Combined Disclosure Statement and Plan pursuant to Bankruptcy Code section 1129.

"**Confirmation Date**" means the date on which the Confirmation Order is entered on the Bankruptcy Court Docket in this Chapter 11 Case.

"**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider (a) approval of this Combined Disclosure Statement and Plan as providing adequate information pursuant to Bankruptcy Code section 1125, and (b) Confirmation of this Combined Disclosure Statement and Plan pursuant to Bankruptcy Code section 1129, as such hearing may be adjourned or continued from time to time.

"**Confirmation Hearing Notice**" means the notice of the Confirmation Hearing.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming this Combined Disclosure Statement and Plan pursuant to Bankruptcy Code section 1129.

"**Creditor**" means any Person that is the Holder of a Claim against the Debtor.

"**Cure**" means all amounts, including an amount of $0.00, required to cure any monetary or non-monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is to be assumed by the Debtor and assigned by Silver Star Borrower pursuant to Bankruptcy Code sections 365 or 1123.

"**Debtor**" means Hartman SPE, LLC in its capacity as the debtor in the Chapter 11 Case unless otherwise noted.

"**Deficiency Claim**" means a General Unsecured Claim for the difference between (a) the aggregate amount of a Secured Claim and (b) the value received on account of the portion of such Allowed Claim that is a Secured Claim.

"**Disallowed**" means, when used in reference to a Claim, all or that portion, as applicable, of any Claim that has been disallowed under this Combined Disclosure Statement and Plan, the Bankruptcy Code, applicable law, or by Final Order.

"**Disbursing Agent**" means the Reorganized Debtor or the Entity or Entities selected by the Debtor or the Reorganized Debtor, as applicable, to make or facilitate Distributions pursuant to this Combined Disclosure Statement and Plan.

"**Disputed**" means any Claim or Interest, or any portion thereof, that is (a) listed on the Schedules as unliquidated, disputed, and/or contingent for which no Proof of Claim in a liquidated and non-contingent amount has been Filed, or (b) the subject of an objection or request for estimation Filed by the Debtor, the Reorganized Debtor, or any other party in interest in accordance with applicable law and which objection has not been withdrawn, resolved, or overruled by a Final Order.

"**Distribution**" means any distribution to the Holders of Allowed Claims.

"**Distribution Record Date**" means the date for determining which Holders of Claims and Interests are eligible to receive Distributions under this Combined Disclosure Statement and Plan, which date shall be the Effective Date.

"**Docket**" means the docket in the Chapter 11 Case maintained by the Clerk.

"**Effective Date**" means the date on which the conditions specified in Article XII of this Combined Disclosure Statement and Plan have been met or satisfied.

"**Entity**" means an "entity" as defined in Bankruptcy Code section 101(15).

"**Estate Causes of Action**" means any and all Causes of Action of the Debtor, including, but not limited to, the (a) commercial tort claims as defined in Article 9 of the Uniform Commercial Code; (b) Causes of Action against any Person whether sounding in tort, contract, equity, statute or any other legal or equitable theory of recovery; (c) the non-exclusive right to seek a determination by the Bankruptcy Court or any other court of competent jurisdiction of any tax, fine or penalty relating to a tax, or any addition to a tax, under Bankruptcy Code section 505 or other applicable law; and (d) all other rights, Claims or Causes of Action. Estate Causes of Action shall include, for the avoidance of doubt, direct or derivative Claims or Causes of Action against (i) any other Person who transacted business or engaged in conduct with the Debtor to the Debtor's detriment, specifically including the Allen Hartman Parties and (ii) any Affiliates of the Persons within subsection (i) of this sentence.

"**Estate**" means the estate of the Debtor created upon the commencement of the Chapter 11 Case pursuant to Bankruptcy Code section 541.

"**Exculpated Parties**" means each of the following solely in their capacity as such: (a) the Debtor, (b) the Reorganized Debtor, (c) the Debtor's and Reorganized Debtor's current manager, directors and officers, (d) Michael Racusin, (e) the Committee and its members, and (f) the Professionals. The term "Exculpated Parties" shall not include the Allen Hartman Parties.

"**Exit Facility**" means, collectively, one or more first-lien, senior secured mortgage loans, and associated first priority, senior secured mezzanine loans, as reflected in the Exit Facility Documents. The material terms of the Exit Facility are set forth on the Exit Facility Term Sheet and will be set forth in full in the Exit Facility Documents that will be filed as part of the Plan Supplement.

"**Exit Facility Credit Agreement**" means the loan agreements governing the Exit Facility.

"**Exit Facility Documents**" means, collectively, the Exit Facility Credit Agreement and all other agreements, documents, and instruments delivered or to be entered into in connection therewith.

"**Exit Facility Term Sheet**" means the indicative term sheet agreed to by the Lender, Debtor and affiliates of the Debtor, a summary of which attached hereto as **Exhibit C.**

"**Exit Lender**" means the entities designated as "Lender" in the Exit Facility Documents and any applicable assignees and participants thereof.

"**Executory Contract**" means a contract to which the Debtor is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

"**Federal Judgment Rate**" means the rate under 28 U.S.C. § 1961 in effect as of the Petition Date.

"**File, Filed, or Filing**" means file, filed, or filing with the Bankruptcy Court in the Chapter 11 Case.

"**Final Decree**" means the order entered pursuant to Bankruptcy Code section 350 and Bankruptcy Rule 3022 closing the Chapter 11 Case.

"**Final Order**" means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction that has been entered on the Docket in the Chapter 11 Case (or the docket of such other court) that is not subject to a stay and has not been modified, amended, reversed or vacated and as to which (a) the time to appeal, petition for certiorari or move for a new trial, re-argument or rehearing pursuant to Bankruptcy Rule 9023 has expired and as to which no appeal, petition for certiorari or other proceedings for a new trial, re-argument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, re-argument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was timely and properly appealed, or certiorari shall have been denied or a new trial, re-argument or rehearing shall have been denied or resulted in no modification of such order, and the time to

11

take any further appeal, petition for certiorari or move for a new trial, re-argument or rehearing shall have expired.

"**First Day Declaration**" means the *Declaration of David Wheeler in Support of Chapter 11 Petition and First Day Pleadings* [Docket No. 3].

"**First Day Motions**" means the Debtor's motions filed upon the commencement of the Chapter 11 Case [Docket Nos. 4, 5, 6, 7, 8, 9, 13, and 15].

"**First Lien Claim**" means the Claim held by the Prepetition Lender.

"**General Bar Date**" means November 13, 2023, at 5:00 p.m. Eastern Time, the date established by the Bankruptcy Court pursuant to the Bar Date Order for the submission of Proofs of Claim against the Debtor.

"**General Unsecured Claims**" means any unsecured Claim against the Debtor that is not a Priority Claim, Administrative Expense Claim, Professional Fee Claim, Priority Tax Claim, First Lien Claim, or Other Secured Claim and is not entitled to a priority under the Bankruptcy Code or any order of the Bankruptcy Court.

"**Governmental Bar Date**" means March 11, 2024, at 5:00 p.m. Eastern Time, the date established by the Bankruptcy Court pursuant to the Bar Date Order for the submission of Proofs of Claim by Governmental Units against the Debtor.

"**Governmental Unit**" means a "governmental unit" as defined in Bankruptcy Code section 101(27).

"**Hartman Minority Member**" means Hartman vREIT XXI, Inc., the Holder of 2.47% of the Debtor's Interests.

"**Holder**" means the holder of any Claim or Interest.

"**Intercompany Claims**" means Claims owing by the Debtor to SPE Manager or other Affiliates.

"**Interests**" means all equity interests in the Debtor, including, but not limited to, all issued, unissued, authorized, or outstanding shares or membership interests together with any warrants, options, or contract rights to purchase or acquire such interests at any time.

"**Impaired**" means, with respect to any Class, a Class that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"**KeyBank**" means KeyBank National Association, as Master Servicer and Special Servicer for U.S. Bank National Association, solely in its capacity as Trustee for the benefit of the Holders of the GS Mortgage Securities Trust 2018-HART, Commercial Mortgage Pass-Through Certificates, Series 2018-HART and the RR Interest Owner.

"**Lien**" has the meaning set forth in section 101(37) of the Bankruptcy Code.

"**Local Rules**" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

"**Majority Member**" means Hartman XX Limited Partnership, the Holder of 97.53% of the Debtor's Interests.

"**Management Agreement**" means the Real Estate Property Management Agreement between the Debtor and Hartman Income REIT Management, Inc. (n/k/a Silver Star Property Management, Inc.) as property manager.

"**New Organizational Documents**" means, if any, the certificates of formation, limited liability company agreements, partnership agreements, certificates of incorporation, bylaws, stockholders' agreement, or any similar entity organizational or constitutive document, as applicable, for the Reorganized Debtor, which shall be consistent with this Combined Disclosure Statement and Plan and section 1123(a)(6) of the Bankruptcy Code (as applicable, and shall otherwise be in form and substance reasonably acceptable to the Majority Shareholder and the Exit Lenders) and will be filed with the Plan Supplement.

"**Other Secured Claims**" means Secured Claims other than the Prepetition Lender Secured Claim, which are primarily composed of Claims secured under mechanic's or materialmen's lien statutes under applicable law.

"**Person**" means a "person" as defined in Bankruptcy Code section 101(41).

"**Petition Date**" means September 13, 2023, the date on which the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

"**Plan Documents**" means this Combined Disclosure Statement and Plan and the Plan Supplement.

"**Plan Supplement**" means the appendix of schedules and exhibits to be Filed with the Bankruptcy Court at least seven (7) days before the Confirmation Hearing that will include: (1) the Exit Facility Documents; (2) the New Organizational Documents, if applicable; (3) the Rejected Executory Contracts and Unexpired Leases Schedule; and (4) financial projections.

"**Portfolio Borrower**" means Silver Star Portfolio, LLC, a Delaware special purpose entity and affiliate of the Debtor. Portfolio Borrower is wholly owned by Portfolio Mezzanine Borrower and will serve as co-borrower with Silver Star Borrower under the Exit Facility Documents.

"**Portfolio Mezzanine Borrower**" means Silver Star Portfolio Mezzanine Borrower, LLC, a Delaware special purpose entity and affiliate of the Debtor. Portfolio Mezzanine Borrower will serve as co-mezzanine borrower with Silver Star Mezzanine Borrower under the Exit Facility Documents.

"**Prepetition Lender**" means U.S. Bank National Association, solely in its capacity as Trustee for the benefit of the Holders of the GS Mortgage Securities Trust 2018-HART, Commercial Mortgage Pass-Through Certificates, Series 2018-HART and the RR Interest Owner.

"**Prepetition Lender Secured Claim**" means the Allowed Class 1 Secured Claim of the Prepetition Lender in the principal amount of $217,276,867.59 as of November 27, 2023. The amount to be paid in satisfaction of the Prepetition Lender Secured Claim shall be subject to adjustment as of the date it is paid in full, with such payment to include all amounts due or to come due under the Prepetition Loan Documents.

"**Prepetition Loan**" means that certain secured term loan agreement with Goldman Sachs Mortgage, as lender, in the original principal amount of $259 million.

"**Prepetition Loan Documents**" means the Loan Agreement dated as of October 1, 2018, between Hartman SPE, LLC, as Borrower, Goldman Sachs Mortgage Company, as Lender, as amended, restated, supplemented, or otherwise modified from time to time, along with any other agreements and documents executed or delivered in connection therewith.

"**Priority Claims**" means any Claim entitled to priority pursuant to Bankruptcy Code section 507(a) *other than* Administrative Expense Claims and Priority Tax Claims. Unless otherwise indicated, "Priority Claims" does not include Priority Tax Claims.

"**Priority Tax Claims**" means any Claim of a Governmental Unit entitled to priority under Bankruptcy Code § 507(a)(8).

"**Pro Rata**" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in the same Class.

"**Professional Fee Claims Bar Date**" means the date that is 60 days after the Effective Date for Professional Fee Claims to be Filed.

"**Professional Fee Claims**" means all Claims for compensation and reimbursement of expenses by Professionals to the extent Allowed by the Bankruptcy Court.

"**Professional**" means any professional Person employed in the Chapter 11 Case pursuant to Bankruptcy Code section 327, 328, 363, or 1103 pursuant to an Order of the Bankruptcy Court who is to be compensated for services rendered pursuant to Bankruptcy Code sections 327, 328, 329, 330, 331, or 363.

"**Proof of Claim**" means a proof of Claim Filed against the Debtor in accordance with the Bar Date Order or any other order by the Court requiring the fixing of Claims.

"**Properties**" means the Debtor's portfolio of owned real property and "**Property**" refers to an individual property in the Debtor's portfolio.

"**Property Manager**" means Silver Star Property Management, Inc. (f/k/a Hartman Income REIT Management, LLC).

"**Reinstate**," "**Reinstated**" or "**Reinstatement**" means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim or Interest Holder is entitled so as to leave such Claim or Interest Unimpaired in accordance with § 1124 of the Bankruptcy Code, or (b) notwithstanding any contractual provision or applicable law that entitles the Claim Holder to

demand or receive accelerated payment of such Claim after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in § 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the Claim Holder for any damages incurred as a result of any reasonable reliance by such Claim Holder on such contractual provision or such applicable law; and (iv) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the Claim Holder; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, "going dark" provisions, and affirmative covenants regarding corporate existence prohibiting certain transactions or actions contemplated by this Combined Disclosure Statement and Plan, or conditioning such transactions or actions on certain factors, shall not be required to be cured or reinstated in order to accomplish Reinstatement.

"**Rejected Executory Contracts and Unexpired Leases Schedule**" means the schedule of Rejected Executory Contracts and Unexpired Leases that will be filed as part of the Plan Supplement. The Debtor or the Reorganized Debtor, as appropriate, reserves the right to amend the Rejected Executory Contracts and Unexpired Leases Schedule at any time up to and including the later of (i) Confirmation or (ii) ten (10) days after entry of a Final Order resolving any objection lodged by the counterparty to an Executory Contract or Lease regarding the proposed assumption and assignment, adequate protection, and/or Cure.

"**Rejection Claims**" means any Claim arising from, or relating to, the rejection of an Executory Contract or Unexpired Lease pursuant to Bankruptcy Code section 365(a) by the Debtor, as limited, in the case of a rejected Unexpired Lease, by Bankruptcy Code section 502(b)(6).

"**Released Parties**" means the parties receiving a release from the debtor as set forth in Article XI.C.

"**Reorganized Debtor**" means Hartman SPE, LLC, as reorganized pursuant to this Combined Disclosure Statement and Plan, or any successors thereto, on or after the Effective Date.

"**Restructuring Transactions**" has the meaning set forth in Article VIII.E.

"**Schedules**" means the schedules of assets and liabilities, the list of Holders of Interests, and the statements of financial affairs Filed by the Debtor under Bankruptcy Code section 521 and Bankruptcy Rule 1007, and all amendments and modifications thereto.

