F970338

FILED FOR RECORD OF 970338 1ST A PD        41.00

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

RESTRICTIONS AND PROTECTIVE COVENANTS
FOR
CORNERSTONE NORTHWEST

THE STATE OF TEXAS    X

COUNTY OF HARRIS      X        KNOW ALL MEN BY THESE PRESENTS THAT:

1    McCRORY-HALLBECK DEVELOPMENT COMPANY, INC. d/b/a McCRORY-HALLBECK
BUSINESS PARK, desiring as the owner of 113.6435 _____ acres in the
survey and as described by metes and bounds on Exhibit "A" attached
hereto and made a part hereof for all purposes (hereinafter called
and referred to collectively as "Cornerstone"), to adopt a uniform plan
for the orderly development of above, does hereby impose upon all the
property included above, the following conditions, covenants and re-
strictions (hereinafter called "Protective Covenants"), which shall be
covenants running with the land and shall be binding upon any purchaser,
grantee, owner or lessee of any land or building in or on the property
described above, and upon the respective heirs, executors, administrators,
devisees, successors and assigns of such purchaser, grantee, owner or
lessee.

2    The term "Developer", as used hereinafter, shall mean McCrory-
Hallbeck Development Company, Inc. d/b/a McCrory-Hallbeck Business
Park or its successor, or any person, partnership, corporation or
other entity to which McCrory-Hallbeck Development Company, Inc. may
convey all or substantially all of the land then owned by McCrory-
Hallbeck Development Company, Inc. in the Project (as that term is
defined in Section 11 (a) hereof), for purposes of continuing the
development of the Project.  The Developer may at any time and from
time to time, by instrument filed for record in the office of the
County Clerk of Harris County, Texas, appoint any person, firm or
corporation as agent and attorney-in-fact to perform any act, function
or duty of Developer hereunder, and such power may be effectively re-
voked only by instrument filed for record in the office of the County
Clerk of Harris County, Texas.

**Exhibit "C"**



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

Page 2 of 20   Wednesday, April 17, 2024   County Clerk Harris County, Texas

Such Restrictions and Protective Covenants are as follows:

3  1. <u>Uses Permitted</u>: No land or building shall be used for manufac-
turing plants or sites, or industrial sites; further, no buildings
shall be used for warehouse or distribution purposes, except on sites,
if any, as Developer, in its sole discretion, shall approve in writing.

No use shall be permitted which is offensive by reason of odor,
fumes, dust, smoke, noise or pollution, or which is hazardous by reason
of excessive danger of fire or explosion, or which is in violation of
the laws of the United States or the State of Texas or any subdivision
thereof.  Written approval by Developer of a particular use shall be
conclusive evidence of compliance with this Protective Covenant to the
extent that such use is not in violation of any law or ordinance.
Developer shall not be liable to any person in respect of any use for
which Developer has in good faith granted such approval.

4  2. <u>Architectural and Design Control</u>:  All construction and develop-
ment in Cornerstone shall be subject to the approval of Developer.  No
building or other improvements shall be constructed in Cornerstone and
no changes shall be made in any building or improvement which may here-
after be constructed therein until plans and specifications therefor
(including a site plan, site landscaping and grading plans, plans for
offstreet parking of vehicles and utility layout) have been submitted
to, and have been approved by, the Developer as to type and quality of
materials, harmony of exterior design and colors with existing structures
on the site or on other sites in the area and location with respect to
topography and finished ground elevation.  The Developer, in its dis-
cretion, may provide development guidelines for site planning, architec-
ture and landscaping, and if and when such guidelines are provided they
shall be used as the basis for review and approval or disapproval of
plans.  Developer shall in writing advise the party submitting the
plans and specifications of (i) the approval thereof of (ii) the seg-
ments or features which are deemed by Developer to be inconsistent or
not in conformity with these Protective Covenants.  In the event Develop-
er does not  within a reasonable time after receipt by Developer of
such plans and specifications give written notice of the disapproval or
objection to features thereof, the approval of Developer shall be deemed
to have been given.  All buildings shall be built and all other improve-
ments shall be made in accordance with drawings and specifications as



Page 3 of 20    Wednesday, April 17, 2024    County Clerk Harris County, Texas

the same may have been finally approved by Developer. The Developer shall not, however, be liable to any person under any theory or under any circumstances in connection with its approval or disapproval of drawing and specifications, including without limitation, any liability based on the soundness of construction, adequacy of drawings and specifications or otherwise.

