**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HARTMAN SPE, LLC | ) | Case No. 23-11452 (MFW) |
|  | ) |  |
|  | ) |  |
| Debtor. | ) | **Re: D.I. No. 774** |
|  | ) |  |

**RESPONSE TO AMENDED OBJECTION OF THE DEBTOR TO PROOF OF
CLAIM NO. 10155 FILED BY HARTMAN VREIT XXI, INC. (SUBSTANTIVE) AND
REQUEST THAT CLAIM BE DEEMED TIMELY FILED**

Hartman V REIT XXI, ("Hartman XXI"), by and through its undersigned counsel, hereby

responds to the Amended Objection of the Debtor to Proof of Claim No. 10155 [D.I. No.774]

(the "Objection"), and requests that its proof of claim No. 10155 (the "XXI Claim") be deemed

timely filed.  In support of its response, Hartman XXI states as follows:

**BACKGROUND**

1.      Debtor Hartman SPE, LLC (the "Debtor") is a Delaware special purpose entity

formed on July 19, 2018. It holds title to parcels of commercial real estate that include office,

retail and industrial properties.   The Properties are managed by Silver Star Property

Management, Inc., f/k/a Hartman Short Term Income Properties XX, Inc. ("Silver Star").

Silver Star is the Debtor's ultimate parent, a non-traded public REIT.

2.      The Debtor was formed on July 19, 2018. When formed, the Debtors membership

interests were allocated as follows: Hartman XX Limited Partnership REIT Operating

Partnership - 32.14%, Hartman Short Term Income Properties XIX, Inc.-28.42%, Hartman

Income REIT Operating Partnership, LP- 33.59% and Hartman vREIT XXI, Inc.-5.84%.

3.      On or about July 19, 2018, the Debtor, Silver Star and Hartman XXI entered into an agreement wherein Hartman XXI exchanged 3.42% of its ownership interest in the Debtor for 700,302 shares of Silver Star's common stock.

4.      The Debtor's current members and their respective membership interests are Hartman XX Limited Partnership k/k/a Silver Star, owner of 97.53% of the membership interests and Hartman XXI, owner of 2.47% of the membership interests.

5.      Allen Hartman formed and served as CEO and Chairman of the board of directors of all the REITs he founded, including Silver Star and Hartman XXI.

6.      A merger between Hartman XX and Hartman XXI was contemplated to occur on or about December 2022.  On or about October 3, 2022, Al Hartman was wrongfully removed as the chairman of the board and chief executive officer of Silver Star.  On March 10, 2023, Silver Star wrongfully removed Al Hartman in his capacity as its executive director. Traditionally, the various Hartman REITs invested in office, retail and light industrial real estate. In early 2023, Silver Star announced that it was shifting its focus to invest in real estate with self-storage units.  Due to this divergence of business strategy, Silver Star and Hartman XXI agreed not to proceed with the contemplated merger.  Silver Star and Hartman XXI separated their respective business interests effective March 2023.

**The Debtor's Distribution Liability to Hartman XXI**

7.      The Debtors Limited Liability Company Operating Agreement (the "SPE Operating Agreement") provides for Distributions to the Debtor's members.  Specifically, section 16 of the SPE Operating Agreement provides that distributions shall be made to the Members at the times and in the aggregate amounts determined by the Members.  SPE

Operating Agreement ¶ 16. A true and correct copy of the SPE Operating Agreement is attached hereto as Exhibit "A".

8. During the period of October 1, 2018 to July 2022, Silver Star, in its capacity as majority unitholder of the Debtor, authorized (via its board of directors) and received distributions from the Debtor as follows:

**[REDACTED]**

See General Ledger, Ex B., See also, Debtor's Interrogatory Responses, Ex C ¶ 3-4.

9. During the period above, the Debtor distributed monies on account of Hartman XXI's ownership interest to Silver Star (the "XXI Distributions"). During the period above, upon information and belief, Silver Star carried the XXI Distributions on its books, but failed to distribute these monies to Hartman XXI. Hartman XXI has not received any distribution on account of its original 5.84% membership interest nor its subsequent 2.47% membership interest. The Debtor's obligation to distribute to Hartman XXI was continuous in nature for the period of October 2018 to December 2022, as evidenced by the SPE Operating Agreement and the treatment of the XXI Distributions in Silver Star's own books and records. A true and correct copy of Silver Star's general ledger for the period of May 1, 2019 to August 2, 2022 is attached hereto as Exhibit "B".

