# EXHIBIT A

LIMITED LIABILITY COMPANY AGREEMENT
OF
HARTMAN SPE, LLC

This Limited Liability Company Agreement (together with the schedules attached hereto, this "Agreement") of Hartman SPE, LLC (the "Company"), is entered into by Hartman XX Limited Partnership REIT Operating Partnership, a Texas limited partnership; Hartman Short Term Income Properties XIX, Inc., a Texas corporation; Hartman Income REIT Operating Partnership, LP, a Delaware limited partnership; and Hartman vREIT XXI, Inc., a Maryland corporation as the equity members (singularly "Member" and jointly "Members"), and Hartman SPE Management, LLC, a Delaware limited liability company, as Manager. Capitalized terms used and not otherwise defined herein have the meanings set forth on Schedule A hereto.

The Members, by execution of this Agreement, hereby form the Company as a limited liability company pursuant to and in accordance with the Delaware Limited Liability Company Act (6 Del. C. § 18-101 et seq.), as amended from time to time (the "Act"), and this Agreement; and the Members and the Independent Managers hereby agree as follows:

Section 1.    Name.

The name of the limited liability company formed hereby is Hartman SPE, LLC.

Section 2.    Principal Business Office.

The principal business office of the Company shall be located at 2909 Hillcroft Suite 420, Houston TX 77057 or such other location as may hereafter be determined by the Member.

Section 3.    Registered Office.

The address of the registered office of the Company in the State of Delaware is c/o Corporation Trust Center, 1209 Orange Street, Wilmington DE 19801.

Section 4.    Registered Agent.

The name and address of the registered agent of the Company for service of process on the Company in the State of Delaware is The Corporation Trust Company.

Section 5.    Members.

(a)    The mailing address of the Members are set forth on Schedule B attached hereto. The Members were admitted to the Company as members of the Company upon its execution of a counterpart signature page to this Agreement.

(b)    Subject to Section 9(e), the Members may act by unanimous written consent.

(c)    Upon the occurrence of any event that causes the Manager to cease to be the Manager of the Company or the Members to cease to be members of the Company (other than upon continuation of the Company without dissolution upon (i) an assignment by the Members of all of their limited liability company interest in the Company and the admission of the transferee pursuant to Sections 20 and 22, or (ii) the resignation of the Members and the admission of an additional member of the Company pursuant to Sections 21 and 22), each Person appointed and acting as an Independent Manager pursuant to Section 10 shall, without

any action of any Person and simultaneously with the Manager ceasing to be Manager of the Company or the Members ceasing to be members of the Company, automatically be admitted to the Company as a Special Member and shall continue the Company without dissolution.  No Special Member may resign from the Company or transfer its rights as Special Member unless (i) a successor Special Member has been admitted to the Company as Special Member by executing a counterpart to this Agreement, and (ii) such successor has also accepted its appointment as Independent Manager pursuant to Section 10; provided, however, the Special Members shall automatically cease to be members of the Company upon the admission to the Company of a substitute Member.  Each Special Member shall be a member of the Company that has no interest in the profits, losses and capital of the Company and has no right to receive any distributions of Company assets.  Pursuant to Section 18-301 of the Act, a Special Member shall not be required to make any capital contributions to the Company and shall not receive a limited liability company interest in the Company.  A Special Member, in its capacity as Special Member, may not bind the Company.  Except as required by any mandatory provision of the Act, each Special Member, in its capacity as Special Member, shall have no right to vote on, approve or otherwise consent to any action by, or matter relating to, the Company, including, without limitation, the merger, consolidation or conversion of the Company.  In order to implement the admission to the Company of each Special Member, each Person acting as an Independent Manager pursuant to Section 10 shall execute a counterpart to this Agreement.  Prior to its admission to the Company as Special Member, each Person acting as an Independent Manager pursuant to Section 10 shall not be a member of the Company.

Section 6.        Certificates.

Mark T. Torok is hereby designated as an "authorized person" within the meaning of the Act, and has executed, delivered and filed the Certificate of Formation of the Company with the Secretary of State of the State of Delaware.  Upon the filing of the Certificate of Formation with the Secretary of State of the State of Delaware, his powers as an "authorized person" ceased, and Hartman XX Limited Partnership REIT Operating Partnership thereupon became the designated "authorized person" and shall continue as the designated "Authorized Person" within the meaning of the Act.  The Authorized Person or an Officer shall execute, deliver and file any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in Texas and in any other jurisdiction in which the Company may wish to conduct business.

The existence of the Company as a separate legal entity shall continue until cancellation of the Certificate of Formation as provided in the Act.

Section 7.        Purposes.