"**Secured Claims**" means Claims which are:  (a) secured by a valid and perfected lien in collateral which is enforceable pursuant to applicable law, the amount of which is equal to or less than the value of such collateral (i) as set forth in this Combined Disclosure Statement and Plan, (ii) as agreed to by the Holder of such Claim and the Debtor, or (iii) as determined by a Final Order in accordance with Bankruptcy Code section 506(a); or (b) subject to a valid right of setoff under Bankruptcy Code section 553.

"**Silver Star Borrower**" means Silver Star CRE, LLC, a Delaware special purpose entity that is wholly owned by Silver Star Mezzanine Borrower.

"**Silver Star Mezzanine Borrower**" means Silver Star Mezzanine Borrower, LLC, a Delaware special purpose entity wholly owned by the Debtor.

"**SPE Manager**" means Hartman SPE Management, LLC, the Debtor's manager.

"**State Court**" means the District Court of Harris County, Texas.

"**State Court Lawsuit**" means Cause No. 2023-17944, pending in the State Court.

"**Statutory Fees**" means all fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930, and any interest thereupon.

"**Tax Code**" means the United States Internal Revenue Code, as amended.

"**Trust**" means the GS Mortgage Securities Trust 2018-HART.

"**Unimpaired**" means, with respect to a Class of Claims or Interests, such Class is not Impaired.

"**U.S. Bank**" means U.S. Bank National Association, solely in its capacity as Trustee for the benefit of the Holders of the GS Mortgage Securities Trust 2018-HART, Commercial Mortgage Pass-Through Certificates, Series 2018-HART and the RR Interest Owner.

"**U.S. Trustee**" means the Office of the United States Trustee for the District of Delaware.

"**Unexpired Lease**" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

## B.     Interpretation; Application of Definitions, and Rules of Construction

The following rules of construction, interpretation, and application shall apply:

(1)     Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter genders.

(2)     Unless otherwise specified, each section, article, schedule, or exhibit reference in this Combined Disclosure Statement and Plan is to the respective section in, article of, schedule to, or exhibit to this Combined Disclosure Statement and Plan.

(3)     The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Combined Disclosure Statement and Plan as a whole and not to any particular section, subsection, or clause contained in this Combined Disclosure Statement and Plan.

(4)     The rules of construction contained in Bankruptcy Code section 102 shall apply to the construction of this Combined Disclosure Statement and Plan.

US_300412569v2

(5)     A term used herein that is not defined herein but that is used in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code.

(6)     The headings in this Combined Disclosure Statement and Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of this Combined Disclosure Statement and Plan.

(7)     Unless otherwise provided, any reference in this Combined Disclosure Statement and Plan to an existing document, exhibit, or schedule means such document, exhibit, or schedule as may be amended, restated, revised, supplemented, or otherwise modified.

(8)     In computing any period of time prescribed or allowed by this Combined Disclosure Statement and Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## IV.     DISCLOSURES

### A.     General Background

#### 1.     Overview of Business Operations

The Debtor is a Delaware special purpose entity formed on July 19, 2018. As of the Petition Date, it held title to 35 Properties that included office, retail, and industrial properties with an estimated value of over $400 million. The Debtor is the sole owner of each Property.  From the Petition Date to the date of this Combined Disclosure Statement and Plan, the Debtor sold seven (7) Properties for an aggregate, gross sales price of approximately $80.7 million.  Sales will continue during the pendency of the Chapter 11 Case.

Prepetition, the Debtor began the process of transitioning its Properties from office, retail, and industrial assets into self-storage properties. On the Effective Date, the Debtor will transfer its remaining Properties to Silver Star Borrower. After the Effective Date, the Reorganized Debtor will be the sole member of Silver Star Mezzanine Borrower, which will, in turn, be the sole member of Silver Star Borrower. Thus, Silver Star Borrower will be the owner of the Debtor's Properties remaining on the Effective Date and will continue to transition those Properties from office, retail, and industrial properties into self-storage assets.

Although the Debtor itself is manager-managed by SPE Manager, the Properties are managed by the Debtor's affiliate (Property Manager) pursuant to the Management Agreement. Substantially all the Debtor's back-office and vendor-procurement services, including management and employees, are provided by Property Manager through the Management Agreement. Except for tenant lease agreements, which are signed by the Debtor, Property Manager is the entity that generally executes executory contracts with the vendors who provide services to the Debtor, as well as other non-debtor entities within the corporate enterprise. In some instances, the Debtor remits payment equal to its share of services received to vendors directly. In other instances, and in the ordinary course of business, the Debtor reimburses the non-Debtor affiliates for the reasonable and necessary expenses incurred or monies advanced in connection with the management and operation of the Debtor's properties.

17

### 2.    Capital Structure of the Company

(i)    Equity

The Debtor's members are the Majority Member, owner of 97.53% of the Debtor's Interests, and the Hartman Minority Member, owner of 2.47% of the Debtor's Interests. Silver Star Properties REIT, Inc., the Debtor's ultimate, indirect parent, is a non-traded public REIT with approximately 4,300 shareholders.

(ii)    Secured Debt

On October 1, 2018, the Debtor closed on the Prepetition Loan, a term loan agreement with Goldman Sachs Mortgage, as lender, in the principal amount of $259 million that was secured by, among other things, first mortgages, deeds of trust, and similar instruments on the Debtor's fee simple interest in 39 office, retail, and industrial properties located in Houston, Dallas/Ft. Worth, and San Antonio Texas.[3] The mortgages were securitized and sold into the commercial mortgage-backed securities market. KeyBank acts as servicer and special servicer for the debt and U.S. Bank National Association acts as certificate administrator, custodian, and trustee.

The Loan Agreement had an initial maturity of October 9, 2020, with three, one-year extension options. On October 9, 2022, the Debtor exercised the third and final one-year maturity date extension option to extend the maturity date to October 9, 2023.

On October 19, 2022, the Debtor received notice of an Event of Default (as defined under the Prepetition Loan Documents) from KeyBank. The default arose from the Debtor's alleged noncompliance with the Prepetition Loan Documents' insurance requirements relating to a single property, which has since been sold. The Event of Default triggered cash management provisions that have been in effect since November 2022, restricting the Debtor's access to tenant receipts, which is discussed in the *Motion of the Debtor for Interim and Final Orders (I) Authorizing Debtor to (A) Continue Using Existing Cash Management Systems, Bank Accounts and Business Forms, (B) Implement Changes to its Cash Management System in the Ordinary Course of Business, and (C) Continue to Perform Intercompany Transactions; and (II) Granting Released Relief* [Docket No. 13].

As of the Petition Date, the Prepetition Loan had an outstanding balance of approximately $217.3 million.

In addition to the Prepetition Loan, certain of the Debtor's Properties are subject to mechanic and materialman liens, which are currently under review. All Allowed Claims arising from valid mechanic and materialman liens will be satisfied pursuant to this Combined Disclosure Statement and Plan by attaching to the proceeds of the Exit Loan Facility.

(iii)    Sales Tax, Gross Receipts Tax, Income Tax, and Ad Valorem Tax Liabilities

---

[3] The Debtor sold four properties prior to the Petition Date.

US_300412569v2

In the ordinary course of business, the Debtor's operations gave rise to sales tax, gross receipts tax, income tax, and *ad valorem* tax liabilities. The Debtor obtained interim authority from the Bankruptcy Court to pay such taxes by order entered on September 15, 2023 [Docket No. 32] and final authority on October 16, 2023 [Docket No. 156]. In addition, as described further below, certain of the Debtor's *ad valorem* tax liabilities constitute secured claims and, with the Bankruptcy Court's approval, have been or will be satisfied from designated sales proceeds generated by certain of the Debtor's sale of properties that the applicable tax authorities asserted were subject to liens securing such taxes.

(iv)    Unsecured Debt and Trade Creditors

The Debtor's review and reconciliation of Filed Proofs of Claim is ongoing. Except as noted below, amounts disclosed are taken from the Debtor's Schedules.

<u>Trade and Other Unsecured Debt</u>. The Debtor's Schedules reflect trade and other unsecured debt (excluding amounts noted above) as of the Petition Date in the approximate amount of $20.6 million.

<u>Priority Claims and Priority Tax Claims</u>. The Debtor's Schedules do not reflect any liquidated priority unsecured debts owing as of the Petition Date.

<u>Summary</u>. As of the Petition Date, as reflected in the Debtor's Schedules, the aggregate amount owed to all the Debtor's prepetition secured and unsecured debtholders was approximately $242 million.

**3.    Events Precipitating the Chapter 11 Filing**

On October 1, 2018, the Debtor closed on the Prepetition Loan in the principal amount of approximately $259 million. The Prepetition Loan was secured by, among other things, first mortgages, deeds of trust, and similar instruments on the Debtor's fee simple interest in 39 office, retail, and industrial properties located in Houston, Dallas/Ft. Worth, and San Antonio Texas. The Prepetition Loan had an initial maturity of October 9, 2020, with three, optional one-year extension options. On October 9, 2022, the Debtor exercised the third and final one-year maturity date extension agreement to extend the Maturity Date to October 9, 2023.

Prepetition, the Debtor began the process of transitioning its business model from office, industrial, and retail space into self-storage and began liquidating its portfolio of Properties to facilitate the transition. The Debtor's efforts have led to a substantial pay down of the Prepetition Loan and opened the door for refinancing. In this regard, on January 4, 2023, the Debtor and certain affiliates engaged Raymond James & Associates Inc. ("**Raymond James**") to assist it in obtaining a loan, the proceeds of which would be used to, among other things, refinance the Prepetition Loan. Debtor and Raymond James made substantial progress and, after considering a number of alternatives, signed a preliminary term sheet with Exit Lender in June 2023, on terms similar to those set forth on the Exit Facility Term Sheet, with certain Debtor and non-debtor owned properties to serve as collateral.

The Debtor, however, was unable to consummate the loan due to the improper cloud on title caused by the actions of Allen R. Hartman and the Hartman Minority Member that holds a 2.47% Interest in the Debtor.

On March 20, 2023, the Hartman Minority Member and Allen R. Hartman filed *Plaintiff's Original Petition* in the District Court of Harris County Texas, commencing the State Court Lawsuit. The Original Petition has been amended twice, resulting in the *Plaintiff's Third Amended Original Petition and Petition for Declaratory Relief* filed on September 4, 2023, naming the following defendants: Silver Star Properties REIT, Inc. (f/k/a Hartman Short Term Income Properties XX, Inc.), Hartman Income REIT Property Holdings, LLC, Hartman XXI Advisors, LLC, Silver Star Property Management, Inc., Hartman SPE, LLC (the Debtor), Hartman Income REIT, Inc. and Hartman Retail I, DST. The current plaintiffs in the State Court Lawsuit are the Hartman Minority Member, Allen R. Hartman, and REIT Property Management, LLC.

Although the Original Petition was filed in March 2023, the Debtor did not receive notice of the lawsuit until July 19, 2023, when it received a copy of the petition for the first time as an attachment to an improper *lis pendens* the Hartman Minority Member filed against one of its Properties. The Hartman Minority Member has since filed multiple improper *lis pendens* against the Debtor's Properties.

As relevant here, the Third Amended Original Petition alleges that the Hartman Minority Member, via its 2.47% membership interest in the Debtor, owns an undivided interest in the Debtor's Properties. Specifically, the Hartman Minority Member alleges that:

> Plaintiff Hartman XXI owns a 2.47% interest in Hartman SPE, LLC, a wholly owned subsidiary of Silver Star. Hartman XXI also owns both common shares and operating unit in Silver Star. Therefore, pursuant to these ownership rights, Hartman XXI owns an undivided interest, legal and equitable or otherwise, in the properties owned by Defendant Hartman SPE, LLC.

Am. Pet. at 8. The defendants in the State Court Lawsuit filed a motion to expunge or cancel the *lis pendens* on July 25, 2023, and a motion to dismiss the Amended Petition on August 8, 2023; however, the State Court had not ruled as of the Petition Date.

Not only did the Hartman Minority Member's actions prevent the Debtor from obtaining financing, but they also threatened the Debtor's ability to sell its Properties. For example, to close on the prepetition sale of its Prestonwood Park property, the Debtor was required to reduce the purchase price by $125,000, place $2.7 million into escrow, and provide various indemnities, all as a direct result of the Hartman Minority Member's allegations in the State Court Lawsuit. This escrow was in addition to $1 million the buyer had to place into escrow pending resolution of the cloud on title.

The State Court Plaintiff's actions are particularly troubling since they were fully aware that the Prepetition Loan was in default and would mature on October 9, 2023. Despite this, the plaintiffs continued with their course of action, leaving the Debtor with no viable option other than to file for bankruptcy relief before the Prepetition Loan matured in order to preserve the purchase and sale agreements that were negotiated prior to the Petition Date.

Because of this, in early September 2023, the Debtor's management team, together with its professionals, determined that a chapter 11 process that includes section 363 sales of property free and clear of all Liens, Claims, encumbrances, and other interests (including the cloud on title) was the best and most value maximizing path forward.

## B.    The Chapter 11 Case

### 1.    First Day Orders

On the Petition Date, the Debtor Filed the First Day Motions to transition into operations during the Chapter 11 Case, stabilize operations, and preserve relationships with vendors, clients, and employees.

The First Day Motions requested relief from the Bankruptcy Court to, among other things: (a) maintain the Debtor's cash management system; (b) obtain authority to use cash collateral; (c) pay insurance, taxes, and other amounts in the ordinary course; and (d) provide adequate assurance to utility companies. In support of the motions, the Debtor relied upon the First Day Declaration. The Bankruptcy Court held a hearing on the First Day Motions on September 15, 2023, and granted the relief sought in the First Day Motions on an interim basis. In the absence of objections, no hearing was necessary for final approval of the First Day Motions. The Bankruptcy Court entered final orders on the First Day Motions on or about October 16, 2023.

### 2.    The Declaratory Judgment Action

On September 28, 2023, the Debtor filed an *Adversary Complaint* against the Hartman Minority Member seeking, among other relief, a declaratory judgment that the Hartman Minority Member has no interest in the Properties and the Debtor is entitled to an order discharging and expunging the improper *lis pendens* the Hartman Minority Member filed against certain of the Properties. On November 27, 2023, the Bankruptcy Court signed a *Stipulated Final Judgment* ruling, among other things, that:  (a) Hartman Minority Member does not possess any interest in the Debtor's real property,  including, without limitation, the Properties, under Section 24 of the Limited Liability Company Agreement dated July 19, 2018, as amended, and 6 Del. C. § 18-701; and (b) each *lis pendens* Hartman Minority Member filed against the Debtor's Properties shall be automatically deemed discharged, expunged and cancelled.

With the Stipulated Final Judgment in place, the Debtor and certain of its affiliates and the Exit Lender and certain of its affiliates continued in discussions regarding the terms of one or more loans to be used to refinance the Prepetition Loan, pay Allowed Claims in full, and provide funds to permit the Debtor to continue to transition its business model into self-storage properties, the proposed terms of which are set forth in the indicative Exit Facility Term Sheet. The Exit Facility Documents will be filed with the Plan Supplement and will only be binding upon the parties in accordance with their express terms.