5  3.  Building Setback Lines: i) The Developer shall establish building setback lines along streets either presently existing, or to be dedicated at a later date, at the sole discretion of the Developer. For purposes of the foregoing, the applicable building setback lines shall be in excess of the 20' Greenbelt area (No. 4 below) and shall be measured at a right angle from the front property line of the property itself.

6  No building or other structure shall be erected nearer to any street in Cornerstone, than the applicable building setback line, or lines, as determined and set by Developer as above specified. Developer hereby reserves the right to make changes in the building setback lines and set or dedicate same from time to time.

7  ii) No building or other structure, including a parking garage, shall be erected in Cornerstone, nearer than fifteen (15) feet from any property line where such property line does not abut any dedicated public street if the building is two (2) stories or less in height, nor nearer than thirty-five (35) feet from any of said property lines if the building is three or four stories in height, nor nearer than fifty (50) feet from any of said property lines if the building is five (5) or more stories in height. For the purposes of this Section 3 a "story" shall be considered to be fifteen (15) feet in height.

8  Exceptions to these setback requirements may be made as the Developer approved in writing in advance where, in the Developer's sole opinion, the height and appearance of any building will be architecturally compatible with any other building or structure constructed on the opposite side of the property line or lines in question. The setback requirements as aforesaid for a particular structure shall be determined by the height of that particular structure without regard to whether such structure is attached to any other structure.

9  4.  Greenbelt Area: The Developer hereby establishes a twenty (20) foot greenbelt area along and parallel to the property lines along the streets set out above and any other streets hereinafter dedicated by



Developer for Cornerstone.

10 No structure of any kind may be built or erected within such area other than driveways for ingress and egress and all trees within said area must remain and be maintained therein. Further, said area must be landscaped and maintained by each owner so that it will be harmonious with the surrounding area. The location and designs of all driveways and all landscaping must be approved by Developer.

11 The Developer may make changes in the size, location and design of the greenbelt area as herein established, or may allow parking within this greenbelt area so long as no trees are removed and the parking is done in a harmonious manner with the trees and landscaping and approved by the Developer.

12   5.  <u>Parking</u>: Minimum parking ratio requirements shall be set by Developer on each separate tract of land from time to time as it may deter-mine in its sole discretion to be proper. It is understood also that in addition to the minimum requirements, additional parking area must be pro-vided (and shall be required by Developer), so that ten (10%) per cent of the parking area may be used for trees and landscaping and the minimum require-ments as set by Developer be met also.

13 Parking will not be permitted on any street or road, either public or private, or at any place other than the paved parking spaces provided in accordance with the foregoing, and each owner and lessee shall be responsible for compliance by their respective employees and visitors. All parking areas shall be landscaped in a manner approved in writing by Developer prior to construction or alteration of any building. No parking, driveways, or other paving shall be located within five (5') feet of side or rear property lines, unless approved by Developer.

14 6.  <u>Loading Docks</u>:  Loading docks will not be permitted to face any street and provision must be made for handling all freight on those sides of a building which do not face a street; provided, however, that in any instance in which a building would face streets on all sides of such building which are, respectively, fartherest from frontage streets unless the Developer shall in writing permit a loading dock on another side of said building. All loading docks must be screened from public view in a manner approved in writing by Developer prior to construction or alteration of any building.



15 7. Landscaping:  All open, unpaved space, including, but not limited to front, side and rear building setback areas, and greenbelt areas, parking areas, as set out above, shall be planted and landscaped according to a plan approved in writing by Developer.  Landscape plans submitted for approval of the Developer shall indicate the number, size, spacing and species of shrubs and trees, and the species of ground cover.  In connection herewith, Developer may require each owner to provide a survey of all trees located within the subject area that have a diameter of eight (8") inches or more.