10. Neither Al Hartman, Hartman XXI nor the Hartman XXI board of directors were made aware of the XXI Distributions, made to, and held by Silver Star. As chairman of the

board and CEO Silver Star, Al Hartman was, among other things, responsible for the oversight of 180 employees and various legal and accounting matters of the company, in addition to his other business interests. Neither Al Hartman nor Hartman XXI were made aware of Silver Star's retention of the XXI Distributions until July 2023. Indeed, due to Silver Star's refusal to provide its books and records to Hartman XXI, Hartman XXI was unable to determine what it was owed until the Debtors disclosed the extent of distributions made to Silver Star in this proceeding. Based on the distributions to Silver Star above, Hartman XXI should have received distributions from the Debtors as follows:

**[REDACTED]**

Ex. B., See also Ex. C at ¶ 3-4.

**<u>The Bankruptcy Case</u>**

11. On September 13, 2023, (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition with the United States Bankruptcy Court for the District of Delaware under Chapter 11 of the Bankruptcy Code.

12. On October 16, 2023, the Court entered the Order Granting Motion of Debtor for an Order (I) Establishing Bar Dates for Filing Proofs of Claim, (II) Approving the Form and Manner of Notice Thereof, and (III) Granting Related Relief [Docket No. 162] (the "<u>Bar Date Order</u>"). Pursuant to the Bar Date Order, November 13, 2023 (the "<u>Bar Date</u>") was established as the deadline to submit prepetition claims against the Debtor.

13.    On April 12, 2024, the Debtor filed the Objection. The Objection seeks disallowance of the XXI Claim in its entirety, or alternatively, in part. Specifically, the Debtor asserts: (a) the Debtor is not liable for the Disputed Claim; (b) the Disputed Claim was filed after the Bar Date; (c) the Disputed Claim is barred, in part, by the statute of limitations.

**The Hartman XXI Claim and the Bar Date**

14.    Hartman XXI's financial and business records are stored on a computer system controlled by Silver Star.  See Declaration of Margaret Hartman (the "Hartman Declaration") ¶ 5, attached hereto as Exhibit "D".  Prior to the planned merger of Silver Star and Hartman XXI, Hartman XXI retained Hartman XXI Advisors to run the day-to day business of Hartman XXI. *Id.* Hartman XXI Advisors, LLC stored Hartman XXI's financial and business data on a computer system owned and/or operated by Silver Star Property Management, Inc.  Hartman Declaration ¶ 6. As part of the process of separating the business interest of Hartman XXI and Silver Star, Hartman XXI retained a third-party – Yardi Systems, Inc. ("Yardi") – to migrate Hartman XXI's financial and business data from Silver Star's computer system to Hartman XXI's computer system. Hartman Declaration ¶ 7. However, while Yardi was in the process of doing so, Silver Star instructed Yardi to stop the work it was doing.  Subsequently, Silver Star refused to provide access, at one point demanding a $50,000.00 payment in exchange for the records.  Hartman Declaration ¶ 8.

15.    Hartman XXI is a public REIT. As such, in order to comply with its regulatory reporting requirements, its fiduciary duty to its equity holders and to operate its business, timely access to its business records is crucial.  Hartman Declaration ¶ 10.

16.    Silver Star's refusal to provide access to the Hartman XXI business records caused chaos in Hartman XXI's day to day operations. The Debtor's bankruptcy filing

exasperated this situation. Hartman XXI could not determine if its tenants were paying rent nor could it timely comply with its auditing and reporting requirements. During the period from the Petion Date through the Bar Date, Hartman XXI was inundated with REIT investor inquiries yet unable to determine, among other things, what it was owed on account of the Debtor's distributions to Silver Star. Hartman Declaration ¶ 9.