(a)    The sole purpose to be conducted or promoted by the Company is to engage in the following activities:

    (i)    Acquiring and holding the "Property" as defined in the Loan Agreement (the "Property");

    (ii)   to enter into and perform its obligations under the Loan Documents;

    (iii)  to sell, transfer, service, convey, dispose of, pledge, assign, borrow money against, finance, refinance or otherwise deal with the Property to the extent permitted under the Loan Documents; and

    (iv)   to engage in any lawful act or activity and to exercise any powers permitted to limited liability companies organized under the laws of the State of Delaware that are related

2

or incidental to and necessary, convenient or advisable for the accomplishment of the above-mentioned purposes.

(b) The Company is hereby authorized to perform, and the Manager on behalf of the Company is hereby authorized to execute and deliver, the Loan Documents and all documents, agreements, certificates, or financing statements contemplated thereby or related thereto, all without any further act, vote or approval of any other Person notwithstanding any other provision of this Agreement, the Act or applicable law, rule or regulation. The foregoing authorization shall not be deemed a restriction on the powers of the Members or any Officer to enter into other agreements on behalf of the Company.

Section 8.    <u>Powers</u>.

Subject to <u>Section 9(e)</u>, the Company, and the Members and the Officers on behalf of the Company, (i) shall have and exercise all powers necessary, convenient or incidental to accomplish its purposes as set forth in <u>Section 7</u> and (ii) shall have and exercise all of the powers and rights conferred upon limited liability companies formed pursuant to the Act.

Section 9.    <u>Management</u>.

Subject to <u>Section 9(e)</u>, the business and affairs of the Company shall be at all times managed by or under the direction of a single manager that is a special purpose entity having at least two Independent Managers as set forth in Section 10 below. The initial Manager of the Company shall be Hartman SPE Management, LLC, a Delaware limited liability company, to serve until otherwise replaced or removed as provided herein.

(a) Subject to <u>Section 10</u>, the Members may determine at any time in its sole and absolute discretion the number of Independent Managers. The Independent Managers shall only have such duties and responsibilities as set out herein. The initial number of Independent Managers shall be two.

(b) <u>Powers</u>. Subject to <u>Section 9(e)</u>, the Manager shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise. Subject to <u>Section 7</u> and this <u>Section 9</u>, the Manager has the sole authority to bind the Company.

(c) <u>Delegation</u>. The implementation of any decision made by any Member or Manager may be through any Person selected by such Member or Manager. Unless otherwise specifically required by this Agreement, and to the fullest extent permitted by law, all approvals and consents required herein may be prospective or retroactive.

(d) <u>Manager and Members as Agent</u>. To the extent of its powers set forth in this Agreement and subject to <u>Section 9(e)</u>, the Manager is an agent of the Company for the purpose of the Company's business, and the actions of the Manager taken in accordance with such powers shall bind the Company. The Manager shall exercise its authority as such in its capacity as the Manager of the Company.

(e) <u>Limitations on the Company's Activities</u>.

(i) This <u>Section 9(e)</u> is being adopted in order to comply with certain provisions required in order to qualify the Company as a "special purpose" entity.

(ii) Notwithstanding any other provision of this Agreement and any provision of law that otherwise so empowers the Company, the Manager, Members or any Officer or any other Person, so long as any Obligation is outstanding, neither the Manager, the

3

    Members nor any Officer nor any other Person shall be authorized or empowered, nor shall they permit the Company, without the prior unanimous written consent of the Manager, the Members and each Independent Manager if so appointed, to file, or consent to the filing, of a bankruptcy or insolvency petition, any general assignment for the benefit of creditors or institute any other insolvency proceeding with respect to the Company, seek or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator, custodian or any similar official in respect of the Company, admit in writing the inability of the Company to pay its debts generally as they become due, or take any action in furtherance of any of the foregoing; provided, however, that, so long as any Obligation is outstanding, the Manager or the Members may not authorize the taking of any of the foregoing actions unless there are at least two Independent Managers then serving in such capacity with either the Manager of the Company or as appointed herein.

(iii) Neither the Manager or the Members shall, so long as any Obligation is outstanding, amend, alter, change or repeal the definition of "Independent Manager" or Sections 5(c), 7, 8, 9, 10, 16, 19, 20, 21, 22, 23, 24, 25, 28, 30 or Schedule A of this Agreement. Subject to this Section 9(e), the Members reserve the right to amend, alter, change or repeal any provisions contained in this Agreement in accordance with Section 30.