### 3.    Retention of Professionals

The Debtor, through various applications that were subsequently approved by the Bankruptcy Court, employed Katten Muchin Rosenman LLP as counsel [Docket No. 159], Chipman Brown Cicero & Cole LLP as local counsel [Docket No. 160], Hirsch & Westheimer,

P.C. as special real estate counsel [Docket No. 219], and Epiq Corporate Restructuring as claims and noticing agent [Docket No. 31] and administrative advisor [Docket No. 76]. The Debtor also filed an application to authorize the retention of Raymond James as the Debtor's investment banker in relation to the Exit Facility [Docket No. 385], which is pending with the Bankruptcy Court.

**4.      Appointment of the Committee**

On September 22, 2023, the U.S. Trustee officially appointed the Committee [Docket No. 56]. The Committee is made up of the following parties:  Engie Resources, LLC; Pritchard Industries Southwest, LLC, and Amity Construction Co.

The Committee selected Fox Rothschild LLP to serve as its counsel, whose retention was approved by the Court on October 25, 2023 [Docket No. 208] and Phoenix Management Services, LLC as its financial advisor, whose retention was approved by the Court on November 9, 2023 [Docket No. 244].

**5.      Cash Collateral**

On the Petition Date, the Debtor filed its *Motion of Debtor for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral; (II) Granting Adequate Protection; (III) Modifying Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [Docket No. 15] seeking authority for the consensual use of KeyBank's cash collateral during the pendency of the Chapter 11 Case. The request was granted on an interim basis on September 15, 2023 [Docket No. 35] and on a final basis on October 16, 2023 [Docket No. 167].

**6.      Monthly Reporting, Schedules, and Meeting of Creditors**

The Debtor has timely filed all monthly operating reports [Docket Nos. 193, 289, and 349] and timely filed its Schedules on October 10, 2023 [Docket Nos. 141 and 142] and amended Schedules on November 13, 2023 [Docket No. 271]. The section 341 meeting of creditors was held on October 18, 2023.

**7.      Claims Process and Bar Date**

The Bankruptcy Court entered a Bar Date Order on October 13, 2023 [Docket No. 162]. The General Bar Date was November 13, 2023, and the Governmental Bar Date is March 11, 2024.

All creditors holding or wishing to assert unsecured or secured, priority or nonpriority Claims (as defined in Bankruptcy Code section 101(5)) against the Debtor or the Debtor's Estate, accruing prior to the Petition Date, including Claims arising under Bankruptcy Code section 503(b)(9), were required to file a separate, completed, and executed Proof of Claim Form on account of each such Claim, together with accompanying documentation by the General Bar Date. Governmental Units, as defined by Bankruptcy Code section 101(27), must submit Claims by the Governmental Bar Date.

The Debtor believes that after the reconciliation and Claims objection process is complete, the Debtor's total General Unsecured Claims liability should not be materially more than reported

in its Schedules. However, the Debtor's Claims review is ongoing, and its assessments are subject to change.

## C.    Summary of Assets

The Debtor's estate is currently comprised of 28 Properties with an estimated market value of approximately $285 million. A list of the Properties currently owned by the Debtor is attached hereto as **Exhibit B**; however, additional sales may occur during the pendency of the Chapter 11 Case.

## D.    Potential Claims and Causes of Action

The Bankruptcy Code preserves the Debtor's rights to prosecute Claims and Causes of Action that exist in and outside of bankruptcy and empowers the Debtor or Reorganized Debtor to prosecute certain Claims that are established by the Bankruptcy Code. This Combined Disclosure Statement and Plan preserves all of the Debtor's rights with respect to all Estate Causes of Actions, vests the Debtor's rights in respect of such Estate Causes of Action in the Reorganized Debtor and empowers the Reorganized Debtor to investigate, prosecute, collect, and/or settle the Estate Causes of Action as deemed appropriate by the Debtor or Reorganized Debtor in the exercise of its business judgment.

Except as otherwise provided in this Combined Disclosure Statement and Plan, all Estate Causes of Action, known or unknown, that the Debtor and Debtor's Estate may hold against any Person or Entity shall, on the Effective Date, automatically vest in the Reorganized Debtor, free and clear of all Liens, Claims, encumbrances, and other interests. The Reorganized Debtor shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such Causes of Action without the consent or approval of any third party and without any further order of the Bankruptcy Court. From and after the Effective Date, the Reorganized Debtor shall retain and possess the sole and exclusive right to commence, pursue, settle, compromise, or abandon, as appropriate, all Estate Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal.

To date, the Debtor has identified the following potential Claims and Causes of Action that constitute Estate Causes of Action:[4]

- All Claims and Causes of Action arising from or related to the case styled Allen R. Hartman and Hartman vREIT XXI, Inc. v Silver Star Properties REIT, Inc. (f/k/a Hartman Short Term Income Properties XX, Inc.), et al., Case No. 2023-17944 pending in the District of Harris County, Texas, 133rd Judicial District;

- All Claims and Causes of Action arising from or related to the case styled Hartman SPE, LLC v. Hartman vREIT XXI, Inc., Adv. Proc. No. 23-50588-MFW pending in the Bankruptcy Court;

---

[4] Again, this list is non-exclusive. The Debtor and the Committee continue to investigate potential Estate Causes of Action.

- All Claims and Causes of Action against the Allen Hartman and Hartman vREIT XXI, Inc., including but not limited to those arising under:

  o Texas Business & Commerce Code Section 27.01, including claims for fraud in real estate transactions;

  o RICO claims for conspiracy;

  o Violation of Texas Rule of Civil Procedure 11, including claims for frivolous lawsuits/claims;

  o Breach of fiduciary duty claims;

  o Claims for ultra vires acts;

  o Claims for tortious interference;

  o Claims for self-dealing;

  o Claims for slander of title;

  o Claims under Section 12.0002 of the Texas Civil Practices and Remedies Code; and

  o Claims under Chapter 12 of the Texas Real Property Code.

**Creditors and Interest Holders should not assume that the absence of their name from the identified potential Claims and Causes of Action set forth above is indicative of an intent that potential Claims and Causes of Action against such creditor or Holder will not be prosecuted. This Combined Disclosure Statement and Plan preserves all potential Claims and Causes of Action.**

**E.    Certain Federal Income Tax Consequences**

Introduction. The following discussion summarizes certain of the material United States federal income tax consequences expected to result from the implementation of this Combined Disclosure Statement and Plan. This discussion is based on current provisions of the Internal Revenue Code of 1986, as amended (the "Tax Code"), applicable Treasury Regulations, judicial authority, and current administrative rulings and pronouncements of the Internal Revenue Service (the "IRS"). There can be no assurance that the IRS will not take a contrary view, and no ruling from the IRS has been or will be sought. Legislative, judicial, or administrative changes or interpretations may be forthcoming that could alter or modify the statements and conclusions set forth herein. Any such changes or interpretations may or may not be retroactive and could affect the tax consequences to, among others, the Debtor and the Holders of Claims. The following summary is for general information only. The federal income tax consequences of this Combined Disclosure Statement and Plan are complex and subject to significant uncertainties. This summary does not address foreign, state, or local tax consequences of this Combined Disclosure Statement and Plan, nor does it purport to address all of the federal income tax consequences of this

24

Combined Disclosure Statement and Plan. This summary also does not purport to address the federal income tax consequences of this Combined Disclosure Statement and Plan to taxpayers subject to special treatment under the federal income tax laws, such as broker-dealers, tax exempt entities, financial institutions, insurance companies, S corporations, small business investment companies, mutual funds, regulated investment companies, foreign corporations, and nonresident alien individuals.

**IRS Circular 230 Notice: To comply with U.S. treasury regulations, be advised that any U.S. federal tax advice included in this communication (and it is not intended that any such advice be given in this Combined Disclosure Statement and Plan) is not intended or written to be used, and cannot be used, to avoid any U.S. federal tax penalties or to promote, market, or recommend to another party any transaction or matter.**

Federal Income Tax Consequences to Creditors. Given that all Allowed Claims are to be paid in full in Cash or Reinstated under this Combined Disclosure Statement and Plan, the Debtor does not anticipate that this Combined Disclosure Statement and Plan will have material income tax consequences for creditors.

**EACH HOLDER OF A CLAIM IS STRONGLY URGED TO CONSULT ITS OWN TAX ADVISOR REGARDING THE POTENTIAL FEDERAL, STATE, LOCAL, OR FOREIGN TAX CONSEQUENCES OF THE PLAN.**

## F.     Certain Risk Factors to Be Considered

The following provides a summary of important considerations and risk factors associated with this Combined Disclosure Statement and Plan. However, it is not exhaustive. Holders of Claims against and Interests in the Debtor should read and carefully consider the factors set forth below. The post-Confirmation reorganization of the Debtor involves a degree of risk, however small, and this Combined Disclosure Statement and Plan and certain of its appendices contain forward-looking statements that involve risks and uncertainty. The Reorganized Debtor's actual results could differ materially from those anticipated in such forward-looking statements as a result of a variety of factors, including those set forth in the following risk factors and elsewhere in this Combined Disclosure Statement and Plan. Holders of Claims or Interests should consider carefully the following factors in addition to the other information contained in this Combined Disclosure Statement and Plan.

General Bankruptcy Considerations. This Combined Disclosure Statement and Plan sets forth the means for satisfying the Claims against and Interests in the Debtor. Allowed Claims are expected to be paid in full in Cash on the Effective Date or following their Allowance in accordance with the payment terms of this Combined Disclosure Statement and Plan. Certain Allowed Claims will be Reinstated and paid in full in accordance with their terms. Nevertheless, there are some risks to consummation of this Combined Disclosure Statement and Plan. This Combined Disclosure Statement and Plan has been proposed after a careful consideration of all reasonable restructuring alternatives. Despite the risks inherent in this Combined Disclosure Statement and Plan, as described herein, the Debtor believes that this Combined Disclosure Statement and Plan is in the best interests of Creditors and Holders of Interests when compared to all reasonable alternatives.

Section 1129 of the Bankruptcy Code requires, among other things, a showing that confirmation of this Combined Disclosure Statement and Plan will not be followed by liquidation or the need for further financial reorganization of the Debtor. Although the Debtor believes that this Combined Disclosure Statement and Plan will meet such tests, there can be no assurance that the Bankruptcy Court will reach the same conclusion. If a liquidation or protracted reorganization were to occur, there is a significant risk that the value of the Debtor's enterprise would be substantially eroded to the detriment of all stakeholders. The Debtor's future results are dependent upon the successful Confirmation and implementation of a plan of reorganization. Failure to obtain this approval in a timely manner could adversely affect the Debtor's operating results since the Debtor's relations with tenants and suppliers may be harmed by protracted bankruptcy proceedings. Once a plan of reorganization is approved and implemented, the Debtor's operating results may be adversely affected by the possible reluctance of prospective tenants and suppliers to do business with a company that recently emerged from bankruptcy proceedings.

Claims Estimation. There can be no assurance that the Debtor's estimated Claim amounts are correct. The actual Allowed amount of Claims likely will differ in some respect from the estimates. The estimated amounts are subject to certain risks, uncertainties, and assumptions. Should one or more of these risks or uncertainties materialize, or should underlying assumptions prove incorrect, the actual Allowed amount of Claims may vary from those estimated herein.

The Debtor is subject to the risks and uncertainties associated with the Chapter 11 Case. For the duration of the Chapter 11 Case, the Debtor's operations and its ability to execute its business strategy will be subject to risks and uncertainties associated with bankruptcy. These risks include, but are not limited to:

- the Debtor's ability to obtain Bankruptcy Court approval with respect to motions filed in the Chapter 11 Case from time to time, including any appeals of such rulings;

- the Debtor's ability to comply with and operate under orders entered by the Bankruptcy Court;

- the length of time the Debtor will remain in bankruptcy and its ability to successfully emerge;

- the Debtor's ability to develop, prosecute, confirm, and consummate this Combined Disclosure Statement and Plan;

- the Debtor's ability to meet all conditions precedent to the Effective Date of this Combined Disclosure Statement and Plan;

- the Debtor's ability to continue as a going concern;

- the ability of third parties to seek and obtain court approval to terminate or shorten the exclusivity period for the Debtor to propose and confirm a Chapter 11 plan of reorganization in order to propose and confirm a competing or alternative plan;

- the ability of third parties to seek and obtain court approval for the appointment of a Chapter 11 trustee or conversion the Chapter 11 Case to a chapter 7 case;

- the Debtor's ability to assume or assume and assign material executory contracts and unexpired leases of nonresidential real property; and

- the Debtor's ability to fund and execute its reorganization business plan.

A Lengthy Bankruptcy Proceeding Could Disrupt the Debtor's Business, as Well as Impair the Prospect for Reorganization on the Terms Contained in a Plan. While the Debtor expects that the Chapter 11 Case will be of short duration and will not be unduly disruptive to its business, there is no assurance that this will be the case. An extended stay in bankruptcy could have adverse effects on the Debtor's operations, including that tenants could opt to move after their lease term or otherwise execute termination options or the Debtor's business partners could demand financial assurances or enhanced performance, any of which could impair business prospects.

The Debtor Will Also Be Subject to Risks and Uncertainties with Respect to the Actions and Decisions of its Creditors and other Third Parties Who Have Interests in The Chapter 11 Case that May Be Inconsistent with the Debtor's Plans. These risks and uncertainties could affect the Debtor's business and operations in various ways. For example, negative events or publicity associated with the Chapter 11 Case could adversely affect the Debtor's relationships with its vendors and tenants, which in turn could adversely affect the Debtor's operations and financial condition. Also, the Debtor needs Bankruptcy Court approval for transactions outside the ordinary course of business, which may limit the Debtor's ability to respond timely to events or take advantage of opportunities. Because of the risks and uncertainties associated with the Chapter 11 Case, the Debtor cannot predict or quantify the ultimate impact that events occurring during the Chapter 11 Case will have on its business, financial condition, and results of operations.

The Court May Require the Debtor to Solicit Votes. The Debtor does not intend to impair Claims or Interests under this Combined Disclosure Statement and Plan. Nevertheless, there can be no assurance that the Bankruptcy Court will agree that claims and interests are Unimpaired and require solicitation of acceptances.

Failure to Obtain Exit Financing. Failure to obtain adequate exit financing could result in delayed recovery for Holders of Claims entitled to a Distribution.

Additional Administrative Expense Claims. Any delay in Confirmation of this Combined Disclosure Statement and Plan or delay to the Effective Date could result in additional Administrative Expense Claims. This may endanger the ultimate effectiveness of this Combined Disclosure Statement and Plan or result in a delayed recovery for Holders of Claims entitled to a Distribution.

The Debtor's Cash Flow and Ability to Meet Its Obligations Could Be Adversely Affected if It Has Insufficient Liquidity for Its Business Operations During the Chapter 11 Case. Although the Debtor believes that it will have sufficient liquidity to operate its business during the pendency of the Chapter 11 Case, there can be no assurance that the revenue generated by the Debtor's business operations and cash made available to the Debtor will be sufficient to fund its operations

US_300412569v2

and the professional and other fees related to the restructuring. As a result, the Debtor's ability to continue as a going concern is dependent upon its emergence from bankruptcy.