16 Landscaping in accordance with the plans approved by the Developer must be installed within thirty (30) days following the occupancy of a building.  This period may be extended by Developer in the event of delays caused by adverse weather conditions or other causes beyond reasonable contol.

17 8. Screening:  The right of a purchaser, grantee, owner or lessee to use any building or buildings shall not be construed to permit the keeping of articles, goods, materials, incinerators, storage tanks, refuse containers or like equipment in the open or exposed to public view, or view from adjacent buildings.  If it shall become necessary to store or keep such materials or equipment in the open, they shall be screened from view in a manner approved in writing by Developer.  Said screen shall be of a height at least equal to that of the materials or equipment being stored, but in no event less than six (6') feet in height.  Adequate screening must also be provided to shield such stored materials and equipment from view from ground floor level of all adjacent buildings.  All storage shall be limited to the rear two-thirds of the property and under no circumstances shall any materials or equipment be stored within the applicable building setback line from any street.

Water towers, storage tanks, processing equipment, stand fans, skylights, cooling towers, communication towers, vents and any other structures or equipment shall be architecturally compatible or effectively shielded from view by an architecturally sound method which shall be approved in writing by Developer before construction or erection of said structures or equipment.



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

9.  <u>Signs</u>:  Detailed drawings and specifications for all proposed signs, both permanent and temporary, including site information signs, shall be submitted for the approval of Developer.  All signs shall conform to the overall sign program established by Developer and shall be of a design and material approved by Developer.  No sign of a flashing or moving character shall be installed and no sign shall be painted on a building wall.

10.  <u>Illumination</u>:  All buildings shall have exterior illumination facilities for their front and side walls of a power and design to be approved by Developer prior to commencement of construction, and, upon completion of said buildings, said illumination facilities shall remain in full operation until 10:00 o'clock each night.

11.  <u>Maintenance</u>:  The owner and lessee of any site shall have the duty of and responsibility for keeping the premises, buildings, improvements and appurtenances, and landscaping, in a well-maintained, safe, clean and attractive condition at all times.  If, in the opinion of Developer or the Association referred to in Section 12 hereof, any such owner or lessee is failing in this duty and responsibility, then Developer or said Association may give such owner or lessee, or both, notice of such fact and such owner and/or lessee must, within ten (10) days of such notice, undertake the care and maintenance required to restore said owner's or lessee's property to a safe, clean and attractive condition.  Should any such owner or lessee fail to fulfill this duty and responsibility after such notice, then Developer or said Association shall have the right and power to perform such case and maintenance, and the owner or lessee (and both of them) of the property on which such work is performed by Developer or said Association shall be liable for the cost of any such work and shall promptly reimburse Developer or said Association, as the case may be, for the cost thereof.  If such owner or lessee shall fail to so reimburse Developer or said Association within thirty (30) days after being billed therefor by Developer or said



Association, then said cost shall be a debt of such owner or lessee
(and both of them), payable to Developer or said Association, as
the case may be, and shall be secured by a lien against any such
owner's and lessee's property.  The duty and responsibility imposed
upon the owner and lessee of any site by this Section 11 shall be
over and above any maintenance which may be performable by the
Association referred to in Section 12 pursuant to the terms of said
Section 12.

12.  <u>Cornerstone Community Association; Maintenance Fund</u>:
All owners of land in Cornerstone shall be members of Cornerstone
Community Association, Inc., a Texas non-profit corporation (here-
inafter called the "Association"), and the following provisions
shall be applicable:

(a) <u>Purpose of the Association</u>:  The Association has been
formed for the purpose of preserving and maintaining the uniform
standards and quality as well as the natural beauty and aesthetic
value of (i) property in Cornerstone and (ii) any property adja-
cent or contiguous to Cornerstone and which by express dedication
of Developer, shall provide that all or a designated part thereof
shall become and be a part of the project and be subjected to the
annual maintenance charge hereafter provided for.  The term
"Project" shall, at any particular time, refer to Cornerstone,
and any other property which shall have been designated by
Developer as a part of the Project as aforesaid.

(b) <u>Membership in the Association</u>:  The members of the
Association shall be the Developer so long as the Developer
owns property in the Project, the owners of any land in
Cornerstone, and the owners of any property other than in
Cornerstone, which shall have become a part of the Project
by designation as provided in the foregoing Section 13(a).