17.     Hartman XXI concedes it received notice of the Debtor's bankruptcy filing and the Bar Date. However, the chaos caused by Sliver Star's wrongful refusal to provide access to the business records, including the inability to determine what it was owed, led to Hartman XXI's failure to submit a proof of claim by November 13, 2023. Hartman Declaration ¶ 11. When Hartman XXI became aware that it had missed the Bar Date, it immediately submitted its proof of claim, only 3 days later on November 16, 2023. *Id.* The Debtors have had actual notice of the XXI Claim since July 18, 2023, when Hartman XXI commenced state court action in Harris County Texas, seeking *inter alia,* payment on account of the same distributions and on the same basis as set forth in XXI's Claim.

## **RELIEF REQUESTED AND THE REASONS THEREFORE**

18.     Hartman XXI seeks to have the Objection to the XXI claim overruled and to have the XXI Claim deemed timely filed and allowed in the amount of $1,639,439.65[1].

19.     Hartman XXI's failure to file a claim before the Bar Date is attributable to excusable neglect.

20.     Rule 9006(b)(1) provides as follows:

> *In General.* Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of the court, the court for

---

[1] To the extent necessary for allowance, Hartman XXI moves to amend claim no. 1055 to the face amount of $1,639,439.65.

> cause shown may at any time in its discretion . . . (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

21.    The determination of whether neglect to file a timely claim is excusable under Rule 9006(b)(1) "is an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). "[R]elevant circumstances surrounding the party's omission . . . include . . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* (citation and footnote omitted).

22.    With respect to the first factor—prejudice to the debtor—the Third Circuit has adopted a multi-factor test that identifies specific factors to consider in a *Pioneer* prejudice analysis, including: the size of the claim with respect to the rest of the estate; whether allowing the late claim would have an adverse impact on the judicial administration of the case; whether the plan was filed or confirmed with knowledge of the existence of the claim; the disruptive effect that the late filing would have on the plan or upon the economic model upon which the plan was based; and whether allowing the claim would open the floodgates to other similar claims. *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 126 (3d Cir. 1999).

**<u>Lack of Prejudice to the Debtor</u>**

22.    There is no prejudice to Debtor or its creditors in deeming the Hartman XXI Claim timely filed.  Courts have concluded that prejudice is lessened where the debtor knew of the claims prior to the tardy filings. See, e.g., *Pilgrim's Pride*, Case No. 08-45664, 2011 WL 576070, at *4 (Bankr. N.D. Tex. Feb. 9, 2011); *In re Eagle Bus Mfg., Inc.,* 62 F.3d 730, 737-38 (5th Cir. 1995) (finding that late-filed claims would not prejudice the debtor, even though the

debtor had a confirmed a plan of reorganization, because the debtor was aware of the proposed claims); *Pilgrim's Pride,* 2011 WL 576070, at *4. Here, the Debtor has been continuously engaged with Hatman XXI for at least the 9 months prior to the Petion Date. The Debtor has been specifically aware of the XXI Claim since at least July 18, 2023, when Hartman XXI commenced an action in Harris County Texas, seeking *inter alia,* payment on account of the *same distributions and on the same basis* as set forth in XXI's Claim.

23.    Likewise, there is no prejudice to the Debtor's creditors in deeming the claim timely filed. The Debtor's Plan is already confirmed and has gone effective. Under the Plan, unsecured clams and equity interests in the Debtor are unimpaired, irrespective of the allowance of the XXI Claim.

24.    There is no risk deeming the XXI Claim timely filed will "open the floodgates to" future claims against Debtor because the XXI Claim is unlike any other claim identified in Debtors' Schedules and Statements. Silver Star and Hartman XXI are the only unitholders of the Debtor. No other creditor in these cases can assert a right to a distribution from the Debtor on the basis set forth in the XXI Claim.

25.    On the other hand, Hartman XXI and its REIT investors would suffer significant prejudice if the XXI Claim is not deemed timely filed. They would be denied the possibility of any monetary recovery on account of Hartman XXI's ownership interest in the Debtor.

**<u>Reason for Delay, Length of Delay and Impact on Proceeding</u>**

26.    In examining the reason for the delay in filing a proof of claim, the debtor's role is essential in determining whether the claimant's neglect was excusable. *O'Brien*, 188 F.2d at 128-29; <u>see</u> <u>also</u> *Chemetron*, 72 F.3d at 350 (remanding issue of analysis of excusable neglect under *Pioneer* standard to bankruptcy court upon finding that bankruptcy court and

district court failed to adequately consider, *inter alia*, debtor's role in contributing to delay).