(iv) The Manager shall cause the Company to do or cause to be done all things necessary to preserve and keep in full force and effect its existence, rights (charter and statutory) and franchises. The Manager and the Members also shall cause the Company to:

  (A) not engage in any business unrelated to the Property;

  (B) not own any assets other than those related to its interest in the Property and not to own any assets on which Lender does not have a lien, other than excess cash that has been released to the Company pursuant to the Loan Documents;

  (C) not have any debt other than debt permitted under the Loan Documents;

  (D) maintain books, accounts, records, financial statements, stationery, invoices and checks that are separate and apart from those of any other Person (except that the Company's financial position, assets, results of operations and cash flows may be included in the consolidated financial statements of an affiliate of the Company in accordance with GAAP, provided that (i) any such consolidated financial statements do not suggest in any way that the Company's assets are available to satisfy the claims of its affiliate's creditors and (ii) such assets shall also be listed on the Company's own separate balance sheet);

  (E) be subject to and comply with all of the limitations on powers and separateness requirements set forth in the Company's organizational documentation;

  (F) hold itself out as being a Person separate and apart from each other Person and not as a division or part of another Person;

  (G) conduct its business in its own name;

SPE-000238

(H) exercise reasonable efforts to correct any misunderstanding actually known to it regarding its separate identity, maintains an arms'-length relationship with its affiliates and only enter into a contract or agreement with an affiliate upon terms and conditions that are intrinsically fair, commercially reasonable and substantially similar to those that would be available on an arms'-length basis with unaffiliated third parties;

(I) pay its own liabilities out of its own funds, including the salaries of its own employees, if any (provided that the foregoing shall not require the Company's equityholders to make any additional capital contributions to the Company) and reasonably allocate any overhead that is shared with an affiliate, including paying for shared office space and services performed by any officer or employee of an affiliate;

(J) maintain a sufficient number of employees, if any, in light of its contemplated business operations;

(K) conduct its business so that the assumptions made with respect to it that are contained in the Nonconsolidation Opinion shall at all times be true and correct in all material respects;

(L) maintain its assets in such a manner that it will not be costly or difficult to segregate, ascertain or identify its individual assets from those of any other Person;

(M) observe all applicable entity-level formalities in all material respects;

(N) not commingle its assets with those of any other Person, and hold its assets in its own name;

(O) not assume, guarantee or become obligated for the debts of any other Person, and not hold out its credit as being available to satisfy the obligations or securities of others;

(P) not acquire obligations or securities of its direct or indirect equityholders;

(Q) not pledge its assets for the benefit of any other Person and not make any loans or advances to any other Person other than as contemplated by the Loan Documents with respect to co-borrowers thereunder;

(R) maintain adequate capital in light of its contemplated business operations (provided that the foregoing shall not require the Company's partners, members or shareholders to make any additional capital contributions to the Company); and

(S) file its own tax returns separate from those of any other Person, except to the extent it is treated as a "disregarded entity" for tax purposes and is not required to file tax returns under applicable law, and pay any taxes required to be paid under applicable law only from its own funds.

SPE-000239

Failure of the Company, or the Managers or Members on behalf of the Company, to comply with any of the foregoing covenants or any other covenants contained in this Agreement shall not affect the status of the Company as a separate legal entity or the limited liability of the Members.

(v) So long as any Obligation is outstanding, neither the Members nor the Manager shall cause or permit the Company to take or consent to any of the following actions except to the extent expressly permitted in the Loan Documents:

(A) to the fullest extent permitted by law, dissolve, liquidate, consolidate, merge or sell all or substantially all of its assets; and

(B) engage in any business other than the acquisition, development, management, leasing, ownership, maintenance and operation of the Property and activities incidental thereto.

(f) <u>Manager Term and Removal.</u> Manager(s) shall serve until the happening of one of the following events:

(i) The Manager is removed by the affirmative vote of the Members owning seventy-five percent (75%) of the voting interest of the Company;

(ii) The expiration of the Company as required by law;

(iii) The Manager withdraws; or

(iv) The death or incapacity of the Manager.

(g) <u>Additional Managers.</u> Additional Managers may be elected or vacancies may be filled by one of the following methods:

(i) At each annual meeting of the Members;

(ii) At a special meeting of the Members; or

(iii) At any time by written unanimous consent of the Members;

(iv) provided, however, that for so long as any Obligation is outstanding, there shall only be one Manager.

(h) <u>Business Judgment.</u> No Manager exercising ordinary business judgment shall be liable, responsible, or accountable in damages or otherwise to the Company or any Member for any act or failure to act on behalf of the Company within the scope of the authority conferred on the Members by this Agreement or by law unless such act or omission was performed or omitted fraudulently or in bad faith or constituted wanton and willful misconduct, deceit, or a wrongful taking. Each Manager shall indemnify and hold the Company harmless from any loss, damage, claim or liability (including attorneys' fees) incurred by reason of such Manager's fraudulent, bad faith, wonton, willful conduct, deceit, or wrongful taking.

(i) <u>Other Activities.</u> The Manager (except for the Independent Managers appointed pursuant to Section 10) shall be required to manage the Company as its sole and exclusive function and it may not have other business interests and may not engage in other activities in addition to those relating to the Company.