<u>Financial Information Is Based on the Debtor's Books and Records and, Unless Otherwise Stated, No Audit Was Performed</u>. The financial information contained in this Combined Disclosure Statement and Plan has not been audited. In preparing this Combined Disclosure Statement and Plan, the Debtor relied on financial data derived from its books and records that was available at the time of such preparation. Although the Debtor has used its reasonable business judgment to ensure the accuracy of the financial information provided in this Combined Disclosure Statement and Plan, and while the Debtor believes that such financial information fairly reflects, in all material respects, the financial results of the Debtor, the Debtor is unable to warrant or represent that the financial information contained herein and attached hereto is without inaccuracies.

<u>Financial Projections and Other Forward-Looking Statements Are Not Assured, Are Subject to Inherent Uncertainty Due to Numerous Assumptions Upon Which They Are Based and, as a Result, Actual Results May Vary</u>. This Combined Disclosure Statement and Plan contains various projections concerning the financial results of the Reorganized Debtor's operations, including the financial projections that are, by their nature, forward-looking, and which necessarily base projections on certain assumptions and estimates. Should any or all of these assumptions or estimates ultimately prove to be incorrect, the actual future financial results of the Reorganized Debtor may turn out to be different from the financial projections. The Debtor cautions each reader of this Combined Disclosure Statement and Plan to carefully consider those factors set forth above and the acknowledgements contained in this section of this Combined Disclosure Statement and Plan. Such factors have, in some instances, affected and in the future could affect the ability of the Debtor to achieve its projected results and may cause actual results to differ materially from those expressed herein. The Debtor undertakes no obligation to update any forward-looking statements in this Combined Disclosure Statement and Plan. The Distribution projections, and other information contained herein and attached hereto are estimates only, and the timing and amount of actual Distributions to Holders of Allowed Claims may be affected by many factors that cannot be predicted. Therefore, any analyses, estimates, or recovery projections may not turn out to be accurate.

## G.    Feasibility

The Bankruptcy Code requires that, in order for a plan to be confirmed, the Bankruptcy Court must find that confirmation of such plan is not likely to be followed by the liquidation or need for further reorganization of the debtor unless contemplated by the plan.

For purposes of determining whether this Combined Disclosure Statement and Plan meets this requirement, the Debtor has analyzed its ability to meet its obligations under this Combined Disclosure Statement and Plan and retain sufficient liquidity and capital resources to conduct its business. The Debtor's management, with the assistance of their advisors, have prepared certain financial projections for fiscal years 2024-2026. These projections and the assumptions upon which they are based, will be filed as part of the Plan Supplement.

In general, as illustrated by the financial projections, the Debtor believes that with the Exit Facility provided under this Combined Disclosure Statement and Plan, the Reorganized Debtor should have sufficient cash flow and availability to make all payments required pursuant to this Combined Disclosure Statement and Plan while conducting ongoing business operations. The Debtor believes that Confirmation and consummation of this Combined Disclosure Statement and Plan is therefore not likely to be followed by the liquidation or further reorganization. Accordingly, the Debtor believes that this Combined Disclosure Statement and Plan satisfies the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code.

## H.    Best Interests Test

The Bankruptcy Code requires that the Bankruptcy Court determine that a plan accepted by the requisite number of creditors in an impaired class provides each such member of each impaired class of claims and interests a recovery that has value, on the effective date, at least equal to the value of the recovery that each such creditor would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code. Under this Combined Disclosure Statement and Plan, all Holders of Claims and Interests are Unimpaired and are deemed to accept this Combined Disclosure Statement and Plan. Accordingly, the "Best Interests Test" is not applicable to this Combined Disclosure Statement and Plan.

## I.    No Unfair Discrimination

The Debtor believes the treatment of Claims and Interests described in this Combined Disclosure Statement and Plan are fair and equitable and do not discriminate unfairly. The proposed treatment of Claims and Interests provides that each Holder of such Claim or Interest will be treated identically within their respective class and that, except when agreed to by such Holder, no Holder of any Claim or Interest junior will receive or retain any property on account of such junior Claim or Interest.

## J.    Releases by the Debtor

Article XI of this Combined Disclosure Statement and Plan contains certain releases, exculpations, and injunction language. Parties are urged to read these provisions carefully to understand how Confirmation and consummation of this Combined Disclosure Statement and Plan will affect any Claim, Interest, right, or action regarding the Debtor and certain third parties.

**THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST THE DEBTOR TO THE FULLEST EXTENT AUTHORIZED OR PROVIDED UNDER THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE AND ALL OTHER APPLICABLE LAW.**

Article XI.C of this Combined Disclosure Statement and Plan provides for a release by the Debtor of the Released Parties. The Debtor is not aware of any potential Claims or Causes of Action against the Released Parties.

The Debtor is also not aware of any Claims or Causes of Action against its current professionals, the Committee and members of the Committee, the Committee's Professionals, or any of their respective direct and indirect current and former Affiliates, subsidiaries, partners

(including general partners and limited partners), investors, managing members, members, officers, directors, principals, employees, managers, controlling persons, agents, attorneys, investment bankers, Professionals, advisors, and representatives, each in their capacity as such, but excluding all officers and directors of the Debtor who were not serving in that capacity as of the Effective Date.

## V.    TREATMENT OF UNCLASSIFIED CLAIMS

In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims, Professional Fee Claims, and Priority Tax Claims are not classified and are not entitled to vote on this Combined Disclosure Statement and Plan.

### A.    Administrative Expense Claims

Requests for payment of Administrative Expense Claims, other than Professional Fee Claims, must be Filed no later than the applicable Administrative Expense Bar Date. Holders of Administrative Expense Claims that do not File requests for the allowance and payment thereof on or before the applicable Administrative Expense Bar Date shall forever be barred from asserting such Administrative Expense Claims against the Debtor or its Estate. This provision does not apply to 28 U.S.C. § 1930 obligations, including U.S. Trustee fees and court costs, which are payable as a condition to Confirmation.

Except to the extent that a Holder of an Allowed Administrative Expense Claim agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, in full and final satisfaction, settlement, release, and discharge of and in exchange for release of each Allowed Administrative Expense Claim, each Holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash (i) on the Effective Date or as soon thereafter as is reasonably practicable or, if not then due, when such Allowed Administrative Expense Claim is due or as soon thereafter as is reasonably practicable, (ii) if an Administrative Expense Claim is Allowed after the Effective Date, on the date such Administrative Expense Claim is Allowed or as soon thereafter as is reasonably practicable or, if not then due, when such Allowed Administrative Expense Claim is due, or (iii) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

### B.    Professional Fee Claims

All Professionals or other Persons requesting compensation or reimbursement of Professional Fee Claims for services rendered before the Effective Date (including compensation requested by any Professional or other entity for making a substantial contribution in the Chapter 11 Case) shall File an application for final allowance of compensation and reimbursement of expenses no later than the Professional Fee Claims Bar Date.

The Final Fee Hearing to determine the allowance of Professional Fee Claims shall be held as soon as practicable after the Professional Fee Claims Bar Date. The Debtor's counsel shall File a notice of the Final Fee Hearing. Such notice shall be served upon counsel for the Committee, all Professionals, the U.S. Trustee, and all parties on the Debtor's Bankruptcy Rule 2002 service list.

US_300412569v2

Allowed Professional Fee Claims of the Professionals shall be paid (i) as soon as is reasonably practicable following the later of (a) the Effective Date and (b) the date upon which the order relating to any such Allowed Professional Fee Claim is entered by the Bankruptcy Court, or (ii) upon such other terms as agreed by the Holder of such an Allowed Professional Fee Claims.

Except as otherwise specifically provided in this Combined Disclosure Statement and Plan, from and after the Confirmation Date, the Debtor shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of this Combined Disclosure Statement and Plan and consummation incurred by the Debtor. Upon the Confirmation Date, any requirement that Professionals comply with Bankruptcy Code sections 327 through 331, 363, and 1103 in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

## C.    Priority Tax Claims

Except to the extent the Debtor and the Holder of an Allowed Priority Tax Claim agree to a different and less favorable treatment, the Debtor shall pay, in full satisfaction and release of such Claim, to each holder of a Priority Tax Claim, Cash, in an amount equal to such Allowed Priority Tax Claim, on the later of:  (i) the Effective Date and (ii) the first Business Day after the date that is 30 calendar days after the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is reasonably practicable.

## D.    Statutory Fees

All Statutory Fees incurred prior to the Effective Date shall be paid by the Debtor on the Effective Date. After the Effective Date, the Reorganized Debtor shall pay all such fees when due and payable and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee, until such time that the Chapter 11 Case is closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

## VI.    CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

## A.    Treatment of Claims and Interests Under this Combined Disclosure Statement and Plan

<u>Classification and Treatment Generally</u>. Pursuant to sections 1122 and 1123 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests, which are placed in a particular Class for all purposes under this Combined Disclosure Statement and Plan, including, without limitation, voting, Confirmation, and receiving Distributions under this Combined Disclosure Statement and Plan, as set forth herein. In accordance with section 1123(a)(1) of the Bankruptcy Code, Claims arising under sections 507(a)(2) or 507(a)(8) of the Bankruptcy Code are not classified and their treatment is set forth in Article V.

The following chart summarizes the classification and treatment of the Classes:

31

| Class | Estimated Allowed Claims[5] | Treatment | Summary of Treatment |
|---|---|---|---|
| Class 1 – Allowed Prepetition Lender Secured Claim arising under Prepetition Loan Documents | $217,276.867.59[6] | Unimpaired, deemed to accept. | 100% |
| Class 2 – Allowed Other Secured Claims | $3,233,997.70 | Unimpaired, deemed to accept | 100% |
| Class 3 – Allowed Other Priority Claims | $0 | Unimpaired, deemed to accept | 100% |
| Class 4 – Allowed General Unsecured Claims, including Intercompany Claims and Deficiency Claims | $20,292,162[7] | Unimpaired, deemed to accept | 100% |
| Class 5 – Interests | n/a | Unimpaired, deemed to accept | Reinstated |

1.    **Class 1: – Allowed Prepetition Lender Secured Claim arising under Prepetition Loan Documents**

Treatment:  The Allowed Prepetition Lender Secured Claim will be paid in full at closing with the proceeds of the Exit Facility. For the avoidance of doubt, upon the payment in full of the Prepetition Lender Secured Claim as provided in this Plan, any and all Liens securing the Prepetition Lender Secured Claim shall automatically and without further action be released and be of no further force or effect.

Impairment and Voting:  Class 1 is Unimpaired, and all Holders of the Class 1 Claim are conclusively deemed to have accepted this Combined Disclosure Statement and Plan and are not entitled to vote on this Combined Disclosure Statement and Plan.

---

[5] Except with respect to Class 1, the amounts listed represent estimated Allowed Claims and do not represent amounts actually asserted by creditors in Proofs of Claim or otherwise. The Debtor has not completed its analysis of Claims in the Chapter 11 Case, and objections to such Claims have not been Filed and/or fully litigated and may continue following the Effective Date. Therefore, there can be no assurances of the exact amount of the Allowed Claims at this time. Rather, the actual amount of the Allowed Claims may be greater or lower than estimated.

[6] The amount to be paid in satisfaction of the Prepetition Lender Secured Claim shall be subject to adjustment as of the date it is paid in full, with such payment to include all amounts due or to come due under the Prepetition Loan Documents.

[7] The amount to be paid in satisfaction of each Class 4 Allowed Claim shall be subject to adjustment as of the date such Claim is  paid in full, with such payment to include all accrued interest in accordance with this Combined Disclosure Statement and Plan.

US_300412569v2

2. **Class 2: – Allowed Other Secured Claims**

<u>Treatment</u>:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, each holder of an Allowed Other Secured Claim shall receive, in exchange for full and final satisfaction, settlement, release, and discharge of such Claim, the following, at the option of the Debtor:

      (a) Payment of an Allowed Other Secured Claim in full in Cash;

      (b) Reinstatement of such Allowed Other Secured Claim; or

      (c) Such other treatment rendering such Allowed Other Secured Claim Unimpaired.

For the avoidance of doubt, on the Effective Date, any and all liens securing the Other Secured Claims shall automatically and without further action transfer from the Properties and attach to the proceeds of the Exit Facility, from which the Allowed Other Secured Claims shall be satisfied.

<u>Impairment and Voting</u>:  Class 2 is Unimpaired, and all Holders of Class 2 Claims are conclusively deemed to have accepted this Combined Disclosure Statement and Plan and are not entitled to vote on this Combined Disclosure Statement and Plan.

3. **Class 3: – Allowed Other Priority Claims**

<u>Treatment</u>:  Except to the extent that a Holder of an Other Priority Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of such Claim, each Holder of such Other Priority Claim shall receive the following at the option of the Debtor:

      (a) Payment of an Allowed Other Priority Claim in full in Cash;

      (b) Reinstatement of such Other Priority Claim; or

      (c) Such other treatment rendering such Other Priority Claim Unimpaired.

<u>Impairment and Voting</u>:  Class 3 is Unimpaired, and all Holders of Class 3 Claims are conclusively deemed to have accepted this Combined Disclosure Statement and Plan and are not entitled to vote on this Combined Disclosure Statement and Plan.

4. **Class 4: – Allowed General Unsecured Claims, including Intercompany Claims and Deficiency Claims**

<u>Treatment</u>:  Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, each Holder of an Allowed General Unsecured Claim shall, in exchange for full and final satisfaction, settlement, release, and discharge of such Claim, receive at the sole option of the Debtor either:

      (a) Payment in Cash in the full amount of an Allowed General Unsecured Claim plus interest on such Allowed General Unsecured Claim from the Petition Date to the date of

payment at the Federal Judgment Rate, which payment shall occur on the later of (i) as soon as reasonably practicable after the Effective Date, but in no event later than five (5) business days after the Effective Date (or if a General Unsecured Claim is Allowed after the Effective Date, on the date such General Unsecured Claim is Allowed or as soon thereafter as is reasonably practicable, but in no event later than five (5) business days after such General Unsecured Claim is Allowed) or, (ii) if not then due, when such Allowed General Unsecured Claim is due in accordance with the terms and conditions of the particular transaction giving rise to such Allowed General Unsecured Claim; or

       (b) Such other treatment as would render such General Unsecured Claim otherwise Unimpaired pursuant to section 1124 of the Bankruptcy Code.

<u>Impairment and Voting</u>:  Class 4 is Unimpaired, and all Holders of Class 4 Claims are conclusively deemed to have accepted this Combined Disclosure Statement and Plan and are not entitled to vote on this Combined Disclosure Statement and Plan.

**5.       Class 5 - Interests**

<u>Treatment</u>:  All Holders of Interests shall retain the Interests.