In the election of Directors of the Association and
on all other matters submitted to a vote of the members of
the Association, each member shall be entitled to cast one
vote for each 1,000 square feet or major fraction thereof
of land owned by such member in the Project.  Cumulative
voting by the members of the Association will not be authorized.

(c) <u>Maintenance Fund</u>:  In order to provide a common fund to be applied for the purposes herein specified, the Developer does hereby subject all of the land in Cornerstone (exclusive of any area within streets, boulevards, drives and other areas hereto-fore or hereafter dedicated for public purposes) to an annual maintenance fund charge, the provisions of which are set forth herein and shall be deemed to be included in all deeds of con-veyance of any land in Cornerstone, hereafter executed the same as if said provisions were set out in full therein.  Each such conveyance may contain the annual maintenance fund charge pro-visions by reference to this document, but whether or not such reference is made, such charge shall be valid and binding upon the respective grantees, initial or remote.

(1) <u>Amount of Maintenance Charge</u>:  The amount of such annual maintenance fund charge shall be an amount fixed by the Association, it being intended that the Association will for each year fix the annual maintenance fund charge at an amount estimated in good faith by the Association to be re-quired in order that the funds produced thereby will approxi-mate the costs and expenditures of such funds for the purposes hereinafter specified; said charge shall be assessed as a rate per square foot for each square foot of land owned in the project.  The annual maintenance fund charge, as set forth in the preceding sentence, shall be adjusted at the end of each calendar year during the term of these Protective Covenants and any extension thereof, which adjustment shall apply to the succeeding calendar year period.

The annual maintenance fund charge shall be paid by the respective owners of land in the Project annually on January 1, in advance.  If land in the Project becomes sub-ject to the annual maintenance fund charge on a date other than a January 1, the owner of such land shall pay that fractional part of the annual maintenance fund charge deter-mined by multiplying the annual fund charge by a fraction, the numerator of which is the number of months between the



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

first day of the month following the due date and the next
succeeding first day of January and the denominator of which
is twelve (12).

All past due maintenance fund charges shall bear
interest from their due date until paid at the highest legal
interest rate per annum allowed in the State of Texas at
that time.  Such charges shall be a covenant running with
the land and to secure the payment thereof a lien is hereby
retained upon the property subject to such charge.  Such
charge and lien are hereby assigned by the Developer to the
Association (without recourse on the Developer in any manner
for payment of such charge), which will collect all such
annual maintenance fund charges and will administer the
fund created thereby in order that uniformity and continuity
will be maintained and preserved.

(2) Purpose of the Maintenance Fund:  The maintenance fund
charge shall be uniformly imposed upon all lands constituting
at the time a part of the Project, and said maintenance fund
shall be used exclusively for the following in connection with
areas within the Project in respect of which the charge is
made:

Planting and landscaping, mowing, upkeep of planted
areas, illumination, street signs and other project
identification, maintenance, repair and lighting of
boulevards, streets, roads, medians, and parks in or
adjacent to the Project ( to the extent not performed
to the satisfaction of the Association by the appropriate
governmental agency) and such other items of expense as
may be deemed by the Association, in its discretion and
good faith, to be necessary or desirable for the carrying
out of these Protective Covenants and for the general
benefit of all owners of land within the Project.



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

Nothing herein shall impose the obligation of maintenance of the greenbelt areas upon the Association provided that if such maintenance is not performed by the owner thereof to the satisfaction of the Association, it may perform such maintenance and the owner shall reimburse the Association for such cost. Any such costs which are unpaid may be assessed as a lien on the property in accordance with the provisions hereof.

In the event that the Association shall expend monies for any of the foregoing purposes in amounts exceeding the amount then in the maintenance fund, the Association shall be entitled to receive reimbursement from amounts thereafter paid into the maintenance fund by owners of property in the Project; provided, however, that the Association will not without the approval of the members, evidenced by the favorable vote of a majority of the votes entitled to be cast by the members, expend more that $25,000.00 in excess of the monies then on hand.