27.     Silver Star's refusal to provide Hartman XXI access to its own business records caused chaos in Hartman XXI's day to day operations.   After the filing of the Debtor's bankruptcy case, Hartman XXI was inundated with requests for information from creditors and its REIT Invertors. Hartman XXI was unable to timely comply with its auditing requirements or even determine if its tenants were paying rent. These issues ultimately led to Hartman XXI, filing the XXI Claim *3 days* after the Bar Date.

## Hartman XXI's Good Faith

28.     Hartman XXI has no ulterior motive in seeking to have the XXI Claim deemed timely filed.  Rather, the totality of the circumstances occurring both prepetition and, in this case,—*i.e.* not receiving access to its own business records, caused Hartman XXI's 3-day delay in filing the XXI claim.  Hartman XXI has acted in good faith and the 3-day delay in filing the XXI Claim was unintentional and simply due to excusable neglect as defined in *Pioneer*. Cf. *In re Sacred Heart Hosp. of Norristown*, 186 B.R. 891, 895-97 (Bankr. E.D. Pa. 1995) (noting that tactical delay which adversely affects debtor's successful reorganization is evidence of bad faith and grounds for denying extension to file late claim).

## Hartman XXI is Otherwise Entitled to Allowance of the XXI Claim

29.     Under Bankruptcy Rule 3001(f), a proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of validity and the amount of the claim. Under Bankruptcy Code Section 502(b)(1), a claim may be disallowed to the extent that it is unenforceable against the debtor.

30.     Under section 18-606 of the Delaware Limited Liability Company Act, unless otherwise provided in a limited liability company agreement, at the time a member becomes

entitled to receive a distribution, the member has the status of, and is entitled to all remedies available to, a creditor of a limited liability company with respect to the distribution.  6 *Del. C.* § 18-606.

31.     The XXI Claim is enforceable against the Debtor. The Debtor's Objection seeks disallowance of the XXI Claim based on an "unclean hands" defense.  However, the Objection fails to cite any meaningful facts, and cites no law in support of this defense.  To prevail on an unclean hands defense, the defendant must show fraud, unconscionability, or bad faith on the part of the plaintiff." *Sonowo v. United States*, No. CIV. A. 03-1122, 2006 U.S. Dist. LEXIS 83146, 2006 WL 3313799, at *3 (D. Del. Nov. 13, 2006) (citing *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 377 n.7 (3d Cir. 1992)).   Inadvertent error alone is insufficient to support a finding of the intent necessary to implicate the unclean hands doctrine.   *Neo Gen Screening, Inc. v. TeleChem Int'l, Inc.*, 69 F. App'x 550, 556 (3d Cir. 2003) (no finding of unclean hands without evidence that "omission was knowing or intentional").  Here, the Debtor alleges that Hartman XXI's principal, Al Hartman was "in control" of the Debtor, Hartman XXI and Silver Star during the period distributions were made and that fact somehow results in disallowance of the XXI Claim.  The Debtor further alleges the distributions made to Silver Star were made solely for Al Hartman's personal benefit, notwithstanding the fact Silver Star is a public REIT, the controlling equity holder of the Debtor, and was at all times relevant herein, governed by its board of directors, who declared the distributions.  The Debtor cites no law in support of its defense.

32.     Neither Al Hartman, Hartman XXI nor the Hartman XXI board of directors were made aware of the XXI Distributions, made to, and held by Silver Star.  As chairman of the board and CEO Silver Star, Al Hartman was, among other things, responsible for the oversight of

180 employees and various legal and accounting matters of the company in addition to his other business interests.  The failure of Hartman XXI to detect and assert its right to distributions amounts to inadvertent error.  Neither Al Hartman nor Hartman XXI were made aware of Silver Star's receipt and retention of the XXI Distributions until July 2023.  Indeed, due to Silver Star's refusal to provide its books and records to Hartman XXI, Hartman XXI was unable to determine what it was owed until the Debtors disclosed the extent of distributions made to Silver Star in this proceeding.