**SPE-000240**

(j) <u>Salary or compensation to Manager.</u> The Manager may receive a reasonable salary, fee, or compensation for services rendered to the Company, which shall be in addition to their respective share of Company profits, if such Manager is a Member of the Company. The compensation for the Manager shall be determined as the Manager and Members shall agree. The compensation of the Manager shall be reviewed periodically and adjusted appropriately.

Section 10.    <u>Independent Managers</u>.

So long as any Obligation is outstanding, the Manager and the Members shall cause the Company at all times to be managed by a duly formed and authorized special purpose entity that has at least two Independent Managers. In the event that the Manager does not have two Independent Managers, the Members shall appoint two Independent Managers for the Company. If Independent Managers are appointed by the Members, to the fullest extent permitted by law, including Section 18-1101(c) of the Act, and notwithstanding any duty otherwise existing at law or in equity, the Independent Managers shall consider only the interests of the Company, including its creditors, in acting or otherwise voting on the matters referred to in <u>Section 9(e)(ii)</u>. Except for duties to the Company as set forth in the immediately preceding sentence (including duties to the Members and the Company's creditors solely to the extent of their respective economic interests in the Company but excluding (i) all other interests of the Members, (ii) the interests of other Affiliates of the Company, and (iii) the interests of any group of Affiliates of which the Company is a part), the Independent Managers shall not have any fiduciary duties to the Members or any other Person bound by this Agreement; provided, however, the foregoing shall not eliminate the implied contractual covenant of good faith and fair dealing. To the fullest extent permitted by law, including Section 18-1101(e) of the Act, an Independent Manager shall not be liable to the Company, the Members or any other Person bound by this Agreement for breach of contract or breach of duties (including fiduciary duties), unless the Independent Manager acted in bad faith or engaged in willful misconduct. No resignation or removal of an Independent Manager, and no appointment of a successor Independent Manager, shall be effective until such successor shall have accepted his or her appointment as an Independent Manager by executing a counterpart to this Agreement. In the event of a vacancy in the position of Independent Manager, the Members shall, as soon as practicable, appoint a successor Independent Manager. Subject to the other provisions of this <u>Section 10</u>, the Independent Managers may be removed by the Members only for Cause. Notwithstanding anything to the contrary contained in this Agreement, no Independent Manager shall be removed or replaced unless the Company provides the Lender with no less than two (2) business days' prior written notice of (a) any proposed removal of such Independent Manager, and (b) the identity of the proposed replacement Independent Manager, together with a certification that such replacement satisfies the requirements for an Independent Manager set forth in this Agreement. All right, power and authority of the Independent Managers shall be limited to the extent necessary to exercise those rights and perform those duties specifically set forth in this Agreement. No Independent Manager shall at any time serve as trustee in bankruptcy for any Affiliate of the Company. Each Independent Manager is hereby designated as a "manager" within the meaning of Section 18-101(10) of the Act.

Section 11.    <u>Officers</u>.

The Members may, from time to time as it deems advisable, appoint officers of the Company (the "<u>Officers</u>") and assign in writing titles (including, without limitation, President, Vice President, Secretary, and Treasurer) to any such person. Unless the Members decide otherwise, if the title is one commonly used for officers of a business corporation formed under the Delaware General Corporation Law, the assignment of such title shall constitute the delegation to such person of the authorities and duties that are normally associated with that office. Any delegation pursuant to this <u>Section 11</u> may be revoked at any time by the Members. The initial Officers are listed on <u>Schedule C</u> attached hereto. The Members may revise <u>Schedule C</u> in their sole discretion at any time.

SPE-000241

Section 12. <u>Limited Liability</u>.

Except as otherwise expressly provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be the debts, obligations and liabilities solely of the Company, and neither the Members, nor the Manager, nor the Special Members nor any Independent Manager shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member, Special Member, Manager or Independent Manager of the Company.

Section 13. <u>Capital Contributions</u>.

The Members have contributed to the Company property of an agreed value as listed on <u>Schedule B</u> attached hereto. In accordance with <u>Section 5(c)</u>, the Special Members shall not be required to make any capital contributions to the Company.

Section 14. <u>Additional Contributions</u>.

The Members are not required to make any additional capital contribution to the Company. However, the Members may make additional capital contributions to the Company at any time upon the written consent of such Members. To the extent that the Members make an additional capital contribution to the Company, the Members shall revise <u>Schedule B</u> of this Agreement. The provisions of this Agreement, including this <u>Section 14</u>, are intended to benefit the Members and the Special Members and, to the fullest extent permitted by law, shall not be construed as conferring any benefit upon any creditor of the Company (other than a Covered Person in accordance with <u>Section 19</u>) (and no such creditor of the Company shall be a third-party beneficiary of this Agreement) and the Members and the Special Members shall not have any duty or obligation to any creditor of the Company to make any contribution to the Company or to issue any call for capital pursuant to this Agreement.

Section 15. <u>Allocation of Profits and Losses</u>.