<u>Impairment and Voting</u>:  Class 5 is Unimpaired, and all Holders of Class 5 Interest are conclusively deemed to accept this Combined Disclosure Statement and Plan and are not entitled to vote on this Combined Disclosure Statement and Plan.

## VII.    CONFIRMATION PROCEDURES

**A.     Confirmation Procedures**

**1.       Confirmation Hearing**

The Confirmation Hearing before the Bankruptcy Court has been scheduled for **<u>February [    ] 2024 at [    ] (Prevailing Eastern Time)</u>** at the United States Bankruptcy Court, 824 North Market Street, 6th Floor, Wilmington, DE 19801 to consider (a) approval of this Combined Disclosure Statement and Plan as providing adequate information pursuant to Bankruptcy Code section 1125, and (b) Confirmation of this Combined Disclosure Statement and Plan pursuant to Bankruptcy Code section 1129. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing.

**2.       Procedure for Objections**

Any objection to Confirmation of this Combined Disclosure Statement and Plan must be made in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim held by the objector. Any such objection must be Filed by **<u>January [    ] 2024 at [    ] (Prevailing Eastern Time)</u>** with the Bankruptcy Court and served on counsel for the Debtor, the Committee, the Exit Facility Agent, the U.S. Trustee, and all parties who have Filed a request for notice in this Chapter 11 Case, as set forth in the Confirmation

US_300412569v2

Hearing Notice. Unless an objection is timely Filed and served, it may not be considered by the Bankruptcy Court.

### 3.    Requirements for Confirmation

The Bankruptcy Court will confirm this Combined Disclosure Statement and Plan only if the requirements of Bankruptcy Code section 1129 are met. As set forth in this Combined Disclosure Statement and Plan, the Debtor believes that this Combined Disclosure Statement and Plan: (a) meets the feasibility requirements; (b) is in the best interests of creditors; (c) has been proposed in good faith; and (d) meets all other technical requirements imposed by the Bankruptcy Code.

## B.    No Solicitation Required

Holders of Claims and Interests in all Classes are Unimpaired. Under Bankruptcy Code section 1126(f), Holders of such Claims and Interests are conclusively presumed to have accepted this Combined Disclosure Statement and Plan, and the votes of the Holders of such Claims and Interests shall not be solicited.

## VIII.   IMPLEMENTATION AND EXECUTION OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN

## A.    Funding

Distributions under this Combined Disclosure Statement and Plan will be funded from the Debtor's Cash on hand, including funds from the Exit Facility, as of the Effective Date.

## B.    Class 4 Reserve

Notwithstanding anything herein to the contrary, on the Effective Date, the Debtor shall establish and maintain a separate reserve account funded from Cash on hand and the Exit Facility in an amount of $20,292,162 (the "**Class 4 Reserve**"), which, for the avoidance of doubt, shall include interest on such Claims at Federal Judgment Rate from the Petition Date through the Effective Date. In addition, Debtor shall supplement the Class 4 Reserve on the first Business Day of each quarter following the Effective Date with additional accrued interest on the outstanding balance of the Class 4 Reserve. Separately, the Debtor may supplement the Class 4 Reserve from time-to-time as need to satisfy the Debtor's obligations under this Combined Disclosure Statement and Plan. Payments made to Allowed General Unsecured Claims shall be funded by the Class 4 Reserve; provided, however, that the foregoing shall not be construed as a cap or limitation on the source of funds payable to Holders of Allowed General Unsecured Claims. For the avoidance of doubt, the funds in the Class 4 Reserve shall be used solely to fund payments on account of Allowed General Unsecured Claims. Upon full satisfaction of Allowed General Unsecured Claims, the Class 4 Reserve may be closed, and the remaining funds paid to the Reorganized Debtor.

The Reorganized Debtor will prepare and File quarterly reports regarding the status of the Class 4 Claim reconciliation process, including information regarding Distributions from the Class 4 Reserve.

**C.      Effective Date**

The Effective Date shall not occur until the conditions for the Effective Date are satisfied or otherwise waived in accordance with the terms of this Combined Disclosure Statement and Plan. Upon occurrence of the Effective Date, the Debtor shall File the notice of Effective Date.

**D.      General Settlement of Claims and Interests**

As provided herein, pursuant to Bankruptcy Code section 1123 and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, releases, and other benefits provided under this Combined Disclosure Statement and Plan, upon the Effective Date, the provisions of this Combined Disclosure Statement and Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to this Combined Disclosure Statement and Plan. This Combined Disclosure Statement and Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Code section 1123 and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable and in the best interests of the Debtor and its Estate.

**E.      Restructuring Transactions**

On or before the Effective Date, the Debtor or the Reorganized Debtor shall enter into and shall take any actions as may be necessary or appropriate to effect the Restructuring Transactions. The actions to implement the Restructuring Transactions may include:  (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of this Combined Disclosure Statement and Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Combined Disclosure Statement and Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; and (4) all other actions that the applicable Entities determine to be necessary, including making filings or recordings that may be required by applicable law in connection with this Combined Disclosure Statement and Plan. The Confirmation Order shall, and shall be deemed to, pursuant to Bankruptcy Code sections 363 and 1123, authorize, among other things, all action as any be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate this Combined Disclosure Statement and Plan.

**F.      Section 1145 Exemption**

In accordance with Bankruptcy Code section 1145, the retention under this Combined Disclosure Statement and Plan of the Interests is exempt from all federal, state, or local law

36

requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker dealer in such securities and is not deemed to be a public offer of such securities.

## G.    Reorganized Debtor

The Reorganized Debtor shall be authorized to adopt any agreements, documents, and instruments and to take any other actions contemplated under this Combined Disclosure Statement and Plan as necessary to consummate this Combined Disclosure Statement and Plan. Cash payments to be made pursuant to this Combined Disclosure Statement and Plan will be made by the Debtor or Reorganized Debtor. The Debtor and its affiliates, including Property Manager, Silver Star Borrower, Silver Star Mezzanine Borrower, Portfolio Borrower and Portfolio Mezzanine Borrower, will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Debtor or Reorganized Debtor, as applicable, to satisfy its obligations under this Combined Disclosure Statement and Plan. Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtor's historical intercompany account settlement practices and will not violate the terms of this Combined Disclosure Statement and Plan.

From and after the Effective Date, the Reorganized Debtor, subject to any applicable limitations set forth in any post-Effective Date agreement, shall have the right and authority without further order of the Bankruptcy Court to raise additional capital and obtain additional financing, subject to the New Organizational Documents, if applicable, and the Exit Facility Documents, as the Reorganized Debtor deems appropriate.

## H.    Post-Confirmation Management

The day-to-day operations of the Reorganized Debtor will continue to be managed by SPE Manager.

## I.    Corporate Action; Effectuating Documents

Upon the Effective Date, all actions contemplated under this Combined Disclosure Statement and Plan shall be deemed authorized and approved in all respects, including: (1) implementation of the Restructuring Transactions; (2) entry into the Exit Facility Documents; (3) all other actions contemplated under this Combined Disclosure Statement and Plan (whether to occur before, on, or after the Effective Date); (4) adoption of the New Organizational Documents, if applicable; (5) assumption of Executory Contracts and Unexpired Leases; and (6) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions contemplated by this Combined Disclosure Statement and Plan (whether to occur before, on, or after the Effective Date). All matters provided for in this Combined Disclosure Statement and Plan involving the corporate structure of the Debtor or the Reorganized Debtor, and any corporate, partnership, limited liability company, or other governance action required by the Debtor or the Reorganized Debtor, as applicable, in connection with this Combined Disclosure Statement and Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Interest Holders, members, directors, or officers of the Debtor or the Reorganized Debtor, as applicable. On or (as applicable) prior to the

37

Effective Date, the appropriate officers of the Debtor or the Reorganized Debtor, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, and instruments contemplated under this Combined Disclosure Statement and Plan (or necessary or desirable to effect the transactions contemplated under this Combined Disclosure Statement and Plan) in the name of and on behalf of the Reorganized Debtor, including the New Organizational Documents, if applicable, the Exit Facility Documents, and any and all other agreements, documents, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Article VIII.I shall be effective notwithstanding any requirements under non-bankruptcy law.

**J.      New Organizational Documents**

On or immediately prior to the Effective Date, the New Organizational Documents, if any, shall be automatically adopted by the Reorganized Debtor. To the extent required under this Combined Disclosure Statement and Plan or applicable non-bankruptcy law, the Reorganized Debtor will file its New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in state or country of organization if and to the extent required in accordance with the applicable laws of the respective state or country of organization. The New Organizational Documents will prohibit the issuance of non-voting equity securities, to the extent required under Bankruptcy Code section 1123(a)(6). After the Effective Date, the Reorganized Debtor may amend and restate its New Organizational Documents in accordance with the terms thereof, and the Reorganized Debtor may file such amended certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the laws of the respective states, provinces, or countries of incorporation and the New Organizational Documents.

**K.      Indemnification Obligations**

All indemnification provisions currently in place (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) as of the Petition Date for the current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtor, as applicable, shall, to the fullest extent permitted by applicable law, be reinstated and remain intact, irrevocable, and shall survive the Effective Date on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtor than the indemnification provisions in place prior to the Effective Date.

**L.      Directors and Officers of the Reorganized Debtor**

As of the Effective Date, the Debtor will continue to be manager-managed by SPE Manager. Property Manager's officers will be: David Wheeler, President and Chief Executive Officer; Louis T. Fox, III, Treasurer; and Adrienne Collins, General Counsel and Secretary.

**M.      Effectuating Documents; Further Transactions**

On and after the Effective Date, the Reorganized Debtor, and its officers, directors, members, or managers (as applicable), are authorized to and may issue, execute, deliver, file, or

record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Combined Disclosure Statement and Plan in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorization, or consents except for those expressly required pursuant to this Combined Disclosure Statement and Plan.

On and after the Effective Date, at the request of the Debtor, Reorganized Debtor or Exit Lender, the Holder of the Prepetition Lender Secured Claim or any Holder of an Other Secured Claim shall properly execute, and notarize where necessary, such documents as the Debtor, Reorganized Debtor or Exit Lender deems reasonably necessary to release such Holder's liens and security interests against any of the Properties.

## N.      Sources of Consideration for Distributions

The Debtor and the Reorganized Debtor, as applicable, shall fund Distributions under this Combined Disclosure Statement and Plan with:  (1) Cash on hand, including Cash from operations; and (2) the proceeds from the Exit Facility.

## O.      Exit Facility

The Exit Facility Documents will be filed with the Plan Supplement and will only be binding upon the parties in accordance with their express terms.[8]   Nothing in this Combined Disclosure Statement and Plan, including the Exit Facility Term Sheet, should be construed as a commitment by Exit Lender or any of its affiliates to provide a loan or other financial accommodation to the Debtor or any of its affiliates. The terms and conditions of the Exit Facility Documents, including those set forth in the Exit Facility Term Sheet, are subject to modification or adjustment by Exit Lenders at any time, up to and including closing. Notwithstanding the foregoing, the Exit Lender has spent considerable resources in furtherance of the Exit Facility, including spending approximately ninety (90) days prior to the Petition Date completing its due diligence on the collateral properties proposed to secure the Exit Facility, processing the financial underwriting underlying the Exit Facility, and negotiating the Exit Facility Documents, and Exit Lender's investment committee has preliminarily approved the Exit Facility.

On the Effective Date, the Debtor's remaining Properties shall be transferred to Silver Star Borrower free and clear of all Liens, Claims, encumbrances, and other interests, and Exit Lender shall make two loans under the Exit Facility Documents: (a) an approximate $105 million loan to Silver Star Borrower and Portfolio Borrower, as co-borrowers; and (b) an approximate $15 million loan to Silver Star Mezzanine Borrower and Portfolio Mezzanine Borrower, as co-borrowers. These amounts are subject to adjustment to the extent that the Exit Facility closes after the sales of underwritten Properties have closed.   The Exit Facility loan to Silver Star Borrower and Portfolio Borrower, as co-borrowers, shall be secured by perfected, first priority liens on the parcels of non-residential assets to be held by Silver Star Borrower and the three properties that

---

[8] The description of the Exit Facility and the Exit Facility Documents contained in this Combined Disclosure Statement and Plan is summary in nature and qualified in full by the terms of the Exit Facility Documents. In the event of any inconsistency between the terms of the Exit Facility Documents and this Combined Disclosure Statement and Plan, the terms of the Exit Facility Documents shall govern.

will be held by the Portfolio Borrower. The Exit Facility Loan to Silver Star Mezzanine Borrower and Portfolio Mezzanine Borrower will be secured by a perfected, first priority pledges and security interests in and too 100% of the membership interests of Silver Star Borrower and Portfolio Borrower, respectively. The mortgage loans will be cross-collateralized amongst themselves and mezzanine loans will be cross-collateralized amongst themselves, with the mezzanine loan to the mezzanine borrowers being structurally subordinated to the mortgage loan to Silver Star Borrower and Portfolio Borrower.

On the Effective Date, and upon closing of the Exit Facility, Exit Lender shall distribute or cause to be distributed sufficient funds directly to the Class 4 Reserve, which will be used solely to pay Allowed General Unsecured Claims pursuant to the terms of the Combined Disclosure Statement and Plan. The funding of the Class 4 Reserve shall be specifically set forth in the final settlement sheet upon closing of the Exit Facility. Any such funds remaining after all Allowed General Unsecured Claims have been satisfied in full shall be paid to the Reorganized Debtor.

To the extent applicable, Confirmation of this Combined Disclosure Statement and Plan shall be deemed (i) approval of the Exit Facility (including the transactions and related agreements contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtor or the Reorganized Debtor, as applicable, in connection therewith), to the extent not approved by the Bankruptcy Court previously, and (ii) authorization for the Debtor or the Reorganized Debtor, as applicable, to, without further notice to or order of the Bankruptcy Court, (a) execute and deliver those documents and agreements necessary or appropriate to pursue or obtain the Exit Facility, including the Exit Facility Documents, and incur and pay any fees and expenses in connection therewith, and (b) act or take action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Debtor or the Reorganized Debtor, as applicable, may deem to be necessary to consummate the Exit Facility.