(3) <u>Annual Financial Statements; Books and Records</u>: The Association shall, not later than 120 days after the end of each fiscal year of the Association, furnish to each member financial statements which shall include a balance sheet as at the end of such year and a statement of operations for the year then ended. Such financial statements may, but shall not be required to be, audited. All members shall have the right during regular business hours and at the office of the Association, to inspect the books and records of the Association.

(4) <u>Finality of Determination by Association</u>: It is understood that the judgement of the Association, its successors and assigns, in the allocation and expenditure of the said maintenance fund shall be final so long as such judgement is exercised in good faith. The enumeration of the services for which the maintenance fund may be expended carries no obligation to furnish any of such

Page 10 of 20   Wednesday, April 17, 2024   County Clerk Harris County, Texas



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

services except to the extent of funds actually received by the Association.

(d) <u>Substitution of the Association for the Developer</u>: Wherever in these Protective Covenants the approval of the Developer is required as a condition in respect of certain functions or where other consents, waivers or other actions on the part of the Developer are required to be or may be given by Developer, the Association shall succeed to all the rights, obligations and functions of Developer hereunder at such time as the ownership by the Developer, its successors and assigns of property in the Project shall have terminated.

13. <u>Initial Construction Period</u>: If, after the expiration of one year from the date of a sale from Developer of any tract covered hereby, actual construction upon such tract of a building approved by Developer shall not have been commenced in good faith, Developer shall have the option of refunding the original purchase price paid to the Developer and entering into possession of said tract. All conveyances by Developer shall be made and accepted on condition that the purchaser, grantee, or owner shall reconvey such property upon the exercise by Developer of the aforesaid option under the conditions herein set forth. Developer may, at its election, extend in writing the time in which such construction may be commenced.

14. The provisions hereof, including the Reservations, Restrictions and Covenants herein set forth, shall run with the land and shall be binding upon Developer, its successors and assigns, and all persons or parties claiming under it or them for a period of twenty-five (25) years from the date hereof, at which time all of such provisions shall be automatically extended for successive periods of ten (10) years each, unless prior to the expiration of any such period the provisions hereof are amended or terminated, in whole or in part, as hereinafter provided. By approval of a majority of the votes entitled to be cast by the members of the Association referred to in Section 13 hereof, these Protective Covenants may at any time be altered, amended or extended, but no



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

party shall be charged with notice or inquiry in connection with any such amendment, modification or termination unless and until the instrument embodying the same shall be actually filed for record in the office of the County Clerk of Harris County, Texas.

15. Enforcement:  Enforcement of these Protective Covenants shall be by proceedings at law or in equity against any person or persons violating or attempting to violate any covenant, either to restrain or prevent such violation or proposed violation, by an injunction, either prohibitive or mandatory, or to obtain any other relief authorized by law. Such enforcement may be by the owner of any property in Cornerstone, and/or by the Developer and/or by the Association referred to in Section 12.

16. Validity:  The invalidity or unenforceability of any one or more of these Protective Covenants or any part or parts of any Protective Covenant in any instance or as applied to any particular situation shall in no way affect or invalidate the other Protective Covenants or other parts of such covenant or the application thereof to other circumstances, but, to the contrary, all Protective Covenants herein contained shall remain in force and effect during the term herein specified to the full extent and to all circumstances legally enforceable.

EXECUTED THIS _14 th_ day of _February_, 1978.

ATTEST:                          McCRORY-HALLBECK BUSINESS PARK

_Mary Ann Belnoske_             By: McCrory-Hallbeck Development
                                     Company, Inc.

                                BY: _____
                                    /S. E. McCrory, Jr., President

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

THE STATE OF TEXAS    I

COUNTY OF HARRIS      I

BEFORE ME, the undersigned authority, a Notary Public in and for said County and State, on this day personally appeared S. E. McCRORY, JR., President of McCRORY-HALLBECK DEVELOPMENT COMPANY, INC. known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that the same was the act and deed of the said McCRORY-HALLBECK DEVELOPMENT COMPANY, INC., a corporation, and that he executed the same as the act of such corporation for the purposes and consideration therein expressed, and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the 14 day of February , 1978.

Notary Public in and for Harris County, Texas.