**The 3 Year Statute of Limitations is Inapplicable to the XXI Claim**

33.    In Delaware, a cause of action arising under a limited liability company operating agreement is in the nature of a breach of action. 6 Del. C. § 18-1101.  See also *Holifield v. XRI Inv. Holdings LLC*, 304 A.3d 896, 922 (Del. 2023); *Domain Assocs.,L.L.C. v. Shah,* No. CV 12921-VCL, 2018 WL 3853531, at *9 (Del. Ch. Aug. 13, 2018). The limitations period for bringing a cause of action for a breach of contract is three (3) years. 10 Del. C. § 8106; *Bank of Delmarva v. S. Shore Ventures, LLC*, No. CV S13C-05-008 THG, 2014 WL5390389, at *3 (Del. Super. Ct. Oct. 21, 2014).   If the Court finds a contract continuous in nature, Delaware's statute of limitations does not typically begin to run until the termination of the entire contract.  *Nardo v. Guido DeAscanis & Sons,* 254 A.2d 254, 256 (Del. Super. Ct. 1969).  If the Court finds the contract severable in nature, the statute of limitations generally begins to run on each severable portion when a party breaches that portion of the contract.  *Id.*  The Court determines the continuous or severable nature of a contract by analyzing the intent of the parties. *Id.*; *Tracey v. Franklin,* 67 A.2d 56, 61 (Del. Supr. 1949).  The Court must ascertain this intent through the terms and subject matter of the contract, taken together with pertinent facts and circumstances

surrounding the contract. *Kaplan v. Jackson*, No. C.A. 90C-JN-6, 1994 WL 45429, at *2 (Del. Super. Ct. Jan. 20, 1994.

34.     In cases of continuous contract and continuing breach, the applicable statute of limitations begins to run only when full damages can be ascertained and recovered. *Matter of Burger*, 125 B.R. 894, 902 (Bankr. D. Del. 1991) (citing, *Oliver B. Cannon & Son, Inc. v. Fid. & Cas. Co. of N.Y.,* 484 F. Supp. 1375, 1390 (D. Del.1980) (action not barred by Delaware statute of limitations)).

35.     In the present case, the SPE Operating Agreement provides for profit distribution to its members.  Beginning in October 2019, the board of directors of Silver Star, via its position as the controlling equity holder of the Debtor, caused the Debtors to begin making monthly profit distributions and it did so every month, continuously for the period of October 2019 through July 18, 2022.  The determination to make these distributions to Silver Star, and the acts of making these distributions created a continuing obligation to make a corresponding distribution to Hartman XXI for each month in the above period.

36.     Importantly, due to Silver Star's refusal to provide information concerning the distributions, the full amount due to Hartman XXI could not be ascertained.  Indeed, Hartman XXI was forced to estimate the amount of its claim using publicly available Securities and Exchange Commission filings, and first learned the full extent of the Debtor's distributions to Silver Star via discovery propounded in this proceeding.  Accordingly, applying the *Burger* standard, the failure to distribute to Hartman XXI constitutes a "continuing breach" and the applicable 3-year statute of limitations begins to run (at the earliest) as of July 18, 2023, the date that Hartman XXI was made aware that Silver Star received the distributions from the Debtor on account of the Hartman XXI's distributions in an unknown amount.  Alternatively, the 3-year

Statute of Limitations should begin to run effective May 6, 2024, the date Hartman XXI was able to ascertain the full extent of its damages, via the Debtors responses to discovery requests propounded in this proceeding.

WHEREFORE, Hartman XXI requests entry of an Order (i) denying the Amened Objection, and (ii) deeming that the XXI Claim is timely filed, with prejudice to further objections, (iii) granting to Hartman XXI such other and further relief, at law or in equity, to which it may be entitled.

Dated: May 14, 2024.

*/s/ Michael J. Joyce*
Michael J. Joyce (No. 4563)
**JOYCE, LLC**
1225 King Street
Suite 800
Wilmington, DE 19801
Telephone: (302) 388-1944
E-mail:  mjoyce@mjlawoffices.com

*Counsel to Hartman V REIT XXI*