The Company's profits and losses shall be allocated to the Members.

Section 16. <u>Distributions</u>.

Distributions shall be made to the Members at the times and in the aggregate amounts determined by the Members. Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not be required to make a distribution to the Members on account of its interest in the Company if such distribution would violate the Act or any other applicable law or any Loan Document.

Section 17. <u>Books and Records</u>.

The Manager shall keep or cause to be kept complete and accurate books of account and records with respect to the Company's business. The Members and their duly authorized representatives shall have the right to examine the Company books, records and documents during normal business hours. The Company's books of account shall be kept using the method of accounting determined by the Members. The Company's independent auditor, if any, shall be an independent public accounting firm selected by the Members.

Section 18. <u>Other Business</u>.

Notwithstanding any duty otherwise existing at law or in equity, the Members, the Special Members, and each Independent Manager (if appointed by the Members) and any Affiliate of the Members or the Special Members or the Independent Managers may engage in or possess an interest in other business ventures

SPE-000242

(unconnected with the Company) of every kind and description, independently or with others.  The Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

Section 19.        <u>Exculpation and Indemnification</u>.

(a)        To the fullest extent permitted by applicable law, neither the Members nor the Special Members, nor the Manager nor any Independent Manager or Officer, nor any officer, director, employee, agent or Affiliate of the foregoing (collectively, the "<u>Covered Persons</u>") shall be liable to the Company or any other Person who is a party to or is otherwise bound by this Agreement for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that a Covered Person shall be liable for any such loss, damage or claim incurred by reason of such Covered Person's gross negligence or willful misconduct.

(b)        To the fullest extent permitted by applicable law, a Covered Person shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that no Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Covered Person by reason of such Covered Person's gross negligence or willful misconduct with respect to such acts or omissions; <u>provided</u>, <u>however</u>, that any indemnity under this <u>Section 19</u> by the Company shall be provided out of and to the extent of Company assets only, and the Members and the Special Members shall not have personal liability on account thereof; and <u>provided further</u>, that so long as any Obligation is outstanding, no indemnity payment from funds of the Company (as distinct from funds from other sources, such as insurance) of any indemnity under this <u>Section 19</u> shall be payable from amounts allocable to any other Person pursuant to the Loan Documents.

(c)        To the fullest extent permitted by applicable law, expenses (including reasonable legal fees) incurred by a Covered Person defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in this <u>Section 19</u>.

(d)        A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any Person as to matters the Covered Person reasonably believes are within such other Person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, or any other facts pertinent to the existence and amount of assets from which distributions to the Member might properly be paid.

(e)        The provisions of this Agreement, to the extent that they restrict or eliminate the duties and liabilities of a Covered Person to the Company or its members otherwise existing at law or in equity, are agreed by the parties hereto to replace such other duties and liabilities of such Covered Person.

(f)        The foregoing provisions of this <u>Section 19</u> shall survive any termination of this Agreement.

**SPE-000243**

Section 20.    <u>Assignments</u>.

A Member may assign in whole or in part its limited liability company interest in the Company. Subject to <u>Section 22</u>, the transferee shall be admitted to the Company as a member of the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement. If a Member transfers all of its limited liability company interest in the Company pursuant to this <u>Section 20</u>, such admission shall be deemed effective immediately prior to the transfer and, immediately following such admission, the transferor Member shall cease to be a member of the Company. Notwithstanding anything in this Agreement to the contrary, any successor to a Member by merger or consolidation in compliance with the Loan Documents shall, without further act, be a Member hereunder, and such merger or consolidation shall not constitute an assignment for purposes of this Agreement and the Company shall continue without dissolution.

Section 21.    <u>Resignation</u>.

So long as any Obligation is outstanding, no Member may resign, except as permitted under the Loan Documents and if the Rating Agency Condition is satisfied. If all of the Members are permitted to resign pursuant to this <u>Section 21</u>, an additional member of the Company shall be admitted to the Company, subject to <u>Section 22</u>, upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement. Such admission shall be deemed effective immediately prior to the resignation and, immediately following such admission, the resigning Member(s) shall cease to be a member of the Company.

Section 22.    <u>Admission of Additional Members</u>.

One or more additional members of the Company may be admitted to the Company with the unanimous written consent of the Members; <u>provided</u>, <u>however</u>, that, notwithstanding the foregoing, so long as any Obligation remains outstanding, no additional Member may be admitted to the Company unless the Rating Agency Condition is satisfied.

Section 23.    <u>Dissolution</u>.