As of the Effective Date, the Liens securing the Exit Facility shall constitute valid, binding, enforceable, and automatically perfected Liens in the collateral specified in the Exit Facility Documents. To the extent provided in the Exit Facility Documents, the Exit Facility Agent or holder(s) of Liens under the Exit Facility Documents are authorized to file with the appropriate authorities mortgages, financing statements and other documents, and to take any other action in order to evidence, validate, and perfect such Liens or security interests. The guarantees, mortgages, pledges, Liens, and other security interests retained and/or granted to secure the obligations arising under the Exit Facility Documents have been retained and/or granted in good faith, for legitimate business purposes, and for reasonably equivalent value as an inducement to the lenders thereunder to extend credit thereunder and shall not constitute a fraudulent conveyance or fraudulent transfer and shall not otherwise be subject to avoidance, recharacterization, or subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law, and the priorities of such Liens and security interests shall be as set forth in the Exit Facility Documents. The Reorganized Debtor and the persons and entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of this Combined Disclosure Statement and Plan and the Confirmation Order (it being understood that perfection shall occur

automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

## P.    Corporate Existence

Except as otherwise provided in this Combined Disclosure Statement and Plan or any agreement, instrument, or other document incorporated in this Combined Disclosure Statement and Plan or the Plan Supplement, the Debtor shall continue to exist after the Effective Date as a limited liability company with all the powers of a limited liability company pursuant to the laws of the State of Delaware and pursuant to its certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended under this Combined Disclosure Statement and Plan or otherwise. To the extent such documents are amended, such documents are deemed to be amended pursuant to this Combined Disclosure Statement and Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law). After the Effective Date, the Reorganized Debtor's certificate of incorporation and bylaws (or other formation documents) may be amended or modified on the terms therein without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

## Q.    Vesting of Assets in the Reorganized Debtor

Except as otherwise provided in the Confirmation Order, this Combined Disclosure Statement and Plan, the Exit Facility Documents, or any agreement, instrument, or other document incorporated in, or entered into in connection with or pursuant to, this Combined Disclosure Statement and Plan or Plan Supplement, on the Effective Date, all property of the Estate, all Causes of Action, and any property acquired by the Debtor pursuant to this Combined Disclosure Statement and Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, encumbrances, and other interests. On and after the Effective Date, except as otherwise provided in this Combined Disclosure Statement and Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

## R.    Section 1146 Exemption.

To the fullest extent permitted by Bankruptcy Code section 1146(a), any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under this Combined Disclosure Statement and Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtor or the Reorganized Debtor; (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; (5) the grant of collateral as security for the Reorganized Debtor's obligations under and in connection with the Exit Facility; or (6) the making, delivery, or recording of any

deed or other instrument of transfer under, in furtherance of, or in connection with, this Combined Disclosure Statement and Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Combined Disclosure Statement and Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of Bankruptcy Code section 1146(a), shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## IX.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Executory Contracts and Unexpired Leases

On the Effective Date, all Executory Contracts or Unexpired Leases not otherwise rejected will be deemed assumed by the Debtor and assigned to Silver Star Borrower in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that are: (1) identified on the Rejected Executory Contracts and Unexpired Leases Schedule to be filed with the Plan Supplement; (2) previously expired or terminated pursuant to their own terms; (3) have been previously assumed and assigned by the Debtor pursuant to a Final Order; (4) are the subject of a motion to reject that is pending on the Effective Date; or (5) have an ordered or requested effective date of rejection that is after the Effective Date.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in this Combined Disclosure Statement and Plan or the Rejected Executory Contracts and Unexpired Leases Schedule, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth herein, assumptions and assignments or rejections of Executory Contracts and Unexpired Leases pursuant to this Combined Disclosure Statement and Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed and assigned pursuant to this Combined Disclosure Statement and Plan or by Bankruptcy Court order shall vest in and be fully enforceable by the assignee in accordance with its terms, except as such terms may have been modified by the provisions of this Combined Disclosure Statement and Plan or any order of the Bankruptcy Court authorizing and providing for its assumption. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Reorganized Debtor.

To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to this Combined

US_300412569v2

Disclosure Statement and Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by this Combined Disclosure Statement and Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Notwithstanding anything to the contrary in this Combined Disclosure Statement and Plan, the Debtor or Reorganized Debtor reserves the right to alter, amend, modify, or supplement the Rejected Executory Contracts and Unexpired Leases Schedule at any time up to and including the later of (i) Confirmation or (ii) ten (10) days after entry of a Final Order resolving any dispute regarding the assumption or rejection of an Executory Contract or Unexpired Lease.

## B.     Rejection Claims

In the event that the rejection of an Executory Contract or Unexpired Lease by the Debtor pursuant to this Combined Disclosure Statement and Plan results in a Rejection Claim in favor of a counterparty to such Executory Contract or Unexpired Lease, such Rejection Claim, if not heretofore evidenced by a timely and properly Filed Proof of Claim, shall be forever barred and shall not be enforceable against the Debtor, the Reorganized Debtor, or their respective properties or interests in properties, unless a Proof of Claim is Filed with the Bankruptcy Court on or before the later of date that is (i) 30 days after the Effective Date or (ii) 30 days after entry of a Final Order (other than the Confirmation Order) authorizing the rejection of such Executory Contract or Unexpired Lease. All Allowed Rejection Claims shall be treated as General Unsecured Claims pursuant to the terms of this Combined Disclosure Statement and Plan.

To the extent that any of the Debtor's insurance policies are considered Executory Contracts, then notwithstanding anything contained in this Combined Disclosure Statement and Plan to the contrary, such insurance policies, shall be deemed assumed. Unless otherwise determined by the Bankruptcy Court, pursuant to a Final Order, no payments are required to cure any defaults of the Debtor existing as of the Confirmation Date with respect to each such policy. For the avoidance of any doubt, all rights of the Debtor under any insurance policy that is not an Executory Contract and was not transferred pursuant to any order of the Bankruptcy Court, and all rights of the Debtor under any other insurance policies under which the Debtor may be a beneficiary, shall be preserved and shall remain in full force and effect after the Effective Date for the term thereof; and nothing herein shall alter or adversely affect the rights of any non-Debtor beneficiaries of or covered Persons or Entities under such insurance policies.

## C.     Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.

The Assumption Schedule attached hereto as **Exhibit A** includes a list of all Executory Contracts and Unexpired Leases proposed to be assumed by the Debtor and assigned to Silver Star Borrower on the Effective Date, the identities of the counterparties to such contracts and leases, and the proposed Cure amount.

Unless otherwise agreed in writing by the parties to the applicable Executory Contract or Unexpired Lease, any objection by a counterparty to an Executory Contract or Unexpired Lease to (i) the proposed assumption and assignment of such Executory Contract or Unexpired Lease;

43

(ii) adequate assurance of future performance, or (iii) the proposed Cure amount must be Filed, served, and actually received by the counsel to the Debtor on or before the date set forth in Article II of this Combined Disclosure Statement and Plan. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption and assignment, adequate assurance of future performance, or Cure will be deemed to have consented to the Debtor's assumption and assignment.

Any request for a Cure amount that differs from the amounts listed on Exhibit A that is not timely filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Debtor, the Reorganized Debtor, Silver Star Borrower or their respective properties or interests in property without the need for any objection by the Reorganized Debtor or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtor or the Reorganized Debtor of the Cure; provided that, nothing herein shall prevent the Reorganized Debtor from paying any Cure despite the failure of the relevant counterparty to file such request for payment of such Cure amount. The Reorganized Debtor also may settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court.

The Debtor or the Reorganized Debtor, as applicable, shall pay the Cure amounts, if any, on the Effective Date or as soon as reasonably practicable thereafter, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may agree. If there is any dispute regarding any Cure, the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of the applicable Cure amount shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption and assignment, or as may be agreed upon by the Debtor or the Reorganized Debtor, as applicable, and the counterparty to the Executory Contract or Unexpired Lease. The Debtor or Reorganized Debtor reserves the right to amend the Assumption Schedule at any time up to and including the later of (i) Confirmation or (ii) ten (10) days after entry of a Final Order resolving any objection lodged by the counterparty to an Executory Contract or Lease regarding the proposed assumption and assignment, adequate protection, and/or Cure.

Assumption of any Executory Contract or Unexpired Lease pursuant to this Combined Disclosure Statement and Plan or otherwise shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or any bankruptcy-related defaults, arising at any time prior to the effective date of assumption. Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Case, including pursuant to the Confirmation Order, shall be deemed disallowed and expunged as of the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such assumption, (2) the effective date of such assumption, or (3) the Effective Date without the need for further action.

D.      **Preexisting Obligations to the Debtor Under Executory Contracts and Unexpired Leases.**

Rejection of any Executory Contract or Unexpired Lease pursuant to this Combined Disclosure Statement and Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtor or the Reorganized Debtor, as applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtor expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtor pursuant to rejected Executory Contracts or Unexpired Leases.

E.      **Nonoccurrence of Effective Date.**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

F.      **Contracts and Leases Entered Into After the Petition Date.**

Contracts and leases entered into after the Petition Date by the Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the Debtor or the Reorganized Debtor in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## X.      PROVISIONS GOVERNING DISTRIBUTIONS

A.      **Provisions Governing Distributions Under this Combined Disclosure Statement and Plan**

1.      **Distribution Record Date**

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtor, or its agents, shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims or Interests. The Debtor shall have no obligation to recognize any ownership transfer of the Claims or Interests occurring on or after the Distribution Record Date. The Debtor or any party responsible for making Distributions shall be entitled to recognize and deal for all purposes under this Combined Disclosure Statement and Plan only with those record Holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

2.      **Method of Payment**

Except as otherwise provided herein, any Distributions and deliveries to be made hereunder with respect to Claims that are Allowed as of the Effective Date shall be made on the Effective Date or as soon thereafter as is reasonably practicable. Except as otherwise provided herein, any Distributions and deliveries to be made hereunder with respect to Claims that are Allowed after

the Effective Date shall be made as soon as is reasonably practicable after the date on which such Claim becomes Allowed. In the event that any payment or act under this Combined Disclosure Statement and Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on, or as soon as reasonably practicable after, the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

All Distributions hereunder shall be made by the Reorganized Debtor, or its named successor or assign, as Disbursing Agent, on or after the Effective Date or as otherwise provided herein. A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Disbursing Agent.

Unless otherwise expressly agreed in writing, all Cash payments to be made pursuant to this Combined Disclosure Statement and Plan shall be made by check drawn on a domestic bank or an electronic wire.

3.      **Surrender of Instruments**

Pursuant to Bankruptcy Code section 1143, as a condition precedent to receiving any Distribution under this Combined Disclosure Statement and Plan, each Holder of a certificated instrument or note must surrender such instrument or note held by it to the Disbursing Agent or its designee. Any Holder of such instrument or note that fails to (a) surrender the instrument or note or (b) execute and deliver an affidavit of loss and/or indemnity reasonably satisfactory to the Disbursing Agent and furnish a bond in form, substance, and amount reasonably satisfactory to the Disbursing Agent before the third anniversary of the Effective Date shall be deemed to have forfeited all rights and Claims and may not participate in any Distribution hereunder.

4.      **Delivery of Distributions**

Except as otherwise provided herein, Distributions to Holders of Allowed Claims shall be made:  (a) at the addresses set forth on the respective Proofs of Claim Filed by such Holders; (b) at the addresses set forth in any written notice of address changes delivered to the Debtor or Reorganized Debtor after the date of any related Proof of Claim; or (c) at the address reflected in the Schedules if no Proof of Claim is Filed and the Debtor or Reorganized Debtor has not received a written notice of a change of address.

Subject to applicable Bankruptcy Rules, all Distributions to Holders of Allowed Claims shall be made to the Disbursing Agent who shall transmit such Distributions to the applicable Holders of Allowed Claims or their designees. If any Distribution to a Holder of an Allowed Claim is returned as undeliverable, the Disbursing Agent shall have no obligation to determine the correct current address of such Holder, and no Distribution to such Holder shall be made unless and until the Disbursing Agent is notified, in writing, by the Holder of the current address of such Holder within ninety (90) days of such Distribution, at which time a Distribution shall be made to such Holder without interest that accrues after such Distribution; provided that such Distributions shall be deemed unclaimed property under Bankruptcy Code section 347(b) at the expiration of ninety

46

(90) days from the Distribution. After such date, all unclaimed property or interest in property shall revert to the Reorganized Debtor, and the Claim of any other Holder to such property or interest in property shall be discharged and forever barred.

5.      **Objection to and Resolution of Claims**

Except as expressly provided herein, or in any order entered in the Chapter 11 Case prior to the Effective Date, including the Confirmation Order, no Claim or Interest shall be deemed Allowed unless and until such Claim or Interest is deemed Allowed under this Combined Disclosure Statement and Plan (including expiration of the deadline to object to Claims set forth herein) or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Case allowing such Claim or Interest. On or after the Effective Date, the Reorganized Debtor shall be vested with any and all rights and defenses the Debtor had with respect to any Claim or Interest immediately prior to the Effective Date.

On and after the Effective Date, the Reorganized Debtor, with respect to all Claims and Interests, shall have exclusive authority to (a) file, withdraw, or litigate to judgment any objections to Claims, (b) settle or compromise any such objections to Claims without further notice to or action, order, or approval of the Bankruptcy Court, and (c) administer and adjust the Claims Register to reflect such settlements or compromises without further notice to or action, order, or approval of the Bankruptcy Court. Except as otherwise provided herein, from and after the Effective Date, the Reorganized Debtor shall have and retain any and all rights and defenses it had immediately prior to the Effective Date with respect to any Claim or Interest (including any Disputed Claim or Interest), including the Causes of Action retained pursuant to this Combined Disclosure Statement and Plan. Any objections to Claims shall be served and filed on or before the later of (a) one hundred and twenty (120) days after the Effective Date or (b) such later date as may be fixed by the Bankruptcy Court after reasonable notice and opportunity to object.

6.      **Amendments to Claims.**

On or after the Effective Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtor, and any such new or amended Claim Filed shall be deemed disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court to the maximum extent provided by applicable law.

7.      **Single Satisfaction of Claims.**

The amount of each Allowed Claim shall be reduced by any payments received during the Chapter 11 Case and in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim or Allowed Interest exceed 100 percent of the underlying Allowed Claim or Allowed Interest.

8.      **Preservation of Rights to Settle Claims**

Except as otherwise expressly provided herein, nothing contained in this Combined Disclosure Statement and Plan, other Plan Documents, or in the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or Causes of Action that the Debtor may

47

have or may choose to assert on behalf of the Estate under any provision of the Bankruptcy Code or any applicable non-bankruptcy law or rule, common law, equitable principle, or other source of right or obligation, including, without limitation, (a) any and all Claims against any Person or Entity, to the extent such Person or Entity asserts a crossclaim, counterclaim, and/or Claim for setoff that seeks affirmative relief against the Debtor, its officers, directors, or representatives, and (b) the turnover of property of the Estate. This Section shall not apply to any Claims sold, released, waived, relinquished, exculpated, compromised, or settled under this Combined Disclosure Statement and Plan or pursuant to a Final Order. Except as expressly provided in this Combined Disclosure Statement and Plan, nothing contained in this Combined Disclosure Statement and Plan, the Plan Documents, or in the Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense. No Entity may rely on the absence of a specific reference in this Combined Disclosure Statement and Plan to any Cause of Action against it as any indication that the Debtor or Reorganized Debtor will not pursue any and all available Causes of Action against them. The Debtor and the Reorganized Debtor expressly reserve all rights to prosecute any and all Causes of Action against any Person or Entity, except as otherwise expressly provided in this Combined Disclosure Statement and Plan.

### 9.    Claims Paid or Payable by Third Parties

<u>Claims Paid by Third Parties</u>. The Debtor or Reorganized Debtor, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtor or Reorganized Debtor. Subject to the last sentence of this paragraph, to the extent the Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not the Debtor or the Reorganized Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the Distribution to the Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under this Combined Disclosure Statement and Plan exceeds the amount of such Claim as of the date of any such Distribution under this Combined Disclosure Statement and Plan. The failure of such Holder to timely repay or return such Distribution shall result in the Holder owing the Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14) day grace period specified above until the amount is repaid.