FAYE HUELSTER
Notary Public
My Commission Expires 12-31-80

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

EXHIBIT "A"

An 8.6009-Acre Tract
Cornerstone, Reserve "A"

Joseph Farrell Survey
Abstract No. 262
Harris County, Texas

STATE OF TEXAS    |

COUNTY OF HARRIS  |

A FIELDNOTE DESCRIPTION of an 8.6009-acre tract or parcel of land being situated in and a part of the Joseph Farrell Survey, Abstract No. 262, Harris County, Texas.  Said 8.6009-acre tract being a portion and part of that certain 15.0593-acre tract of land conveyed to Berton Land Development Corporation under Harris County Clerk's File No. D369113, the Deed Records of Harris County, Texas, and being more particularly described by metes and bounds as follows:

BEGINNING at a 3/4-inch iron pipe found in southeasterly line of Farm-to-Market Road 1960 (based on a 100-foot width), and said point being located approximately 1,475 feet southwest of the intersection of the centerline of Walters Road and said southeasterly right-of-way line of FM 1960;

THENCE, North 58° 23' 45" East, along said southeasterly right-of-way line of FM 1960, a distance of 487.30 feet to a point for corner;

THENCE, South 76° 27' 27" East, a distance of 14.11 feet to a point for corner;

THENCE, South 31° 18' 38" East, a distance of 166.38 feet to a point of curvation of a curve to the right;

THENCE, along the arc of the curve to the right in a southeasterly direction, a distance of 70.77 feet to a point of reverse curvature, said curve to the right having a radius of 500.00 feet, a central angle of 8° 06' 35", and a long chord which bears South 35° 21' 55" East, a distance of 70.71 feet;

THENCE, along the arc of the curve to the left in a southeasterly direction, a distance of 70.77 feet to a point of reverse curvature, said curve to the left having a radius of 500.00 feet, a central angle of 8° 06' 35" and a long chord which bears South 35° 21' 55" East, a distance of 70.71 feet;

THENCE, along the arc of the curve to the right in a southeasterly direction, a distance of 489.79 feet to a point of tangency, said curve to the right having a radius of 519.46 feet, a central angle of 54° 01' 23", and a long chord which bears South 4° 17' 56" East, a distance of 471.85 feet;

THENCE, South 22° 42' 46" West, a distance of 40.15 feet to a point of curvature of a curve to the left;

THENCE, along the arc of the curve to the left in a southwesterly direction a distance of 247.43 feet to a point of tangency, said curve to the left having a radius of 5,825.96 feet, a central angle of 2° 26' 00" and a long chord which bears South 21° 29' 45" West, a distance of 247.41 feet;



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

EXHIBIT "A" continued

THENCE, South 20° 16' 45" West, a distance of 76.68 feet to a point for corner;

THENCE, North 31° 30' 38" West, along a barbed wire fence, a distance of 956.07 feet to the PLACE OF BEGINNING, containing 8.6009 acres of land, being situated in and a part of the Joseph Farrell Survey, Abstract No. 262, Harris County, Texas.

7/6/78
LAW/CSC

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

EXHIBIT "A" Continued

A 12.3103-Acre Tract                           Joseph Farrell Survey
Cornerstone, Reserve "B"                       Abstract No. 262
                                               Harris County, Texas

STATE OF TEXAS      |

COUNTY OF HARRIS    |

A FIELDNOTE DESCRIPTION of a 12.3103-acre tract or parcel of land, being situated
in and a part of the Joseph Farrell Survey, Abstract No. 262, Harris County, Texas.
Said 12.3103-acre tract of land being a portion and part of those certain 15.0593
and 59.0796-acre tracts of land conveyed to Berton Development Corporation under
Harris County Clerk's File Nos. D369113 and D369203, the Deed Records of Harris
County, Texas, and being more particularly described by metes and bounds as fol-
lows:

    BEGINNING at a point in the southeasterly right-of-way line of Farm-to-
Market Road 1960 (based on a 100-foot width), said point being located approxi-
mately 868 feet southwest of the intersection of the centerline of Walters Road
and the southeasterly right-of-way line of F.M. 1960;

    THENCE, North 58° 23' 45" East, along the southeasterly right-of-way line
of F.M. 1960, a distance of 802.97 feet to a point of curvature of a curve to the
right;