(a)    Subject to <u>Section 9(e)</u>, the Company shall be dissolved, and its affairs shall be wound up upon the first to occur of the following: (i) the termination of the legal existence of the last remaining member of the Company or the occurrence of any other event which terminates the continued membership of the last remaining member of the Company in the Company unless the Company is continued without dissolution in a manner permitted by this Agreement or the Act or (ii) the entry of a decree of judicial dissolution under Section 18-802 of the Act. Upon the occurrence of any event that causes the last remaining member of the Company to cease to be a member of the Company (other than upon continuation of the Company without dissolution upon (i) an assignment by the Member of all of its limited liability company interest in the Company and the admission of the transferee pursuant to <u>Sections 20 and 22</u>, or (ii) the resignation of the Member and the admission of an additional member of the Company pursuant to <u>Sections 21 and 22</u>), to the fullest extent permitted by law, the personal representative of such member is hereby authorized to, and shall, within 90 days after the occurrence of the event that terminated the continued membership of such member in the Company, agree in writing (i) to continue the Company and (ii) to the admission of the personal representative or its nominee or designee, as the case may be, as a substitute member of the Company, effective as of the occurrence of the event that terminated the continued membership of such member in the Company.

(b)    Notwithstanding any other provision of this Agreement, the Bankruptcy of a Member or a Special Member shall not cause the Member or Special Member, respectively, to cease to be a member of the Company and upon the occurrence of such an event, the Company shall continue without dissolution.

**SPE-000244**

(c)    In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied in the manner, and in the order of priority, set forth in Section 18-804 of the Act.

(d)    The Company shall terminate when (i) all of the assets of the Company, after payment of or due provision for all debts, liabilities and obligations of the Company shall have been distributed to the Members in the manner provided for in this Agreement and (ii) the Certificate of Formation shall have been canceled in the manner required by the Act.

Section 24.    Waiver of Partition; Nature of Interest.

Except as otherwise expressly provided in this Agreement, to the fullest extent permitted by law, each of the Members, the Manager and the Independent Managers hereby irrevocably waives any right or power that such Person might have to cause the Company or any of its assets to be partitioned, to cause the appointment of a receiver for all or any portion of the assets of the Company, to compel any sale of all or any portion of the assets of the Company pursuant to any applicable law or to file a complaint or to institute any proceeding at law or in equity to cause the dissolution, liquidation, winding up or termination of the Company.  The Members shall not have any interest in any specific assets of the Company, and the Members shall not have the status of a creditor with respect to any distribution pursuant to Section 16 hereof.  The interest of the Members in the Company is personal property.

Section 25.    Benefits of Agreement; No Third-Party Rights.

None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of the Company (other than Lender in accordance with the Loan Agreement) or by any creditor of any Member or Special Member.  Nothing in this Agreement shall be deemed to create any right in any Person (other than Covered Persons in accordance with Section 19) not a party hereto, and this Agreement shall not be construed in any respect to be a contract in whole or in part for the benefit of any third Person (other than Covered Persons in accordance with Section 19).

Section 26.    Severability of Provisions.

Each provision of this Agreement shall be considered severable and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

Section 27.    Entire Agreement.

This Agreement and the Loan Documents constitute the entire agreement of the parties with respect to the subject matter hereof.

Section 28.    Binding Agreement.

Notwithstanding any other provision of this Agreement, the Members agree that this Agreement, together with all its schedules, constitutes a legal, valid and binding agreement of the Members, and is enforceable against the Members by the Independent Managers, in accordance with its terms.

SPE-000245

Section 29. <u>Governing Law</u>.

This Agreement shall be governed by and construed under the laws of the State of Delaware (without regard to conflict of laws principles), all rights and remedies being governed by said laws.

Section 30. <u>Amendments</u>.

Subject to <u>Section 9(e)</u>, this Agreement may be modified, altered, supplemented or amended pursuant to a unanimous written agreement executed and delivered by the Members. Notwithstanding anything to the contrary in this Agreement, so long as any Obligation is outstanding, this Agreement may not be modified, altered, supplemented or amended unless the Rating Agency Condition is satisfied except: (i) to cure any ambiguity or (ii) to correct or supplement any provision in a manner consistent with the intent of this Agreement and the Loan Documents.

Section 31. <u>Counterparts</u>.

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original of this Agreement and all of which together shall constitute one and the same instrument.

Section 32. <u>Notices</u>.

Any notices required to be delivered hereunder shall be in writing and personally delivered, mailed or sent by telecopy, electronic mail or other similar form of rapid transmission, and shall be deemed to have been duly given upon receipt (a) in the case of the Company, to the Company at its address in <u>Section 2</u>, (b) in the case of a Member, to the Member at its address as listed on <u>Schedule B</u> attached hereto and (c) in the case of either of the foregoing, at such other address as may be designated by written notice to the other party.

Section 33. <u>Effectiveness</u>.

Pursuant to Section 18-201 (d) of the Act, this Agreement shall be effective as of the time of the filing of the Certificate of Formation with the Office of the Delaware Secretary of State on July 19, 2018.

(Signature Page to Follow)

SPE-000246

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, have duly executed this Limited Liability Company Agreement as of the 19th day of July, 2018.