<u>Claims Payable by Third Parties</u>. No Distributions under this Combined Disclosure Statement and Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that the Debtor's insurers agree to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurer's agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

Except as otherwise provided in this Combined Disclosure Statement and Plan, Distributions to holders of Allowed Claims shall be in accordance with the provisions of any

US_300412569v2

applicable insurance policy. Nothing contained in this Combined Disclosure Statement and Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

### 10.    Miscellaneous Distribution Provisions

Disputed Claims. At such time as a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall distribute to the Holder of such Claim, such Holder's Pro Rata Share of the property distributable with respect to the Class in which such Claim belongs. To the extent that all or a portion of a Disputed Claim is Disallowed, the Holder of such Claim shall not receive any Distribution on account of the portion of such Claim that is Disallowed, and any property withheld pending the resolution of such Claim shall be reallocated Pro Rata to the Holders of Allowed Claims in the same Class or, once Claims are paid in full, revert to the Reorganized Debtor.

Distributions after Allowance. To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, a Distribution shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Combined Disclosure Statement and Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the Distribution to which such Holder is entitled hereunder.

Setoff. The Debtor or Reorganized Debtor, as applicable, retains the right to reduce any Claim by way of setoff in accordance with the Debtor's books and records and in accordance with the Bankruptcy Code. Any reduction of any Claim by way of setoff shall be subject to entry of a Final Order approving such setoff or agreement of the applicable parties.

Compliance with Tax Requirements. In connection with this Combined Disclosure Statement and Plan, to the extent applicable, the Debtor, Reorganized Debtor, Disbursing Agent, and any applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions made pursuant to this Combined Disclosure Statement and Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Combined Disclosure Statement and Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements.

### 11.    Disputed Claims Reserve

On or after the Effective Date, in addition to the Class 4 Reserve, the Reorganized Debtor may establish any other reserves, in its sole discretion, for Claims that are contingent, unliquidated, or have not yet been Allowed, in an amount or amounts as reasonably determined by the Reorganized Debtor, consistent with the Proof of Claim Filed by the applicable Holder.

US_300412569v2

# XI.    SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

## A.    Discharge

Except as provided in this Combined Disclosure Statement and Plan or the Confirmation Order, the rights granted under this Combined Disclosure Statement and Plan and the treatment of Claims under this Combined Disclosure Statement and Plan shall be in full and final satisfaction, discharge, and release of all Claims. Except as provided in this Combined Disclosure Statement and Plan or the Confirmation Order, Confirmation of this Combined Disclosure Statement and Plan discharges the Debtor and Reorganized Debtor from all Claims or other debts that arose before the Confirmation Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), whether or not: (i) a proof of claim based on such debt is filed or deemed filed under Bankruptcy Code section 501; (ii) a Claim based on such debt is Allowed under Bankruptcy Code section 502; or (iii) the holder of a Claim based on such debt has accepted this Combined Disclosure Statement and Plan. Without limiting the foregoing, the discharge granted under this Combined Disclosure Statement and Plan is granted to the fullest extent allowed under Bankruptcy Code sections 1141(a), 1141(b), 1141(c), and 1141(d)(1).

## B.    Term of Injunctions or Stays

Unless otherwise provided in this Combined Disclosure Statement and Plan or Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date (excluding any injunctions or stays contained in this Combined Disclosure Statement and Plan or Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in this Combined Disclosure Statement and Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## C.    Releases by the Debtor

Except as otherwise provided herein, upon the later to occur of the Effective Date or funding of the Class 4 Reserve, for good and valuable consideration, each of (i) the Debtor's current and former officers, directors, principals, members, managers, professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents, and other representatives; (ii) Property Manager and its current and former officers, directors, principals, members, managers, professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents, and other representatives, in each case solely in their capacity as such but in all cases excluding the Allen Hartman Parties, are deemed released and discharged by the Debtor and its Estate from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, arising in law, equity or otherwise that the Debtor or its Estate would have been legally entitled to assert in their own right or on behalf of the Holder of any Claim or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, such released party's prepetition or postpetiton relationship with the Debtor, the Chapter 11 Case, this Combined Disclosure Statement and Plan, the negotiation, formulation or preparation of this Combined Disclosure Statement and Plan, the Plan Supplement, or related agreements, instruments, or other documents in connection

with the transactions contemplated under this Combined Disclosure Statement and Plan, or any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; provided that nothing in this Combined Disclosure Statement and Plan, including this Article XI.C shall release (i) any obligations under this Combined Disclosure Statement and Plan or the Plan Supplement; or (ii) any acts constituting willful misconduct, gross negligence, intentional fraud or criminal conduct as determined by a Final Order. For the avoidance of doubt, the Debtor does not release and retains and preserves all Claims and Causes of Action against the Allen Hartman Parties, individually and collectively.

## D.    Releases by Holders of Claims

**As of the Effective Date, except as otherwise provided in this Combined Disclosure Statement and Plan, all Persons who have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that are subject to compromise and settlement pursuant to the terms of this Combined Disclosure Statement and Plan or are otherwise discharged, satisfied, stayed or terminated pursuant to this Combined Disclosure Statement and Plan are deemed to have released the Debtor from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any direct claims held by any such Person against the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that each such Person would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor or its affiliates, the Debtor's restructuring, the Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Combined Disclosure Statement and Plan, the business or contractual arrangements between the Debtor and any such Person, the restructuring of Claims and Interests before or in the Chapter 11 Case, the negotiation, formulation, or preparation of this Combined Disclosure Statement and Plan, the Confirmation Order, or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtor taking place on or before the Effective Date; provided that, notwithstanding anything to the contrary in the foregoing, nothing in this Combined Disclosure Statement and Plan, including this Article XI.D shall release any obligations under this Combined Disclosure Statement and Plan or the Plan Supplement.**

## E.    Injunction

1.    **Generally. Except as provided in this Combined Disclosure Statement and Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold a Claim are permanently enjoined from taking any of the following actions on account of any such Claims or Interests or rights:  (a) commencing or continuing in any manner any action or other proceeding against the Reorganized Debtor or any property to be Distributed or otherwise transferred under this Combined Disclosure Statement and Plan; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Reorganized Debtor or any property to be Distributed or otherwise transferred under this Combined Disclosure Statement and Plan; (c) creating, perfecting, or enforcing any lien or encumbrance against the Reorganized**

**Debtor or any property to be Distributed or otherwise transferred under this Combined Disclosure Statement and Plan; and (d) commencing or continuing any action, in any manner, in any place, that does not comply with or is inconsistent with the provisions of this Combined Disclosure Statement and Plan or the Bankruptcy Code.**

2.      <u>Limited Scope</u>. Nothing in this Combined Disclosure Statement and Plan: (a) extinguishes, prohibits, or otherwise limits the right of any holder of a Claim to assert a right to setoff or recoupment arising in connection with that Claim as part of the resolution and treatment of that Claim under this Combined Disclosure Statement and Plan; (b) extinguishes, prohibits, or otherwise limits the right of the Estate or Reorganized Debtor to assert and prevail on any Cause of Action; or (c) enjoins or otherwise precludes any party-in-interest from enforcing the terms of this Combined Disclosure Statement and Plan and the Confirmation Order.

## F.      **Exculpation**

The Exculpated Parties shall not have any liability to any holder of a Claim or Interest for any Claims or Causes of action arising before, on or after the Petition Date and prior to or on the Effective Date for any act or omission in connection with, related to, or arising out of, the Chapter 11 Case, the pursuit of Confirmation of this Combined Disclosure Statement and Plan, the consummation of this Combined Disclosure Statement and Plan, or the administration of this Combined Disclosure Statement and Plan or the property to be distributed under this Combined Disclosure Statement and Plan, except for willful misconduct or gross negligence. In all respects, the Exculpated Parties are entitled to rely on the advice of counsel with respect to their duties and responsibilities under this Combined Disclosure Statement and Plan.

## G.      **Preservation and Application of Insurance**

The provisions of this Combined Disclosure Statement and Plan shall not diminish or impair in any manner the enforceability of coverage of any insurance policies (and any agreements, documents, or instruments relating thereto) that may cover Claims against the Debtor, any directors, trustees, or officers of the Debtor, or any other Person, including, without limitation, insurance for the Debtor's directors and officers.

## H.      **Retention, Reservation and Prosecution of Causes of Action**

Except as otherwise provided in this Combined Disclosure Statement and Plan, all Causes of Action are retained and reserved for the Reorganized Debtor, which is designated as the Estate's representative under Bankruptcy Code section 1123(b)(3)(B) for purposes of the Causes of Action. The Reorganized Debtor shall have the sole authority to prosecute, defend, compromise, settle, and otherwise deal with any Causes of Action and do so in its capacity as a representative of the Estate in accordance with Bankruptcy Code section 1123(b)(3)(B). The Reorganized Debtor shall have sole discretion to determine in its business judgment which Causes of Action to pursue, which to settle, and the terms and conditions of those settlements. In pursuing any claim, right, or Cause of Action, the Reorganized Debtor shall be entitled to the extensions provided under section 108 of the Bankruptcy Code. Except as otherwise provided in this Combined Disclosure Statement and Plan, all Causes of Action shall survive Confirmation and the commencement or prosecution of

Causes of Action shall not be barred or limited by any estoppel, whether judicial, equitable, or otherwise. The retained Causes of Action include, but are not limited to:

- All Claims and Causes of Action arising from or related to the case styled Allen R. Hartman and Hartman vREIT XXI, Inc. v Silver Star Properties REIT, Inc. (f/k/a Hartman Short Term Income Properties XX, Inc.), et al., Case No. 2023-17944 pending in the District of Harris County, Texas, 133rd Judicial District;

- All Claims and Causes of Action arising from or related to the case styled Hartman SPE, LLC v. Hartman vREIT XXI, Inc., Adv. Proc. No. 23-50588-MFW pending in the Bankruptcy Court;

- All Claims and Causes of Action against the Allen Hartman and Hartman vREIT XXI, Inc., including but not limited to those arising under:

    o Texas Business & Commerce Code Section 27.01, including claims for fraud in real estate transactions;

    o RICO claims for conspiracy;

    o Violation of Texas Rule of Civil Procedure 11, including claims for frivolous lawsuits/claims;

    o Breach of fiduciary duty claims;

    o Claims for ultra vires acts;

    o Claims for tortious interference;

    o Claims for self-dealing;

    o Claims for slander of title;

    o Claims under Section 12.0002 of the Texas Civil Practices and Remedies Code; and

    o Claims under Chapter 12 of the Texas Real Property Code.

## XII.    CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

### A.    Conditions Precedent to the Effective Date

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article XII.B hereof:

(a) the Bankruptcy Court shall have entered the Confirmation Order, in form and substance acceptable to the Debtor, the Committee, and the Exit Lender, which shall:

(i)    authorize the Debtor to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with this Combined Disclosure Statement and Plan;

(ii)    decree that the provisions in the Confirmation Order and this Combined Disclosure Statement and Plan are nonseverable and mutually dependent;

(iii)    authorize the Debtor or Reorganized Debtor, as applicable/necessary, to:  (a) implement the Restructuring Transactions; (b) make all Distributions as required under this Combined Disclosure Statement and Plan; and (c) enter into any agreements, transactions, and sales of property as set forth in the Plan Supplement, including the Exit Facility Credit Agreement;

(iv)    authorize the implementation of this Combined Disclosure Statement and Plan in accordance with its terms;

(v)    provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with this Combined Disclosure Statement and Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under this Combined Disclosure Statement and Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax; and

(vi)    be a Final Order;

(b) the Debtor shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate this Combined Disclosure Statement and Plan;

(c) the final version of Combined Disclosure Statement and Plan Supplement and all schedules, documents, and exhibits contained therein shall have been filed in a manner consistent in all material respects with this Combined Disclosure Statement and Plan;

(d) the Exit Facility Documents and any applicable collateral and other loan documents governing the Exit Facility shall have been duly executed and delivered by all of the Entities that are parties thereto and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the effectiveness thereof, including, but not limited to, the immediate availability of the issuance of a lender's title insurance policy in form and substance acceptable to Exit Lender in its sole discretion, subject only to the payment of the premium for such issuance, shall have been satisfied or duly waived in writing in accordance with the terms of the Exit Facility Documents and related documentation, and the closing shall have occurred thereunder;

(e) all professional fees and expenses of retained professionals that require the Bankruptcy Court's approval shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date shall have been placed into an escrow account pending the Bankruptcy Court's approval of such fees and expenses;

(f) the Debtor shall have implemented the Restructuring Transactions in a manner consistent with this Combined Disclosure Statement and Plan, including, without limitation, satisfaction in full of the Prepetition Lender Secured Claim; and

(g) sufficient Cash exists to make all payments required under this Combined Disclosure Statement and Plan to be made on the Effective Date;

**B.      Waiver of Conditions**

Any one or more of the conditions to the Effective Date set forth in this Article XII may be waived by the Debtor with the prior written consent of the Exit Lender, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate this Combined Disclosure Statement and Plan.

**C.      Effect of Failure of Conditions**

If the Effective Date does not occur by March 2, 2024 (or as otherwise agreed to in writing by the Debtor, KeyBank, and the Committee), this Combined Disclosure Statement and Plan shall be null and void in all respects and nothing contained in this Combined Disclosure Statement and Plan shall:  (1) constitute a waiver or release of any Claims by the Debtor, Claims, or Interests; (2) prejudice in any manner the rights of the Debtor, any Holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any Holders of Claims or Interests, or any other Entity.

**D.      Substantial Consummation**

"Substantial Consummation" of this Combined Disclosure Statement and Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

**XIII.   MODIFICATION, REVOCATION, OR WITHDRAWAL OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN**

**A.      Modification and Amendments**

Except as otherwise specifically provided in this Combined Disclosure Statement and Plan, the Debtor reserves the right to modify this Combined Disclosure Statement and Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Combined Disclosure Statement and Plan. Subject to those restrictions on modifications set forth in this Combined Disclosure Statement and Plan and the requirements of section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Debtor expressly reserves its rights to revoke or withdraw, or to alter, amend, or modify this Combined Disclosure Statement and Plan, one or more times, after

Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify this Combined Disclosure Statement and Plan, or remedy any defect or omission, or reconcile any inconsistencies in this Combined Disclosure Statement and Plan or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of this Combined Disclosure Statement and Plan.