    THENCE, along the arc of the curve to the right in a southeasterly direction,
a distance of 54.68 feet to a point of tangency, said curve to the right having
a radius of 35.00 feet, a central angle of 89° 31' 06" and a long chord which bears
South 76° 50' 42" East, a distance of 49.29 feet, said point of tangency being in
the northwesterly right-of-way line of Walters Road (based on a 60-foot width);

    THENCE, South 32° 05' 10" East, along the northwesterly right-of-way line
of Walters Road, a distance of 562.96 feet to a point for corner;

    THENCE, South 12° 54' 06" West, a distance of 14.15 feet to a point for cor-
ner;

    THENCE, South 57° 53' 21" West, a distance of 50.02 feet to a point of curva-
ture of a curve to the left;

    THENCE, along the arc of the curve to the left in a southwesterly direction,
a distance of 70.77 feet to a point of reverse curvature, said curve to the left
having a radius of 500.00 feet, a central angle of 8° 06' 35" and a long chord
which bears South 53° 50' 04" West, a distance of 70.71 feet;

    THENCE, along the arc of the cruve to the right in a southwesterly direction,
a distance of 70.77 feet to a point of tangency, said curve to the right having
a radius of 500.00 feet, a central angle of 8° 06' 35" and a long chord which
bears South 53° 50' 04" West, a distance of 70.71 feet;

    THENCE, South 57° 53' 21" West, a distance of 523.87 feet to a point of cur-
vature of a curve to the right;

    THENCE, along the arc of the curve to the right in a southwesterly direction,
a distance of 181.56 feet to a point of compound curvature, said curve to the
right having a radius of 460.00 feet, a central angle of 22° 36' 54" and a long



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

EXHIBIT "A" continued

chord which bears South 69° 11' 48" West, a distance of 180.39 feet;

THENCE, along the arc of a curve to the right in a northwesterly direction, a distance of 40.02 feet to a point of reverse curvature, said curve to the right having a radius of 25.00 feet, a central angle of 91° 43' 03" and a long chord which bears North 53° 38' 14" West, a distance of 35.88 feet;

THENCE, along the arc of a curve to the left in a northwesterly direction, a distance of 246.21 feet to a point of reverse curvature, said curve to the left having a radius of 599.46 feet, a central angle of 23° 31' 55", and a long chord which bears North 19° 32' 41" West, a distance of 244.48 feet;

THENCE, along the arc of the curve to the right in a northwesterly direction, a distance of 70.77 feet to a point of reverse curvature, said curve to the right having a radius of 500.00 feet, a central angle of 8° 06' 35" and a long chord which bears North 27° 15' 20" West, a distance of 70.71 feet;

THENCE, along the arc of the curve to the left in a northwesterly direction, a distance of 70.77 feet to a point of tangency, said curve to the left having a radius of 500.00 feet, a central angle of 8° 06' 35" and a long chord which bears North 27° 15' 20" West, a distance of 70.71 feet;

THENCE, North 31° 18' 38" West, a distance of 166.89 feet to a point for corner;

THENCE, North 13° 32' 34" East, a distance of 14.18 feet to the PLACE OF BE-GINNING, containing 12.3103 acres of land, being situated in and a part of the Joseph Farrell Survey, Abstract No. 262, Harris County, Texas.

7/31/78
LAW/CSC

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

EXHIBIT "A"  continued

A 92.7323-Acre Tract                          Joseph Farrell Survey
Cornerstone                                   Abstract No. 262
                                              Harris County, Texas

STATE OF TEXAS        §

COUNTY OF HARRIS       §

A FIELDNOTE DESCRIPTION of a 92.7323-acre tract or parcel of land being situated
in and a part of the Joseph Farrell Survey, Abstract No. 262, Harris County, Texas.
Said 92.7323-acre tract being a portion and part of that certain 59.0796-acre
tract conveyed to Berton Development Corporation under Harris County Clerk's
File No. D369203, and of a 41.477-acre tract, and being more particularly described
by metes and bounds as follows:

    COMMENCING at the intersection point of the southeasterly right-of-way line
of Farm-to-Market Road 1960 (based on a 100-foot width) and the northwesterly
right-of-way line of Walters Road (based on a 60-foot width);

    THENCE, South 32° 05' 10" East, along said northwesterly right-of-way line
of Walters Road, a distance of 717.67 feet to the PLACE OF BEGINNING of the
herein described 92.7323-acre tract;

    THENCE, South 32° 05' 10" East, continuing with said northwesterly right-
of-way line of Walters Road, passing a 3/4-inch iron pipe at 1,575.90 feet, the
same being the southeast corner of said 59.0796-acre tract and the northeast
corner of said 41.477-acre tract and continuing in all a distance of 2,808.44
feet to a 3/4-inch iron pipe at the southeast corner of the aforementioned 41.477-
acre tract;

    THENCE, South 56° 28' 58" West, along the south line of said 41.477-acre tract,
a distance of 1,481.58 feet to a 3/4-inch diameter iron pipe at the southwest
corner of said 41.477-acre tract;

    THENCE, North 31° 27' 02" West, along the west line of said 41.477-acre tract,
a distance of 1,217.68 feet to a 3/4-inch iron pipe, the same being the northwest
corner of said 41.477-acre tract and the southwest corner of said 59.0796-acre
·tract;

    THENCE,, North 31° 30' 38" West, a distance of 1,239.18 feet to a point for
corner;

    THENCE, North 20° 16' 45" East, a distance of 139.65 feet to a point of
curvature of a curve to the right;

    THENCE, along the arc of the curve to the right in northeasterly direction
a distance of 244.03 feet to a point of tangency, said curve to the right having
a radius of 5,745.96 feet, a central angle of 2° 26' 00" and a long chord which
bears North 21° 29' 45" East, a distance of 244.01 feet;

    THENCE, North 22° 42' 46" East, a distance of 40.15 feet to a point of cur-
vature of a curve to the right;



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

EXHIBIT "A" continued

THENCE, along the arc of the curve to the right in a northeasterly direction, a distance of 316.84 feet to a point of tangency, said curve to the right having a radius of 516.07 feet, a central angle of 35° 10' 35" and a long chord which bears North 40° 18' 03" East, a distance of 311.89 feet;

THENCE, North 57° 53' 21" East, a distance of 617.48 feet to a point of curvature of a curve to the right;

THENCE, along the arc of a curve to the right in a northeasterly direction, a distance of 70.77 feet to a point of reverse curvature, said curve to the right having a radius of 500.00 feet, a central angle of 8° 06' 35" and a long chord which bears North 61° 56' 38" East, a distance of 70.71 feet;

THENCE, along the arc of a curve to the left in a northeasterly direction, a distance of 70.77 feet to a point of tangency, said curve to the left having a radius of 500.00 feet, a central angle of 8° 06' 35" and a long chord which bears North 61° 56' 38" East, a distance of 70.71 feet;

THENCE, North 57° 53' 21" East, a distance of 49.99 feet to a point for corner;

THENCE, South 77° 05' 55" East, a distance of 14.14 feet to the PLACE OF BEGINNING, containing 92.7323 acres of land, being situated in and a part of the Joseph Farrell Survey, Abstract No. 263, Harris County, Texas.

7/17/78
LAW/klv

Return To:
AMERICAN TITLE CO.
5629 FM 1960 WEST #121
HOUSTON, TEXAS 77069
no-Grt
JEH/Bonnie



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

FILED

FEB 16  9 09 AM 1979

_Anita Rodeheaver_
COUNTY CLERK
HARRIS COUNTY, TEXAS

STATE OF TEXAS {
COUNTY OF HARRIS

I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED, in the Official
Public Records of Real Property of Harris County, Texas on

FEB 16 1979



_Anita Rodeheaver_
COUNTY CLERK,
HARRIS COUNTY, TEXAS



I, Teneshia Hudspeth, County Clerk of Harris County, Texas certify that these pages
are a true and correct copy of the original record filed and recorded in my office,
electronically or hard copy, as it appears on this date.

Witness my official hand and seal of office
This April 17, 2024

Teneshia Hudspeth, County Clerk
Harris County, Texas

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and
unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the
Public Information Act.