MEMBER:

Hartman XX Limited Partnership REIT Operating Partnership, a Texas limited partnership

By: its General Partner, Hartman XX REIT GP, LLC, a Texas limited liability company

By: /s/ Allen R. Hartman                        .
    Name: Allen R. Hartman, its President

MEMBER:

Hartman Short Term Income Properties XIX, Inc., a Texas corporation

By: /s/ Allen R. Hartman                        .
    Name: Allen R. Hartman, its President

MEMBER:

Hartman Income REIT Operating Partnership, LP, a Delaware limited partnership

By: its General Partner, Hartman Income REIT Management, Inc., a Texas corporation

By: /s/ Allen R. Hartman                        .
    Name: Allen R. Hartman, its President

MEMBER:

Hartman vREIT XXI, Inc., a Maryland corporation

By: /s/ Allen R. Hartman                        .
    Name: Allen R. Hartman, its President

13

MANAGER:

Hartman SPE Management, LLC

By: /s/ Allen R. Hartman                              .
    Name: Allen R. Hartman, its President

SPE-000248

SCHEDULE A

Definitions

A. Definitions

When used in this Agreement, the following terms not otherwise defined herein have the following meanings:

"Act" has the meaning set forth in the preamble to this Agreement.

"Affiliate" means, with respect to any Person, any other Person directly or indirectly Controlling or Controlled by or under direct or indirect common Control with such Person.

"Agreement" means this Limited Liability Company Agreement of the Company, together with the schedules attached hereto, as amended, restated or supplemented or otherwise modified from time to time.

"Bankruptcy" means, with respect to any Person, if such Person (i) makes an assignment for the benefit of creditors, (ii) files a voluntary petition in bankruptcy, (iii) is adjudged a bankrupt or insolvent, or has entered against it an order for relief, in any bankruptcy or insolvency proceedings, (iv) files a petition or answer seeking for itself any reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, (v) files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against it in any proceeding of this nature, (vi) seeks, consents to or acquiesces in the appointment of a trustee, receiver or liquidator of the Person or of all or any substantial part of its properties, or (vii) if 120 days after the commencement of any proceeding against the Person seeking reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, if the proceeding has not been dismissed, or if within 90 days after the appointment without such Person's consent or acquiescence of a trustee, receiver or liquidator of such Person or of all or any substantial part of its properties, the appointment is not vacated or stayed, or within 90 days after the expiration of any such stay, the appointment is not vacated. The foregoing definition of "Bankruptcy" is intended to replace and shall supersede and replace the definition of "Bankruptcy" set forth in Sections 18-101(1) and 18-304 of the Act.

"Cause" means, with respect to an Independent Manager, (i) acts or omissions have been committed by such Independent Manager that constitute systematic and persistent or willful disregard of such Independent Manager's duties, (ii) such Independent Manager has been indicted or convicted for any crime or crimes of moral turpitude or dishonesty or for any violation of any Legal Requirements (as defined in the Loan Agreement), (iii) such Independent Manager no longer satisfies the requirements set forth in the definition of "Independent Manager", (iv) the fees charged for the services of such Independent Manager are materially in excess of the fees charged by the other providers of Independent Manager listed in the definition of "Independent Manager" or (v) any other reason for which the prior written consent of Lender shall have been obtained.

"Certificate of Formation" means the Certificate of Formation of the Company filed with the Secretary of State of the State of Delaware on July 19, 2018, as amended or amended and restated from time to time.

"Company" means Hartman SPE, LLC, a Delaware limited liability company.

"Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ownership of voting securities or general partnership or managing member interests, by contract or otherwise. "Controlling" and "Controlled" shall have

A-1

correlative meanings.  Without limiting the generality of the foregoing, a Person shall be deemed to Control any other Person in which it owns, directly or indirectly, a majority of the ownership interests.

"Covered Persons" has the meaning set forth in Section 19(a).

"Independent Manager" means an individual who is provided by CT Corporation, Corporation Service Company, Delaware Trust,  National Registered Agents, Inc., Wilmington Trust Company, Stewart Management Company, Lord Securities Corporation or, if none of those companies is then providing professional independent managers, another nationally-recognized company reasonably approved by Lender, in each case that is not an affiliate of the Company and that provides professional independent managers and other corporate services in the ordinary course of its business, and which individual is duly appointed as an Independent Manager of the Company and is not, and has never been, and will not while serving as Independent Manager be, any of the following:

(i) a member (other than an independent, non-economic "springing" member), partner, equityholder, manager, director, officer or employee of the Company or any of its equityholders or affiliates (other than as an independent manager of an affiliate of the Company that is not in the direct chain of ownership of the Company and that is required by a creditor to be a single purpose bankruptcy remote entity, provided that such independent manager is employed by a company that routinely provides professional independent managers);

(ii) a creditor, supplier or service provider (including provider of professional services) to the Company or any of its equityholders or affiliates (other than a nationally recognized company that routinely provides professional independent managers and that also provides lien search and other similar services to the Company or any of its equityholders or affiliates in the ordinary course of business);

(iii) a family member of any such member, partner, equityholder, manager, director, officer, employee, creditor, supplier or service provider; or

(iv) a Person that controls (whether directly, indirectly or otherwise) any of (i), (ii) or (iii) above.