**B.      Revocation or Withdrawal of this Combined Disclosure Statement and Plan**

The Debtor reserves the right to revoke or withdraw this Combined Disclosure Statement and Plan prior to the Confirmation Date and to File subsequent plans of reorganization. If the Debtor revokes or withdraws this Combined Disclosure Statement and Plan, or if Confirmation or the Effective Date do not occur, then:  (i) this Combined Disclosure Statement and Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in this Combined Disclosure Statement and Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under this Combined Disclosure Statement and Plan, and any document or agreement executed pursuant to this Combined Disclosure Statement and Plan, shall be deemed null and void; and (iii) nothing contained in this Combined Disclosure Statement and Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

## XIV.   RETENTION OF JURISDICTION

Following the Confirmation Date and the Effective Date, the Bankruptcy Court shall retain jurisdiction for the following purposes:

(1)      to hear and determine any objections to Claims and to address any issues relating to Disputed Claims;

(2)      to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(3)      resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cures pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtor amending, modifying, or supplementing, pursuant to Article IX hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

(4)      to issue such orders in aid of execution and consummation of this Combined Disclosure Statement and Plan, to the extent authorized by Bankruptcy Code section 1142;

US_300412569v2

(5) to consider any amendments to or modifications of this Combined Disclosure Statement and Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(6) to hear and determine all requests for compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court under Bankruptcy Code sections 330 or 503;

(7) to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Combined Disclosure Statement and Plan;

(8) to hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

(9) to hear any other matter not inconsistent with the Bankruptcy Code;

(10) to enter the Final Decree;

(11) to ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Combined Disclosure Statement and Plan;

(12) to decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving the Debtor that may be pending on or after the Effective Date;

(13) to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of this Combined Disclosure Statement and Plan, except as otherwise provided herein;

(14) to determine any other matters that may arise in connection with or related to this Combined Disclosure Statement and Plan, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created or implemented in connection with this Combined Disclosure Statement and Plan;

(15) to enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, and rulings entered in connection with the Chapter 11 Case (whether or not the Chapter 11 Case has been closed);

(16) to resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof; and

(17) to resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Case, the Bar Date, or the Confirmation Hearing for the purpose of determining whether a Claim or Interest is discharged hereunder, or for any other purpose.

57

## XV.   MISCELLANEOUS PROVISIONS

### A.   Amendment or Modification of this Combined Disclosure Statement and Plan

Alterations, amendments, or modifications of this Combined Disclosure Statement and Plan may be proposed in writing by the Debtor at any time before the Confirmation Date; provided that this Combined Disclosure Statement and Plan, as altered, amended, or modified, satisfies the conditions of Bankruptcy Code sections 1122 and 1123 and the Debtor shall have complied with Bankruptcy Code section 1125. The Debtor may modify this Combined Disclosure Statement and Plan at any time after Confirmation and before substantial consummation, provided that this Combined Disclosure Statement and Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123 and the circumstances warrant such modifications. A Holder of a Claim that has accepted this Combined Disclosure Statement and Plan shall be deemed to have accepted such Combined Disclosure Statement and Plan as modified if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such Holder.

### B.   Exhibits/Schedules

All exhibits and schedules to this Combined Disclosure Statement and Plan are incorporated into and are part of this Combined Disclosure Statement and Plan as if set forth in full herein.

### C.   Plan Supplement

The Debtor will File the Plan Supplement at least seven days (7) before the Confirmation Hearing. The Plan Supplement will contain, among other things (1) the Exit Facility Documents; (2) the New Organizational Documents, if applicable; (3) the Rejected Executory Contracts and Unexpired Leases Schedule; and (4) the financial projections.

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of this Combined Disclosure Statement and Plan as if set forth in full in this Combined Disclosure Statement and Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtor's counsel at the address above or by downloading such exhibits and documents from the Debtor's restructuring website at https://dm.epiq11.com/HartmanSPE or https://www.pacer.gov/. To the extent any exhibit or document is inconsistent with the terms of this Combined Disclosure Statement and Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of this Combined Disclosure Statement and Plan shall control.

### D.   Filing of Additional Documents

On or before Substantial Consummation, the Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of this Combined Disclosure Statement and Plan. The Debtor or the Reorganized Debtor, as applicable, and all Holders of Claims or Interests receiving Distributions pursuant to this Combined Disclosure Statement and Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other

actions as may be necessary or advisable to effectuate the provisions and intent of this Combined Disclosure Statement and Plan.

**E.    Immediate Binding Effect of this Combined Disclosure Statement and Plan**

Subject to Article XII hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Combined Disclosure Statement and Plan (including, for the avoidance of doubt, the documents and instruments contained in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor, any and all Holders of Claims or Interests (irrespective of whether such Holders of Claims or Interests have, or are deemed to have accepted this Combined Disclosure Statement and Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in this Combined Disclosure Statement and Plan, each Entity acquiring property under this Combined Disclosure Statement and Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

**F.    Payment of Statutory Fees.**

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by the Reorganized Debtor for each quarter (including any fraction thereof) until the earlier of entry of a final decree closing such Chapter 11 Case or an order of dismissal or conversion, whichever comes first.

**G.    Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in this Combined Disclosure Statement and Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**H.    Governing Law**

Except as required by the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules, the rights and obligations arising under this Combined Disclosure Statement and Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware.

**I.    Time**

To the extent that any time for the occurrence or happening of an event as set forth in this Combined Disclosure Statement and Plan falls on a day that is not a Business Day, the time for the next occurrence or happening of said event shall be extended to the next Business Day.

**J.    Revocation**

The Debtor reserves the right to revoke and withdraw this Combined Disclosure Statement and Plan prior to the entry of the Confirmation Order. If the Debtor revokes or withdraws this

Combined Disclosure Statement and Plan, this Combined Disclosure Statement and Plan shall be deemed null and void, and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, any other Person, or to prejudice in any manner the rights of such parties in any further proceedings involving the Debtor.

**K.    Dissolution of the Committee**

On the Effective Date, the Committee shall be dissolved and its members deemed released of any continuing duties, responsibilities, and obligations in connection with the Chapter 11 Case or this Combined Disclosure Statement and Plan and its implementation, and the retention and employment of the Committee's Professionals shall terminate, except with respect to: (i) prosecuting applications for Professionals' compensation and reimbursement of expenses incurred as a member of the Committee; (ii) asserting, disputing, and participating in resolution of Professional Fee Claims; or (iii) prosecuting or participating in any appeal of the Confirmation Order or any request for consideration thereof. Upon the resolution of (i) through (iii), the Committee shall be immediately dissolved, released, and discharged.

**L.    Inconsistency**

To the extent that this Combined Disclosure Statement and Plan conflicts with or is inconsistent with any agreement related to this Combined Disclosure Statement and Plan, the provisions of this Combined Disclosure Statement and Plan shall control.

In the event of any inconsistency between any provision of any of the foregoing documents, and any provision of the Confirmation Order, the Confirmation Order shall control and take precedence.

**M.    No Admissions**

Notwithstanding anything herein to the contrary, nothing contained in this Combined Disclosure Statement and Plan shall be deemed an admission by any Entity with respect to any matter set forth herein.

**N.    Reservation of Rights**

Except as expressly set forth herein, this Combined Disclosure Statement and Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of this Combined Disclosure Statement and Plan, any statement or provision contained herein, or the taking of any action by the Debtor with respect to this Combined Disclosure Statement and Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtor, Holders of Claims, or Holders of Interests before the Effective Date.

**O.    Compromise of Controversies**

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, Distribution, and other benefits provided under this Combined Disclosure Statement and Plan, the provisions of this Combined Disclosure Statement and Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to this Combined Disclosure Statement

and Plan and in the Chapter 11 Case. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements, provided for in this Combined Disclosure Statement and Plan and the Chapter 11 Case. The Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, and all Holders of Claims and Interests against the Debtor.

**P.    Notices**

All notices, requests, and demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**If to the Reorganized Debtor:**

Hartman SPE, LLC
Attn:  General Counsel
2909 Hillcroft, Suite 420
Houston, TX  77057

With a copy (which shall not constitute notice) to:

Katten Muchin Rosenman LLP
Attn:  John Mitchell, Michaela Crocker, and Yelena Archiyan
2121 North Pearl Street, Suite 1100
Dallas, TX  75201-2494

-and-

Chipman Brown Cicero & Cole, LLP
Attn:  William E. Chipman, Jr. and Mark D. Olivere
Hercules Plaza
1313 N. Market Street, Suite 5400
Wilmington, DE 19801

**If to the Office of the United States Trustee:**

Office of the United States Trustee for the District of Delaware
Attn:  John Schanne
Room 2207, Lockbox 35
844 North King Street
Wilmington, Delaware 19801

After the Effective Date, the Reorganized Debtor has the authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective

61

Date, the Reorganized Debtor is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

**Q.      Term of Injunctions or Stays**

Unless otherwise provided in this Combined Disclosure Statement and Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to Bankruptcy Code sections 105 or 362 or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in this Combined Disclosure Statement and Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in this Combined Disclosure Statement and Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**R.      Entire Agreement**

Except as otherwise indicated, this Combined Disclosure Statement and Plan (including, for the avoidance of doubt, the documents and instruments in the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Combined Disclosure Statement and Plan.

**S.      Nonseverability of Provisions**

If, prior to Confirmation, any term or provision of this Combined Disclosure Statement and Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted; provided, however, any such alteration or interpretation shall be acceptable to the Debtor and the Exit Lender. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Combined Disclosure Statement and Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Combined Disclosure Statement and Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to this Combined Disclosure Statement and Plan and may not be deleted or modified without the Debtor's or Reorganized Debtor's consent, as applicable; and (3) nonseverable and mutually dependent.

**T.      Closing of Chapter 11 Case**

The Reorganized Debtor shall, promptly after the full administration of the Chapter 11 Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

U.      **Waiver or Estoppel**

Each holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtor or its counsel, or any other Entity, if such agreement was not disclosed in this Combined Disclosure Statement and Plan or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

US_300412569v2

Dated: January 8, 2024
      McKinney, Texas

                                            /s/ David Wheeler

                                          David Wheeler
                                          President
                                          Hartman SPE Management, LLC

## **Exhibit A**

Assumption Schedule

**Exhibit B**

List of Properties

| Property Name | Type | Street Address |
| --- | --- | --- |
| 11811 N. Freeway | Office | 11811 North Freeway, Houston |
| 3100 Timmons | Office | 3100 Timmons Lane, Houston |
| 400 North Belt | Office | 400 N. Sam Houston, Houston |
| 601 Sawyer | Office | 601 Sawyer, Houston |
| 616 FM 1960 | Office | 616 FM 1960, Houston |
| Ashford Crossing II | Office | 1880 S. Dairy Ashford Rd., Houston |
| Central Park | Industrial | 1901 N. Glenville Drive, Dallas |
| Chelsea Square | Retail | 5020 FM 1960 West, Houston |
| Commerce Plaza Hillcrest | Office | 12850 Hillcrest Rd., Dallas |
| Copperfield | Office | 15840 FM 529, Houston |
| Cornerstone | Office | 3707 FM 1960, Houston |
| Corporate Park Place | Office | 1333 Corporate Park Dr., Irving |
| Energy Plaza I & II | Office | 8610, 8620 N. New Braunfels, San Antonio |
| Garden Oaks | Retail | 3800-4000 N. Shepherd Dr., Houston |
| Gateway Tower | Office | 8111 LBJ Freeway, Dallas |
| Gulf Plaza | Office | 16010 Barkers Point Lane, Houston |
| North Central Plaza | Office | 12655 N. Central Expwy, Dallas |
| Northbelt Atrium I | Office | 15311 W. Vantage Pkwy, Houston |
| Northchase | Office | 14550 Torrey Chase Blvd., Houston |
| One Technology Center | Office | 7411 John Smith Dr., San Antonio |
| Parkway Plaza I&II | Office | 14110, 14114 N. Dallas Pkwy, Dallas |
| Preserve | Office | 2010 N. Loop W., Houston |
| Skymark Tower | Office | 1521 N. Cooper St., Dallas |
| Three Forest Plaza | Office | 12221 Merit Dr., Dallas |
| Timbercreek | Office | 5870 Hwy 6 North, Houston |
| Tower Pavilion | Office | 2909 Hillcroft, Houston |
| Westheimer | Office | 11200 Westheimer Road, Houston |
| Westway I | Office | 1701 Market Place Blvd., Irving |

## Exhibit C

### Exit Facility – Indicative Term Sheet

| | |
|---|---|
| **Borrowers:** | Silver Star CRE, LLC and Silver Star Portfolio, LLC |
| **Lender:** | An affiliate of Benefit Street Partners |
| **Mezzanine Borrowers:** | Silver Star Mezzanine Borrower, LLC and Silver Star Portfolio Mezzanine Borrower, LLC. |
| **Mezzanine Lender:** | An affiliate of RMWC |
| **Sponsor:** | Silver Star Properties REIT, Inc. |
| **Guarantor:** | Sponsor. |
| **Collateral:** | The fee simple interest in an approximate 30-property portfolio comprising 4,448,319+/- SF located in Dallas, Houston, and San Antonio, TX (the "Properties"). The Properties shall be cross-collateralized and cross-defaulted and subject to release provisions defined in the Loan Documents.<br><br>Collateral for the mezzanine loan will be each Mezzanine Borrower's equity ownership of the Borrowers. |
| **Purpose of Loan:** | Refinancing the SASB/Prepetition Loan; payment of Allowed Claims under the Combined Disclosure Statement and Plan, all as will be more specifically described and permitted by the Loan Documents when finalized. |
| **Total Loan Amount:** | Up to $120,000,000. Of this amount, up to $15,000,000 will be a mezzanine loan to the Mezzanine Borrowers. Final splits between mortgage and mezzanine loans to be determined prior to closing. These amounts are subject to adjustment to the extent that the Exit Facility closes after the sales of underwritten Properties have closed |
| **Interest Rate:** | The greater of (i) the sum of (a) 1 Month CME Term SOFR, rounded up to the nearest $1/100^{th}$ of one percent, plus (b) 1000 basis points and (ii) 14%. Interest shall accrue based on a 360-day year and the actual number of days elapsed. |
| **Amortization:** | Interest Only. |
| **Loan Term:** | 2 years. |
| **Financial Covenants:** | Usual and customary for loans of this type with customary cushions. |
| **Representations and Warranties** | Usual and customary for loans of this type. |
| **Origination Fee:** | 2.00% of the Total Loan Amount. |

| | |
|---|---|
| **Exit Fee:** | 2.00% of the Total Loan Amount. The Exit Fee shall be waived if Lender refinances the loan with 5-10 year fixed rate financing. |
| **Minimum Multiple:** | Lender shall receive a minimum multiple of 1.12x on the Total Loan Amount. |
| **Lockout:** | None. |
| **Recourse:** | Full recourse. |
| **Title Insurance:** | Borrowers shall deliver a mortgagee's title insurance policy acceptable to Lender. |
| **Insurance:** | Borrowers shall carry casualty, general liability and other insurance covering the Properties acceptable to Lender. |
| **Reporting:** | Borrowers will provide Lender with, among other things, monthly, quarterly, and annual income statements and balance sheets and monthly, quarterly, and annual certified rent rolls. |
| **Broker:** | Raymond James. |
| **Governing Law** | Governed by the laws of the State of New York (without regard to the choice-of-law rules thereof). |
| **Closing Conditions:** | None.  Sign and close structure upon entry of a final order confirming the Combined Disclosure Statement and Plan. |