A natural person who otherwise satisfies the foregoing definition other than subparagraph (i) by reason of being the independent manager of a Person affiliated with the Company shall not be disqualified from serving as an Independent Manager of the Company, provided that the fees that such natural person earns from serving as independent manager of affiliates of the Company in any given year constitute in the aggregate less than five percent of such natural person's annual income for that year.  The same natural persons may not serve as Independent Managers of the Company and, at the same time, serve as independent managers of an equityholder or member of the Company.

"Lender" means Goldman Sachs Mortgage Company.

"Loan" has the meaning set forth in the Loan Agreement.

"Loan Agreement" means that certain loan agreement between the Company and Lender dated [  ].

"Loan Documents" has the meaning set forth in the Loan Agreement.

"Manager" means the Person or Persons appointed to manage the Company pursuant to this Operating Agreement.

SPE-000250

"Members" mean Hartman XX Limited Partnership REIT Operating Partnership, a Maryland corporation; Hartman Short Term Income Properties XIX, Inc., a Texas corporation; Hartman Income REIT Operating Partnership, LP, a Delaware limited partnership; and Hartman vREIT XXI, Inc., a Maryland corporation as the initial members of the Company, and includes any Person admitted as an additional member of the Company or a substitute member of the Company pursuant to the provisions of this Agreement, each in its capacity as a member of the Company; provided, however, the term "Members" shall not include the Special Members.

"Nonconsolidation Opinion" shall have the meaning set forth in the Loan Agreement.

"Obligations" shall mean the indebtedness, liabilities and obligations of the Company under or in connection with this Agreement and the Loan Documents.

"Officer" means an officer of the Company as described in Section 11.

"Officer's Certificate" means a certificate signed by any Officer of the Company who is authorized to act for the Company in matters relating to the Company.

"Person" means any individual, corporation, partnership, joint venture, limited liability company, limited liability partnership, association, joint stock company, trust, unincorporated organization, or other organization, whether or not a legal entity, and any governmental authority.

"Rating Agency" has the meaning assigned to that term in the Loan Agreement.

"Rating Agency Condition" means (i) with respect to any action taken at any time before the Loan has been sold or assigned to a securitization trust, that the lender thereunder has consented in writing to such action, and (ii) with respect to any action taken at any time after the Loan has been sold or assigned to a securitization trust, that each Rating Agency shall have been given ten days prior notice thereof and that each of the Rating Agencies shall have notified the Company in writing that such action will not result in a reduction or withdrawal of the then current rating by such Rating Agency of any of securities issued by such securitization trust.

"Special Member" means, upon such person's admission to the Company as a member of the Company pursuant to Section 5(c), a person acting as Independent Manager, in such person's capacity as a member of the Company. A Special Member shall only have the rights and duties expressly set forth in this Agreement.

B.  Rules of Construction

Definitions in this Agreement apply equally to both the singular and plural forms of the defined terms. The words "include" and "including" shall be deemed to be followed by the phrase "without limitation." The terms "herein," "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular Section, paragraph or subdivision. The Section titles appear as a matter of convenience only and shall not affect the interpretation of this Agreement. All Section, paragraph, clause, Exhibit or Schedule references not attributed to a particular document shall be references to such parts of this Agreement.

SPE-000251

SCHEDULE B

Members

| Name | Mailing Address | Agreed Value of Capital Contribution | Limited Liability Company Interest |
|---|---|---|---|
| Hartman XX Limited Partnership REIT Operating Partnership | 2909 Hillcroft Suite 420 Houston TX 77057 | $ 101,655,473 | 32.14% |
| Hartman Short Term Income Properties XIX, Inc. | 2909 Hillcroft Suite 420 Houston TX 77057 | $ 89,907,327 | 28.42% |
| Hartman Income REIT Operating Partnership, LP | 2909 Hillcroft Suite 420 Houston TX 77057 | $ 106,257,846 | 33.59% |
| Hartman vREIT XXI, Inc. | 2909 Hillcroft Suite 420 Houston TX 77057 | $ 18,485,928 | 5.84% |

SPE-000252

SCHEDULE C
OFFICERS

| | |
|---|---|
| Allen R. Hartman | President and CEO |
| Louis T. Fox III | CFO and Treasurer |
| Mark T. Torok | General Counsel and Secretary |

1

**SPE-000253**